Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Koren L. Bell (SBN 216684)
*kbell@larsonllp.com*
Paul A. Rigali (SBN 262948)
*prigali@larsonllp.com*
Jonathan D. Gershon (SBN 306979)
jgershon@larsonllp.com
**LARSON LLP**
555 South Flower Street, Suite 4400
Los Angeles, CA 90071
Telephone: 213.436-4888
Facsimile: 213.623-2000

Attorneys for Plaintiffs
MOSAFER INC.;
MOSAFER E-COM, INC.;
AND GOMOSAFER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MOSAFER INC.; MOSAFER E-COM, INC.; and GOMOSAFER,<br><br>Plaintiffs.<br><br>vs.<br><br>ELLIOT BROIDY; GEORGE NADER; BROIDY CAPITAL MANAGEMENT, LLC; CIRCINUS, LLC; THE IRON GROUP INC. D/B/A IRONISTIC.COM; SCL SOCIAL LIMITED; PROJECT ASSOCIATES UK LTD; MATTHEW ATKINSON; and JOHN DOES 1-100,<br><br>Defendants. | CASE No. 2:21-cv-06320 MCS (JCx)<br><br>**PLAINTIFFS' OPPOSITION TO BROIDY DEFENDANTS' MOTION TO STRIKE OR ALTERNATIVELY, MOTION TO DISMISS**<br><br>Date: November 15, 2021<br>Time: 9:00 a.m.<br>Courtroom: 7C<br><br>Judge: Hon. Mark C. Scarsi<br><br>Complaint Filed: August 5, 2021 |

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION.................................................................................................1

II.  RELEVANT FACTUAL ALLEGATIONS ........................................................2

    A.  Qatar's Reputation Is Intrinsic To Plaintiffs' Business Model ....................2

    B.  Broidy Orchestrated A Disinformation Conspiracy Targeting Qatar, And By Extension, Plaintiffs..............................................................2

    C.  The Broidy Defendants Concealed The Disinformation Conspiracy .............3

    D.  Plaintiffs Recently Uncovered The Disinformation Conspiracy ...................4

    E.  Plaintiffs Have Alleged Specific Statements That Were Made As Part Of The Disinformation Conspiracy..................................................5

    F.  The Disinformation Conspiracy Significantly Harmed Plaintiffs .................5

III.  LEGAL STANDARD.........................................................................................6

IV.  LEGAL ARGUMENT ........................................................................................7

    A.  An Anti-SLAPP Motion Cannot Be Used To Strike Claims Based On The Broidy Defendants' Illegal FARA Violations .........................................7

    B.  Plaintiffs Have Sufficiently Pled Each Of Their Causes Of Action .............8

        1.  Plaintiffs Have Sufficiently Alleged Each Of Their Causes Of Action In Compliance With Rule 9(b) ......................................8

        2.  Plaintiffs Have Sufficiently Alleged That The Broidy Defendants Are Liable For The Acts Of The Other Defendants...............................9

            a.  The Broidy Defendants Engaged In A Civil Conspiracy ...............9

            b.  Defendants Are Vicariously Liable For The Publications ............10

        3.  Plaintiffs Have Sufficiently Stated A Claim For False Advertising In Violation Of The UCL, FAL, And Lanham Act..........10

            a.  The Publications Constitute Commercial Advertising .................11

            b.  Reliance Is Not An Element Of UCL And FAL Claims .............15

        4.  Plaintiffs Have Sufficiently Stated A Claim For Negligence .............16

            a.  The Complaint Alleges A Negligence Claim Based On The Broidy Defendants' Violation of FARA .........................................16

            b.  The Economic Loss Rule Does Not Bar Plaintiffs' Claims ..........18

c.    Intentional Conduct Does Not Bar A Negligence Claim ...............19

5.    Plaintiffs Have Sufficiently Stated A Claim For Trade Libel...............20

6.    GoMosafer's Incapacity To Sue Does Not Have Implications on Plaintiffs' Likelihood of Prevailing On The Claims ............................20

C.    Plaintiffs Have Standing To Pursue Their Injunctive Relief Claims And Are Entitled To Such Relief Because They Have Alleged An Ongoing Irreparable Injury.................................................................21

D.    Plaintiffs' Claims Are Not Barred By The Statute of Limitations...............22

1.    Plaintiffs' Causes Of Action Did Not Accrue Until They Discovered The Broidy Defendants' Wrongdoing................................23

2.    The Statute Of Limitations Was Tolled Under The Continuing Violation Or Continuing Accrual Doctrine ...........................................24

V.    CONCLUSION ........................................................................................25

PLAINTIFFS' OPPOSITION TO BROIDY DEFENDANTS' MOTION TO STRIKE OR ALTERNATIVELY, MOTION TO DISMISS

1

## **<u>TABLE OF AUTHORITIES</u>**

2

Page(s)

3

<u>Cases</u>

4

*Ajzenman v. Off. of Comm'r of Baseball,*
5
    492 F. Supp. 3d 1067 (C.D. Cal. 2020)........................................................9

6

*Allergan USA Inc. v. Imprimis Pharms., Inc.,*
7
    2017 WL 10526121 (C.D. Cal. Nov. 14, 2017) ......................................15

8

*Alvarez v. BAC Home Loans Servicing, L.P.,*
9
    176 Cal. Rptr. 3d 304 (Cal. Ct. App. 2014)............................................16

10

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
11
    869 P.2d 454 (Cal. 1994)............................................................................9

12

*Ariix, LLC v. NutriSearch Corp.,*
    985 F.3d 1107 (9th Cir. 2021) ........................................11, 12, 13, 14
13

14

*Aryeh v. Canon Bus. Sols., Inc.,*
    292 P.3d 871 (2013) ................................................................................25
15

16

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)....................................................................................6
17

18

*Bank of the West v. Superior Court,*
    2 Cal. 4th 1254 (1992)..............................................................................11

19

*Bd. of Trustees of State Univ. of N.Y. v. Fox,*
20
    492 U.S. 469 (1989)..................................................................................14

21

*Bekins v. AstraZeneca Pharms. LP*
22
    739 F. App'x 884 (9th Cir. 2018)............................................................24

23

*Bell Atl. Corp. v. Twombly,*
24
    550 U.S. 544 (2007)....................................................................................6

25

*Bernson v. Browning-Ferris Indus.,*
    7 Cal. 4th 926 (1994)................................................................................24
26

27

*Bly–Magee v. California,*
    236 F.3d 1014 (9th Cir. 2001) ..................................................................8

28

PLAINTIFFS' OPPOSITION TO BROIDY DEFENDANTS' MOTION TO STRIKE OR ALTERNATIVELY,
MOTION TO DISMISS

*Bolger v. Youngs Drug Prod. Corp.*,
   463 U.S. 60 (1983)................................................................12, 14

*Broad. Music, Inc. v. Ponderosa Chophouse Enters., Inc.*,
   2013 WL 12113406 (C.D. Cal. June 20, 2013).....................................22

*Brousseau v. Jarrett*,
   141 Cal. Rptr. 200 (Cal Ct. App. 1977)..................................................19

*Brown v. Goldstein*,
   2009 WL 10669252 (C.D. Cal. Sept. 30, 2009) .....................................13

*Brown v. USA Taekwondo*,
   253 Cal. Rptr. 3d 708 (Cal. Ct. App. 2019)............................................10

*Candelore v. Tinder, Inc.*,
   228 Cal. Rptr. 3d 336 (Cal. Ct. App. 2018)............................................16

*Cervantes v. City of San Diego*,
   5 F.3d 1273 (9th Cir. 1993) ...................................................................23

*Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*,
   173 F.3d 725 (9th Cir. 1999) .................................................................11

*Cooper v. Pickett*,
   137 F.3d 616 (9th Cir.1997) ....................................................................8

*Corona v. PNC Fin. Servs. Grp., Inc.*,
   2021 WL 1218258 (C.D. Cal. Mar. 16, 2021) .......................................16

*Deckers Outdoor Corp. v. Ozwear Connection Pty, Ltd.*,
   2014 WL 4679001 (C.D. Cal. Sept. 18, 2014).......................................22

*Demetriades v. Yelp, Inc.*,
   175 Cal. Rptr. 3d 131 (Cal. Ct. App. 2014)............................................20

*Flatley v. Mauro*,
   139 P.3d 2 (2006) ....................................................................................7

