John Antoni, Esq., SBN 163738
ANTONI ALBUS, LLP
11836 W. Pico Boulevard
Los Angeles, California 90064
Tel.: (310) 954-8020
Facsimile: (310) 954-8988
Email: Antoni@aallp.net

Attorneys for Defendant George Nader

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MOSAFER INC.; MOSAFER E-COM, INC.; AND GOMOSAFER<br><br>Plaintiffs,<br><br>v.<br><br>ELLIOT BROIDY; GEORGE NADER; BROIDY CAPITAL MANAGEMENT, LLC; CIRCINUS, LLC; THE IRON GROUP INC. D/B/A/ IRONISTIC.COM; SCL SOCIAL LIMITED; PROJECT ASSOCIATES UK LTD; MATTHEW ATKINSON; AND JOHN DOES 1-100,<br><br>Defendants. | CASE NO.: 2:21-cv-06320-MCS-JC<br><br>**DEFENDANT GEORGE NADER'S NOTICE OF MOTION TO STRIKE (CAL. CODE OF CIV. PROC. § 425.16) OR, ALTERNATIVELY, TO DISMISS COMPLAINT (FRCP 12(b)(1) AND 12(b)(6)); MEMORDANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:       December 6, 2021<br>Time:       9:00 a.m.<br>Crtrm.:    7C<br>Before:   Hon. Mark C. Scarsi |

**TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 6, 2021 at 9:00 a.m., before the Honorable Mark C. Scarsi of the United States District Court for the Central District of California, Courtroom 7C, 350 W. 1st Street, Los Angeles, California, 90012, Defendant George Nader ("Nader") will, and hereby does, move this Court for an Order striking all claims against Nader pursuant to California Code of Civil Procedure § 425.16, or, in the alternative, dismissing this action pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) with prejudice, without leave to amend.

Nader's Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities in support thereof filed concurrently herewith, the pleadings, records, and papers on file in this action, oral argument of counsel, and on such further evidence as may properly come before the Court at the hearing on the Motion, including matters of which the Court may take judicial notice.

This Notice is given following the conference of counsel pursuant to Local Rule 7-3, which took place on October 29, 2021.

Dated:  November 1, 2021          ANTONI ALBUS, LLP

                                 By:   /s/ *John Antoni*
                                       John Antoni, Esq. (SBN 163738)
                                       11836 W. Pico Boulevard
                                       Los Angeles, CA 90064
                                       Telephone: (310) 954-8020
                                       Facsimile: (310) 954-8988
                                       Email: Antoni@aallp.net

                                 Attorneys for Defendant George Nader

DEFENDANT GEORGE NADER'S MEMORANDUM IN SUPPORT OF HIS ANTI-SLAPP MOTION TO STRIKE OR MOTION TO DISMISS

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................1

BACKGROUND ...............................................................................................2

ARGUMENT ...................................................................................................4

I.     Plaintiffs Have Not Sufficiently Pled A Civil Conspiracy. .................4

II.    The Court Should Strike The Complaint Under California's Anti-SLAPP Statute. ...............................................................................6

       A.    Plaintiffs' Claims Arise From Acts In Furtherance Of Defendants' Constitutional Right To Free Speech. ......................7

       B.    Plaintiffs Cannot Satisfy Their Burden Of Establishing A Reasonable Probability Of Prevailing On Their Claims. .............9

             1.    GoMosafer lacks the capacity to sue................................. 10

             2.    The claims against Nader are time-barred. ........................ 10

             3.    Plaintiffs have not adequately pled—and cannot establish—that Defendants knowingly made false statements about Qatar............................................................ 11

             4.    The alleged statements about Qatar are not commercial speech. ............................................................. 15

                   a)    The statements do not present a close question.... 15

                   b)    The statements are not commercial under the Bolger factors........................................................ 16

                   c)    At a minimum, the speech is "inextricably intertwined." ...................................................... 17

             5.    Plaintiffs Have Failed To State A Claim Under The Lanham Act. ........................................................... 18

             6.    Plaintiffs Have Failed To State A Claim For Trade Libel. 19

             7.    Plaintiffs Fail To State A Claim For Negligence............ 20

III.   In The Alternative, Plaintiffs' Complaint Should Be Dismissed Because It Fails To State A Claim Against Nader. ...........................21

IV.    Plaintiffs Cannot Obtain Injunctive Relief.........................................22

       A.    Plaintiffs Do Not Have Standing To Seek Injunctive Relief. ... 22

i

B.      Plaintiffs Cannot Support Their Request For A Permanent
        Injunction.   23

CONCLUSION ..........................................................................................25

DEFENDANT GEORGE NADER'S MEMORANDUM IN SUPPORT OF HIS ANTI-SLAPP
MOTION TO STRIKE OR MOTION TO DISMISS

1

## TABLE OF AUTHORITIES

2

Page(s)

3

**CASES**

4

*Acculmage Diagnostics Corp. v. Terarecon, Inc.*,
   260 F. Supp. 2d 941 (N.D. Cal. 2003)....................................................5

5

*Agency Y LLC v. DFO Glob. Performance Com Ltd.*,
6   No. CV 20-1716 JVS, 2021 WL 2791616 (C.D. Cal. Apr. 22, 2021) ..............18

7

*Am. Passage Media Corp. v. Cass Commc'ns., Inc.*,
   750 F.2d 1470 (9th Cir. 1985) ..........................................................24
8

9

*AREI II Cases*,
   157 Cal. Rptr. 3d 368 (May 29, 2013) .................................................4

10

*Ariix, LLC v. NutriSearch Corp.*,
   985 F.3d 1107 (9th Cir. 2021) ................................................ 15, 16, 17, 19
11

12

*Ascon Properties, Inc. v. Mobil Oil Co.*,
   866 F.2d 1149 (9th Cir. 1989)..........................................................22

13

*Attorney General of U.S. v. The Irish People, Inc.*,
   612 F. Supp. 647 (D.D.C. 1985)........................................................9
14

15

*Bank of Lake Tahoe v. Bank of Am.*,
   318 F.3d 914 (9th Cir. 2003)............................................................22

16

*Bolger v. Youngs Drug Prods. Corp.*,
   463 U.S. 60 (1983) ......................................................... 15, 16, 17
17

18

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ....................................................... 22, 23

19

*Coleman v. Medtronic, Inc.*,
   167 Cal. Rptr. 3d 300, 315, *as modified* (Feb. 3, 2014) ....................................20
20

21

*Comm. for a Free Namibia v. S. W. Afr. People's Org.*,
   554 F. Supp. 722 (D.D.C. 1982)........................................................20

22

Craigslist Inc. v. 3Taps Inc.,
   942 F. Supp. 2d 962 (N.D. Cal. 2013)..................................................5
23

24

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018)............................................................22

25

*Dex Media W., Inc. v. City of Seattle*,
   696 F.3d 952 (9th Cir. 2012)............................................................15
26

27

*Doe v. Gangland Prods., Inc.*,
   730 F.3d 946 (9th Cir. 2013)............................................................9

28

DEFENDANT GEORGE NADER'S MEMORANDUM IN SUPPORT OF HIS ANTI-SLAPP
MOTION TO STRIKE OR MOTION TO DISMISS

*Films of Distinction, Inc. v. Allegro Film Prods., Inc.*,
  12 F. Supp. 2d 1068 (C.D. Cal. 1998) ...................................................12

*Flatley v. Mauro*,
  139 P.3d 2 (2006) ..................................................................................9

*Future Ads LLC v. Gillman*,
  No. CV 13-905 DOC, 2013 WL 12306479 (C.D. Cal. Dec. 23, 2013) .............21

*GIA-GMI, LLC v. Michener*,
  No. C06-7949 SBA, 2007 WL 2070280 (N.D. Cal. July 16, 2007) .................14

*Gianni Versace, S.p.A. v. Dardashti*,
  No. CV 07-8204 ODW (EX), 2008 WL 11338729 (C.D. Cal.
  Apr. 21, 2008) .......................................................................................11

