1  Stephen G. Larson (SBN 145225)
   *slarson@ larsonllp.com*
2  Koren L. Bell (SBN 216684)
   *kbell@larsonllp.com*
3  Paul A. Rigali (SBN 262948)
   *prigali@larsonllp.com*
4  Jonathan D. Gershon (SBN 306979)
   jgershon@larsonllp.com
5  **LARSON LLP**
   555 South Flower Street, Suite 4400
6  Los Angeles, CA  90071
   Telephone:  213.436-4888
7  Facsimile:   213.623-2000

8  Attorneys for Plaintiffs
   MOSAFER INC.;
9  MOSAFER E-COM, INC.;
   AND GOMOSAFER

10

11                UNITED STATES DISTRICT COURT

12              CENTRAL DISTRICT OF CALIFORNIA

13                    WESTERN DIVISION

14

| | |
|---|---|
| 15  MOSAFER INC.; MOSAFER E-COM, INC.; and GOMOSAFER, | CASE No. 2:21-cv-06320 MCS (JCx) |
| 16 | **PLAINTIFFS' OPPOSITION TO NADER AND IRONISTIC'S MOTIONS TO STRIKE OR ALTERNATIVELY, MOTIONS TO DISMISS** |
| 17                      Plaintiffs. | |
| 18       vs. | |
| 19  ELLIOT BROIDY; GEORGE NADER; BROIDY CAPITAL MANAGEMENT, LLC; | |
| 20  CIRCINUS, LLC; THE IRON GROUP INC. D/B/A IRONISTIC.COM; SCL SOCIAL | Date:            December 6, 2021 |
| 21  LIMITED; PROJECT ASSOCIATES UK LTD; | Time:            9:00 a.m. Courtroom:      7C |
| 22  MATTHEW ATKINSON; and JOHN DOES 1-100, | Judge:  Hon.  Mark C. Scarsi |
| 23 | Complaint Filed: August 5, 2021 |
| 24                      Defendants. | |
| 25 | |

26

27

28

# **TABLE OF CONTENTS**

Page

I.  INTRODUCTION ...................................................................................... 1

II.  RELEVANT FACTUAL ALLEGATIONS.............................................. 2

    A.  Qatar's Reputation Is Intrinsic To Plaintiffs' Business Model ................ 2

    B.  Broidy Orchestrated A Disinformation Conspiracy Targeting
    Qatar, And By Extension, Plaintiffs ........................................................ 3

    C.  Ironistic, Nader, And The Other Defendants Concealed Their
    Participation In The Disinformation Conspiracy ..................................... 3

    D.  Plaintiffs Recently Uncovered The Disinformation Conspiracy .............. 4

    E.  Plaintiffs Have Alleged Specific Statements That Were Made As
    Part Of The Disinformation Conspiracy ................................................. 5

    F.  The Disinformation Conspiracy Significantly Harmed Plaintiffs ........... 5

III.  LEGAL STANDARD .............................................................................. 5

IV.  LEGAL ARGUMENT ............................................................................. 6

    A.  An Anti-SLAPP Motion Cannot Be Used To Strike Claims Based
    On Defendants' Illegal FARA Violations ............................................... 6

    B.  Plaintiffs Have Sufficiently Pled Each Of Their Causes Of Action ........ 7

        1.  Plaintiffs Have Sufficiently Alleged Each Of Their Causes
        Of Action In Compliance With Rule 9(b) ...................................... 7

        2.  Plaintiffs Have Sufficiently Alleged That Defendants Are
        Liable For The Acts Of The Other Defendants Under Both
        Conspiracy and Vicarious Liability Theories ................................. 8

            a.  Defendants Engaged In A Civil Conspiracy ........................ 9

            b.  Nader Is Vicariously Liable For The Publications ............... 9

        3.  Plaintiffs Have Sufficiently Stated Claims For Violation Of
        The UCL, FAL, And Lanham Act................................................ 10

            a.  The Publications Constitute Commercial Advertising........ 10

            b.  Plaintiffs Have Established Claims Under the
            Fraudulent and Unlawful Prongs of the UCL .................... 14

            c.  Plaintiffs Have Statutory Standing To Pursue Their
            UCL and FAL Claims ....................................................... 16

PLAINTIFFS' OPPOSITION TO DEFENDANTS NADER AND IRONISTIC'S MOTIONS TO STRIKE OR
ALTERNATIVELY, MOTIONS TO DISMISS

        d.    Plaintiffs' UCL Claim Alleges a Sufficient Nexus Between False Statements and California ............................ 16

    4.    Plaintiffs Have Sufficiently Stated A Claim For Negligence ........ 17

        a.    The Complaint Alleges A Negligence Claim Based On Defendants' Violation of FARA ..................................... 17

        b.    Intentional Conduct Does Not Bar A Negligence Claim ................................................................................... 19

    5.    Plaintiffs Have Sufficiently Stated A Claim For Trade Libel ....... 20

C.    Plaintiffs Have Standing To Pursue Their Injunctive Relief Claims And Are Entitled To Such Relief Because They Have Alleged An Ongoing Irreparable Injury .................................................................. 21

D.    Plaintiffs' Claims Are Not Barred By The Statute of Limitations .......... 22

    1.    Plaintiffs' Causes Of Action Did Not Accrue Until They Discovered The Broidy Defendants' Wrongdoing ........................ 23

    2.    The Statute Of Limitations Was Tolled Under The Continuing Violation Or Continuing Accrual Doctrine ................ 25

V.    CONCLUSION ................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

Page(s)

<u>Cases</u>

*Ajzenman v. Off. of Comm'r of Baseball,*
   492 F. Supp. 3d 1067 (C.D. Cal. 2020) ........................................................9

*Allergan USA Inc. v. Imprimis Pharms., Inc.,*
   2017 WL 10526121 (C.D. Cal. Nov. 14, 2017) .......................................16

*Alvarez v. BAC Home Loans Servicing, L.P.,*
   228 Cal. App. 4th 941 (2014) ......................................................................17

*Antonick v. Elec. Arts Inc.,*
   2011 WL 4501324 (N.D. Cal. Sept. 27, 2011) ........................................24

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.,*
   869 P.2d 454 (Cal. 1994) ..............................................................................9

*Ariix, LLC v. NutriSearch Corp.,*
   985 F.3d 1107 (9th Cir. 2021) .........................................................11, 12, 13

*Aryeh v. Canon Bus. Sols., Inc.,*
   55 Cal. 4th 1185 (2013) ................................................................................25

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) .........................................................................................6

*Bank of the West v. Superior Court,*
   833 P.2d 545 (Cal. 1992) ..............................................................................11

*Bd. of Trustees of State Univ. of N.Y. v. Fox,*
   492 U.S. 469 (1989) .......................................................................................13

*Bekins v. AstraZeneca Pharms. LP,*
   739 F. App'x 884 (9th Cir. 2018) ...............................................................24

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) .........................................................................................6

*Bernson v. Browning-Ferris Indus.,*
   7 Cal. 4th 926 (1994) ....................................................................................24

*Bolger v. Youngs Drug Prod. Corp.,*
   463 U.S. 60 (1983) ...............................................................................12, 13

*Broad. Music, Inc. v. Ponderosa Chophouse Enters., Inc.,*
   2013 WL 12113406 (C.D. Cal. June 20, 2013) .......................................22

*Brousseau v. Jarrett,*
   73 Cal. App. 3d 864 (1977) .........................................................................20

- iii -

*Brown v. Goldstein,*
  2009 WL 10669252 (C.D. Cal. Sept. 30, 2009) ........................................ 12

*Brown v. USA Taekwondo,*
  40 Cal. App. 5th 1077 (2019) .................................................................... 10

*Candelore v. Tinder, Inc.,*
  19 Cal. App. 5th 1138 (2018) .................................................................... 15

*Cervantes v. City of San Diego,*
  5 F.3d 1273 (9th Cir. 1993) ....................................................................... 23

*Cf. Gertz v. Robert Welch, Inc.,*
  418 U.S. 323 (1974) ................................................................................... 15

*Coastal Abstract Serv., Inc. v. First Am. Title Ins.,*
  173 F.3d 725 (9th Cir. 1999) ..................................................................... 11

*Coffelt v. Kroger Co.,*
  2017 WL 10543343 (C.D. Cal. Jan. 27, 2017) ......................................... 15

*Comm. On Children's Television v. General Foods Corp.,*
  673 P.2d 660 (Cal. 1983) ........................................................................... 15

*Cooper v. Pickett,*
  137 F.3d 616 (9th Cir. 1997) ....................................................................... 8

*Corona v. PNC Fin. Servs. Grp., Inc.,*
  2021 WL 1218258 (C.D. Cal. Mar. 16, 2021) .......................................... 15