*Frere v. Medtronic, Inc.*,
   2016 WL 1533524 (C.D. Cal. Apr. 6, 2016)..........................................23

*Future Ads LLC v. Gillman*,
   2013 WL 12306479 (C.D. Cal. Dec. 23, 2013).......................................20

- iv -

*Gianni Versace, S.p.A. v. Dardashti,*
    2008 WL 11338729 (C.D. Cal. Apr. 21, 2008)................................................24

*Globetrotter Software, Inc. v. Elan Computer Grp., Inc.,*
    63 F. Supp. 2d 1127 (N.D. Cal. 1999)..........................................................6

*Gorenstein v. Ocean Spray Cranberries, Inc.,*
    2009 WL 10201128 (C.D. Cal. Dec. 18, 2009)............................................10

*Hardin v. Straub,*
    490 U.S. 536 (1989).........................................................................................23

*Harmoni Int'l Spice, Inc. v. Bai,*
    2016 WL 6542731 (C.D. Cal. May 24, 2016)...............................................7

*Hernandez v. Sessions,*
    872 F.3d 976 (9th Cir. 2017) ........................................................................21

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.,*
    497 F. Supp. 3d 552 (N.D. Cal. 2020)..................................................18, 19

*In re Tobacco II Cases,*
    207 P.3d 20 (2009) .........................................................................................15

*Issakhani v. Shadow Glen Homeowners Ass'n, Inc.,*
    278 Cal. Rptr. 3d 270 (Cal. Ct. App. 2021)...............................................17

*Johnson v. Chapman Univ.,*
    2021 WL 3463897 (C.D. Cal. Apr. 1, 2021)...............................................25

*Jolly v. Eli Lilly & Co.,*
    751 P.2d 923 (1988) .......................................................................................23

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) ........................................................................8

*KLE, Inc. v. Medisca, Inc.,*
    2019 WL 4261882 (C.D. Cal. June 3, 2019)...............................................24

*Lazar v. Hertz Corp.,*
    82 Cal.Rptr.2d 368 (Cal. Ct. App. 1999).....................................................16

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014).........................................................................................14

- v -

*Lobstein v. Washington Mut. Mortg. Pass-Through Certificates WMALT
        Series 2007-OC1,*
    2020 WL 3964788 (C.D. Cal. June 8, 2020)...........................................................18

*Luna Distrib. LLC v. Stoli Grp. (USA), LLC,*
    2018 WL 5099277 (C.D. Cal. July 10, 2018) ........................................................22

*Makaeff v. Trump Univ., LLC,*
    715 F.3d 254 (9th Cir. 2013) ...................................................................................6

*Martinez v. Metabolife Internat., Inc.,*
    188, 6 Cal. Rptr. 3d 494 (Cal. Ct. App. 2003) ......................................................14

*Meese v. Keene,*
    481 U.S. 465 (1987)..........................................................................................7, 17

*Mega RV Corp. v. HWH Corp.,*
    170 Cal.Rptr.3d 861 (Cal. Ct. App. 2014).............................................................18

*Monsanto Co. v. Geertson Seed Farms,*
    561 U.S. 139 (2010)................................................................................................21

*Moore v. Mars Petcare US, Inc.,*
    966 F.3d 1007 (9th Cir. 2020) ..................................................................................8

*Nat'l Comm'n On Egg Nutrition v. F.T.C.,*
    570 F.2d 157 (7th Cir. 1977) ..................................................................................12

*Nat'l Servs. Grp., Inc. v. Painting & Decorating Contractors of Am., Inc.,*
    2006 WL 2035465 (C.D. Cal. July 18, 2006) ........................................................14

*Nautilus, Inc. v. Chunchai Yu,*
    2011 WL 13213575 (C.D. Cal. Dec. 19, 2011)........................................................9

*Neilson v. Union Bank of California, N.A.,*
    290 F. Supp. 2d 1101 (C.D. Cal. 2003)....................................................................8

*Neubronner v. Milken,*
    6 F.3d 666 (9th Cir. 1993) ....................................................................................8, 9

*OSU Student All. v. Ray,*
    699 F.3d 1053 (9th Cir. 2012) ............................................................................6, 11

*Pace v. DiGuglielmo*,
   544 U.S. 408 (2005).................................................................................24

*Palestini v. Homecomings Fin., LLC*,
   2010 WL 3339459 (S.D. Cal. Aug. 23, 2010).........................................11

*Paulus v. Bob Lynch Ford, Inc.*,
   43 Cal. Rptr. 3d 148 (Cal. Ct. App. 2006).............................................16

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) .........6

*Pour v. Ocwen Mortg. Servicing, Inc.*,
   2017 WL 10523525 (C.D. Cal. Nov. 29, 2017) ......................................25

*Retrophin, Inc. v. Questcor Pharms., Inc.*,
   41 F. Supp. 3d 906 (C.D. Cal. 2014) .....................................................19

*Ringcentral, Inc. v. Nextiva, Inc.*,
   2021 WL 2476879 (N.D. Cal. June 17, 2021) ........................................20

*Royal Holdings Techs. Corp. v. IP Video Mkt. Info Inc.*,
   2020 WL 8225666 (C.D. Cal. Dec. 18, 2020).........................................11

*S. California Gas Leak Cases*,
   441 P.3d 881 (2019) ...............................................................................18

*Sampson v. Cty. of L.A.*,
   2021 WL 4200043 (C.D. Cal. July 1, 2021) ..........................................25

*SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*,
   2015 WL 6680807 (C.D. Cal. Oct. 19, 2015) .........................................22

*Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*,
   2021 WL 3417590 (N.D. Cal. Aug. 5, 2021) ..........................................15

*Shultz Steel Co. v. Hartford Accident & Indem. Co.*,
   231 Cal. Rptr. 715 (Cal. Ct. App. 1986)................................................10

*Spurlock v. Carrington Mortg. Servs., Inc.*,
   2010 WL 3069733 (S.D. Cal. Aug. 4, 2010)..........................................11

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*,
   240 F.3d 832 (9th Cir. 2001) .................................................................21

*Teddy's Red Tacos Corp., v. Theodoro Vazquez Solis Dba Teddy's Red Tacos et al.*,
  2021 WL 4517723 (C.D. Cal. Aug. 16, 2021) ........................................22

*The Rossdale Grp., LLC v. Walton*,
  219 Cal. Rptr. 3d 605 (Cal. Ct. App. 2017)..........................................20

*TwoRivers v. Lewis*,
  174 F.3d 987 (9th Cir. 1999) .................................................................23

*U.S. ex rel. Knapp v. Calibre Sys., Inc.*,
  2011 WL 4914711 (C.D. Cal Oct. 17, 2011) ........................................19

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ............................................................6, 8

*Walker & Zanger, Inc. v. Paragon Indus., Inc.*,
  549 F. Supp. 2d 1168 (N.D. Cal. 2007)................................................11

*Ward v. Westinghouse Canada, Inc.*,
  32 F.3d 1405 (9th Cir. 1994) .................................................................23

*Webb v. Ackerman*,
  2014 WL 12770071 (C.D. Cal. Oct. 9, 2014) ........................................23

*Williams v. Countrywide Fin. Corp.*,
  2017 WL 986517 (C.D. Cal. Mar. 13, 2017) .........................................24

*Zimmerman v. City of Oakland*,
  255 F.3d 734 (9th Cir. 2001) ...................................................................6

Rules

California Business & Professions Code
  Section 17204 .........................................................................................15

United States Code
  Title 22, Section 612...............................................................................7

Treatises

Federal Rules of Civil Procedure
  Rule 12(b)(6) ............................................................................................6

Federal Rules of Civil Procedure
   Rule 8 ................................................................................................................ 19

Federal Rules of Civil Procedure
   Rule 8(d) ........................................................................................................... 19

Federal Rules of Civil Procedure
   Rule 9 .................................................................................................................. 8

Federal Rules of Civil Procedure
   Rule 9(b) .............................................................................................................. 8

## Regulations

https://efile.fara.gov/docs/6473-Registration-Statement-20171006-1.pdf ................... 12

https://efile.fara.gov/docs/6473-Supplemental-Statement-20180531-1.pdf ............... 12

*Patriotic Ads and the Economics of Patriotism*, Thunderfoot (July 1,
   2016), https://teamthunderfoot.com/ideas/patriotic-ads/ ........................................... 3

# I.    __INTRODUCTION__

Plaintiffs Mosafer Inc., Mosafer E-Com, Inc., and GoMosafer (collectively, "Plaintiffs") allege that Defendants Elliott Broidy ("Broidy"), Broidy Capital Management, LLC ("BCM"), and Circinus, LLC ("Circinus") (collectively, the "Broidy Defendants") orchestrated an ongoing disinformation campaign in exchange for hundreds of millions of dollars, whereby they hired individuals and entities to deceptively publish knowingly false information, and that they did so in violation of the Foreign Agents Registration Act ("FARA"), (the "Disinformation Conspiracy").