*Haig v. Agee*,
  453 U.S. 280 (1981) ...............................................................................20

*Hameed-Bolden v. Forever 21 Retail, Inc.*,
  No. CV-1803019, 2018 WL 6802818 (C.D. Cal. Oct. 1, 2018) .......................20

*Hanna v. Walmart Inc.*,
  5:20-cv-01075-MCS-SHK, 2020 WL 7345680 (C.D. Cal. Nov. 4, 2020) ........24

*Harmoni Int'l Spice, Inc. v. Bai*,
  No. CV-16-00614-BRO, 2016 WL 6542731 (C.D. Cal. May 24, 2016) ...........9

*Herring Networks, Inc. v. Maddow*,
  8 F.4th 1148, 2021 WL 3627126 (9th Cir. Aug. 17, 2021) ..............................7

*Hoffman v. Capital Cities/ABC, Inc.*,
  255 F.3d 1180 (9th Cir. 2001) ..................................................................15

*Homeland Housewares, LLC v. Euro-Pro Operating LLC*,
  No. CV 14-3954 DDP, 2014 WL 6892141 (C.D. Cal. Nov. 5, 2014) ..............19

*Hyundai Motor Am., Inc. v. Yahala Trading Co.*,
  No. CV 19-1413 JVS, 2020 WL 2770196 (C.D. Cal. Apr. 1, 2020) ...............25

*IMDb.com Inc. v. Becerra*,
  962 F.3d 1111 (9th Cir. 2020) ..................................................................15

In re GlenFed, Inc. Sec. Litig.,
  42 F.3d 1541 (9th Cir. 1994) ....................................................................13

*In re Outlaw Lab'y*, LLP,
  463 F. Supp. 3d 1068 (S.D. Cal. 2020).......................................................14

*Intri-Plex Techs., Inc. v. Crest Grp., Inc.*,
  499 F.3d 1048 (9th Cir. 2007) ..................................................................21

*Jarrow Formulas, Inc. v. Nutrition Now, Inc.*,
  304 F.3d 829 (9th Cir. 2002) ....................................................................10

DEFENDANT GEORGE NADER'S MEMORANDUM IN SUPPORT OF HIS ANTI-SLAPP
MOTION TO STRIKE OR MOTION TO DISMISS

*Katzkin Leather, Inc. v. Nissan N. Am., Inc.*,
    No. CV 05-971, 2005 WL 3593999 (C.D. Cal. Dec. 22, 2005) ........................17

*Lathan v. Vermillion*,
    118 F. App'x 163 (9th Cir. 2004) ....................................................................11

*Lauren Moshi, LLC v. Fuentes*,
    No. CV 18-6725 DMG, 2020 WL 2303081 (C.D. Cal. Jan. 17, 2020)..............15

*Lockary v. Kayfetz*,
    587 F. Supp. 631 (N.D. Cal. 1984) .....................................................................4

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)...........................................................................................22

*Mahnke v. Bayer Corp.*,
    No. 2:19-CV-7271 RGK, 2019 WL 8621437 (C.D. Cal. Dec. 10, 2019)..........12

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) .............................................................................7

*Manzari v. Associated Newspapers Ltd.*,
    830 F.3d 881 (9th Cir. 2016) ...............................................................................7

*Mattel, Inc. v. MCA Recs., Inc.*,
    296 F.3d 894 (9th Cir. 2002) .............................................................................18

*Meese v. Keene*,
    481 U.S. 465 (1987).................................................................................9, 20, 21

*MGIC Indem. Corp. v. Weisman*,
    803 F.2d 500 (9th Cir. 1986) .............................................................................14

*Mindys Cosms., Inc. v. Dakar*,
    611 F.3d 590 (9th Cir. 2010) ...............................................................................7

*Monsanto Co. v. Geertson Seed Farms*,
    561 U.S. 139 (2010)...........................................................................................23

*Munns v. Kerry*,
    782 F.3d 402 (9th Cir. 2015) .............................................................................23

*Nygard, Inc. v. Uusi-Kerttula*,
    159 Cal. App. 4th 1027 (2008) ............................................................................8

*PerkinElmer Health Scis., Inc. v. Excelbis Labs LLC*,
    No. 8:20-CV-527 MCS, 2021 WL 1234881 (C.D. Cal. Feb. 5, 2021) ..............12

*Peterson v. Sanghi*,
    No. 8:18CV2000, 2019 WL 1715487 (C.D. Cal. Feb. 14, 2019) .......................19

*Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*,
    946 F. Supp. 2d 957 (N.D. Cal. 2013)..................................................................8

DEFENDANT GEORGE NADER'S MEMORANDUM IN SUPPORT OF HIS ANTI-SLAPP
MOTION TO STRIKE OR MOTION TO DISMISS

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    890 F.3d 828 (9th Cir. 2018) .......................................................................10

*Shelton v. Ocwen Loan Servicing, LLC*,
    2019 WL 4747669 (S.D. Cal. Sept. 30, 2019)...........................................6

*Simoni v. Am. Media, Inc.*,
    No. CV 14-573-R, 2014 WL 12597640 (C.D. Cal. July 22, 2014)..................15

*Snyder v. Phelps*,
    562 U.S. 443 (2011)......................................................................................24

*Soliman v. Philip Morris Inc.*,
    311 F.3d 966 (9th Cir. 2002) .......................................................................11

*Swartz v. KPMG LLP*,
    476 F.3d 756 (9th Cir. 2007) .........................................................................4

*Swipe & Bite Inc. v. Chow*,
    147 F. Supp. 3d 924 (N.D. Cal. 2015) ...........................................................4

*Town of Chester, N.Y. v. Laroe Ests.*,
    137 S. Ct. 1645 (2017)..................................................................................22

*U.S. ex rel. Knapp v. Calibre Sys., Inc.*,
    No. CV 10-4466 ODW, 2011 WL 4914711 (C.D. Cal. Oct. 17, 2011)............21

*United Bhd.. of Carpenters & Joiners of Am. v. Bldg. & Const.
    Trades Dep't, AFL-CIO*,
    770 F.3d 834 (9th Cir. 2014) ...........................................................................5

*Video Software Dealers Ass'n v. Schwarzenegger*,
    556 F.3d 950 (9th Cir. 2009) .......................................................................18

*Wasco Prods., Inc. v. Southwall Techs., Inc.*,
    435 F.3d 989 (9th Cir. 2006) .........................................................................4

*Waterhouse v. Cufi Church Ass'n Inc.*,
    No. Civ. 14-144 SOM, 2014 WL 1745098 (D. Haw. Apr. 29, 2014)................6

*Wawanesa Mut. Ins. Co. v. Matlock*,
    60 Cal. App. 4th 583 (1997) ........................................................................21

*Youngblood v. CVS Pharmacy.*,
    No. 2:20-CV-6251 MCS, 2020 WL 8991698 (C.D. Cal. Oct. 15, 2020)..........24

**STATUTES**

Cal. Bus. & Prof. Code § 17208 .......................................................................10

Cal. Civ. Proc. Code § 338(a) ..........................................................................10

Cal. Civ. Proc. Code § 340(c) ..........................................................................10

Cal. Civ. Proc. Code § 425.16 .......................................................................2, 6

DEFENDANT GEORGE NADER'S MEMORANDUM IN SUPPORT OF HIS ANTI-SLAPP
MOTION TO STRIKE OR MOTION TO DISMISS

Cal. Civ. Proc. Code § 425.16(b)(1) ........................................................7

Cal. Civ. Proc. Code § 425.16(c)(1) ......................................................25

Evid Cal. Code § 669(a)(1) ...................................................................20

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) ................................................................... 11, 12, 13

Fed. R. Civ. P. 12(b)(1), (6) ...................................................................2

DEFENDANT GEORGE NADER'S MEMORANDUM IN SUPPORT OF HIS ANTI-SLAPP
MOTION TO STRIKE OR MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs' Complaint rests on a fatally flawed theory that finds no support in the law. They allege that, because they voluntarily branded their entities with the colors of the nation of Qatar and urged consumers to associate those entities with that nation, any political speech about Qatar—even when wholly unrelated to Plaintiffs' entities—amounts to commercial speech that gives rise to causes of action for false advertising or unfair competition. Carried to its logical conclusion, that theory would see courts overrun by businesses claiming incidental economic harm from American citizens' constitutionally protected speech on issues of foreign policy. A Jewish deli in New York could sue anyone criticizing Israel's bombings in Gaza simply by alleging that some of their statements were false. Or an Irish pub in Boston could sue anyone criticizing Ireland's recent decision to finally abandon its low foreign corporate tax rate. The Constitution does not permit this. American citizens are free to exercise their First Amendment right to discuss foreign policy without fear of being sued by businesses that have chosen, as a marketing strategy, to align themselves with the political and economic fortunes of a foreign country.