*Ehret v. Uber Techs., Inc.,*
  68 F. Supp. 3d 1121 (N.D. Cal. 2014) ...................................................... 17

*Erlich v. Etner,*
  224 Cal. App. 2d 69 (1964) ....................................................................... 20

*Flatley v. Mauro,*
  39 Cal. 4th 299 (2006) ............................................................................. 6, 7

*Frere v. Medtronic, Inc.,*
  2016 WL 1533524 (C.D. Cal. Apr. 6, 2016) ............................................ 24

*Gianni Versace, S.p.A. v. Dardashti,*
  2008 WL 11338729 (C.D. Cal. Apr. 21, 2008) ........................................ 24

*Gorenstein v. Ocean Spray Cranberries, Inc.,*
  2009 WL 10201128 (C.D. Cal. Dec. 18, 2009) ........................................ 10

*Hardin v. Straub,*
  490 U.S. 536 (1989) ................................................................................... 23

*Harmoni Int'l Spice, Inc. v. Bai,*
  2016 WL 6542731 (C.D. Cal. May 24, 2016) ............................................. 6

PLAINTIFFS' OPPOSITION TO DEFENDANTS NADER AND IRONISTIC'S MOTIONS TO STRIKE OR
ALTERNATIVELY, MOTIONS TO DISMISS

*Hartford Cas. Ins. v. Swift Distribution, Inc.*,
  59 Cal. 4th 277 (2014) ........................................................................21

*Hernandez v. Sessions*,
  872 F.3d 976 (9th Cir. 2017) .............................................................21

*In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  497 F. Supp. 3d 552 (N.D. Cal. 2020) ..............................................19

*In re Mattel*,
  588 F. Supp. 2d 1111 (C.D. Cal. 2008) .............................................17

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ........................................................................16

*Issakhani v. Shadow Glen Homeowners Ass'n, Inc.*,
  63 Cal. App. 5th 917 (2021) ...............................................................18

*Jolly v. Eli Lilly & Co.*,
  751 P.2d 923 (Cal. 1988) .....................................................................23

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) ........................................................7, 14

*KLE, Inc. v. Medisca, Inc.*,
  2019 WL 4261882 (C.D. Cal. June 3, 2019) ......................................25

*Komarova v. Nat'l Credit Acceptance, Inc.*,
  175 Cal. App. 4th 324 (2009) .............................................................25

*Lazar v. Hertz Corp.*,
  69 Cal. App. 4th 1494 (1999) .............................................................15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  572 U.S. 118 (2014) ............................................................................14

*Lobstein v. Washington Mut. Mortg. Pass-Through Certificates WMALT Series
  2007-OC1*,
  2020 WL 3964788 (C.D. Cal. June 8, 2020) ......................................19

*Luna Distrib. LLC v. Stoli Grp. (USA), LLC*,
  2018 WL 5099277 (C.D. Cal. July 10, 2018) .....................................23

*Makaeff v. Trump Univ., LLC*,
  715 F.3d 254 (9th Cir. 2013) ................................................................6

*Mammoth Rx, Inc. v. Battah*,
  2019 WL 8108725 (C.D. Cal. Dec. 9, 2019) ........................................8

*Martinez v. Metabolife Internat., Inc.*,
  113 Cal. App. 4th 181 (2003) .............................................................13

*Meese v. Keene*,
  481 U.S. 465 (1987) .........................................................................7, 18

- v -

*Monsanto Co. v. Geertson Seed Farms,*
   561 U.S. 139 (2010) ................................................................. 22

*Moore v. Mars Petcare US, Inc.,*
   966 F.3d 1007 (9th Cir. 2020) ............................................... 8, 10

*Morgan v. AT&T Wireless Servs., Inc.,*
   177 Cal. App. 4th 1235 (2009) .................................................. 15

*Nat'l Comm'n On Egg Nutrition v. F.T.C.,*
   570 F.2d 157 (7th Cir. 1977) ..................................................... 12

*Nat'l Servs. Grp., Inc. v. Painting & Decorating Contractors of Am., Inc.,*
   2006 WL 2035465 (C.D. Cal. July 18, 2006) ............................ 14

*Nautilus, Inc. v. Chunchai Yu,*
   2011 WL 13213575 (C.D. Cal. Dec. 19, 2011) ............................ 9

*Neilson v. Union Bank of California, N.A.,*
   290 F. Supp. 2d 1101 (C.D. Cal. 2003) ....................................... 8

*OSU Student All. v. Ray,*
   699 F.3d 1053 (9th Cir. 2012) ..................................................... 6

*Pace v. DiGuglielmo,*
   544 U.S. 408 (2005) ................................................................... 24

*Palestini v. Homecomings Fin., LLC,*
   2010 WL 3339459 (S.D. Cal. Aug. 23, 2010) ............................ 11

*Paulus v. Bob Lynch Ford, Inc.,*
   139 Cal. App. 4th 659 (2006) .................................................... 15

*Peterson v. Sanghi,*
   2019 WL 1715487 (C.D. Cal. Feb. 14, 2019) ............................ 20

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress,*
   890 F.3d 828 (9th Cir.),
   *amended,* 897 F.3d 1224 (9th Cir. 2018) ..................................... 6

*Precht v. Kia Motors Am., Inc.,*
   2014 WL 10988343 (C.D. Cal. Dec. 29, 2014) .......................... 17

*Retrophin, Inc. v. Questcor Pharms., Inc.,*
   41 F. Supp. 3d 906 (C.D. Cal. 2014) ......................................... 19

*Royal Holdings Techs. Corp. v. IP Video Mkt. Info Inc.,*
   2020 WL 8225666 (C.D. Cal. Dec. 18, 2020) ............................ 11

*S. California Gas Leak Cases,*
   7 Cal. 5th 391 (2019) ................................................................. 19

*Sampson v. Cty. of L.A.,*
   2021 WL 4200043 (C.D. Cal. July 1, 2021) .............................. 25

PLAINTIFFS' OPPOSITION TO DEFENDANTS NADER AND IRONISTIC'S MOTIONS TO STRIKE OR
ALTERNATIVELY, MOTIONS TO DISMISS

*SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.,*
    2015 WL 6680807 (C.D. Cal. Oct. 19, 2015) ....................................... 22

*Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC,*
    2021 WL 3417590 (N.D. Cal. Aug. 5, 2021) ....................................... 16

*Shultz Steel Co. v. Hartford Accident & Indem. Co.,*
    187 Cal. App. 3d 513 (1986) ........................................................... 10

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.,*
    240 F.3d 832 (9th Cir. 2001) ........................................................... 22

*Swiss Am. Trading Corp. v. Regal Assets, LLC,*
    2015 WL 631569 (C.D. Cal. Feb. 13, 2015) ....................................... 20

*Teddy's Red Tacos Corp., v. Theodoro Vazquez Solis Dba Teddy's Red Tacos et al.,*
    2021 WL 4517723 (C.D. Cal. Aug. 16, 2021) ....................................... 22

*Thee Aguila, Inc. v. Penn Star Ins.,*
    2020 WL 6743594 (C.D. Cal. Sept. 16, 2020) ....................................... 20

*TRC & Assocs. v. NuScience Corp.,*
    2013 WL 6073004 (C.D. Cal. Nov. 18, 2013) ....................................... 17

*TwoRivers v. Lewis,*
    174 F.3d 987 (9th Cir. 1999) ........................................................... 23

*U.S. ex rel. Knapp v. Calibre Sys., Inc.,*
    2011 WL 4914711 (C.D. Cal Oct. 17, 2011) ....................................... 19

*U.S. ex rel. Tamanaha v. Furukawa Am., Inc.,*
    445 F. App'x 992 (9th Cir. 2011) ..................................................... 8

*Vess v. Ciba-Geigy Corp. USA,*
    317 F.3d 1097 (9th Cir. 2003) .................................................. 5, 6, 8

*Ward v. Westinghouse Canada, Inc.,*
    32 F.3d 1405 (9th Cir. 1994) ........................................................... 23

*Webb v. Ackerman,*
    2014 WL 12770071 (C.D. Cal. Oct. 9, 2014) ....................................... 23

*Zimmerman v. City of Oakland,*
    255 F.3d 734 (9th Cir. 2001) ........................................................... 6

Statutes and Codes

California Business and Professions Code,
    Section 17204 ............................................................................. 16

United States Code,
    Title 22, section 612 ..................................................................... 7

## Rules and Regulations

Federal Rule of Civil Procedure,
    Rule 8(d) ................................................................................................ 19
    Rule 9 .................................................................................................... 8
    Rule 9(b) ................................................................................................ 7
    Rule 12(b)(6) ......................................................................................... 6

## Other Authorities

Rest. 2d Torts § 623A ............................................................................ 21

Rest. 2d Torts § 633, cmt. h (1977) ....................................................... 20

## I.    **INTRODUCTION**

Plaintiffs Mosafer Inc., Mosafer E-Com, Inc., and GoMosafer (collectively, "Plaintiffs")[1] allege that The Iron Group Inc. d/b/a Ironsitic.com ("Ironistic") knowingly published false information as part of an ongoing disinformation campaign orchestrated by Defendants Elliot Broidy ("Broidy"), Broidy Capital Management ("BCM"), and Circinus, LLC ("Circinus") (collectively, the "Broidy Defendants") and Defendant George Nader ("Nader") which was intended to shift business away from Qatari businesses, all in violation of the Foreign Agents Registration Act ("FARA"), (the "Disinformation Conspiracy").