This illegal campaign against Qatar was particularly damaging to Plaintiffs because their travel business focused on booking travel to or through Qatar and because it interfered with Plaintiffs' efforts to enhance their brand appeal by conjuring the luxurious Qatari brand in the mind of consumers.  Although they are not controlled by Qatar, Plaintiffs certainly sought to gain public recognition and brand legitimacy by using Qatar's colors and invoking Qatari symbolism.  Consequently, when the Broidy Defendants unlawfully attacked Qatar, Plaintiffs suffered damages in the form of lost sales.

After Defendants successfully hid both the existence of the Disinformation Conspiracy and their involvement in it for years, Plaintiffs finally uncovered the Broidy Defendants' scheme and filed this Complaint asserting causes of action for (1) false advertising under California's False Advertising Law ("FAL") and the Lanham Act, (2) unlawful conduct under California's Unfair Competition Law ("UCL"), (3) trade libel, and (4) negligence.  Through these causes of action, Plaintiffs are seeking monetary damages and injunctive relief ordering that Defendants (1) take down the illegal publications, and (2) stop engaging in this ongoing unlawful conduct.

In response to Plaintiffs' Complaint, the Broidy Defendants have filed a Motion to Strike or Alternatively Dismiss (the "Motion") that seeks to immunize their unlawful behavior under the cloak of protected speech.  However, courts have routinely recognized that the First Amendment's right of speech is not boundless—it

- 1 -

neither allows a person to engage in false commercial advertising, nor allows someone to violate FARA.  In recognition of these limits, illegal conduct is excluded from protection under California's anti-SLAPP statute.

Moreover, even if the Broidy Defendants had satisfied the first prong of the anti-SLAPP analysis (and they have not), Plaintiffs have sufficiently alleged facts that support each of their causes of action, particularly in light of Defendants' extensive efforts to conceal their conduct.  As such, the Broidy Defendants' Motion should be denied in its entirety.

## II.   RELEVANT FACTUAL ALLEGATIONS

### A.   Qatar's Reputation Is Intrinsic To Plaintiffs' Business Model

Mosafer, Inc. is a global one-stop industry-leading travel conglomerate and has long been one of Qatar's leading tourism companies.  Compl. ¶ 30.  Plaintiffs' Qatari heritage is the cornerstone of their branding, reflecting Plaintiffs' deliberate attempt and marketing strategy to make themselves synonymous with Qatar.  *Id.* ¶ 31. Plaintiffs spent considerable resources in designing their store, products, e-commerce website, online ticketing website, company logos and brand details to evoke their Qatari roots.  *Id.*  As part of this strategy, Plaintiffs purposefully used elements of the Qatari flag in their branding and specifically chose as their trade dress the same burgundy found on the flag.  *Id.*  As a result of these efforts, Plaintiffs were intimately associated with Qatar in the eyes of the consumer.  *Id.*

### B.   Broidy Orchestrated A Disinformation Conspiracy Targeting Qatar, And By Extension, Plaintiffs

An alliance of foreign interests sought to harm Qatari businesses and their reputations by spreading disinformation abroad, especially in the United States. Compl. ¶ 45.  They recruited Defendant George Nader ("Nader"), who then mobilized Defendant Broidy and a network of others to execute a campaign against Qatari businesses.  *Id.* ¶ 46. The aim of the Disinformation Conspiracy was to drive

PLAINTIFFS' OPPOSITION TO BROIDY DEFENDANTS' MOTION TO STRIKE OR ALTERNATIVELY, MOTION TO DISMISS

1   governmental and private actors away from transacting with Qatari-related businesses

2   and usurp its business opportunities for competitors.  *Id.* ¶ 7.

3        The Disinformation Conspiracy employed a web of conventional print media,

4   internet websites, and social media accounts to publish false and misleading

5   information about the safety, stability, and nature of Qatari-based businesses.  *Id.*

6   This campaign created a false media landscape that drove American consumers away

7   from businesses affiliated with Qatar.  *Id.*  Its goal was to make travel to Qatar and

8   consumption of Qatari services untenable to the consumer and ultimately starve Qatari

9   businesses of consumers.  *Id.*  As a company that used elements of the Qatar flag and

10  culture for branding purposes, and not because of any affirmative act on the part of

11  Qatar, Plaintiffs were intended victims of the Disinformation Conspiracy.[1]

12       **C.     The Broidy Defendants Concealed The Disinformation Conspiracy**

13       The publications in the Disinformation Conspiracy were intentionally designed

14  to look independent, legitimate, and authentic such that the public would not

15  recognize that they wert part of a coordinated campaign against Qatar.  *Id.* ¶¶ 71, 87,

16  89.  As such, the Broidy Defendants concealed and buried their involvement in the

17  Disinformation Conspiracy.  *Id.* ¶¶ 44, 50, 59, 89.  To ensure that the public would be

18  incapable of connecting them to the Disinformation Conspiracy, the Broidy

19  Defendants failed to disclose their conduct as required under FARA.  The Broidy

20  Defendants did not register or otherwise disclose their conduct at all, *id.* ¶¶ 6, 56,

21  101.b, and the remaining Defendants either did not register under FARA, or registered

22

23  [1] It is a commonplace strategy for companies to rely on patriotic imagery as a
    branding technique.  *See Patriotic Ads and the Economics of Patriotism*, Thunderfoot

24  (July 1, 2016), https://teamthunderfoot.com/ideas/patriotic-ads/ ("Great advertising
    relies upon effective design and language to forge bonds between a brand and its

25  customers.  By integrating patriotic imagery into their ads, [] brands create a

26  connection for consumers between their product and all the commonly cited virtues of
    [that country].").  American Airlines uses the United States' name and colors as the

27  centerpiece of its branding, but that marketing strategy does not convert the company

28  into an arm of the American government.

untimely and without providing sufficient details in their disclosures, *id.*  ¶¶ 6, 72-75, 77-79, 101.b.

### D.   Plaintiffs Recently Uncovered The Disinformation Conspiracy

The Defendants' efforts to conceal the Disinformation Conspiracy were successful and as a result, Plaintiffs only recently pieced enough information together to uncover its existence.  *Id.* ¶¶ 59, 90.  Specifically, Plaintiffs' allegations regarding the existence of the Disinformation Conspiracy are based on the following:

- Nader and the Broidy Defendants received hundreds of millions of dollars from the United Arab Emirates ("UAE").  *Id.* ¶¶ 50, 59, 60;

- In October 2020, after Broidy pled guilty to Conspiracy to Serve as an Unregistered Agent of a Foreign Principal, Prosecutors indicated that they intended to present evidence at sentencing regarding Broidy's efforts "to obtain business from a Middle Eastern country and [his] client's efforts to influence U.S. policy towards a second Middle Eastern country in its alleged support of terrorist activities."  *Id.* ¶¶ 50, 55-56.  Plaintiffs believe this was a reference to Broidy's work on behalf of the UAE against Qatar.  *Id.*;

- In March 2017, Broidy provided a proposed budget of $12,000,000 to "expose and penalize" Qatar.  *Id.* ¶ 60;

- As part of that proposal, Broidy pitched an all-encompassing "media blitz" involving Circinus and noted that they had orchestrated an "extraordinary PR campaign against Qatar."  *Id*. ¶¶ 64-65;

- Defendants SCL Social Limited ("SCL") and Matthew Atkinson's ("Atkinson") 2017 and 2018 FARA registrations state that they were providing "a wide range of services specific to a global social media campaign," an objective which

- 4 -

perfectly aligns with Broidy's multi-faceted forum proposal and during the same time period.[2]  *Id.*  ¶¶ 72-75, 79; and

- Defendant Project Associates filed a Supplemental Statement disclosing that they were continuing to render services to the UAE to "create and promote counter-narratives that discourage young people from extremism and promote greater collaboration between the U.S. and UAE on counter-terrorism . . . and to raise awareness about state-sponsored terrorism in the Middle East."  *Id.* ¶ 78.