What's more, despite labeling Defendants' political speech as a "disinformation conspiracy, Plaintiffs claims fail here because they allege *no* facts supporting, nor could they ever hope to *prove*, that Defendants' political opinions about Qatar are false. Mosafer is a "tourism company," and Mosafer E-Com is "an affiliated e-commerce website" selling luggage and travel accessories. ECF No. 1 at ¶¶ 30, 39, 41. They are not intelligence agencies or governmental actors. They have no factual basis on which to contend, much less prove, that Qatar is *not* a supporter of terrorism, or that boycotting Qatari businesses is *not* in the national security interest of the United States.

///

1

The Complaint's lack of factual or legal merit only underscores Plaintiffs' true goal of suppressing Nader's and the other Defendants' participation in public discourse about foreign policy concerning Qatar. None of the allegedly unlawful statements contained in the Complaint are remotely commercial; none refer to Plaintiffs, their industry, or any products or services they provide. Yet Plaintiffs seek both a broad, sweeping injunction that would forever bar Nader from expressing any opinions about the actions or politics of Qatar and damages that would financially punish Nader and his co-defendants for expressing those opinions. Plaintiffs are not entitled to any of the relief they seek.

Plaintiffs' Complaint is a quintessential strategic lawsuit against public participation—an abuse of the judicial process designed to chill Nader's right to free speech—and as such should be stricken pursuant to California's anti-SLAPP statute, Cal. Civ. Proc. Code § 425.16. The claims are also legally deficient, and in the alternative should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), (6).

## BACKGROUND

Mosafer states that it is a "destination management company" that "operates retail stores" selling luggage and travel accessories. ECF No. 1 ¶ 17. Mosafer E-Com says it sells luggage online. *Id.* ¶ 18. GoMosafer purports to be the "online division of Mosafer Travel, a Qatari travel agency." ECF No. 4 at 2. All Plaintiffs say they are "synonymous with Qatar" and "intimately associated with Qatar." ECF No. 1 ¶¶ 4, 31, 63, 123.

Plaintiffs allege that they incidentally suffered lost business profits when Defendant Elliot Broidy ("Broidy") expressed his political views about Qatar. The Complaint identifies only a single statement tied to Broidy, a September 2017 newspaper advertisement stating, in part, "QATAR IS A SAFE HAVEN FOR TERRORISTS." ECF No. 1 ¶¶ 66, 89. Plaintiffs allege no facts supporting how Broidy "orchestrated" this ad, *id.* ¶ 66, and they identify no public statements attributable to Broidy's two companies, which are also named as Defendants:

2

1   Broidy Capital Management, LLC ("BCM"), and Circinus, LLC ("Circinus")

2   (along with Broidy, collectively, the "Broidy Defendants").  *See* ECF No. 1 ¶ 4.

3        Plaintiffs also identify purported "statements" allegedly made by Defendants

4   The Iron Group Inc. ("Ironistic"), SCL Social Ltd., Project Associates UK Ltd.,

5   and Matthew Atkinson (collectively, the "Non-Broidy Defendants").  *Id.* ¶ 5.

6   These purported "statements," which in reality are not statements at all, include

7   three titles of YouTube videos: "(i) 'How Qatar is destabilising the Gulf';

8   (ii) 'Why does Qatar support terrorism?'; and (iii) 'The case for boycotting

9   Qatar[.]'"  *Id.* ¶ 76.  Additionally, Ironistic allegedly accused a third-party airline

10  company of "human rights abuses," *id.* ¶ 82, and posted the following on social

11  media: "Expose Qatar's links with extremists.  Stop the flow of blood money.

12  #sanctionQatar. . . .  ISIS is just one of Qatar's many pawns.  Uncover Qatar's

13  links with extremists."  *Id.* ¶ 83.

14       These are the only purported "statements" alleged in the Complaint.

15  Plaintiffs do not identify a single public statement made by Nader.  *See generally*

16  ECF No. 1.  Instead, Plaintiffs attempt to tie Nader to Broidy and the other

17  Defendants by alleging a civil conspiracy.  *See* ECF No. 1 ¶¶ 3, 5.

18       The Complaint asserts five claims against each of the Defendants:

19  (i) violation of California's Unfair Competition Law ("UCL"); (ii) violation of

20  California's False Advertising Law ("FAL"); (iii) false advertising under the

21  Lanham Act; (iv) common law trade libel; and (v) common law negligence.

22  Plaintiffs seek a permanent injunction "prohibiting Defendants from engaging in

23  the conduct and practices alleged herein," and various damages.  ECF No. 1 ¶¶

24  105, 113, 121, 126, 131.

25  ///

26  ///

27  ///

28  ///

3

DEFENDANT GEORGE NADER'S MEMORANDUM IN SUPPORT OF HIS ANTI-SLAPP
MOTION TO STRIKE OR MOTION TO DISMISS

## ARGUMENT

**I.    Plaintiffs Have Not Sufficiently Pled A Civil Conspiracy.**

Plaintiffs' Complaint does not describe a single allegedly unlawful statement made by Nader.  But because Plaintiffs have failed to plead facts supporting a finding of an unlawful civil conspiracy, the entire Complaint against Nader fails.

Under California law, civil conspiracy is not a cause of action, but rather is "a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Swipe & Bite Inc. v. Chow*, 147 F. Supp. 3d 924, 936 (N.D. Cal. 2015).  To hold Nader liable for the acts of alleged co-conspirators, Plaintiffs' Complaint must allege "(1) the formation and operation of the conspiracy, (2) the wrongful act or acts done pursuant thereto, and (3) the damage resulting from such act or acts." *Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).  "It is not enough that the [conspirators] knew of an intended wrongful act, they must agree—expressly or tacitly—to achieve it." *AREI II Cases*, 157 Cal. Rptr. 3d 368, 382 (May 29, 2013).

It is well-settled that "bare allegations and rank conjecture do not suffice for civil conspiracy[.]" *Id.* at 382 (quotation marks and citation omitted).  Moreover, "Rule 9(b) imposes heightened pleading requirements where," as here, "the object of the [alleged]conspiracy is fraudulent." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (quotation marks omitted).  This is particularly true where First Amendment rights are involved. *See Lockary v. Kayfetz*, 587 F. Supp. 631, 639 (N.D. Cal. 1984).

Plaintiffs' civil conspiracy theory fails for several reasons. *First*, Plaintiffs only allege facts connecting Nader to Broidy alone; the Complaint contains no non-conclusory facts linking Nader to BCM, Circinus, or the Non-Broidy Defendants, or alleging any formal or informal agreement among them. *See generally* ECF No. 1.  This is insufficient.  "Bare assertions of 'agreement,' or

identifications of particular persons as 'co-conspirators[,]' will not suffice." *United Bhd.. of Carpenters & Joiners of Am. v. Bldg. & Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 842 (9th Cir. 2014) (quotation marks and citations omitted). Plaintiffs "cannot indiscriminately allege that conspiracies existed between and among all defendants," as they have tried to do here. *Acculmage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 948 (N.D. Cal. 2003). Plaintiffs have not pled Nader's liability for any torts committed by BCM, Circinus, or the Non-Broidy Defendants.