This illegal campaign against Qatar was particularly damaging to Plaintiffs because their travel business focused on booking travel to or through Qatar and because it interfered with Plaintiffs' efforts to enhance their brand appeal by conjuring the luxurious Qatari image in the mind of consumers.  Although they are not controlled by Qatar, Plaintiffs certainly sought to gain public recognition and brand legitimacy by using Qatar's colors and invoking Qatari symbolism.  Consequently, when Defendants unlawfully attacked Qatar, Plaintiffs suffered damages in the form of lost sales, exactly as Defendants intended.

After Defendants[2] hid both the existence of the Disinformation Conspiracy and their involvement in it for years, Plaintiffs finally uncovered evidence of the scheme and filed this Complaint asserting causes of action for (1) false advertising under

---

[1] Multiple Defendants have challenged the legal capacity of GoMasfer.  *See* Nader Mot. at 10:5-11; Ironistic Mot. at 21:1-9.  As Plaintiffs explained in their Opposition to the Broidy Defendants' Motion to Strike or Alternatively Dismiss, Doc. No. 51 at 20:11-24, Plaintiffs would voluntarily dismiss GoMosafer if the Court deems that appropriate because the legal capacity of the other Plaintiffs is undisputed.  In order to reduce the likelihood of confusion, Plaintiffs will not amend the Complaint while each of the Parties' respective motions is pending.

[2] In addition to Ironistic, Nader, and the Broidy Defendants, the Complaint also asserts claims against SCL Social Limited ("SCL"), Project Associates UK Ltd ("Project Associates"), and Matthew Atkinson ("Atkinson") (collectively, "Defendants").

California's False Advertising Law ("FAL") and the Lanham Act, (2) fraudulent and unlawful conduct under California's Unfair Competition Law ("UCL"), (3) Trade Libel, and (4) Negligence.  Through these causes of action, Plaintiffs are seeking monetary damages and injunctive relief ordering that Defendants (1) take down the illegal publications, and (2) stop engaging in this ongoing unlawful conduct.

In response to Plaintiffs' Complaint, Nader and Ironistic have filed Motions to Strike or Alternatively Dismiss (individually, the "Nader Mot. and the "Ironistic Mot." and collectively, the "Motions") that seek to immunize their unlawful behavior under the cloak of protected speech.  However, courts have routinely recognized that the First Amendment's right of speech is not boundless—it neither allows a person to make intentionally false and deceptive statements, nor allows someone to violate FARA.  In recognition of these limits, illegal conduct is excluded from protection under California's anti-SLAPP statute.

Moreover, even if Nader and Ironistic had satisfied the first prong of the anti-SLAPP analysis (and they have not), Plaintiffs have sufficiently alleged facts that support each of their causes of action, particularly in light of Defendants' extensive efforts to conceal their conduct.  Plaintiffs do not seek to prevent opponents of terrorism from speaking out on important issues, as Defendants Nader and Ironistic claim; they only seek redress for the harm foreseeably and intentionally caused by a concerted covert campaign in which Defendants were paid handsomely to publish intentionally false and disparaging statements about Qatar and Qatari businesses.  As such, Nader and Ironistic's Motions should be denied in their entirety.

## II.   RELEVANT FACTUAL ALLEGATIONS

### A.   Qatar's Reputation Is Intrinsic To Plaintiffs' Business Model

Mosafer, Inc. is a global travel conglomerate that has long been one of Qatar's leading tourism companies.  Compl. ¶ 30.  Plaintiffs' Qatari heritage is the cornerstone of their branding, reflecting Plaintiffs' deliberate attempt and marketing strategy to make themselves synonymous with Qatar.  *Id.* ¶ 31.  Plaintiffs spent

- 2 -

considerable resources in designing their store, products, e-commerce website, online ticketing website, company logos and brand details to evoke their Qatari roots. *Id.* For example, Plaintiffs used elements of the Qatari flag in their branding and specifically chose as their trade dress the flag's burgundy color. *Id.* As a result, Plaintiffs were intimately associated with Qatar in the eyes of the consumer. *Id.*

### B. Broidy Orchestrated A Disinformation Conspiracy Targeting Qatar, And By Extension, Plaintiffs

An alliance of foreign interests sought to harm Qatari businesses and their reputations by spreading disinformation abroad, especially in the United States. Compl. ¶ 45. They recruited Nader, who then mobilized Broidy and a network of others to execute a campaign of disinformation and intentional falsehood against Qatari businesses. *Id.* ¶ 46. The aim of the Disinformation Conspiracy was to drive governmental and private actors away from transacting with Qatari-related businesses and usurp its business opportunities for competitors. *Id.* ¶ 7.

The Disinformation Conspiracy employed a web of conventional print media, internet websites, and social media accounts to publish false and misleading information about the safety, stability, and nature of Qatar and Qatari-based businesses. *Id.* This campaign created a false media landscape that drove American consumers away from businesses affiliated with Qatar. *Id.* Its goal was to make travel to Qatar and consumption of Qatari services untenable to the consumer and ultimately starve Qatari businesses of consumers. *Id.* As a company that used elements of the Qatar flag and culture for branding purposes, and not because of any affirmative act on the part of Qatar, Plaintiffs were intended victims of the Disinformation Conspiracy. It is a natural consequence of Defendants' false statements about Qatar that businesses that rely on Qatar's reputation would suffer.

### C. Ironistic, Nader, And The Other Defendants Concealed Their Participation In The Disinformation Conspiracy

Ironistic is a full-service digital strategies and marketing company based in

- 3 -

Virginia that designs and builds websites and online marketing campaigns. *Id.* ¶ 25. Ironistic was hired by Nader and Broidy to create websites, such as Qatartruth.com, Qatarexposed.com, and BoycottQatarnow.com in order to disseminate false information and advance the goals of the Disinformation Conspiracy. *Id.* ¶ 80.

Defendants, including Nader and Ironistic, concealed their involvement in the Disinformation Conspiracy. *Id.* ¶¶ 44, 77, 101.b. First, like all of the publications in the Disinformation Conspiracy, Ironistic's websites were designed to look independent, legitimate, and authentic such that the public would not recognize that they wert part of a coordinated campaign against Qatar. *Id.* ¶¶ 71, 81, 87, 89. Second, to ensure that the public would be unable to discover the Disinformation Conspiracy, Defendants failed to disclose their conduct as required under FARA. *Id.* ¶ 101.b.

### D. Plaintiffs Recently Uncovered The Disinformation Conspiracy

Defendants' efforts to conceal the Disinformation Conspiracy were successful and as a result, Plaintiffs only recently pieced enough information together to uncover its existence. *Id.* ¶¶ 59, 90. Specifically, Plaintiffs' allegations regarding the existence of the Disinformation Conspiracy are based on the following:

- Nader and the Broidy Defendants received hundreds of millions of dollars from the United Arab Emirates ("UAE"). *Id.* ¶¶ 50, 59–60;

- In March 2017, Broidy and Nader provided a proposed budget of $12,000,000 to "expose and penalize" Qatar. *Id.* ¶ 60. As part of that proposal, Broidy pitched to Nader a "media blitz" involving Circinus and noted that they had orchestrated an "extraordinary PR campaign against Qatar." *Id.* ¶¶ 64–65;

- Defendants SCL's and Atkinson's 2017 and 2018 FARA registrations[3] state that they were providing "a wide range of services specific to a global social media campaign," an objective which perfectly aligns with Broidy's multi-faceted forum proposal and during the same time period. *Id.* ¶¶ 72–75, 79;

---

[3] *See* Compl. ¶¶ 72 n.1-3, 73 n.4-5, 74 n.6, 78 n.7, 79 n.8.

- Defendant Project Associates filed a Supplemental Statement disclosing that they were continuing to render services to the UAE to "to raise awareness about state-sponsored terrorism in the Middle East." *Id.* ¶ 78; and

- The timing and content of Ironistic's publications is consistent with the timeline of the Disinformation Conspiracy. *Id.* ¶¶ 80–84.