### E.    Plaintiffs Have Alleged Specific Statements That Were Made As Part Of The Disinformation Conspiracy

Because of the Defendants' efforts to conceal the Disinformation Conspiracy and make the publications appear authentic, Plaintiffs are unable to identify all of the illegal publications without discovery.  *Id.* ¶ 85.  However, Plaintiffs have provided the following examples of the Disinformation Conspiracy: a full-page advertisement in the Washington Post, *id.* ¶ 66 (stating among other false claims that, "QATAR IS A SAFE HAVEN FOR TERRORISTS"); a YouTube account called "Qatar exposed," *id.* ¶¶ 70, 76; websites called Qaterexposed.com, Qatartruth.com, and BoycottQatarnow.com, *id.* ¶ 80; the QatarExposed Facebook and Twitter pages and videos upload to same, *id.* ¶ 83 (using the same burgundy as the Qatari flag); and a Boycott Qatar Airways advertisement, *id.* ¶ 82 (encouraging the public to "Boycott Qatar Airways for their human rights abuses").

### F.    The Disinformation Conspiracy Significantly Harmed Plaintiffs

As a direct result of the Disinformation Conspiracy, Plaintiffs lost existing and prospective customers.  Plaintiffs' Complaint details the harm experienced, including travel cancelations, costs incurred from increased advertising aimed at countering the Disinformation Conspiracy, lost sales on its e-commerce and retail stores, and the forced closure of its New York store (in which Plaintiffs incurred significant penalties

---

[2] The relevant FARA registrations are cited in Plaintiffs' Complaint.  *See* Compl. ¶¶ 72 n.1-3, 73 n.4-5, 74 n.6, 78 n.7, 79 n.8.

for breaking its lease), and cancellation of plans to open a retail location in California. *Id.* ¶¶ 92-96.

## III.   LEGAL STANDARD

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003).  First, "the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013).  "Second, once the defendant has made a prima facie showing, 'the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims.'" *Vess*, 317 F.3d at 1110 (quoting *Globetrotter Software, Inc. v. Elan Computer Grp., Inc.*, 63 F. Supp. 2d 1127, 1129 (N.D. Cal. 1999)).  Where, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018).

To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure the complaint need only state a claim for relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  When considering a 12(b)(6) motion to dismiss, a court must accept the well-pleaded factual allegations of the complaint as true and construe them in the light most favorable to plaintiffs.  *Id.*; *see also OSU Student All. v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012).

1

## IV.  **LEGAL ARGUMENT**

2

### A.  **An Anti-SLAPP Motion Cannot Be Used To Strike Claims Based On The Broidy Defendants' Illegal FARA Violations**

3

4      An anti-SLAPP motion under section "425.16, by its express terms, does not

5   apply to any activity … if, as a matter of law, that activity was illegal and by reason of

6   the illegality not constitutionally protected."  *Flatley v. Mauro*, 139 P.3d 2, 12 (2006).

7   Accordingly a "defendant fails to satisfy the anti-SLAPP statute's first prong" when

8   the "evidence conclusively establishes[] that the assertedly protected speech or

9   petition activity was illegal as a matter of law."  *Harmoni Int'l Spice, Inc. v. Bai*, 2016

10  WL 6542731, at *14 (C.D. Cal. May 24, 2016) (internal quotation omitted).

11      Here, Plaintiffs have sufficiently alleged that the Broidy Defendants' speech

12  was illegal as a matter of law because they violated FARA.  *See* 22 U.S.C. § 612 ("No

13  person shall act as an agent of a foreign principal unless he has registered his status as

14  such an agent with the Attorney General."); *Meese v. Keene*, 481 U.S. 465, 469 (1987)

15  (FARA "requires all agents of foreign principals to file detailed registration

16  statements, describing the nature of their business and their political activities.").

17  As explained in Section II.C, *supra*, the Complaint alleges that each of the

18  publications made were in violation of FARA.  *See* Compl. ¶¶ 6, 56, 72-75, 77-79,

19  101.b.  These allegations must be taken as true.  *See Flatley*, 139 P.3d at 19 (holding

20  that all facts disputed in an anti-SLAPP motion must be viewed in the light most

21  favorable to plaintiffs).  In fact, in their Answer, the Broidy Defendants (1) admit that

22  Broidy never registered under FARA, and (2) do not dispute the contents of the emails

23  cited in the Complaint.  *See* Dkt. No. 45, ¶¶ 59, 64.  Thus, the illegal speech

24  exemption applies and the Broidy Defendants have failed to establish the first prong

25  of the anti-SLAPP analysis.

26

27

28

**B.      Plaintiffs Have Sufficiently Pled Each Of Their Causes Of Action**

**1.      Plaintiffs Have Sufficiently Alleged Each Of Their Causes Of Action In Compliance With Rule 9(b)**

The Broidy Defendants contend that Plaintiffs have failed to sufficiently plead their causes of action under Rule 9(b).  "Rule 9(b) requires that, when fraud is alleged, a party must state with particularity the circumstances constituting fraud[.]"  *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation omitted). Rule 9(b) only "demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong.'" *Id.* (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001))*.*  Thus, under Rule 9(b), a plaintiff must allege "'the who, what, when, where, and how' of the misconduct charged."  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Preliminarily, because Rule 9 only applies to claims which are grounded in fraud, Plaintiffs' negligence claims are not subject to this heightened pleading requirement. *See, e.g.*, *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1143 (C.D. Cal. 2003) ("There is no requirement that negligence be pleaded with heightened specificity pursuant to Rule 9(b).").  Moreover, "Rule 9(b) requirements may not even be necessary" to plead Plaintiffs false advertising claims because "a defendant can violate the UCL, FAL, and CLRA by acting with mere negligence."  *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 n.11 (9th Cir. 2020).

However, even assuming Rule 9 does apply to each of Plaintiffs' claims, Plaintiffs have satisfied this pleading standard.  Rule 9(b) requirements "may be relaxed with respect to matters within the opposing party's knowledge."  *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  Here, as explained in Section II.C, *supra*, many of the specific facts of the Disinformation Conspiracy are exclusively within the Defendants' possession because they have taken active efforts to conceal them.  *See,*

- 8 -

*e.g.*, Compl. ¶¶ 6, 59, 89-90.  As such, it is sufficient that Plaintiffs have alleged facts establishing why they believe that Plaintiffs were engaged in the Disinformation Conspiracy.  *See Neubronner*, 6 F.3d at 672 (noting that a plaintiff who makes fraud-based allegations on information and belief must only "state the factual basis for the belief").  Plaintiffs have so alleged.  *See* Section II.D, *supra*.

### 2.   Plaintiffs Have Sufficiently Alleged That The Broidy Defendants Are Liable For The Acts Of The Other Defendants

The Broidy Defendants contend that Plaintiffs' claims fail because there are no allegations that they directly published any false statements.  *See* Motion at 19:5-6.  However, Plaintiffs' allegations against the Broidy Defendants include civil conspiracy and vicarious liability theories, and thus whether the Broidy Defendants themselves made the publications does not preclude them from liability.

### a.   The Broidy Defendants Engaged In A Civil Conspiracy

Under California law, "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration."  *Ajzenman v. Off. of Comm'r of Baseball*, 492 F. Supp. 3d 1067, 1081 (C.D. Cal. 2020) (citation omitted); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457 (Cal. 1994) ("By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. . .").  "Liability for civil conspiracy generally requires three elements: (1) formation of the conspiracy (an agreement to commit wrongful acts); (2) operation of the conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of the conspiracy."  *Nautilus, Inc. v. Chunchai Yu*, 2011 WL 13213575, at *11 (C.D. Cal. Dec. 19, 2011) (citation omitted).

Plaintiffs have sufficiently alleged each element for a civil conspiracy.  First, as explained in Section II.B and D, *supra*, they have sufficiently alleged the formation of the Disinformation Conspiracy.  *See, e.g.*, Compl. ¶¶ 1, 6, 61, 80.  Second, Plaintiffs

- 9 -

have alleged the commission of wrongful acts—the publications which falsely attacked Qatar in violation of FARA. *See* Section II.E, *supra*. Finally, Plaintiffs have alleged that the Disinformation Conspiracy harmed them. *See* Section II.F, *supra*. As such, Plaintiffs sufficiently assert liability against the Broidy Defendants based on a civil conspiracy theory.