*Second*, although the Complaint alleges various agreements between Nader and Broidy, an agreement is not an unlawful conspiracy unless the parties are agreeing to do something wrongful. Pleading the formation and operation of a conspiracy requires facts showing "(i) knowledge of wrongful activity, (ii) agreement to join in the wrongful activity, and (iii) intent to aid in the wrongful activity." *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 981 (N.D. Cal. 2013). Here, Plaintiffs have not alleged that Nader and Broidy agreed to any activity that constitutes a wrong *to them*.

Plaintiffs have no valid cause of action based on the agreement alleged between Nader and Broidy. Plaintiffs have alleged that Nader and Broidy "lobbied members of the United States Government to sever all ties with anything *Qatar* and effectively boycott its economy," and "employed conventional print media, internet websites, and social media accounts to publish false and misleading information regarding the safety, stability, and nature of *Qatar and Qatari-based businesses.*" ECF No. 1 ¶¶ 7, 9 (emphasis added). None of these purported statements relates to tourism, travel accessories, or any of Plaintiffs. *See id.* ¶¶ 66, 76, 82-83. Indeed, Plaintiffs have not pled that Nader or any of the Defendants had even heard of the Plaintiffs before they filed this lawsuit. Nor are Plaintiffs even "Qatari-based businesses." Mosafer and Mosafer E-Com are both Delaware corporations with their principal places of business in New York. ECF No. 1 ¶¶

5

17-18.  Plaintiffs admit they are "not controlled by Qatar," but only "sought to gain public recognition and brand legitimacy by using Qatar's colors and invoking Qatari symbolism." ECF No. 51 at 1.

While Plaintiffs vaguely allege that Nader and Broidy "spearheaded" or "set the wheels in motion to orchestrate" a "widespread disinformation campaign," which they refer to as the "Disinformation Conspiracy," *see* ECF No. 1 ¶¶ 3, 61, Plaintiffs have not alleged any facts supporting their contention that Nader's and Broidy's various opinions about the "safety, stability, and nature of Qatar" were either false or misleading.[1]  *See generally* ECF No. 1.  And, although Plaintiffs contend that Nader's and Broidy's work violated the Foreign Agents Registration Act (FARA)—which it did not—Plaintiffs have no private right of action for violations of FARA.  *Waterhouse v. Cufi Church Ass'n Inc.*, No. Civ. 14-144 SOM, 2014 WL 1745098, at *3 (D. Haw. Apr. 29, 2014).  Therefore, Plaintiffs have not alleged that Nader and Broidy conspired to do them any harm.

Because Plaintiffs' Complaint fails to allege facts to support a finding that Nader was part of an unlawful conspiracy with Broidy or the other defendants, the Court must assess each cause of action as to Nader alone.  *See Shelton v. Ocwen Loan Servicing, LLC,* 2019 WL 4747669, at *4 (S.D. Cal. Sept. 30, 2019).  And, as the Complaint attributes no statements to Nader, the Court should dismiss all claims against him.  However, even if the Court credits Plaintiffs' conspiracy theory, Nader's motion should still be granted for the reasons discussed below.

## II.    The Court Should Strike The Complaint Under California's Anti-SLAPP Statute.

If, notwithstanding the above, the Court accepts Plaintiffs' conspiracy theory, the Court should strike the Complaint pursuant to Cal. Civ. Proc. Code § 425.16.  "California's anti-SLAPP statute provides a burden-shifting mechanism to

---

[1] *See* Section II.B.3, *infra*.

DEFENDANT GEORGE NADER'S MEMORANDUM IN SUPPORT OF HIS ANTI-SLAPP MOTION TO STRIKE OR MOTION TO DISMISS

weed out lawsuits that masquerade as ordinary lawsuits but are brought to deter citizens from exercising their political or legal rights or to punish them for doing so." *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 886-87 (9th Cir. 2016). The statute "allows a defendant to file a 'special motion to strike' a plaintiff's Complaint, and involves a two-step inquiry." *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 2021 WL 3627126, at *4 (9th Cir. Aug. 17, 2021). First, "the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech. . . . At step two, assuming that showing has been made, the burden shifts to the plaintiff to establish a reasonable probability that it will prevail on its claims." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1009 (9th Cir. 2017) (quotation marks and citations omitted).

### A.   Plaintiffs' Claims Arise From Acts In Furtherance Of Defendants' Constitutional Right To Free Speech.

For each of Plaintiffs' claims, Nader easily satisfies his initial burden of making a prima facie showing that the claim "aris[es] from" an act "in furtherance" of Defendants' right to free speech "in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1). These protected activities expressly include "any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest," as well as "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." *Id.* § 425.16(e). The anti-SLAPP statute "shall be construed broadly." *Id.* § 425.16(a).

"[T]he critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity." *Mindys Cosms., Inc. v. Dakar*, 611 F.3d 590, 597 (9th Cir. 2010) (emphasis in original). Each of Plaintiffs' five causes of action is based on purported "disinformation" (actually

7

protected speech) made, or caused to be made, by one or more Defendants. *See* ECF No. 1 ¶¶ 101(a), 108, 116, 124, 129. This undefined "disinformation" is apparently comprised of the alleged "statements" that Qatar is a safe haven for terrorists and extremists, Qatar commits human rights abuses, and Qatar should be boycotted as a result. *See id.* ¶¶ 66, 76, 82-83. These are political opinions that easily fall within the protection of the anti-SLAPP statute. Qatar's connection to terrorism is a public issue that is routinely discussed in mainstream media.[2] The Defendants' purported statements are clearly encompassed within the "catch-all" provision of § 425.16(e)(4).

The statements are also protected because they were made in a public forum. *See* § 425.16(e)(3). Plaintiffs allege that the Broidy Defendants used "print media, internet websites, and social media accounts" to publish the purported statements. *See* ECF No. 1 ¶ 7. Newspapers, magazines, websites, and free online message boards and forums that are accessible to the public are all public fora within the meaning of § 425.16(e)(3). *See Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 975 (N.D. Cal. 2013); *Nygard, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1037 (2008).

In addition, the statements at issue address topics, including Qatar's terrorism ties, a potential boycott, and human rights abuses, that are protected by the anti-SLAPP statute as a matter of law. *See* ECF No. 44 at 7-8 (collecting cases).

In their opposition to the Broidy Defendants' Anti-SLAPP Motion, Plaintiffs contend that Defendants' speech was illegal as a matter of law because they failed to register under FARA, and thus that California's anti-SLAPP law does not apply.

---

[2] *See, e.g.*, *Lawsuits by U.S. victims accuse top Qatar banks and charity of financing terrorism in Israel*, THE WASHINGTON POST (Dec. 15, 2020); Op-Ed: *Qatar is a financier of terrorism. Why does the U.S. tolerate it?*, LOS ANGELES TIMES (June 9, 2017); *Trump Takes Credit for Saudi Move Against Qatar, a U.S. Military Partner*, THE NEW YORK TIMES (June 6, 2017).

DEFENDANT GEORGE NADER'S MEMORANDUM IN SUPPORT OF HIS ANTI-SLAPP
MOTION TO STRIKE OR MOTION TO DISMISS

ECF No. 51 at 7.  Plaintiffs are incorrect.  FARA criminalizes only the failure to register, not the speech itself.

The Supreme Court has made clear that FARA "places no burden on protected expression." *Meese v. Keene*, 481 U.S. 465, 480 (1987) ("Congress did not prohibit, edit, or restrain the distribution of advocacy materials in an ostensible effort to protect the public from conversion, confusion, or deceit."); *see also Attorney General of U.S. v. The Irish People, Inc.*, 612 F. Supp. 647, 654 (D.D.C. 1985) ("registration under FARA does not prevent the exercise of constitutional rights").  The purpose of FARA is not to prevent any speech, but simply to provide information to the American public so that people "may appraise their statements and actions in the light of [the speaker's] associations and activities." *Keene*, 481 U.S. at 480; *see also* ECF No. 1 ¶ 51.  Even if that context is missing, the failure to register under FARA does not *ipso facto* transform legal speech into illegal speech.