### E. Plaintiffs Have Alleged Specific Statements That Were Made As Part Of The Disinformation Conspiracy

Because of Defendants' efforts to conceal the Disinformation Conspiracy, Plaintiffs are unable to identify all of the illegal publications without discovery. *Id*. ¶ 85. However, Plaintiffs have provided examples, *see id*. ¶¶ 66, 70, 76, including a full-page advertisement in the Washington Post, *id*. ¶ 66 (stating "QATAR IS A SAFE HAVEN FOR TERRORISTS"). Plaintiffs have also attributed specific statements to Ironistic, including the statements made on websites called Qaterexposed.com, Qatartruth.com, and BoycottQatarnow.com, the QatarExposed Facebook and Twitter pages and videos, and a Boycott Qatar Airways advertisement encouraging the public to "Boycott Qatar Airways for their human rights abuses." *See id*. ¶¶ 80–84.

### F. The Disinformation Conspiracy Significantly Harmed Plaintiffs

As a result of the Disinformation Conspiracy, Plaintiffs lost existing and prospective customers. Plaintiffs suffered travel cancelations, costs incurred from increased advertising aimed at countering the Disinformation Conspiracy, lost sales, and the closure of its New York store (incurring significant penalties for breaking its lease), and cancellation of plans to open a location in California. *Id.* ¶¶ 92–96.

## III. LEGAL STANDARD

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110 (9th Cir. 2003). First, "the moving defendant must make a prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's constitutional right to free speech." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir.

- 5 -

2013).  "Second, once the defendant has made" this showing, "'the burden shifts to the plaintiff to demonstrate a probability of prevailing on the challenged claims.'" *Vess*, 317 F.3d at 1110 (citations omitted).  Where, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018).

To avoid dismissal under Rule 12(b)(6), the complaint need only state a claim for relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  When considering a 12(b)(6) motion to dismiss, a court must accept the well-pleaded factual allegations of the complaint as true and construe them in the light most favorable to plaintiffs.  *OSU Student All. v. Ray*, 699 F.3d 1053, 1061 (9th Cir. 2012) (citations omitted).

## IV.   LEGAL ARGUMENT

### A.    An Anti-SLAPP Motion Cannot Be Used To Strike Claims Based On Defendants' Illegal FARA Violations

An anti-SLAPP motion under "section 425.16, by its express terms, does not apply to any activity . . . if, as a matter of law, that activity was illegal and by reason of the illegality not constitutionally protected." *Flatley v. Mauro*, 39 Cal. 4th 299, 316 (2006.  Accordingly a "defendant fails to satisfy the anti-SLAPP statute's first prong" when the "evidence *conclusively* establishes[] that the assertedly protected speech or petition activity was illegal as a matter of law." *Harmoni Int'l Spice, Inc. v. Bai*, 2016 WL 6542731, at *14 (C.D. Cal. May 24, 2016) (internal quotation omitted) (emphasis in original).

- 6 -

Here, Plaintiffs have sufficiently alleged that Defendants' speech was illegal as a matter of law because they violated FARA. *See* 22 U.S.C. § 612 (requiring that no person shall act as an agent of a foreign principal unless he has registered his status as such an agent with the Attorney General); *Meese v. Keene*, 481 U.S. 465, 469 (1987) ("[FARA] requires all agents of foreign principals to file detailed registration statements, describing the nature of their business and their political activities."). Nader erroneously argues that FARA criminalizes only the failure to register, not Defendants' speech. *See* Nader Mot. at 8:22-29. However, this misses the point— Defendants' speech was illegal *because* of their failure to register and make the required disclosures under FARA. Under FARA, a person may not legally make false statements intended to damage certain businesses on behalf of undisclosed foreign competitors without registering, and that is precisely what Defendants did.

As explained in Section II.C, *supra*, the Complaint alleges that each of the publications made were in violation of FARA. *See* Compl. ¶¶ 6, 56, 72–75, 77–79, 101.b. These allegations must be taken as true. *See Flatley*, 39 Cal. 4th at 326 (holding that all facts disputed in an anti-SLAPP motion must be viewed in the light most favorable to plaintiffs). Thus, the illegal speech exemption applies and Defendants have failed to establish the first prong of the anti-SLAPP analysis.

**B.   Plaintiffs Have Sufficiently Pled Each Of Their Causes Of Action**

**1.   Plaintiffs Have Sufficiently Alleged Each Of Their Causes Of Action In Compliance With Rule 9(b)**

Defendants contend that Plaintiffs have failed to sufficiently plead their causes of action under Rule 9(b). "Rule 9(b) requires that, when fraud is alleged, a party must state with particularity the circumstances constituting fraud." *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks and ellipsis omitted). Rule 9(b) only demands that the circumstances constituting the alleged fraud "be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything

1    wrong." *Mammoth Rx, Inc. v. Battah*, 2019 WL 8108725, at *4 (C.D. Cal. Dec. 9,

2    2019) (citation omitted).  Thus, under Rule 9(b), a plaintiff must allege "'the who,

3    what, when, where, and how' of the misconduct charged."  *Vess*, 317 F.3d at 1106

4    (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

5         Preliminarily, because Rule 9 only applies to claims which are grounded in fraud,

6    Plaintiffs' Negligence claim is not subject to this heightened pleading requirement.  *See,*

7    *e.g.*, *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1143 (C.D. Cal.

8    2003) ("There is no requirement that negligence be pleaded with heightened specificity

9    pursuant to Rule 9(b).").  Moreover, "Rule 9(b) requirements may not even be

10   necessary" to plead Plaintiffs' false advertising claims because "a defendant can violate

11   the UCL [and] FAL . . .  by acting with mere negligence."  *Moore v. Mars Petcare US,*

12   *Inc.*, 966 F.3d 1007, 1019 n.11 (9th Cir. 2020).

13        However, even assuming Rule 9 does apply to each of Plaintiffs' claims,

14   Plaintiffs have satisfied this pleading standard.  Plaintiffs have alleged the specific

15   misconduct and statements of Defendants giving rise to their claims necessary to put

16   Defendants on notice.  *See* Section II.D, *supra*.  Further, Rule 9(b) requirements may

17   be relaxed to the extent evidence is within the opposing party's exclusive possession.

18   *U.S. ex rel. Tamanaha v. Furukawa Am., Inc.*, 445 F. App'x 992, 994 (9th Cir. 2011)

19   (reversing district court's decision to deny leave to amend under Rule 9(b)).  Here, as

20   explained in Section II.C, *supra*, many of the specific facts of the Disinformation

21   Conspiracy are exclusively within the Defendants' possession because they have taken

22   active efforts to conceal them.  *See, e.g.*, Compl. ¶¶ 6, 59, 89–90.

23            **2.    Plaintiffs Have Sufficiently Alleged That Defendants Are**
             **Liable For The Acts Of The Other Defendants Under Both**
24            **Conspiracy and Vicarious Liability Theories**

25        Defendants contend that Plaintiffs fail to allege liability under a conspiracy

26   theory.  *See* Nader Mot. at 4:2-6:21; Ironistic Mot. at 20:1-26.  However, Plaintiffs'

27   allegations against Defendants under both civil conspiracy and vicarious liability

28   theories are robust given the limited information available to Plaintiffs.

### a.   Defendants Engaged In A Civil Conspiracy

Under California law, "[c]onspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Ajzenman v. Off. of Comm'r of Baseball*, 492 F. Supp. 3d 1067, 1081 (C.D. Cal. 2020) (citations omitted); *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 457 (Cal. 1994) ("By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. . . ."). "Liability for civil conspiracy generally requires three elements: (1) formation of the conspiracy (an agreement to commit wrongful acts); (2) operation of the conspiracy (commission of the wrongful acts); and (3) damage resulting from operation of the conspiracy." *Nautilus, Inc. v. Chunchai Yu*, 2011 WL 13213575, at *11 (C.D. Cal. Dec. 19, 2011) (citations omitted).

Plaintiffs have sufficiently alleged each element for a civil conspiracy.  First, as explained in Sections II.B and D, *supra*, they have sufficiently alleged the formation of the Disinformation Conspiracy.  *See, e.g.*, Compl. ¶¶ 1, 6, 61, 80.  Second, Plaintiffs have alleged the commission of wrongful acts—the publications falsely attacking Qatar in violation of FARA.[4]  *See* Section II.E, *supra*.  Finally, Plaintiffs have alleged that the Disinformation Conspiracy harmed them.  *See* Section II.F, *supra*.  As such, Defendants are liable to Plaintiffs based on a civil conspiracy theory.