### b.   Defendants Are Vicariously Liable For The Publications

"[A] principal who personally engages in no misconduct may be vicariously liable for the tortious act committed by an agent within the course and scope of the agency." *See Brown v. USA Taekwondo*, 253 Cal. Rptr. 3d 708, 735 (Cal. Ct. App. 2019). "A principal may be liable for the torts of his agent if the principal directed or authorized him to perform the tortious act." *Shultz Steel Co. v. Hartford Accident & Indem. Co.*, 231 Cal. Rptr. 715, 717 (Cal. Ct. App. 1986). Here, Plaintiffs allege that the Broidy Defendants orchestrated the Disinformation Conspiracy by hiring companies and individuals to make the false publications. Compl. ¶¶ 1, 6, 10, 61, 65-67, 97. Accordingly, the Complaint sufficiently alleges that the Broidy Defendants are vicariously liable for the publications made by the other Defendants.

### 3.   Plaintiffs Have Sufficiently Stated A Claim For False Advertising In Violation Of The UCL, FAL, And Lanham Act

Plaintiffs allege that the publications made in the Disinformation Conspiracy, and specifically those identified in Section II.E, *supra*, constitute false advertising under the UCL, FAL, and Lanham Act. The Broidy Defendants cannot credibly contend that Plaintiffs have failed to sufficiently identify these false publications. *See Gorenstein v. Ocean Spray Cranberries, Inc*., 2009 WL 10201128, at *3 (C.D. Cal. Dec. 18, 2009) (denying motion to dismiss on false advertising claims where plaintiff properly alleged statements in a website and press release). Instead, they erroneously argue that Plaintiffs' false advertising claims fail because (1) the statements made in the publications were not commercial advertisements, and (2) that Plaintiffs may not assert UCL and FAL claims based on the reliance of potential customers.

### a.   The Publications Constitute Commercial Advertising

In evaluating UCL and FAL claims, "courts have construed use of the term 'advertising' . . . to mean 'widespread promotional activities directed to the public at large.'" *Palestini v. Homecomings Fin., LLC*, 2010 WL 3339459, at *10 (S.D. Cal. Aug. 23, 2010) (quoting *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1276–77 n.9 (1992)); *Spurlock v. Carrington Mortg. Servs., Inc.*, 2010 WL 3069733, at *6 (S.D. Cal. Aug. 4, 2010).  Similarly, under the Lanham Act, "[f]or representations to constitute commercial advertisement, 'they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services . . . [and] (4) must be disseminated sufficiently to the relevant purchasing public[.]'" *Royal Holdings Techs. Corp. v. IP Video Mkt. Info Inc.*, 2020 WL 8225666, at *12 (C.D. Cal. Dec. 18, 2020) (citing *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)).  Plaintiffs have satisfied both tests—they have alleged that the Broidy Defendants were paid to orchestrate the Disinformation Conspiracy, including widespread publications[3] that were intended to divert business from Plaintiffs to UAE-related competitors.  *See, e.g.*, Compl. ¶¶ 7, 63, 86, 97, 101.a(3).

"Speech that does not propose a commercial transaction on its face can still be commercial speech." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021).  Although commercial speech is *usually* defined as speech that does no more than propose a commercial transaction, courts view this definition as "just a starting point," and "instead try to give effect to a common-sense distinction between

---

[3] The Broidy Defendants' argument that a single newspaper ad is not "sufficiently disseminated to the relevant public" misses the mark.  Motion at 19:20-24.  Preliminarily, Plaintiffs' claims are based on *all* of the publications made as part of the Disinformation Conspiracy, not just the Washington Post advertisement.  Moreover, *Walker & Zanger, Inc. v. Paragon Indus., Inc.*, 549 F. Supp. 2d 1168, 1182 (N.D. Cal. 2007) is inapplicable as it was decided on summary judgment, not a motion to dismiss.  Here, Plaintiffs have alleged sufficient facts to demonstrate widespread dissemination at the pleading stage.

commercial speech and other varieties of speech." *Id.* (internal quotations and citations omitted).  As a result, a court's commercial speech analysis is fact-driven, due to the inherent difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct category." *Id.*  As was the case in *Ariix*, although the publications at issue here do not appear to propose a commercial transaction, they are nonetheless subject to analysis under the *Bolger* factors "[b]ecause of the difficulty of drawing clear lines between commercial and non-commercial speech[.]" *Ariix*, 985 F.3d at 1115.

Under *Bolger*, speech should be characterized as commercial speech where: "[1] the speech is an advertisement, [2] the speech refers to a particular product, and [3] the speaker has an economic motivation." *Ariix*, 985 F.3d at 1116 (internal quotations omitted).  Regarding the first factor, although the statements here were not in the traditional form of an advertisement, "this fact alone does not tell [the court] much, especially given today's sophisticated and subtle marketing campaigns." *Id.* Here, Defendants' own FARA registrations characterize these efforts as advertising campaigns.[4]  Further, Plaintiffs allege that the Broidy Defendants intended to hide the commercial nature of their statements by making them appear to be noncommercial political speech.  *See, e.g.*, Compl. ¶¶ 71, 89.

As to the second factor, a product that "is referred to generically does not… remove it from the realm of commercial speech."  *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 67 n.13 (1983) (noting a promoter "may be able to promote the product without reference to its own brand names"); *see also Nat'l Comm'n On Egg Nutrition v. F.T.C.*, 570 F.2d 157, 159-60 (7th Cir. 1977) (enforcing in part an FTC

---

[4] *See, e.g.*, https://efile.fara.gov/docs/6473-Registration-Statement-20171006-1.pdf at 5 (SCL's October 2017 FARA registration in which SCL selects "advertising campaigns" to describe activities as a foreign agent); https://efile.fara.gov/docs/6473-Supplemental-Statement-20180531-1.pdf at 8 (SCL's May 2018 supplemental filing describing "advertising campaigns"); *see also* Compl. ¶ 74 n.6; Compl. ¶ 72 n.1.

PLAINTIFFS' OPPOSITION TO BROIDY DEFENDANTS' MOTION TO STRIKE OR ALTERNATIVELY, MOTION TO DISMISS

order prohibiting false and misleading advertising that did not reference to a specific brand). Moreover, a false advertising claim can be supported by a statement that is "'misleading ... because it conveys a false impression through implication, innuendo, ambiguity, or omission of material facts.'" *Brown v. Goldstein*, 2009 WL 10669252 at *3 (C.D. Cal. Sept. 30, 2009) (citations omitted). As explained in Section II.A, *supra*, the false disparaging statements made about Qatar by the Defendants necessarily constituted disparaging statements about Plaintiffs because Plaintiffs were intimately associated with Qatar in the eyes of the consumer.

The third factor clearly favors a finding that the Disinformation Conspiracy was commercial advertising. "[E]conomic motivation is not limited simply to the expectation of a direct commercial transaction with consumers. Courts have found commercial speech even when it involves indirect benefits," including improvements to a brand's image. *Ariix*, 985 F.3d at 1117. "[T]he type of economic motivation is not the focus; rather, the crux is on whether the speaker had an adequate economic motivation so that the economic benefit was the primary purpose for speaking." *Id*. Here, Plaintiffs allege that the Defendants had an economic motivation for making the unlawful publications—the Broidy Defendants were paid hundreds of millions of dollars to hire the other Defendants to make the publications. Compl. ¶¶ 50, 59-61. Further, the statements themselves were designed to drive business from companies like Plaintiffs to their UAE-competitors. *Id.* ¶¶ 7, 63, 86. As such, the publications undoubtedly had an economic motivation.

For this reason, the Broidy Defendants' contention that the statements were "inextricably intertwined" with otherwise protected speech must be viewed in the context of their commercial motivation. "[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies … and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute."

*Martinez v. Metabolife Internat., Inc.*, 188, 6 Cal. Rptr. 3d 494, 499 (Cal. Ct. App. 2003).  As such, "communications can constitute commercial speech notwithstanding the fact that they contain discussions of important public issues.... [A]dvertising which links a product to a current public debate is not thereby entitled to the constitutional protection afforded noncommercial speech." *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 475 (1989) (citations omitted); *see also Bolger*, 463 U.S. at 67-68.