The cases upon which Plaintiffs rely are inapposite because they concern extortion—a criminal offense based on the illegal *content* of the speech, rather than the status of the speaker.  *See* ECF No. 51 at 7 (citing *Flatley v. Mauro*, 139 P.3d 2 (2006); *Harmoni Int'l Spice, Inc. v. Bai*, No. CV-16-00614-BRO, 2016 WL 6542731 (C.D. Cal. May 24, 2016)).  Notably, Plaintiffs have cited no case holding that the illegal speech exemption in anti-SLAPP statutes applies to the kind of speech at issue here—the expression of constitutionally protected political opinions on issues of great public interest—based on the failure to register under FARA.  Therefore, Nader has satisfied his initial burden.

**B.     Plaintiffs Cannot Satisfy Their Burden Of Establishing A Reasonable Probability Of Prevailing On Their Claims.**

Plaintiffs cannot meet their burden under the second step of the anti-SLAPP inquiry.  "Under the anti-SLAPP statute, if the plaintiff cannot show a probability of prevailing on a claim, the claim is stricken." *Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 953 (9th Cir. 2013).  Here, Nader challenges the legal sufficiency of

9

Plaintiffs' claims, so the Court "should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

### 1.   *GoMosafer lacks the capacity to sue.*

For all the reasons stated in Broidy's motion to strike or dismiss the Complaint, GoMosafer lacks the legal capacity to sue; accordingly, the Court should dismiss it from the case. *See* ECF No. 44 at 8-9. Plaintiffs appear to agree: In response to Broidy's motion, Plaintiffs represented that, "to the extent the Court deems it appropriate, Plaintiffs will amend their Complaint to substitute GoMosafer." ECF No. 51 at 20.

### 2.   *The claims against Nader are time-barred.*

By Plaintiffs' own admission, on the face of their Complaint, they suffered harm by "mid-2017," ECF No. 1 ¶ 91, and as early as February 2017, *see id.* ¶ 78. That is more than four years before they filed their Complaint, in August 2021, which renders each of their claims time-barred. *See* Cal. Bus. & Prof. Code § 17208 (four-year limitations period for UCL claims); Cal. Civ. Proc. Code § 338(a) (three-year limitations period for FAL claims); *id.* & § 388(d) (both prescribing three-year limitations periods, which leave Plaintiffs' Lanham Act claim presumptively barred, *see Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 837-38 (9th Cir. 2002)); Cal. Civ. Proc. Code § 340(c) (one-year limitations period for trade libel and negligence where, as here, those claims based in alleged defamation).

Nor may Plaintiffs resurrect any of their claims by asserting that they sustained some of their damages more recently. Under California law, the statute of limitations begins to run as soon as the plaintiff sustains any injury:

> [W]here an injury, although slight, is sustained in consequence of the wrongful act of another, and the law affords a remedy therefor, the statute of

limitations attaches at once.  It is not material that all the damages resulting from the act shall have been sustained at that time, and the running of the statute is not postponed by the fact that the actual or substantial damages do not occur until a later date.

*Soliman v. Philip Morris Inc.*, 311 F.3d 966, 972 (9th Cir. 2002) (quotation marks omitted).  This is true "even [where] the plaintiff is ignorant of his cause of action or of the identity of the wrongdoer."  *Gianni Versace, S.p.A. v. Dardashti*, No. CV 07-8204 ODW (EX), 2008 WL 11338729, at *2 (C.D. Cal. Apr. 21, 2008); *see also, e.g.*, *Lathan v. Vermillion*, 118 F. App'x 163, 165 (9th Cir. 2004) ("We found no California authority holding that an applicable statute of limitations is tolled unless both the cause of action and the identity of a wrongdoer have been discovered.").

Accordingly, the Court should dismiss each of Plaintiffs' claims as untimely.

### 3.    *Plaintiffs have not adequately pled—and cannot establish— that Defendants knowingly made false statements about Qatar.*

The Complaint must be dismissed as to Nader for failing to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  As to each of its claims, the Complaint alleges that Nader "knowingly and intentionally spread disinformation" on three topics—that "(1) Qatar and Qatari businesses were unstable and untrustworthy; (2) the political state of Qatar was extremely unstable, rendering travel to and through Qatar unsafe; and (3) boycotting Qatar businesses was necessary to counteract their terrorism funding activities."  ECF No. 1 ¶¶ 101(a), 108, 116, 124, 129.  Rule 9(b)'s heightened pleading standard therefore applies to all five claims, including the claim for negligence, as it is based on negligent misrepresentation.  *See* ECF No. 44 at 15-16 (collecting cases); *see also* ECF No. 1 ¶ 129 (alleging defendants acted "knowingly and intentionally").

For a host of reasons, Plaintiffs fail to meet that heightened standard as to Nader.  First, while the Complaint accuses Nader of many things, it identifies *no*

11

allegedly false statements made by him; it attributes such statements only to others. *Contrast* ECF No. 1 ¶¶ 58-65 (high-level accusations about Nader) *with id.* ¶ 66 (attributing allegedly false statements in newspaper ad to "Broidy").  But "Fed. R. Civ. P. 9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations[.]" *PerkinElmer Health Scis., Inc. v. Excelbis Labs LLC*, No. 8:20-CV-527 MCS, 2021 WL 1234881, at *2 (C.D. Cal. Feb. 5, 2021) (quotation marks, brackets, and ellipsis omitted).  As to Nader, the Complaint only alleges generically that he engaged in "disinformation," *see generally* ECF No. 1, which is insufficient as a matter of law. *See, e.g.*, *Mahnke v. Bayer Corp.*, No. 2:19-CV-7271 RGK, 2019 WL 8621437, at *8 (C.D. Cal. Dec. 10, 2019) (dismissing claims based on "misinformation" under Rule 9(b)); *Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998) (dismissing claim that "improperly relies on the overall message" rather than any specific statement).

But that is only the beginning of the Complaint's failings as to Nader.  As to two of the three categories of "disinformation" Plaintiffs repeat throughout the Complaint—that "Qatar and Qatari businesses were unstable and untrustworthy" and that "the political state of Qatar was extremely unstable"—the Complaint alleges *no supporting facts at all* as to *any* Defendant.  All of its supporting facts instead concern the third—that boycotting Qatari businesses "was necessary to counteract their terrorism-funding activities."[3]  And as to that one, the Complaint alleges *not a single fact supporting the allegation that statements about Qatar funding terrorism were in fact false.*  It alleges the falsity of those statements in purely conclusory fashion, which fails under any pleading standard, let alone the

---

[3] Even there, the Complaint does not actually identify statements suggesting that boycotting Qatari businesses was a necessary response to its terrorism-funding activities; it alleges only that Qatar was falsely accused of facilitating terrorism, without identifying any statements about the need to therefore boycott Qatari businesses.

DEFENDANT GEORGE NADER'S MEMORANDUM IN SUPPORT OF HIS ANTI-SLAPP
MOTION TO STRIKE OR MOTION TO DISMISS

heightened standard required by Rule 9(b).  *In re GlenFed, Inc. Sec. Litig.,* 42 F.3d 1541, 1553 (9th Cir. 1994) (complaint that omits allegations explaining how statements were false when made fails to meet FRCP 9(b)'s particularity requirement).

That failure is no coincidence; the public record is replete with authoritative statements of Qatar's support of terrorism.  The State Department has reported that "entities and individuals within Qatar continue to serve as a source of financial support for terrorist and violent extremist groups."[4]  The Department of Treasury likewise has sanctioned numerous individuals residing in Qatar for raising funds for Al Qaeda.[5]  Jake Sullivan, the present National Security Advisor, stated in 2017, that, "we are not placing a high enough priority on the national security threats to the United States that is [sic] emanating from the financing of terror groups by Qatar and other countries.  And we have to be doing more on that."[6] *The New York Times* similarly has reported on Qatar's support of Al Qaeda and ISIS affiliates in Syria, known as the Nusrah Front and Daesh.[7]  And the *Times of Israel* has reported that Qatar has permitted Hamas leaders to operate freely within its borders and provided Hamas substantial funding.[8]  The Complaint itself indirectly acknowledges this public record when it alleges that "the UAE attacked Qatar" in June 2017 by "severing all diplomatic ties with Qatar" and "closing off

---

[4] *See* https://2009-2017.state.gov/documents/organization/258249.pdf.