### b.   Nader Is Vicariously Liable For The Publications

"[A] principal who personally engages in no misconduct may be vicariously liable for the tortious act committed by an agent within the course and scope of the

---

[4] Nader suggests that Plaintiffs failed to plead any activity that constituted a wrong "*to them*" (i.e., Broidy and Nader).  *See* Nader Mot. at 5:9-16.  However, the Complaint alleges that Broidy and Nader "devised and executed" an unlawful campaign together and "set the wheels in motion to orchestrate the Disinformation Conspiracy" and "conspired to represent to the public" false statements.  Compl. ¶¶ 13, 61–62.

- 9 -

1    agency."  *See Brown v. USA Taekwondo*, 40 Cal. App. 5th 1077, 1106 (2019)

2    (citations omitted).  "A principal may be liable for the torts of his agent if the principal

3    directed or authorized him to perform the tortious act."  *Shultz Steel Co. v. Hartford*

4    *Accident & Indem. Co.*, 187 Cal. App. 3d 513, 519 (1986) (citation omitted).  Here,

5    Plaintiffs allege that Nader and the Broidy Defendants orchestrated the Disinformation

6    Conspiracy by hiring companies and individuals to make the false publications.

7    Compl. ¶¶ 1, 6, 10, 61, 65–67, 97.  Accordingly, the Complaint sufficiently alleges

8    that Nader is vicariously liable for the publications made by the other Defendants.

### 3.    Plaintiffs Have Sufficiently Stated Claims For Violation Of The UCL, FAL, And Lanham Act

10   Plaintiffs allege that the knowingly and intentionally false publications made in

11   the Disinformation Conspiracy, and specifically those identified in Section II.E,

12   *supra*, violate the UCL, FAL, and Lanham Act.  Defendants cannot credibly contend

13   that Plaintiffs have failed to sufficiently identify these false publications.[5]  *See, e.g.*,

14   *Gorenstein v. Ocean Spray Cranberries, Inc.*, 2009 WL 10201128, at *3 (C.D. Cal.

15   Dec. 18, 2009) (denying motion to dismiss state law false advertising claims where

16   plaintiff properly alleged statements in a website and press release).  Instead, they

17   erroneously argue that Plaintiffs' claims fail because (1) the statements made in the

18   publications were not commercial advertisements, (2) Plaintiffs did not allege unfair

19   and unlawful conduct under the UCL, (3) Plaintiffs lack standing under the UCL and

20   FAL, and (4) Plaintiffs' UCL and FAL claims are barred for extraterritorially.

### a.    The Publications Constitute Commercial Advertising

22   In evaluating UCL and FAL claims, "courts have construed use of the term

23   'advertising' . . . to mean 'widespread promotional activities directed to the public at

24

25

26   [5] Whether the Defendants' statements were actually false is a question of fact that is
     inappropriate to decide at the pleadings stage.  *See Moore v. Mars Petcare US, Inc.*,
27   966 F.3d 1007, 1017 (9th Cir. 2020) ("[W]hether a practice is deceptive will usually
     be a question of fact not appropriate for . . . motions to dismiss.") (quotation omitted).

28

- 10 -

large.'" *Palestini v. Homecomings Fin., LLC*, 2010 WL 3339459, at *10 (S.D. Cal. Aug. 23, 2010) (quoting *Bank of the West v. Superior Court*, 833 P.2d 545, 560 n.9 (Cal. 1992)).  Similarly, under the Lanham Act, "[f]or representations to constitute commercial advertisement, 'they must be: (1) commercial speech; (2) by a defendant who is in commercial competition with plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services . . . [and] (4) must be disseminated sufficiently to the relevant purchasing public[.]'" *Royal Holdings Techs. Corp. v. IP Video Mkt. Info Inc.*, 2020 WL 8225666, at *12 (C.D. Cal. Dec. 18, 2020) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins.*, 173 F.3d 725, 735 (9th Cir. 1999)). Plaintiffs have satisfied both tests—they have alleged that Nader and the Broidy Defendants were paid to orchestrate the Disinformation Conspiracy and engaged the other Defendants, including Ironistic, to disseminate widespread publications intended to divert business from Plaintiffs to UAE-related competitors.  *See, e.g.*, Compl. ¶¶ 7, 63, 86, 97, 101.a(3).

        "Speech that does not propose a commercial transaction on its face can still be commercial speech."  *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) (citation omitted).  A court's "commercial speech analysis is fact-driven, due to the inherent difficulty of drawing bright lines that will clearly cabin commercial speech in a distinct category."  *Id.* (citation omitted).  Although the publications at issue here do not appear to propose a commercial transaction, they are nonetheless subject to analysis under the *Bolger* factors "[b]ecause of the difficulty of drawing clear lines between commercial and non-commercial speech[.]"  *Id.*

        Under *Bolger*, speech should be characterized as commercial speech where: "[1] the speech is an advertisement, [2] the speech refers to a particular product, and [3] the speaker has an economic motivation."  *Id.* at 1116 (citation omitted). Regarding the first factor, although the statements here were not in the traditional form of an advertisement, "this fact alone does not tell [the Court] much, especially given today's sophisticated and subtle marketing campaigns."  *Id.*  Here, Defendants'

- 11 -

own FARA registrations characterize these efforts as advertising campaigns.[6]  Further, Plaintiffs allege that Defendants intended to hide the commercial nature of their statements by making them appear to be noncommercial political speech.  *See, e.g.*, Compl. ¶¶ 71, 89.

As to the second factor, a product that "is referred to generically does not … remove it from the realm of commercial speech."  *Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 67 n.13 (1983) (noting a promoter "may be able to promote the product without reference to its own brand names"); *see also Nat'l Comm'n On Egg Nutrition v. F.T.C.*, 570 F.2d 157, 159–60 (7th Cir. 1977) (enforcing in part an FTC order prohibiting false and misleading advertising that did not reference to a specific brand).  Moreover, a false advertising claim can be supported by a statement that is "'misleading . . . because it conveys a false impression through implication, innuendo, ambiguity, or omission of material facts.'"  *Brown v. Goldstein*, 2009 WL 10669252, at *3 (C.D. Cal. Sept. 30, 2009) (citation omitted).  As explained in Section II.A, *supra*, the false disparaging statements made about Qatar by the Defendants necessarily constituted disparaging statements about Plaintiffs because Plaintiffs were intimately associated with Qatar in the eyes of the consumer.

The third factor clearly favors a finding that the Disinformation Conspiracy was commercial advertising.  "Courts have found commercial speech even when it involves indirect benefits," including improvements to a brand's image.  *Ariix*, 985 F.3d at 1117.  "[T]he type of economic motivation is not the focus; rather, the crux is on whether the speaker had an adequate economic motivation so that the economic benefit was the primary purpose for speaking."  *Id*.  Here, Plaintiffs allege that

---

[6] *See, e.g.*, https://efile.fara.gov/docs/6473-Registration-Statement-20171006-1.pdf at 5 (SCL's October 2017 FARA registration in which SCL selects "advertising campaigns" to describe activities as a foreign agent); https://efile.fara.gov/docs/6473-Supplemental-Statement-20180531-1.pdf at 8 (SCL's May 2018 supplemental filing describing "advertising campaigns"); *see also* Compl. ¶¶ 74 n.6; 72 n.1.

Defendants had an economic motivation for making the unlawful publications—Nader and the Broidy Defendants were paid hundreds of millions of dollars to hire others, such as Ironistic, to make and disseminate the unlawful publications. Compl. ¶¶ 50, 59–61. Further, the statements themselves were designed to drive business from companies like Plaintiffs to their competitors. *Id.* ¶¶ 7, 63, 86. Thus, the publications had an economic motivation.

For these reasons, Defendants' contention that the statements were "inextricably intertwined" with otherwise protected speech must be viewed in the context of their commercial motivation. *See* Nader Mot. at 17:21-18:5. "[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies … and when the allegations referring to arguably protected activity are only incidental to a cause of action based essentially on nonprotected activity, collateral allusions to protected activity should not subject the cause of action to the anti-SLAPP statute." *Martinez v. Metabolife Internat., Inc.*, 113 Cal. App. 4th 181, 188 (2003). As such, "communications can constitute commercial speech notwithstanding the fact that they contain discussions of important public issues . . . . [A]dvertising which links a product to a current public debate is not thereby entitled to the constitutional protection afforded noncommercial speech." *Bd. of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 475 (1989) (quotations omitted); *see also Bolger*, 463 U.S. at 67–68.

Similarly, it is of no moment that Defendants are not themselves in commercial competition with Plaintiffs.[7] *See* Ironistic Mot. at 14:12-20; 22:22-25. "[T]here is no requirement that the Plaintiff and the Defendant be exactly the same type of business"

---

[7] Notably, it is unclear whether commercial competition is still required under the Lanham Act. *See Ariix*, 985 F.3d at 1120 (noting the district court's comment that although this element "is likely in need of revision," it did not need to decide the question because "the parties agreed that *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) likely abrogated the requirement").