Similarly, it is of no moment that the Broidy Defendants are not themselves in commercial competition with Plaintiffs.[5]  "[T]here is no requirement that the Plaintiff and the Defendant be exactly the same type of business" in order for there to be commercial advertising.  *Nat'l Servs. Grp., Inc. v. Painting & Decorating Contractors of Am., Inc.*, 2006 WL 2035465, at *3 (C.D. Cal. July 18, 2006).  Indeed, under the Broidy Defendants' theory, a business competitor could shield themselves of liability merely by using an advertising agency to run a false advertising campaign against their competitors.  This is not the law and such an approach has been flatly rejected by the Courts.  *See id.* at *4 ("Although PDCA … does not own or manage painting companies, its members are commercial entities in direct competition with the Plaintiffs. To immunize nonprofit trade groups from product disparagement claims would effectively permit commercial entities to avoid Lanham Act liability by speaking through a larger trade group that itself does not own or operate any business.").  Accordingly, because the purpose behind the Disinformation Campaign was to drive Plaintiffs' business to their competitors, it is irrelevant that the Broidy Defendants themselves are not in competition with Plaintiffs.

In sum, the Broidy Defendants should not be allowed to unlawfully profit and to divert business from companies like Plaintiffs to their competitors and then claim

---

[5] Notably, it is unclear whether commercial competition is still required under the Lanham Act.  *See Ariix*, 985 F.3d at 1120 (noting the district court's comment that although this element "is likely in need of revision," it did not need to decide the question because "the parties agreed that *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) likely abrogated the requirement").

PLAINTIFFS' OPPOSITION TO BROIDY DEFENDANTS' MOTION TO STRIKE OR ALTERNATIVELY, MOTION TO DISMISS

that there is no remedy for this conduct because the false statements were "noncommercial."  Given the clear economic purpose and impact of the Disinformation Conspiracy, there is no doubt that these publications constitute commercial advertising.

> **b.    Reliance Is Not An Element Of UCL And FAL Claims**

The Broidy Defendants erroneously contend that Plaintiffs lack statutory standing under the UCL and FAL because Plaintiffs did not rely on their false statements.  Motion at 18:2-20.  Under Cal. Bus. & Prof. Code § 17204, a plaintiff has standing to pursue a UCL claim if they have "suffered injury in fact and has lost money or property as a result of the unfair competition."  Here, as explained in Section II.F, *supra*, Plaintiffs have been directly injured by the Disinformation Conspiracy and thus have statutory standing to pursue these claims.

While the California Supreme Court did find that section 17204 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong" this analysis was based on a *consumer action* and does not apply to an action brought by a competitor.  *See In re Tobacco II Cases*, 207 P.3d 20, 40 (2009).  Because a competitor may suffer an injury without relying on the false publications, this reliance requirement is inapplicable to UCL claims brought by competitors.  *See, e.g.*, *Allergan USA Inc. v. Imprimis Pharms., Inc.*, 2017 WL 10526121, at *13 (C.D. Cal. Nov. 14, 2017) ("Unlike consumer plaintiffs . . . , competitor plaintiffs like Allergan do suffer an 'injury in fact . . . as a result' of the competitor defendant's actions—loss of market share and sales due to the defendant's misleading advertising diverting customers.  Therefore, [section 17204]'s purpose of preventing actions by plaintiffs who have not suffered an actual injury does not apply to competitor plaintiffs."); *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 2021 WL 3417590, at *6-7 (N.D. Cal. Aug. 5, 2021) (finding that a non-consumer plaintiff can allege false advertising claims under the UCL and FAL without alleging its own

- 15 -

reliance).  Thus, Plaintiffs were not required to rely on the false advertisements to pursue their claims under the UCL and FAL.[6]

### 4.  Plaintiffs Have Sufficiently Stated A Claim For Negligence

"To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries."  *Alvarez v. BAC Home Loans Servicing, L.P.*, 176 Cal. Rptr. 3d 304, 306 (Cal. Ct. App. 2014).  The Broidy Defendants' Motion claims that Plaintiffs' negligence claims should be dismissed for several reasons, but each of these arguments fails.

### a.  The Complaint Alleges A Negligence Claim Based On The Broidy Defendants' Violation of FARA

First, the Broidy Defendants erroneously contend that Plaintiffs cannot maintain their negligence claims against them based on their alleged violations of FARA because (1) Plaintiffs are not entitled to a negligence per se presumption, (2) there is no duty of care arising from FARA, (3) there are insufficient allegations suggesting

---

[6] Even if Plaintiffs were required to allege reliance to bring a claim under the fraudulent prong of the UCL (and they are not), their UCL cause of action should not be dismissed because Plaintiffs are also asserting a claim under the unlawful prong of the UCL.  "The UCL's 'unlawful' prong 'borrows violations of other laws ... and makes those unlawful practices actionable under the UCL.'" *Candelore v. Tinder, Inc.*, 228 Cal. Rptr. 3d 336, 350 (Cal. Ct. App. 2018) (quoting *Lazar v. Hertz Corp.*, 82 Cal. Rptr. 2d 368, 375 (Cal. Ct. App. 1999)).  "'[V]irtually any law or regulation—federal or state, statutory or common law—can serve as [a] predicate for [an] ... 'unlawful' [prong] violation.'" *Id*. (quoting *Paulus v. Bob Lynch Ford, Inc.*, 43 Cal. Rptr. 3d 148, 165 (Cal. Ct. App. 2006); *see also Corona v. PNC Fin. Servs. Grp., Inc.*, 2021 WL 1218258, at *7 (C.D. Cal. Mar. 16, 2021) ("A claim under [the unlawful] prong borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.") (internal quotations omitted).  As such, Plaintiffs may pursue this cause of action under the unlawful prong of the UCL based on the Broidy Defendants' violations of FARA, violations of the Lanham Act, trade libel, and negligence.

that the Broidy Defendants violated FARA, and (4) there are insufficient facts alleging damages.  Motion at 20:19-25; 21:4-22.

Here, Plaintiffs have sufficiently alleged a breach of duty based on the Broidy Defendants' violations of FARA.  "A duty of care can … be grounded in—and hence 'borrowed' from—the public policy embodied in a legislatively enacted statute or ordinance." *Issakhani v. Shadow Glen Homeowners Ass'n, Inc.*, 278 Cal. Rptr. 3d 270, 279 (Cal. Ct. App. 2021).  When a statute "embod[ies] and implement[s] a broad, generally applicable rule of conduct on the basis of general public policy[,] . . . they set forth the same type of fundamental policy decisions that are capable of forming the basis for a duty of care." *Id.* at 280 (internal quotations omitted).  If a statute embodies a fundamental policy, it gives rise a claim for negligence if "(1) the plaintiff invoking the statute is a member of the class of persons the statute [or ordinance] ... was designed to protect, and (2) the harm the plaintiff suffered was one the statute [or ordinance] ... was designed to prevent." *Id.* at 281 (internal quotations omitted).

As explained in Section II.C, *supra*, Plaintiffs allege that the Defendants failed to sufficiently register under FARA and label statements appropriately.  *See Meese*, 481 U.S. at 469 (FARA was enacted "[t]o protect the national defense, internal security, and foreign relations of the United States by requiring public disclosure by persons engaging in propaganda activities and other activities for or on behalf of foreign governments, foreign political parties, and other foreign principals so that the Government and the people of the United States may be informed of the identity of such persons and may appraise their statements and actions in the light of their associations and activities.") (citation omitted).  Accordingly, FARA embodies a fundamental policy decision that is capable of forming a duty of care.

Without labeling, the public believed that the publications were legitimate, and as a result, Plaintiffs lost significant business.  *See, e.g.*, Compl. ¶¶ 91-97.  Thus, the harm caused by the Disinformation Conspiracy—public exposure to secret foreign propaganda—was precisely the type of harm that FARA was designed to

1   protect against.  As such, Plaintiffs have sufficiently alleged a duty based on a

2   violation of FARA.[7]

3            **b.      The Economic Loss Rule Does Not Bar Plaintiffs' Claims**

4            Next, the Broidy Defendants claim that Plaintiffs' negligence claims are barred

5   by the economic loss rule.  *See* Motion at 20:26-27; 21:1-3.  The economic loss rule

6   provides that "[e]ntities generally have no duty to prevent purely economic loss to a

7   potential plaintiff."  *Mega RV Corp. v. HWH Corp.*, 170 Cal. Rptr. 3d 861, 878 (Cal.