[5] *See* https://www.treasury.gov/press-center/press-releases/Pages/jl0143.aspx.

[6] https://s3.us-east-2.amazonaws.com/defenddemocracy/uploads/documents/Qatar_transcript_FInal.pdf

[7] https://www.nytimes.com/2014/09/08/world/middleeast/qatars-support-of-extremists-alienatesallies-near-and-far.html?

[8] https://www.timesofisrael.com/liveblog_entry/hamas-leader-addresses-qatar-rally-amid-gazafighting-vows-to-ramp-up-attacks/

13

its airspace and territorial waters to Qatari vessels." ECF No. 1 ¶45. Those actions were reportedly taken by *five different nations*—not just the UAE—precisely because of Qatar's "close ties to Iran and a wide selection of Islamist movements."[9] The Court may take judicial notice of all of these public statements. *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).

Especially in light of the public record, the Complaint's failure to plead *any* facts supporting the claim that statements about Qatar funding terrorism are false is fatal to its claims.[10] Further, these statements illustrate the implausibility that Nader made any such statements *knowing* they were false. *GIA-GMI, LLC v. Michener*, No. C06-7949 SBA, 2007 WL 2070280, at *9 (N.D. Cal. July 16, 2007) ("Plaintiff's failure to allege any facts showing knowing falsity renders all of its fraud claims defective."). Plaintiffs' claims will require them to prove that Nader knew more about these issues than the State Department, the Treasury Department, and the current National Security Adviser. The Complaint offers *nothing* suggesting that this highly unlikely scenario is plausible.

---

[9] Anne Barnard & David D. Kirkpatrick, *5 Arab Nations Move to Isolate Qatar, Putting the U.S. in a Bind*, N.Y. Times (June 5, 2017), https://www.nytimes.com/2017/06/05/world/middleeast/qatar-saudi-arabia-egypt-bahrain-united-arab-emirates.html.

[10] Plaintiffs' claims in Counts 1 and 2 also fail because Plaintiffs fail to allege their own reliance on any purportedly false statements by Nader. Although "[n]o California courts have explicitly considered whether third party reliance is sufficient to sustain a false advertising claim between competitors, . . . [a]mong the federal courts to have considered the issue, the 'majority approach' has been to require that the plaintiff plead its own reliance." *In re Outlaw Lab'y*, LLP, 463 F. Supp. 3d 1068, 1085-86 (S.D. Cal. 2020) (dismissing FAL claim based on harm to plaintiff from third-party's reliance on defendant's false statements). Plaintiff's allegations that third parties relied on Nader's purported misrepresentations are therefore insufficient as a matter of law.

14

### 4.   *The alleged statements about Qatar are not commercial speech.*

Plaintiffs also have no reasonable probability of success on Counts 1, 2, and 3 because the alleged "disinformation" that forms the basis for those claims is not commercial speech.  California's consumer protection laws and the Lanham Act apply to commercial speech only.  *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1120 n.9 (9th Cir. 2021); *Simoni v. Am. Media, Inc.*, No. CV 14-573-R, 2014 WL 12597640, at *2 (C.D. Cal. July 22, 2014).  "[T]he core notion of commercial speech is that it does no more than propose a commercial transaction."  *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2001) (quotation marks omitted).  No reasonable factfinder could conclude that statements to the effect that Qatar is a safe haven for terrorists and extremists, it commits human rights abuses, and it should be boycotted as a result, *see* ECF No. 1 ¶¶ 66, 76, 82-83, are commercial advertising.

Where, unlike here, there is a "close question" as to whether speech is commercial, courts go on to analyze the statements under the three so-called *Bolger*[11] factors: "(i) their advertising format, (ii) their reference to a specific product, and (iii) the underlying economic motive of the speaker."  *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 958 (9th Cir. 2012).  If the *Bolger* factors weigh in favor of commercial speech, the court then asks whether the commercial speech is "inextricably intertwined" with noncommercial speech; if so, it receives full First Amendment protection.  *See Lauren Moshi, LLC v. Fuentes*, No. CV 18-6725 DMG, 2020 WL 2303081, at *2 (C.D. Cal. Jan. 17, 2020).

a)   The statements do not present a close question.

This Court need not consider the *Bolger* factors.  *See IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020) ("Because IMDb's public profiles do

---

[11] *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983).

not 'propose a commercial transaction,' we need not reach the *Bolger* factors."). The speech at issue in this case has nothing to do with any commercial transaction; it is not a close question.

Plaintiffs have conceded, as they must, that the statements in the Complaint allegedly comprising the "disinformation" "do not appear to propose a commercial transaction." ECF No. 51 at 12. Indeed, the alleged statements make no mention of any product or service whatsoever. *See* ECF No. 1 ¶¶ 66, 76, 82-83. The *Bolger* analysis is only required where courts need assistance giving effect to "a common-sense distinction between commercial speech and other varieties of speech." *Ariix*, 985 F.3d at 1115. In this case, unaided common sense compels the conclusion that the alleged "disinformation" that is the subject of Plaintiffs' Complaint is political, rather than commercial.

> b) <u>The statements are not commercial under the *Bolger* factors.</u>

Even if the Court conducts a *Bolger* analysis, Plaintiffs' claims fail.

*First*, the supposed statements are not in advertising format, which Plaintiffs concede. *See* ECF No. 51 at 12 ("the statement here were not in the traditional form of an advertisement").

*Second*, none of the alleged "disinformation" statements mentioned any of the Plaintiffs—let alone their specific travel booking services or products. *See id.* ¶¶ 66, 76, 82-83. Nor did the alleged statements promote products or services offered by the Broidy Defendants, who are involved in the investment and government contracts industries, or Nader, who is a journalist and political consultant. *See id.* The alleged statements directly criticize the nation of Qatar itself, and no court ever has held that a statement about the country with which a company was "intimately associated . . . in the eyes of the consumer," ECF No. 51 at 13, satisfies the second *Bolger* factor. To the contrary, such attenuated statements are not the type of "references to a specific product or service" that

16

1    courts require.  *Katzkin Leather, Inc. v. Nissan N. Am., Inc.*, No. CV 05-971, 2005

2    WL 3593999, at *5 (C.D. Cal. Dec. 22, 2005).

3          *Third*, the crux of the final *Bolger* factor is "whether the speaker had an

4    adequate economic motivation so that the economic benefit was the *primary*

5    *purpose* for speaking." *Ariix*, 985 F.3d at 1117 (emphasis added).  Although

6    Plaintiffs allege that Nader made certain payments to Broidy and BCM, "as part of

7    an effort to persuade the U.S. to take a hard line against Qatar," ECF No. 1 ¶ 59,

8    Plaintiffs allege no facts supporting their contention that Defendants were

9    *primarily* motivated by economic self-interest rather than legitimate concerns

10   about Qatar's ties to Islamic extremism and the associated threats to American

11   national security and stability in the Middle East.  *See generally* ECF No. 1.

12   Rather, the Plaintiffs ask the Court to make expansive inferences about the reasons

13   for each of those payments.  But there are no factual allegations to nudge those

14   inferences across the line from conceivable to plausible.  *See generally id.*  Thus,

15   the Court cannot infer that Nader or the Broidy Defendants "acted *primarily* out of

16   economic motivation" in supposedly publishing the statements.  *Ariix*, 985 F.3d at

17   1116 (emphasis in original).

18         In short, the *Bolger* factors indicate that the alleged "disinformation"

19   statements in the Complaint are not commercial speech, and thus are not subject to

20   the state and federal unfair competition and false advertising statutes.

21                  c)    At a minimum, the speech is "inextricably intertwined."

22         Even if the Broidy Defendants actually made statements about Qatar in part

23   for a commercial purpose, and even if Nader could be held responsible for those

24   statements, those statements nevertheless *also* constitute political speech about a

25   hot-button issue of foreign policy, as the Plaintiffs themselves allege.  *See* ECF No.