- 13 -

1   in order for there to be commercial advertising.  *Nat'l Servs. Grp., Inc. v. Painting &*

2   *Decorating Contractors of Am., Inc.*, 2006 WL 2035465, at *3 (C.D. Cal. July 18,

3   2006).  Indeed, under Defendants' theory, a business competitor could shield

4   themselves of liability merely by using an advertising agency or some other party to

5   run a false advertising campaign against their competitors.  This is not the law and

6   such an approach has been flatly rejected by courts.  *See id.*, at *4 ("Although PDCA .

7   . . does not own or manage painting companies, its members are commercial entities

8   in direct competition with the Plaintiffs. To immunize nonprofit trade groups from

9   product disparagement claims would effectively permit commercial entities to avoid

10  Lanham Act liability by speaking through a larger trade group that itself does not own

11  or operate any business.").  Since the Disinformation Conspiracy was intended to

12  drive Plaintiffs' business to their competitors, it is irrelevant that Defendants

13  themselves are not in competition with Plaintiffs.  *See* Compl. ¶¶ 7, 63, 86.

14      In sum, Defendants should not be allowed to profit from knowingly making

15  false statements to divert business from companies like Plaintiffs to their competitors

16  and then claim that there is no remedy for this conduct because the false statements

17  were "noncommercial."  Given the clear economic purpose and impact of the

18  Disinformation Conspiracy, there is no doubt that these publications constitute

19  commercial advertising.

20          **b.     Plaintiffs Have Established Claims Under the**
                     **Fraudulent and Unlawful Prongs of the UCL**
21

22      The UCL imposes "separate and distinct" liability for fraudulent and unlawful

23  business conduct.  *Kearns*, 567 F.3d at 1127 (9th Cir. 2009).

24      *First*, Plaintiffs have alleged "fraudulent" business action.  Under this prong,

25  "[a]llegations of actual deception, reasonable reliance, and damage are unnecessary."

26  *Comm. On Children's Television v. General Foods Corp.*, 673 P.2d 660, 668 (Cal.

27  1983).  "A UCL claim based on the fraudulent prong can be based on representations

28  that deceive because they are untrue, but 'also those which may be accurate on some

- 14 -

level, but will nonetheless tend to mislead or deceive . . . . A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under' the UCL." *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App. 4th 1235, 1255 (2009). The allegations about the Disinformation Conspiracy easily satisfy this requirement, in that "members of the public are likely to be deceived" given the nature of the misinformation and the length Defendants went to hide their scheme.

*Second*, Plaintiffs have also alleged "unlawful" business action. "The UCL's 'unlawful' prong 'borrows violations of other laws . . . and makes those unlawful practices actionable under the UCL.'" *Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138, 1155 (2018) (quoting *Lazar v. Hertz Corp.*, 69 Cal. App. 4th 1494, 1505 (Cal Ct. App. 1999)). "'[V]irtually any law or regulation—federal or state, statutory or common law—can serve as [a] predicate for [an] . . . 'unlawful' [prong] violation.'" *Id*. (quoting *Paulus v. Bob Lynch Ford, Inc.*, 139 Cal. App. 4th 659, 681 (2006); *see also Corona v. PNC Fin. Servs. Grp., Inc*., 2021 WL 1218258, at *7 (C.D. Cal. Mar. 16, 2021) ("A claim under [the unlawful] prong borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable.") (internal quotations omitted). "The UCL sweeps broadly, embracing anything that can properly be called a business practice and at the same time is forbidden by law." *Coffelt v. Kroger Co.*, 2017 WL 10543343, at *7 (C.D. Cal. Jan. 27, 2017). The Disinformation Conspiracy was conducted, for pay, in order to divert business from Qatari companies such as Mosafer to competitors in other countries, and the knowing falsehoods that were intentionally spread as part of the campaign are plainly unlawful under the common law. *Cf. Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 340 (1974) ("[T]here is no constitutional value in false statements of fact."). In addition, because Defendants spread those falsehoods on behalf of a foreign principle with no disclosure, they also violated a federal statute, FARA, and therefore constitute an unlawful business action under the UCL.

- 15 -

### c. Plaintiffs Have Statutory Standing To Pursue Their UCL and FAL Claims

Defendants erroneously contend that Plaintiffs lack statutory standing under the UCL and FAL because Plaintiffs did not rely on their false statements.  Nader Mot. at 14 n.10; Ironistic Mot. at 13:25-14:11; 17:20-27.  Under Cal. Bus. & Prof. Code § 17204, a plaintiff has standing to pursue a UCL claim if they have "suffered injury in fact and has lost money or property as a result of the unfair competition."  Here, as explained in Section II.F, *supra*, Plaintiffs have been directly injured by the Disinformation Conspiracy and thus have statutory standing to pursue these claims.

In connection with a claim brought by a *consumer*, the California Supreme Court did find that §17204 "imposes an actual reliance requirement on plaintiffs prosecuting a private enforcement action under the UCL's fraud prong."  *See In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).  This conclusion, however, was based on the nature of the consumer's claims and does not apply to competitor's claims. Because a competitor may suffer an injury without relying on the false publications, this reliance requirement does not apply to UCL claims brought by competitors.  *See, e.g.*, *Allergan USA Inc. v. Imprimis Pharms., Inc.*, 2017 WL 10526121, at *13 (C.D. Cal. Nov. 14, 2017) ("[§ 17204]'s purpose of preventing actions by plaintiffs who have not suffered an actual injury does not apply to competitor plaintiffs."); *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, 2021 WL 3417590, at *6–7 (N.D. Cal. Aug. 5, 2021) (finding that a non-consumer plaintiff can allege false advertising claims under the UCL and FAL without alleging its own reliance).  Because Plaintiffs' claims are as a competitor, they are not required to have relied upon the advertisements in order to pursue their claims.

### d. Plaintiffs' UCL Claim Alleges a Sufficient Nexus Between False Statements and California

Ironistic argues that because it "has its principal place of business in Virginia" and because Plaintiffs are "located outside of California, the UCL's presumption

against extraterritoriality necessitates dismissal of Plaintiffs' UCL claim. Ironistic Mot. at 14:22-15:24. This assertion misapplies the law. "[S]tate statutory remedies may be invoked by out-of-state parties when they are harmed by wrongful conduct occurring in California." *TRC & Assocs. v. NuScience Corp.*, 2013 WL 6073004, at *5 (C.D. Cal. Nov. 18, 2013); *see also Precht v. Kia Motors Am., Inc.*, 2014 WL 10988343, at **4–6 (C.D. Cal. Dec. 29, 2014) (denying defendant's motion to dismiss based on extraterritoriality argument). Here, Ironistic is alleged to have conspired with California defendants, Broidy and BCM, and that provides a "sufficient nexus between California and the misrepresentations which form the basis of Plaintiff[s'] claims." *Ehret v. Uber Techs., Inc.*, 68 F. Supp. 3d 1121, 1132 (N.D. Cal. 2014). None of the cases relied upon by Ironistic allege a conspiracy with California co-defendants, and Ironistic cannot claim that the imposition of California law was unforeseeable; it knew the residencies of its co-conspirators. *See In re Mattel*, 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008) (Where the advertising is "reasonably likely to have come from or been approved by" Californians, UCL claims are appropriate).

### 4. Plaintiffs Have Sufficiently Stated A Claim For Negligence

"To state a cause of action for negligence, a plaintiff must allege (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's damages or injuries." *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 944 (2014). Defendants' Motions contend that Plaintiffs' Negligence claim should be dismissed for several reasons, but each of these arguments fails.

### a. The Complaint Alleges A Negligence Claim Based On Defendants' Violation of FARA

First, Defendants erroneously contend that Plaintiffs cannot maintain their Negligence claim against them based on their alleged violations of FARA because (1) Plaintiffs are not entitled to a negligence per se presumption, (2) there is no duty of

- 17 -

1  care arising from FARA, and (3) there are insufficient facts alleging damages.  Nader

2  Mot. at 20:4-21:15; Ironistic Mot. at 19:1-27.

3      Here, Plaintiffs have sufficiently alleged a breach of duty based on Defendants'

4  violations of FARA.  "A duty of care can . . . be grounded in—and hence 'borrowed'

5  from—the public policy embodied in a legislatively enacted statute or ordinance."

6  *Issakhani v. Shadow Glen Homeowners Ass'n, Inc.*, 63 Cal. App. 5th 917, 929 (2021).