8   Ct. App. 2014).  However, "[t]here is no bright-line rule barring all negligence claims

9   for purely economic losses in California [].  Instead, the economic loss doctrine is part

10  of the 'duty' analysis and '[d]eciding whether to impose a duty of care turns on a

11  careful consideration of the sum total of the policy considerations at play, not a mere

12  tallying of some finite, one-size-fits-all set of factors.'"  *In re JUUL Labs, Inc., Mktg.,*

13  *Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d 552, 660 (N.D. Cal. 2020) (quoting

14  *S. California Gas Leak Cases*, 441 P.3d 881, 887 (2019)).

15           Because the economic loss rule is part of the duty analysis, it only potentially

16  implicates claims that are based on a duty created by a defendant's affirmative

17  conduct, not a duty that was created by statute (such as FARA).  Here, Plaintiffs have

18  alleged a duty based on both the Broidy Defendants "affirmative conduct in creating a

19  risk" and based on their "statutory obligations not to make misleading statements and

20  not to violate FARA."  Compl. ¶ 128.  As such, the economic loss rule cannot be used

21

22  ───────────────

23  [7] Defendants' contention that the Complaint does not sufficiently allege negligence
    per se is irrelevant to the viability of Plaintiffs' claims.  "Negligence per se is an
    evidentiary presumption that a party failed to exercise due care[.]"  *Lobstein v.*

24  *Washington Mut. Mortg. Pass-Through Certificates WMALT Series 2007-OC1*, 2020
    WL 3964788, at *3 (C.D. Cal. June 8, 2020).  Here, Plaintiffs are not relying on a

25  presumption of negligence—they have specifically alleged that FARA created a duty

26  of care, that the Broidy Defendants breached this duty of care, and that as a result of
    this breach, Plaintiffs were harmed.  Compl. ¶¶ 128-131.  Accordingly, Plaintiffs do

27  not need to rely on a negligence per se presumption to state a negligence claim

28  against the Broidy Defendants.

as grounds to dismiss Plaintiffs' entire negligence cause of action, it can only be used to dispute a duty based on the Broidy Defendants' affirmative conduct.

Regardless, the economic loss rule does not apply here. As the court held in *JUUL*, the economic loss rule does not apply where, as here, the plaintiff has alleged that they were not "simply incidental victims," but rather were uniquely targeted by the defendant's actions. *See In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 497 F. Supp. 3d at 660-61. Moreover, the economic loss rule should not apply here because there is no contract between the parties nor is there an "issue of a specific economic tort, like interference with a contract, that could better redress the [Plaintiffs'] harm." *See id.* at 661.

### c. Intentional Conduct Does Not Bar A Negligence Claim

The Broidy Defendants' reliance on *U.S. ex rel. Knapp v. Calibre Sys., Inc.*, 2011 WL 4914711, at *4 (C.D. Cal Oct. 17, 2011) for the contention that intentional conduct cannot give rise to a negligence claim is misplaced. Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims. *Retrophin, Inc. v. Questcor Pharms., Inc.*, 41 F. Supp. 3d 906, 917 (C.D. Cal. 2014) ("[Defendant's] argument evinces a fundamental misunderstanding of the liberal pleading policy embodied in [Federal Rule of Civil Procedure 8], which requires the Court not to construe a pleading as an admission against another alternative or inconsistent pleading in the same case.") (internal quotations omitted); *see also Brousseau v. Jarrett*, 141 Cal. Rptr. 200, 203 (Cal. Ct. App. 1977) ("The first count inconsistently alleges that defendant's conduct was both intentional and negligent. . . . Such allegations, although contradictory in form, satisfactorily plead negligence in general terms and are not reached by general demurrer.") (internal quotations omitted).

### 5.  Plaintiffs Have Sufficiently Stated A Claim For Trade Libel

The Broidy Defendants contend that the Complaint fails to state a claim for trade libel[8] because it does not "identify any individual customer or transaction." Motion at 20:8-9.  Plaintiffs concede that they will ultimately be required to "prove special damages . . . in the form of specifically itemized pecuniary harm that was proximately caused by the libelous statements." *Ringcentral, Inc. v. Nextiva, Inc.*, 2021 WL 2476879, at *7 (N.D. Cal. June 17, 2021).  However, it does not follow that Plaintiffs are required to identify every customer that they lost in their Complaint.  For pleading purposes, it is sufficient that Plaintiffs allege that they lost customers as a result of the Disinformation Conspiracy.  *See, e.g.*, Compl. ¶¶ 92, 95-97, 125-26.

### 6.  GoMosafer's Incapacity To Sue Does Not Have Implications on Plaintiffs' Likelihood of Prevailing On The Claims

The Broidy Defendants' argument that GoMosafer does not have legal capacity to sue, does not impact Plaintiffs' ability to proceed and can easily be remedied. Motion at 8:16-9:8.  "Defects or errors in relation to parties do not affect subject matter jurisdiction." *The Rossdale Grp., LLC v. Walton*, 219 Cal. Rptr. 3d 605, 611 (Cal. Ct. App. 2017).  Incapacity is merely a legal disability that can be cured during the pendency of the litigation.  *Id.*  Therefore, to the extent the Court deems it appropriate, Plaintiffs will amend their Complaint to substitute GoMosafer.  *See Demetriades v. Yelp, Inc.*, 175 Cal. Rptr. 3d 131, 139 (Cal. Ct. App. 2014) ("[A] complaint may be amended to substitute a new plaintiff where it is determined the named plaintiff is not the proper party to maintain the alleged claims, so long as the amendment does not present an entirely new set of facts and the defendant is not prejudiced.").

---

[8] "To establish a cause of action for trade libel, a party must show, (1) a statement that (2) was false, (3) disparaging, (4) published to others in writing, (5) induced others not to deal with it, and (6) caused special damages." *Future Ads LLC v. Gillman*, 2013 WL 12306479, at *4 (C.D. Cal. Dec. 23, 2013).

- 20 -

**C.** **Plaintiffs Have Standing To Pursue Their Injunctive Relief Claims And Are Entitled To Such Relief Because They Have Alleged An Ongoing Irreparable Injury**

The Broidy Defendants contend that Plaintiffs lack standing to seek injunctive relief, and in any event, have not insufficiently alleged that they are entitled to any such relief. *See* Motion at 3:22-5:7, 10:12-12:7. Both of these arguments are based on a fundamental misunderstanding of the relief that Plaintiffs are seeking—Plaintiffs are only seeking injunctive relief ordering that Defendants (1) take down the illegal publications that are currently still online, and (2) stop engaging in the ongoing Disinformation Conspiracy. *See* Compl. ¶ 13 ("Through this lawsuit, the Mosafer entities seek to hold Defendants accountable for their anticompetitive, deceptive, unfair, and unlawful conduct and to permanently enjoin them from continuing to perpetuate this conduct.") (emphasis added). Given that Plaintiffs are seeking to enjoin ongoing conduct, there can be no doubt that they have standing to pursue their injunctive relief claims. *See, e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) ("Mandatory injunctions are most likely to be appropriate when the status quo ... is exactly what will inflict the irreparable injury upon complainant.") (internal quotations omitted).

Moreover, Plaintiffs have sufficiently alleged facts sufficient to plead a claim for injunctive relief under the *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010) factors. First, they have alleged both the loss of goodwill and loss of prospective customers which constitutes an irreparable injury which monetary damages cannot sufficiently compensate for. *See, e.g.*, Compl. ¶¶ 112, 120, 125; *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm."). Moreover, the continuing nature of the Disinformation Conspiracy also renders the injury irreparable because it would require Plaintiffs to bring a new lawsuit for each subsequent publication. *See, e.g.*,

1   *Broad. Music, Inc. v. Ponderosa Chophouse Enters., Inc.*, 2013 WL 12113406, at *4
2   (C.D. Cal. June 20, 2013) ("[M]onetary damages are insufficient because, absent an
3   injunction, Plaintiffs would be forced to bring repeated lawsuits against Defendants to
4   recover for ongoing infringement and expend an undue amount of resources in order
5   to enforce their rights.").