26   1 ¶¶ 3, 59.  As the Ninth Circuit has explained, full First Amendment protection

27   applies "if the commercial speech is inextricably intertwined with otherwise fully-

28   protected speech, *e.g.*, political speech." *Video Software Dealers Ass'n v.*

DEFENDANT GEORGE NADER'S MEMORANDUM IN SUPPORT OF HIS ANTI-SLAPP
MOTION TO STRIKE OR MOTION TO DISMISS

*Schwarzenegger*, 556 F.3d 950, 966 n.19 (9th Cir. 2009).  At most, therefore, the statements identified in the Complaint represent intertwined speech deserving of the highest protection.  *See Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 906 (9th Cir. 2002).  Because the alleged statements do not amount to commercial speech, Counts 1-3 fail as a matter of law.

### 5.    Plaintiffs Have Failed To State A Claim Under The Lanham Act.

For still additional reasons, Plaintiffs have no reasonable probability of succeeding on their Lanham Act claim in Count 3.  The Lanham Act "prohibits a person from misrepresenting the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities in commercial advertising or promotion."  *Agency Y LLC v. DFO Glob. Performance Com Ltd.*, No. CV 20-1716 JVS, 2021 WL 2791616, at \*7 (C.D. Cal. Apr. 22, 2021).  A false advertising claim under the Lanham Act requires, among other things, a showing that: (1) the defendant made a false statement either about the plaintiff's or its own product; [and] (2) the statement was made in commercial advertisement or promotion[.]"  *Id.*  This claim fails for at least three reasons.

*First*, none of the purported statements identified in the Complaint mention, or is about, any product or service.  *See id.* ¶¶ 66, 76, 82-83.  The statements listed in the Complaint are all about the nation of Qatar, which is neither a product nor a service.  The Plaintiffs would have this Court stretch the Lanham Act to encompass *any* statements about a foreign country, so long as a private company that employs a "deliberate attempt and marketing strategy to make themselves synonymous with" said country claims economic harm.  *See* ECF No. 51 at 12.  No court has ever construed the Lanham Act so broadly, and this Court should not be the first to do so.

///

///

DEFENDANT GEORGE NADER'S MEMORANDUM IN SUPPORT OF HIS ANTI-SLAPP
MOTION TO STRIKE OR MOTION TO DISMISS

*Second*, as discussed in Section II.B.3, *supra*, Plaintiffs have not pleaded facts showing that any of the purported "disinformation" statements about Qatar are false.

*Third*, although the Lanham Act does not define "advertising" or "promotion," the Ninth Circuit has construed these terms as: "(1) commercial speech, (2) by a defendant who is in commercial competition with plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or services, and (4) that is sufficiently disseminated to the relevant purchasing public." *Ariix*, 985 F.3d at 1115.  For the reasons discussed in Section II.B.4, *supra*, none of the alleged "disinformation" constitutes commercial speech.  Additionally, none of Defendants sells travel accessories or books travel for customers in "commercial competition" with the Plaintiffs.  And, finally, the alleged "disinformation" was not for the purpose of influencing any consumer to buy goods or utilize services offered by any Defendant.  Thus, the Lanham Act claim fails.

## 6. Plaintiffs Have Failed To State A Claim For Trade Libel.

Plaintiffs' claim for trade libel fares no better.  The Broidy Defendants recently moved to dismiss this claim, citing law establishing that Plaintiffs must plead "special damages," pursuant to the heightened pleading standard of Federal Rule of Civil Procedure 9(g), to survive a motion to dismiss, including pleading both "particular purchasers who have refrained from dealing with them" and "specif[ic]" "transactions of which they claim to have been deprived." *Peterson v. Sanghi*, No. 8:18CV2000, 2019 WL 1715487, at *9 (C.D. Cal. Feb. 14, 2019) (quotation marks and brackets omitted); *see generally* ECF No. 44 at 19-20.  In response, Plaintiffs offered only the bare assertion, with no citation to authority, that "it is sufficient that Plaintiffs allege that they lost customers" generally.  ECF No. 51 at 20.  The law is to the contrary.  *See, e.g.*, *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV 14-3954 DDP, 2014 WL 6892141, at *4 (C.D. Cal. Nov. 5, 2014) ("Plaintiffs did not set forth any factual allegations other than

19

that Plaintiffs lost sales, market share, and customer goodwill.  This conclusory statement is not sufficient to properly plead special damages for trade libel under California law.").

### 7. Plaintiffs Fail To State A Claim For Negligence.

Besides its failure to identify any actual misrepresentations by Nader, *see* Section I, *supra*, the Complaint fails to state a claim for negligence against him for other reasons as well.  Plaintiffs' primary claim is that the duty of care Nader allegedly violated is supplied by FARA.  ECF No. 1 ¶129.  That is a claim of negligence *per se*, yet the Complaint fails to allege any of the prerequisites for such a claim under California law.  *See* Evid Cal.. Code § 669(a)(1) (requiring allegation that violation of statutory duty of care resulted in "death or injury to person or property").  Negligence *per se* furthermore lies only when a plaintiff is a member of a discrete class of persons for whose protection a statute was enacted. *Id.* § 669(a)(4); *Coleman v. Medtronic, Inc.*, 167 Cal. Rptr. 3d 300, 315, *as modified* (Feb. 3, 2014).  But FARA "provides a general benefit to the public rather than any special category of persons . . . ." *Comm. for a Free Namibia v. S. W. Afr. People's Org.*, 554 F. Supp. 722, 725 (D.D.C. 1982) (finding no implied private right of action under FARA).  Recognizing—for the first time—a duty of care under FARA would do an end-run around the lack of any express or implied right of action under FARA, a move especially inappropriate given that FARA was enacted "[t]o protect the national defense, internal security, and foreign relations of the United States." *Keene*, 481 U.S. at 469; *see also Haig v. Agee*, 453 U.S. 280, 292 (1981) ("Matters intimately related to . . . national security are rarely proper subjects for judicial intervention.").  That is especially true here, where the alleged losses are purely economic—yet another fact that counsels against finding any kind of tort duty of care. *Hameed-Bolden v. Forever 21 Retail, Inc.,* No. CV-1803019, 2018 WL 6802818, at *4 (C.D. Cal. Oct. 1, 2018) (no duty to prevent "purely economic losses" absent "personal injury," "physical damage to property," or "a

20

special relationship existing between the parties"). Nor is economic harm to third parties "the *kind of harm*," *Wawanesa Mut. Ins. Co. v. Matlock*, 60 Cal. App. 4th 583, 586-87 (1997) (emphasis in original), that FARA was designed to prevent. *Keene*, 481 U.S. at 469 (FARA enacted to ensure "the Government and the people of the United States may be informed of the identity of such persons and may appraise their statements and actions"). The Complaint recognizes as much. ECF No. 1 ¶ 51 (FARA seeks "to give the American people the ability to fully evaluate political communications").

Plaintiffs further fail to allege how registration under FARA would have prevented individuals from being influenced by the purported misrepresentations they allege. They also fail to allege how Nader may have *unintentionally*, but *negligently*, made any particular false statement. *U.S. ex rel. Knapp v. Calibre Sys., Inc.*, No. CV 10-4466 ODW, 2011 WL 4914711, at *4 (C.D. Cal. Oct. 17, 2011) ("inherently intentional conduct cannot support a claim of negligence"). For all of these reasons, the negligence claim fails.

## III. In The Alternative, Plaintiffs' Complaint Should Be Dismissed Because It Fails To State A Claim Against Nader.

If the Court were to decline to strike any of Plaintiffs' claims under the anti-SLAPP statute, it should dismiss them under Rule 12(b)(6) for the reasons discussed above. *See Future Ads LLC v. Gillman*, No. CV 13-905 DOC, 2013 WL 12306479, at *2 (C.D. Cal. Dec. 23, 2013) ("Defendants often move to strike under the anti-SLAPP statute [and] mov[e] to dismiss.").