7  When a statute "embod[ies] and implement[s] a broad, generally applicable rule of

8  conduct on the basis of general public policy[,] . . . they set forth the same type of

9  fundamental policy decisions that are capable of forming the basis for a duty of care."

10  *Id.* at 930 (internal quotations omitted).  If a statute embodies a fundamental policy, it

11  gives rise to a claim for negligence if "(1) the plaintiff invoking the statute is a

12  member of the class of persons the statute [or ordinance] . . . was designed to protect,

13  and (2) the harm the plaintiff suffered was one the statute [or ordinance] . . . was

14  designed to prevent."  *Id.* at 931 (internal quotations omitted).

15      As explained in Section II.C, *supra*, Plaintiffs allege that Defendants failed to

16  sufficiently register under FARA and label statements appropriately.  *See Meese*, 481

17  U.S. at 469 (FARA was enacted "[t]o protect the national defense, internal security,

18  and foreign relations of the United States by requiring public disclosure by persons

19  engaging in propaganda activities and other activities for or on behalf of foreign

20  governments, foreign political parties, and other foreign principals so that the

21  Government and the people of the United States may be informed of the identity of

22  such persons and may appraise their statements and actions in the light of their

23  associations and activities.") (citation omitted).  Accordingly, FARA embodies a

24  fundamental policy decision that is capable of forming a duty of care.

25      Without labeling, the public believed that the publications were legitimate,

26  and as a result, Plaintiffs lost significant business.  *See, e.g.*, Compl. ¶¶ 91–97.

27  Thus, the harm caused by the Disinformation Conspiracy—public exposure to secret

28  foreign propaganda—was precisely the type of harm that FARA was designed to

- 18 -

1  protect against.[8]  As such, Plaintiffs have sufficiently alleged a duty based on a

2  violation of FARA.[9]

3              **b.**  **Intentional Conduct Does Not Bar A Negligence Claim**

4        Nader's reliance on *U.S. ex rel. Knapp v. Calibre Sys., Inc.*, 2011 WL 4914711,

5  at *4 (C.D. Cal Oct. 17, 2011), for the contention that intentional conduct cannot give

6  rise to a negligence claim is misplaced.  *See* Nader Mot. at 21:9-15.  Rule 8(d) of the

7  Federal Rules of Civil Procedure expressly permits the pleading of both alternative

8  and inconsistent claims.  *Retrophin, Inc. v. Questcor Pharms., Inc.*, 41 F. Supp. 3d

9  906, 917 (C.D. Cal. 2014) ("[Defendant's] argument evinces a fundamental

10  misunderstanding of the liberal pleading policy embodied in [Federal Rule of Civil

11  Procedure 8], which requires the Court not to construe a pleading as an admission

12  against another alternative or inconsistent pleading in the same case.") (internal

13  quotations omitted); *see also Brousseau v. Jarrett*, 73 Cal. App. 3d 864, 870 (1977)

14  ("The first count inconsistently alleges that defendant's conduct was both intentional

---

16  [8] Nader briefly argues that the harm alleged is purely economic which counsels

17  against finding a tort duty of care.  *See* Nader Mot. at 20:24-21:8.  However,
"'[d]eciding whether to impose a duty of care turns on a careful consideration of the

18  sum total of the policy considerations at play, not a mere tallying of some finite, one-
size-fits-all set of factors.'"  *In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab.*

19  *Litig.*, 497 F. Supp. 3d 552, 660 (N.D. Cal. 2020) (quoting *S. California Gas Leak*

20  *Cases*, 7 Cal. 5th 391, 401 (2019)).  As the court held in *JUUL*, the plaintiff alleged
that they were not "simply incidental victims," but rather were uniquely targeted by

21  the defendant's actions.  *See id.* at 660–61.

22  [9] Defendants' contention that the Complaint does not sufficiently allege negligence

23  per se is irrelevant to the viability of Plaintiffs' claims.  "Negligence per se is an
evidentiary presumption that a party failed to exercise due care[.]"  *Lobstein v.*

24  *Washington Mut. Mortg. Pass-Through Certificates WMALT Series 2007-OC1*, 2020

25  WL 3964788, at *3 (C.D. Cal. June 8, 2020).  Here, Plaintiffs are not relying on a
presumption of negligence—they have specifically alleged that FARA created a duty

26  of care, that the Broidy Defendants breached this duty of care, and that as a result of
this breach, Plaintiffs were harmed.  Compl. ¶¶ 128–31.  Accordingly, Plaintiffs do

27  not rely on a negligence per se presumption to state a claim against Defendants.

28

---

and negligent. . . . Such allegations, although contradictory in form, satisfactorily plead negligence in general terms and are not reached by general demurrer.") (internal quotations omitted).

### 5. Plaintiffs Have Sufficiently Stated A Claim For Trade Libel

Nader argues that the Complaint fails to state a claim for Trade Libel because it does not identify "'particular purchasers'" or "specify the transactions'" lost. Nader Mot. at 19:15-23 (quoting *Peterson v. Sanghi*, 2019 WL 1715487, at *9 (C.D. Cal. Feb. 14, 2019)). But the California Court of Appeal decision from which this language is ultimately drawn, however, stated only that identification is required "in the usual case." *Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964). Moreover, it is well-settled that any requirement to identify specific purchasers and transactions is "relaxed" where, as here, false statements are "[w]idely disseminated," and it is difficult to identify specific purchasers and transactions. Rest. 2d Torts § 633, cmt. h (1977); *see also Swiss Am. Trading Corp. v. Regal Assets, LLC*, 2015 WL 631569 at *2–3 (C.D. Cal. Feb. 13, 2015) (finding an allegation of "lost market share" sufficient). Here, the false statements were disseminated across the internet, and the Complaint alleges that consumers were exposed to the Disinformation Conspiracy and then asked questions or expressed concerns about the safety of traveling to Qatar and canceled reservations. Compl. ¶ 92. That is more than sufficient to satisfy Plaintiffs' pleading requirements.

Ironistic asserts that Plaintiffs' Trade Libel claim fails because the Complaint does not allege any statement about the quality of Plaintiffs' goods and services. Not so. The Disinformation Conspiracy's attempts to link Qatar with human rights abuses and extremism implicitly disparaged Plaintiffs' goods because Plaintiffs were branded to be synonymous with Qatar. *See Thee Aguila, Inc. v. Penn Star Ins.*, 2020 WL 6743594, at *4 (C.D. Cal. Sept. 16, 2020) ("Disparagement may be implied: 'the related requirements of derogation and specific reference may be satisfied by implication where the suit alleges that the insured's false or misleading statement

- 20 -

1    necessarily refers to and derogates a competitor's product,' requiring a clear or

2    necessary inference.") (citing *Hartford Cas. Ins. v. Swift Distribution, Inc.*, 59 Cal. 4th

3    277, 294 (2014)).  Thus, the false statements made by Defendants in the

4    Disinformation Conspiracy are actionable injurious falsehoods.[10]

5              **C.    Plaintiffs Have Standing To Pursue Their Injunctive Relief Claims
                       And Are Entitled To Such Relief Because They Have Alleged An
6                      Ongoing Irreparable Injury**

7              Nader contends that Plaintiffs lack standing to seek injunctive relief, and in any

8    event, have not insufficiently alleged that they are entitled to any such relief.  *See*

9    Nader Mot. at 22:3-25:5.  Both of these arguments are based on a fundamental

10   misunderstanding of the relief that Plaintiffs are seeking—Plaintiffs are only seeking

11   injunctive relief ordering that Defendants (1) take down the illegal publications that

12   are currently still online, and (2) stop engaging in the ongoing Disinformation

13   Conspiracy.  *See* Compl. ¶ 13 ("Through this lawsuit, the Mosafer entities seek to hold

14   Defendants accountable for their anticompetitive, deceptive, unfair, and unlawful

15   conduct and to *permanently enjoin them from continuing to perpetuate this conduct*.")

16   (emphasis added).  Given that Plaintiffs are seeking to enjoin ongoing conduct, there

17   can be no doubt that they have standing to pursue their injunctive relief claims.  *See,*

18   *e.g.*, *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017) ("Mandatory

19   injunctions are most likely to be appropriate when the status quo . . . is exactly what

20   will inflict the irreparable injury upon complainant.") (internal quotations omitted).

21             Plaintiffs have alleged facts sufficient to plead a claim for injunctive relief

22   under the factors set forth in *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139,

23

24   [10] Moreover, trade libel is just an application of the more general prohibition against

25   injurious falsehood.  *See* Rest. 2d Torts § 623A.  That prohibition imposes liability on
     any person who "publishes a false statement harmful to the interest of another" if they

26   "know[] that the statement is false" and should recognize that its publication is likely
     to harm the pecuniary interests of the other.  *Id.*; *see also Hartford*, 59 Cal. 4th at 290

27   (endorsing the Restatement's requirements).  Here, Defendants made knowingly false

28   statements about Qatar and their impact on Plaintiffs was foreseeable (and intended).