6   Second, "'[t]here is no hardship to a defendant when a permanent injunction
7   would merely require the defendant to comply with law.'" *Teddy's Red Tacos Corp.,*
8   *v. Theodoro Vazquez Solis Dba Teddy's Red Tacos et al.*, 2021 WL 4517723, at *11
9   (C.D. Cal. Aug. 16, 2021) (quoting *Deckers Outdoor Corp. v. Ozwear Connection*
10  *Pty, Ltd.*, 2014 WL 4679001, at *32 (C.D. Cal. Sept. 18, 2014). Here, Plaintiffs are
11  only requesting that the Court enter an injunction ordering the Broidy Defendants to
12  comply with the law, and thus the balance of the hardships favors an injunction.

13  Finally, ordering the Defendants to cease manipulating consumers through the
14  dissemination of disinformation will serve the public interest. *See id.* (noting that
15  preventing confusion among consumers is in the public's interest); *SATA GmbH &*
16  *Co. Kg v. Wenzhou New Century Int'l, Ltd.*, 2015 WL 6680807, at *9 (C.D. Cal. Oct.
17  19, 2015) ("The public has a right to be free from such deception and confusion.").

18  Accordingly, Plaintiffs have standing to pursue injunctive relief and have
19  sufficiently alleged that they are entitled to it.

20  **D.    Plaintiffs' Claims Are Not Barred By The Statute of Limitations**
21  The Broidy Defendants erroneously contend that Plaintiffs' claims are all
22  barred by the applicable statute of limitations because their injury occurred beginning
23  mid-2017, over four years before Plaintiffs filed this action. *See* Motion at 9:10-23.
24  "[B]ecause expiration of the limitations period is an affirmative defense, the Court
25  may only grant Defendant's Motion if it is clear from the face of the Complaint that
26  Plaintiff's claims are time-barred." *Luna Distrib. LLC v. Stoli Grp. (USA), LLC*, 2018
27  WL 5099277, at *4 (C.D. Cal. July 10, 2018). Accordingly, "'[w]hen a motion to
28  dismiss is based on the running of the statute of limitations, it can be granted only if

- 22 -

the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (citations omitted).

Here, although Plaintiffs' injuries first occurred in 2017, their claims are not barred based on (1) the Broidy Defendants' concealment of the Disinformation Conspiracy, and (2) the continuing violations and/or continuous accrual doctrine.[9]

### 1. Plaintiffs' Causes Of Action Did Not Accrue Until They Discovered The Broidy Defendants' Wrongdoing

Under the discovery rule, the statute of limitations does not begin to run until "'the plaintiff suspects or should suspect that her injury *was caused by wrongdoing* [.]'" *Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1407 (9th Cir. 1994) (citing *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 927 (1988)) (emphasis in original). "Under California law, knowledge of an injury and its cause does not necessarily imply that any wrongdoing has occurred or that anyone is to blame." *Id.* (citations omitted). Typically, whether the discovery rule applies is a factual question that cannot be decided on a motion to dismiss. *See, e.g.*, *Frere v. Medtronic, Inc.*, 2016 WL 1533524, at *11 (C.D. Cal. Apr. 6, 2016) ("The question of when accrual occurred under the delayed-discovery rule is generally 'a question of fact unless the evidence can support only one reasonable conclusion.'") (internal quotations omitted).

Similarly, courts recognize as "[a] close cousin of the discovery rule" the "accepted principle" of fraudulent concealment, whereby a "defendant's fraud in concealing a cause of action against him tolls the applicable statute of limitations, but only for that period during which the claim is undiscovered by plaintiff or until such

---

[9] These doctrines apply equally to both Plaintiffs' state law claims and Lanham Act claims. *See, e.g.*, *Webb v. Ackerman*, 2014 WL 12770071, at *3 (C.D. Cal. Oct. 9, 2014) ("[F]ederal courts must give effect to a state's tolling provisions.") (citing *Hardin v. Straub*, 490 U.S. 536, 543-44 (1989) and *TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999) ("[W]here the federal courts borrow the state statute of limitations, we also borrow the forum state's tolling rules.")).

time as plaintiff, by the exercise of reasonable diligence, should have discovered it." *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994) (internal quotation omitted); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  Thus, "a defendant may be equitably estopped from asserting the statute of limitations when, as the result of *intentional concealment*, the plaintiff is unable to discover the defendant's actual identity."  *Gianni Versace, S.p.A. v. Dardashti*, 2008 WL 11338729, at *3 (C.D. Cal. Apr. 21, 2008) (citation omitted) (emphasis in original).

Plaintiffs have alleged that the Broidy Defendants "concealed and buried" both the existence of the Disinformation Conspiracy and their involvement in it, and that as a result, Plaintiffs did not uncover the existence of the Disinformation Conspiracy until recently.  *See* Sections II.C-D *supra*.  As such, the statute of limitations should be tolled.  *See, e.g.*, *Bekins v. AstraZeneca Pharms. LP*, 739 F. App'x 884, 886 (9th Cir. 2018) (finding that allegations that plaintiff "neither knew nor had any reason to suspect that her condition was attributable" to the defendant's conduct "sufficiently pleaded her entitlement to tolling of the statute of limitations based upon California's discovery rule."); *Gianni Versace*, 2008 WL 11338729, at *5 (denying motion for summary judgment because there was a dispute of material fact whether defendant "fraudulently concealed their identity, so as to entitle Plaintiff to tolling").[10]

### 2. The Statute Of Limitations Was Tolled Under The Continuing Violation Or Continuing Accrual Doctrine

"The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all

---

[10]  *See also KLE, Inc. v. Medisca, Inc.*, 2019 WL 4261882, at *4 (C.D. Cal. June 3, 2019) ("[T]he Court concludes that the Complaint's allegations concerning Plaintiff's alleged delayed discovery . . . are sufficient to prevent the Court from concluding at this stage of the proceedings that the applicable statutes of limitations bar Plaintiff's claims."); *Williams v. Countrywide Fin. Corp.*, 2017 WL 986517, at *8 (C.D. Cal. Mar. 13, 2017) ("[T]he Court declines to find at this [motion to dismiss] stage that plaintiffs cannot avail themselves of either the discovery rule or the doctrine of fraudulent concealment.").

of them upon commission or sufferance of the last of them." *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 875 (2013). To determine whether the continuing violation doctrine applies, "[t]he key is whether the conduct complained of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts." *Pour v. Ocwen Mortg. Servicing, Inc.*, 2017 WL 10523525, at *3 (C.D. Cal. Nov. 29, 2017) (denying motion to dismiss because the complaint "plausibly pleads that they were made as part of a continuing pattern and course of conduct as opposed to unrelated discrete acts.") (internal quotations omitted).

Here, Plaintiffs have alleged that the Disinformation Campaign is an ongoing course of conduct that started in mid-2017. Compl. ¶¶ 56, 60-61, 79, 86. Accordingly, Plaintiffs have sufficiently plead that the statute of limitations was tolled under the continuing violations doctrine. *See, e.g.*, *Sampson v. Cty. of L.A.*, 2021 WL 4200043, at *5 (C.D. Cal. July 1, 2021) (denying motion to dismiss on statute of limitations based on continuing violations doctrine); *Johnson v. Chapman Univ.*, 2021 WL 3463897, at *4 (C.D. Cal. Apr. 1, 2021) (same).

At the very least, Plaintiffs' claims cannot be dismissed based on the continuous accrual doctrine. "[U]nder the theory of continuous accrual, a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." *Aryeh*, 292 P.3d at 832. This theory is based on the principle that "separate, recurring invasions of the same right can each trigger their own statute of limitations." *Id.* at 838. As such, under the continuous accrual doctrine, the Broidy Defendants remain liable for all publications made within the limitations period.

## V.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Broidy Defendants' Motion in its entirety.

1    DATED:  October 21, 2021                    LARSON LLP

2

3                                         By:  /s/ Stephen G. Larson

4                                              Stephen G. Larson
                                               Koren L. Bell
5                                              Paul A. Rigali
                                               Jonathan D. Gershon
6                                              Attorneys for Plaintiffs MOSAFER
                                               INC., MOSAFER E-COM, INC.,
7                                              and GOMOSAFER

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO BROIDY DEFENDANTS' MOTION TO STRIKE OR ALTERNATIVELY,
MOTION TO DISMISS