The Court's dismissal should be without leave to amend because "the Complaint could not be saved by any amendment." *Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048 (9th Cir. 2007). Defendants' political speech and advocacy about foreign policy relating to Qatar cannot possibly support any tort claim by Plaintiffs. Leave to amend "need not be granted where the amendment of

///

21

1    the Complaint . . . constitutes an exercise in futility[.]" *Ascon Properties, Inc. v.*

2    *Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989).

3    **IV.   Plaintiffs Cannot Obtain Injunctive Relief.**

4         Even if the Complaint is not dismissed outright, for at least the two reasons

5    developed below, Plaintiffs are not eligible for injunctive relief.  *See* ECF No. 1 ¶¶

6    105, 113, 121.  Accordingly, the Court should dismiss the Complaint insofar as it

7    seeks that remedy.

8         **A.   Plaintiffs Do Not Have Standing To Seek Injunctive Relief.**

9         Plaintiffs face no impending injury and thus lack standing to petition this

10   Court for injunctive relief.  This is particularly so as to Nader, who currently is

11   incarcerated—he poses no imminent threat to Plaintiffs.

12        Standing is a constitutional prerequisite; without it, this Court lacks

13   jurisdiction.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559-61 (1992).  Standing

14   must be established "separately for each form of relief requested."  *Town of*

15   *Chester, N.Y. v. Laroe Ests.*, 137 S. Ct. 1645, 1650-51 (2017) (quotation marks

16   omitted).

17        To establish standing for injunctive relief, Plaintiffs must "demonstrate a

18   reasonable likelihood of future injury."  *Bank of Lake Tahoe v. Bank of Am.*, 318

19   F.3d 914, 918 (9th Cir. 2003).  That future injury must be "imminent" and not

20   "conjectural or hypothetical."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956,

21   967 (9th Cir. 2018).  And allegedly likely future injuries that connect to a

22   defendant's allegedly likely future actions only via additional speculation about the

23   potential behavior of third-party intermediaries—*e.g.*, consumers of "high-end"

24   travel services, ECF No. 1 ¶¶ 17, 18, 39, 101—are particularly insufficient to

25   establish standing.  *See, e.g.*, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414

26   (2013) ("We decline to abandon our usual reluctance to endorse standing theories

27   that rest on speculation about the decisions of independent actors.").

28   ///

DEFENDANT GEORGE NADER'S MEMORANDUM IN SUPPORT OF HIS ANTI-SLAPP
MOTION TO STRIKE OR MOTION TO DISMISS

Here, Plaintiffs have alleged *no* future statement that Nader intends to make, nor any further concrete harm that he is likely to cause them.  Rather, Plaintiffs allege, at best, only past statements and acts.  *See, e.g.*, ECF No. 1 ¶ 58 (alleging that Nader participated in certain political advocacy).  As to Nader, Plaintiffs even affirmatively establish, by alleging his "incarcerat[ion]," that there exists no ongoing threat or risk of harm whatsoever.  ECF No. 1 ¶ 24.  Finally, even if Plaintiffs had made allegations of supposed future actions and harms, those allegations would depend entirely, and impermissibly, *see, e.g.*, *Clapper*, 568 U.S. at 414, on speculation about the future behavior of third-party consumers.

Plaintiffs' defective pleading is fatal to their effort to obtain injunctive relief.  *See, e.g.*, *Munns v. Kerry*, 782 F.3d 402, 411-12 (9th Cir. 2015) ("Despite being harmed in the past, the [plaintiffs] must still show that the threat of injury in the future is 'certainly impending' or that it presents a 'substantial risk' of recurrence for the court to hear their claim for prospective relief.") (quoting *Clapper*, 568 U.S. at 414 n.5).

## B.     Plaintiffs Cannot Support Their Request For A Permanent Injunction.

Even if Plaintiffs could demonstrate standing, the Court nonetheless should dismiss their claims insofar as they seek injunctive relief because Plaintiffs cannot satisfy the standard for such relief.

As the Supreme Court has explained: "[A] plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction."  *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010).  Here, Plaintiffs fail on each

1 prong.

2   *First*, Plaintiffs have not alleged an "irreparable injury." By their own

3 admission, Plaintiffs' alleged injury here is one of lost revenue. *See* ECF No. 1 ¶¶

4 4, 97 ("revenue declined precipitously"). That is the textbook example of an

5 alleged harm that fails the irreparable injury standard. *See, e.g.*, *Am. Passage*

6 *Media Corp. v. Cass Commc'ns., Inc.*, 750 F.2d 1470, 1473-74 (9th Cir. 1985).

7   *Second*, legal remedies (e.g., money damages) are certainly sufficient to

8 compensate for the alleged harm here. Plaintiffs' fundamental grievance is that a

9 set of travel entities lost business—i.e., lost money. *See e.g.*, ECF No. 1 ¶¶ 4, 97.

10 Money damages can adequately compensate Plaintiffs for that alleged harm. *See,*

11 *e.g.*, *Hanna v. Walmart Inc.*, 5:20-cv-01075-MCS-SHK, 2020 WL 7345680, *6

12 (C.D. Cal. Nov. 4, 2020) (dismissing UCL claim where plaintiff alleged economic

13 loss but did "not explain why no adequate remedy at law exists for that injury").

14   *Third*, Plaintiffs have not adequately alleged that the balance of the

15 hardships favors them. Injunctive relief here would amount to a prior restraint on

16 political speech. *See* ECF No. 1 ¶¶ 105, 113, 121 (seeking injunctive relief

17 "prohibiting Defendants from engaging in the conduct and practices alleged

18 herein"—i.e., alleged communications disparaging Qatar). That is an

19 extraordinary demand, one implicating core First Amendment principles. *See, e.g.*,

20 *Snyder v. Phelps*, 562 U.S. 443, 452 (2011) ("[S]peech on public issues occupies

21 the highest rung of the hierarchy of First Amendment values, and is entitled to

22 special protection.") (quotation marks omitted); *see also, e.g.*, *Youngblood v. CVS*

23 *Pharmacy.*, No. 2:20-CV-6251 MCS, 2020 WL 8991698, *6 (C.D. Cal. Oct. 15,

24 2020) (dismissing UCL and FAL claims seeking injunctive relief where requested

25 relief "fatally vague"). In comparison, any harm imaginable to Plaintiffs—

26 purveyors of "high end" travel services, ECF No. 1 ¶¶ 17, 18, 39, 101—from any

27 statements that Nader might attempt (from prison, *id.* ¶ 24) regarding the

28 geopolitics of the Middle East pales to such a degree as to be indiscernible.

And *fourth*, as to the public interest, again Plaintiffs have not alleged facts establishing that the public interest favors injunctive relief.  Rather, for the reasons addressed regarding the third factor, and particularly in light of the importance of spirited political debate in our democracy, the public interest weighs strongly against Plaintiffs' proposed injunction.

## CONCLUSION

For the reasons discussed, the Court should strike Plaintiffs' complaint and award the Nader fees and costs under Cal. Civ. Proc. Code § 425.16(c)(1).[12] Alternatively, the Court should dismiss the Complaint for lack of standing and failure to state a claim upon which relief can be granted.

November 1, 2021                          Respectfully submitted,


                                          ANTONI ALBUS, LLP

                              By:    /s/ John Antoni
                                     John Antoni, Esq. (SBN 163738)
                                     11836 W. Pico Boulevard
                                     Los Angeles, CA 90064
                                     Telephone: (310) 954-8020
                                     Facsimile: (310) 954-8988
                                     Email: Antoni@aallp.net

                                     Attorneys for Defendant George Nader

---

[12] In accord with established practice, Nader will file a separate motion for fees and costs if the Court grants the motion to strike. *See, e.g., Hyundai Motor Am., Inc. v. Yahala Trading Co.*, No. CV 19-1413 JVS, 2020 WL 2770196 (C.D. Cal. Apr. 1, 2020).

## CERTIFICATE OF SERVICE

I certify that, on November 1, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

/s/ *John Antoni*