- 21 -

156–57 (2010).  First, they have alleged both the loss of goodwill and loss of prospective customers which constitutes an irreparable injury which monetary damages cannot sufficiently compensate for.  *See, e.g.*, Compl. ¶¶ 112, 120, 125; *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) ("Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm.").  Moreover, the continuing nature of the Disinformation Conspiracy also renders the injury irreparable because it would require Plaintiffs to bring a new lawsuit for each subsequent publication.  *See, e.g.*, *Broad. Music, Inc. v. Ponderosa Chophouse Enters., Inc.*, 2013 WL 12113406, at *4 (C.D. Cal. June 20, 2013) ("[M]onetary damages are insufficient because, absent an injunction, Plaintiffs would be forced to bring repeated lawsuits against Defendants to recover for ongoing infringement and expend an undue amount of resources in order to enforce their rights.").

Second, "'[t]here is no hardship to a defendant when a permanent injunction would merely require the defendant to comply with law.'"  *Teddy's Red Tacos Corp., v. Theodoro Vazquez Solis Dba Teddy's Red Tacos et al.*, 2021 WL 4517723, at *11 (C.D. Cal. Aug. 16, 2021) (citation omitted).  Here, Plaintiffs are only requesting that the Court enter an injunction ordering Defendants to comply with the law, and thus the balance of hardships favors an injunction.

Finally, ordering Defendants to cease manipulating consumers through the dissemination of disinformation will serve the public interest.  *See id.* (noting that preventing confusion among consumers is in the public's interest); *SATA GmbH & Co. Kg v. Wenzhou New Century Int'l, Ltd.*, 2015 WL 6680807, at *9 (C.D. Cal. Oct. 19, 2015) ("The public has a right to be free from such deception and confusion.").

Accordingly, Plaintiffs have standing to pursue injunctive relief and have sufficiently alleged that they are entitled to it.

**D.    Plaintiffs' Claims Are Not Barred By The Statute of Limitations**

Defendants erroneously contend that Plaintiffs' claims are all barred by the

- 22 -

applicable statute of limitations because their injury occurred beginning mid-2017, over four years before Plaintiffs filed this action.  *See* Nader Mot. at 10:2-11:12; Ironistic Mot. at 12:1-22.  "[B]ecause expiration of the limitations period is an affirmative defense, the Court may only grant Defendant's Motion if it is clear from the face of the Complaint that Plaintiff's claims are time-barred." *Luna Distrib. LLC v. Stoli Grp. (USA), LLC*, 2018 WL 5099277, at *4 (C.D. Cal. July 10, 2018). Accordingly, "'[w]hen a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Cervantes v. City of San Diego*, 5 F.3d 1273, 1275 (9th Cir. 1993) (citations omitted).

Here, Plaintiffs' claims are not barred based on (1) Defendants' concealment of the Disinformation Conspiracy, and (2) the continuing violations and/or continuous accrual doctrine.[11]

### 1. Plaintiffs' Causes Of Action Did Not Accrue Until They Discovered The Broidy Defendants' Wrongdoing

Under the discovery rule, the statute of limitations does not begin to run until "'the plaintiff suspects or should suspect that her injury *was caused by wrongdoing* [.]'" *Ward v. Westinghouse Canada, Inc.*, 32 F.3d 1405, 1407 (9th Cir. 1994) (citing *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 927 (Cal. 1988)) (emphasis in original). "Under California law, knowledge of an injury and its cause does not necessarily imply that any wrongdoing has occurred or that anyone is to blame." *Id.* (citations omitted).  Typically, whether the discovery rule applies is a factual question that cannot be decided on a motion to dismiss.  *See, e.g.*, *Frere v. Medtronic, Inc.*, 2016

---

[11] These doctrines apply equally to both Plaintiffs' state law claims and Lanham Act claim.  *See, e.g.*, *Webb v. Ackerman*, 2014 WL 12770071, at *3 (C.D. Cal. Oct. 9, 2014) ("[F]ederal courts must give effect to a state's tolling provisions.") (citing *Hardin v. Straub*, 490 U.S. 536, 543–44 (1989) and *TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999) ("[W]here the federal courts borrow the state statute of limitations, we also borrow the forum state's tolling rules.")).

1   WL 1533524, at *11 (C.D. Cal. Apr. 6, 2016) ("The question of when accrual

2   occurred under the delayed-discovery rule is generally 'a question of fact unless the

3   evidence can support only one reasonable conclusion.'") (internal quotations omitted).

4          Similarly, courts recognize as "[a] close cousin of the discovery rule" the

5   "accepted principle" of fraudulent concealment, whereby a "defendant's fraud in

6   concealing a cause of action against him tolls the applicable statute of limitations, but

7   only for that period during which the claim is undiscovered by plaintiff or until such

8   time as plaintiff, by the exercise of reasonable diligence, should have discovered it."

9   *Bernson v. Browning-Ferris Indus.*, 7 Cal. 4th 926, 931 (1994) (internal quotation

10  omitted); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).  Thus, "a

11  defendant may be equitably estopped from asserting the statute of limitations when, as

12  the result of *intentional concealment*, the plaintiff is unable to discover the

13  defendant's actual identity."  *Gianni Versace, S.p.A. v. Dardashti*, 2008 WL

14  11338729, at *3 (C.D. Cal. Apr. 21, 2008) (citation omitted) (emphasis in original);

15  *see also Antonick v. Elec. Arts Inc.*, 2011 WL 4501324, at *7 (N.D. Cal. Sept. 27,

16  2011) (holding that equitable tolling of plaintiff's claims under the discovery rule or

17  fraudulent concealment was appropriate and denying defendant's motion to dismiss).

18         Plaintiffs have alleged that Defendants "concealed and buried" both the

19  existence of the Disinformation Conspiracy *and* their involvement in it, and that as a

20  result, Plaintiffs did not uncover the existence of the Disinformation Conspiracy until

21  recently.  *See* Sections II.C-D, *supra*.  As such, the statute of limitations should be

22  tolled.  *See, e.g.*, *Bekins v. AstraZeneca Pharms. LP*, 739 F. App'x 884, 886 (9th Cir.

23  2018) (finding that allegations that plaintiff "neither knew nor had any reason to

24  suspect that her condition was attributable" to the defendant's conduct "sufficiently

25  pleaded her entitlement to tolling of the statute of limitations based upon California's

26  discovery rule."); *see also KLE, Inc. v. Medisca, Inc.*, 2019 WL 4261882, at *4 (C.D.

27  Cal. June 3, 2019) (allegations of delayed discovery were "sufficient to prevent the

28

Court from concluding at this stage of the proceedings that the applicable statutes of limitations bar Plaintiff's claims.").

### 2. The Statute Of Limitations Was Tolled Under The Continuing Violation Or Continuing Accrual Doctrine

"The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1192 (2013). To determine whether the continuing violation doctrine applies, courts look to "whether the violations constitute 'a continuing pattern and course of conduct,' or 'unrelated discrete acts.'" *Komarova v. Nat'l Credit Acceptance, Inc.*, 175 Cal. App. 4th 324, 344 (2009) (citation omitted).

Here, Plaintiffs have alleged that the Disinformation Conspiracy is an ongoing course of conduct that started in mid-2017. Compl. ¶¶ 56, 60–61, 79, 86. Therefore, Plaintiffs have sufficiently plead that the statute of limitations was tolled under the continuing violations doctrine. *See, e.g.*, *Sampson v. Cty. of L.A.*, 2021 WL 4200043, at *5 (C.D. Cal. July 1, 2021). At the very least, Plaintiffs' claims cannot be dismissed based on the continuous accrual doctrine because "a series of wrongs or injuries may be viewed as each triggering its own limitations period, such that a suit for relief may be partially time-barred as to older events but timely as to those within the applicable limitations period." *Aryeh*, 55 Cal. 4th at 1192. This theory is based on the principle that "separate, recurring invasions of the same right can each trigger their own statute of limitations." *Id*. at 1198. Thus, under the continuous accrual doctrine, Defendants remain liable for all publications made within the limitations period.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court deny the Defendants Nader and Ironistic's Motions in their entirety.

DATED:  November 15, 2021                    LARSON LLP

                                             By: /s/ Stephen G. Larson
                                                 Stephen G. Larson
                                                 Koren L. Bell
                                                 Paul A. Rigali
                                                 Jonathan D. Gershon
                                                 Attorneys for Plaintiffs MOSAFER
                                                 INC., MOSAFER E-COM, INC.,
                                                 and GOMOSAFER