John Antoni, Esq., SBN 163738
ANTONI ALBUS, LLP
11836 W. Pico Boulevard
Los Angeles, California 90064
Tel.: (310) 954-8020
Facsimile: (310) 954-8988
Email: Antoni@aallp.net

William Pittard, Esq. (*Pro Hac Vice*)
Courtney Forrest, Esq. (*Pro Hac Vice*)
KAISERDILLON PLLC
1099 14th Street NW
8th Floor West
Washington, DC 20005
Tel: (202) 640-2850
Facsimile: (202) 280-1034
Email: wpittard@kaiserdillon.com
Email: cforrest@kaiserdillon.com

Attorneys for Defendant George Nader

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MOSAFER INC.; MOSAFER E-COM, INC.; AND GOMOSAFER<br><br>Plaintiffs,<br><br>v.<br><br>ELLIOT BROIDY; GEORGE NADER; BROIDY CAPITAL MANAGEMENT, LLC; CIRCINUS, LLC; THE IRON GROUP INC. D/B/A/ IRONISTIC.COM; SCL SOCIAL LIMITED; PROJECT ASSOCIATES UK LTD; MATTHEW ATKINSON; AND JOHN DOES 1-100,<br><br>Defendants. | CASE NO.: 2:21-cv-06320-MCS-JC<br><br>**REPLY IN SUPPORT OF DEFENDANT GEORGE NADER'S MOTION TO STRIKE (CAL. CODE OF CIV. PROC. § 425.16) OR, ALTERNATIVELY, TO DISMISS COMPLAINT (FRCP 12(b)(1) AND 12(b)(6)); MEMORDANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:   December 6, 2021<br>Time:   9:00 a.m.<br>Crtrm.: 7C<br>Before: Hon. Mark C. Scarsi |

# INTRODUCTION

Plaintiffs tacitly concede that their Complaint asks this Court to do two extraordinary things. First, it seeks to impose a theory of liability that would allow *any* business "intimately associated with [a country] in the eyes of the consumer" to sue *anyone* who is critical of that country for *any* reason. *See* ECF No. 83 (Plaintiffs' Opposition) at 3. They do not dispute that that is the necessary extension of their argument, *see* ECF No. 61 (Nader Motion to Strike) at 1, nor offer this Court any limiting principle whatsoever. Because none exists.

Second, Plaintiffs *do not dispute* that to meet the pleading requirements of Rule 9(b), they were required to plead facts suggesting that Nader *knew* it was supposedly false that Qatar supports terrorism—even though the State Department, the Treasury Department and the current National Security Adviser all publicly have said the exact opposite. *Id.* at 13.

As those things (and more) illustrate, Plaintiffs' real intent in filing this lawsuit is not to advance plausible legal theories, or to assert facts it has any chance of proving; it is to suppress the political speech of longtime critics of Qatar. That is precisely the kind of conduct anti-SLAPP laws are meant to prevent. Their Complaint should be stricken, or in the alternative dismissed.

# ARGUMENT

## I. Nader Is Not Liable For Acts Of Other Defendants Under Conspiracy Or Agency Theories.

First, Plaintiffs fail to address Nader's argument that they cannot adequately plead conspiracy with "bare assertions of agreement" or indiscriminate claims that "conspiracies existed between and among all defendants." ECF No. 61 at 4-5. Plaintiffs have not pled facts connecting Nader to any defendant other than Broidy, and thus Nader is not liable for the alleged acts of any other defendant.

Further, the various agreements between Broidy and Nader alleged in the Complaint do not constitute an unlawful conspiracy because they did not agree to

engage in activity that was wrongful *as to Plaintiffs*. *See* ECF No. 61 at 5.[1] Broidy's and Nader's alleged agreement to lobby the U.S. government about political and economic issues concerning a foreign country—Qatar—is *not* an agreement to harm Plaintiffs, who are *American* businesses that Nader had never heard of. *See* ECF No. 1 ¶¶ 7, 9, 17-18.

Finally, Plaintiffs argue that they have alleged Nader's vicarious liability for acts committed by an agent. *See* ECF No. 83 at 10. They point to vague allegations that "Defendants paid influencers to create conferences to engrain falsehoods…" and, further, that Broidy and Nader hired American companies and actors to use media to "disseminate disinformation." ECF No. 1 ¶¶ 10, 61. But agency requires that the agent be "subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 448 (9th Cir. 2018). And the Complaint alleges no facts about Nader's supposed control over unnamed "influencers," "actors," or "American companies," ECF No. 1 ¶¶ 10, 61, nor does it plead facts identifying the "'course and scope'" of the agency or tortious acts that were purportedly "'directed or authorized,'" as even its own cases require. *See* ECF No. 83 at 9-10 (citations omitted). This is fatal to Plaintiffs' fraud-by-agency theory under Rule 9(b). *See Lomeli v. Jackson Hewitt, Inc.*, 2017 WL 4773099, at *4 (C.D. Cal. Oct. 19, 2017) (as to fraud-by-agency, "Rule 9(b) requires that the existence of the agency relationship be pled with particularity") (brackets omitted).

## II. The Illegal Activity Exception To The Anti-SLAPP Statute Does Not Apply.

Plaintiffs claim that Nader may not invoke California's anti-SLAPP statute because Defendants' speech allegedly violated FARA and thus was illegal as a matter of law. ECF No. 83 at 7. That argument fails for several reasons.

---

[1] Plaintiffs apparently misunderstood this point in Nader's Motion. *See* ECF No. 83 at 9 n.4.

First, the illegal activity exception is much narrower than Plaintiffs imply. The anti-SLAPP law will apply unless "the defendant 'concedes' or 'uncontroverted and conclusive evidence' establishes the speech or petitioning activity is illegal." *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1121 (9th Cir. 2017). "[M]erely asserting the existence of illegal activity and, indeed, even providing *some evidence* of illegal activity, is insufficient to preclude a defendant's use of California's anti-SLAPP statute." *Ekorus, Inc. v. Elohim EPF USA, Inc.*, No. CV 20-310-GW-GJSx, 2020 WL 3891449, *3 (C.D. Cal. Apr. 24, 2020) (emphasis in original). Plaintiffs thus bear the burden of "conclusively proving the illegal conduct" in order to invoke the exception. *Id.* Nader "does not have to *establish* [that his] actions are constitutionally protected" to meet his burden under the first prong of the anti-SLAPP statute. *Flatley v. Mauro*, 139 P.3d 2, 11 (Cal. 2006).

None of the defendants have admitted criminal liability under FARA. And Plaintiffs have not sufficiently alleged—let alone "conclusively prov[en]"—that Nader violated FARA. Though the Court must draw *factual* inferences in Plaintiffs' favor at this stage, it may not do so for unsupported *legal* conclusions.

Second, Plaintiffs fail to address the cases cited in Nader's Motion, which clearly state that FARA "places no burden on protected expression." *Meese v. Keene*, 481 U.S. 465, 480 (1987); *see also Attorney General of U.S. v. The Irish People, Inc.*, 612 F. Supp. 647, 654 (D.D.C. 1985). Plaintiffs cite no authority for their bald assertion that *if* Nader or other defendants failed to register under FARA *when required to do so*—which, again, Plaintiffs have not proven—such failure would render the speech itself illegal as a matter of law.

Third, Plaintiffs have not contested that, if the illegal activity exception does not apply, all of the purported "disinformation" statements about Qatar and its ties to terrorism are constitutionally protected speech. *See* ECF No. 61 at 7:15–8:21. Nader has made a prima facie showing that the Defendants' actions are

constitutionally protected speech, thus satisfying the first prong of the anti-SLAPP analysis. *See* ECF No. 61 at 7:13-9:22.

### III. Plaintiffs Fail To Plead Either Fraud Or Negligence.

Plaintiffs do nothing to show that their claims are pled with the particularity required by Rule 9(b). *See* ECF No. 83 at 7-8. They do not dispute that Nader made *none* of the specific statements they allege in the Complaint. *See* ECF No. 61 at 12. And they do not dispute that the Complaint lacks factual assertions suggesting that any statements about Qatar funding terrorism would have been *knowingly* false. *Id.* at 14. No such allegations would have been plausible even if they had been made: They would require a factfinder to conclude that Nader knew better on these matters than the State Department, the Treasury Department, and the current National Security Adviser. *Id.* at 13.

Plaintiffs try to sidestep these issues as to their negligence claim by asserting that no heightened pleading standard applies to it. ECF No. 83 at 8. But when (as here) a plaintiff's claim is one of negligent misrepresentation, they must adequately plead the same "who," "when," "where," "how," "and what" required by a fraud claim. *Townsend v. Chase Bank USA N.A.*, No., 8:08-cv-527-AG, 2009 WL 426393, at *4 (C.D. Cal. Feb. 15, 2009). But that is almost beside the point, because Plaintiffs also *do not dispute* that they plead no actual facts showing that Nader *negligently*, as opposed to intentionally, misrepresented facts about Qatar— not a single fact explaining why Nader (or anyone else on the planet, in fact) *could know* or *should have known* that Qatar supposedly does not sponsor or finance terrorism. It is obviously true that parties *can* plead irreconcilable claims, *see* ECF No. 83 at 19-20; Plaintiffs simply haven't done so. As to negligence, they plead no facts in support; they plead only the label.[2]

---

[2] Plaintiffs' half-hearted argument that "mere negligence" can suffice to support false advertising claims, *see* ECF No. 83 at 8, fails for this same reason—Plaintiffs consistently plead only intentional misconduct.

Plaintiffs thus resort to a theory of negligence *per se*, yet admit—as they must—that it lies only where a plaintiff is from a "'class of persons the statute . . . was designed to protect'" and the harm the plaintiff suffers is the kind that the statute "'was designed to prevent.'" ECF No. 83 at 18 (citation omitted). But FARA creates no such class, *see* ECF No. 61 at 20, a point to which the Opposition (again) offers no response. And economic harm manifestly is not the kind of harm FARA was designed to address. *Meese*, 481 U.S. at 469 (FARA designed "to protect the national defense, internal security, and foreign relations of the United States"). Even if Plaintiffs could meet the other requirements of Cal. Evid. Code § 669(a)(1),[3] their negligence claim would fail.

## IV. This Case Has Nothing To Do With Commercial Speech.

Plaintiffs' UCL, FAL, and Lanham Act claims are fatally flawed because all of the statements identified in the Complaint are non-commercial, political speech. The Court should not conduct a *Bolger* analysis because of the clear delineation between commercial advertising and Defendants' protected political speech, to which these laws do not apply. Plaintiffs' reliance on *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107 (9th Cir. 2021) is misplaced. *See* ECF No. 53 at 5-6. *Ariix* addressed a commercial dispute between competitors that marketed nutritional supplements; it is not factually or legally analogous to this case.

The *Bolger* factors, in any event, would sink Plaintiffs' claims. Even if Nader had an economic motivation for his political speech, the third *Bolger* factor could not outweigh Plaintiffs' failure on the first two.

---

[3] Plaintiffs' argument that this Code provision does not apply to their negligence *per se* theory is incoherent. As their own case acknowledges, negligence *per se* is merely "'an evidentiary presumption'" that violating a statute amounts to breaching a duty of care. Opp. at 19 n. 9 (citation omitted). Plaintiffs do not argue that anything *particular* to Nader's alleged violation of FARA is why his violation also amounted to a breach of a duty of care; their argument is that his mere violation—or *any* mere violation of FARA—amounts to a breach of a duty of care. That is precisely the "evidentiary presumption" they purport to disclaim.

1    First, Defendants' speech was not *commercial advertising*. Even Plaintiffs agree that "the statements were not in the traditional form of an advertisement." ECF No. 83 at 11. SCL's checking a box labeled "advertising campaigns" on its FARA registration does not make its activity commercial. *See id.* at 12 & n.6. SCL's FARA registrations describe the nature of its business activity as "global political and election communication services" and reflected "ad buys" on Facebook, Twitter, and other platforms that are thus *political* advertisements; they are not *commercial* ones.[4]

Second, Defendants' speech involved no *product*. Plaintiffs argue that commercial speech may refer to a product generically rather than by name, but they have failed to identify any *product* referenced even generically in Defendants' speech— only "disparaging comments" about Qatar, a *place*. *See* ECF No. 83 at 12. The plain meaning of "product" is "something that is made or grown to be sold or used."[5] A foreign country is not a "product."

Further, Plaintiffs' argument that Defendants' speech should be "viewed in the context of their commercial motivation," ECF No. 83 at 22, is utterly inconsistent with Plaintiffs' insistence that Nader violated FARA (which he did not). *See, e.g.*, ECF No. 1 ¶¶ 6, 48-59; ECF No. 83 at 1, 6-7, 9. "[T]he Act's reporting and disclosure requirements are expressly conditioned upon a finding that speech on behalf of a foreign principal has *political or public-policy content*." *Meese v. Keene*, 481 U.S. 465, 478 (1987) (emphasis added). FARA thus defines an "agent of a foreign principal" as a person who "(i) engages . . . in *political activities*" or "(ii) acts within the United States as a public relations counsel,

---

[4] *See* https://efile.fara.gov/docs/6473-Registration-Statement-20171006-1.pdf at 2, 7.

[5] *See* Merriam-Webster dictionary, *available at* https://www.merriam-webster.com/dictionary/product?utm_campaign=sd&utm_medium=serp&utm_source=jsonld (last visited Nov. 18, 2021).

publicity agent, information-service employee or *political consultant*."[6] 22 U.S.C. § 611(c) (emphases added). Those who engage only "in private and nonpolitical activities in furtherance of the bona fide *trade or commerce* of such foreign principal" are expressly exempt from FARA's registration requirements. *Id.* § 613(d) (emphasis added). To the extent Plaintiffs claim Defendants violated FARA, Plaintiffs necessarily concede that the alleged "disinformation" statements were political, not commercial.[7]

### V. Plaintiffs' Trade Libel Claim Is Defective.

As to Rule 9(g)'s requirement that Plaintiffs plead "special damages" to maintain their trade libel claim, Plaintiffs concede, as they must, (1) that *Peterson v. Sanghi*, No. 8:18CV2000, 2019 WL 1715487, at *9 (C.D. Cal. Feb. 14, 2019), requires that they plead "particular purchasers who have refrained from dealing with them" and "specif[ic]" "transactions of which they claim to have been deprived," *and* (2) that they have failed to do so.

Instead, Plaintiffs note a much earlier case, *Erlich v. Etner*, 224 Cal. App. 2d 69, 73 (1964), which assertedly cabined the *Peterson* requirements to "the usual case." That argument gets them nowhere. Even *Erlich* held that it is "*nearly always*" "not enough to show a general decline in [a plaintiff's] business resulting from the falsehood, even where no other cause is apparent, and that it is only the loss of specific sales that can be recovered." *Erlich*, 224 Cal. App. 2d at 73 (emphasis added). It then proceeded to apply the "nearly always" standard—and to hold for the defendants—in circumstances *just like* those alleged here; i.e., in which a plaintiff business alleged that certain individuals and entities conspired to generate false and negative publicity regarding the plaintiff. Plaintiffs do not even

---

[6] Section 611(c)(iii) and (iv) describe activities not at issue in this case.

[7] At minimum, any commercial speech here is "inextricably intertwined" with political speech and deserves full First Amendment Protection. *See Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 906 (9th Cir. 2002)

attempt to describe, much less plead, their case as anything outside the "usual case"—much less the "nearly always" case—for trade libel purposes.

Even if *Erlich* offered Plaintiffs any daylight at all (it does not), the *Peterson* standard is unquestionably the law today. *See, e.g.*, *Homeland Housewares, LLC v. Euro-Pro Operating LLC*, No. CV 14-3954 DDP, 2014 WL 6892141, at *4 (C.D. Cal. Nov. 5, 2014) (allegations of "lost sales, market share, and customer goodwill" are insufficient to plead requisite special damages; no caveats).[8]

## VI. Plaintiffs' Claims Are Untimely.

Plaintiffs offer two defective reasons why their claims are supposedly timely. First, they suggest that, while they knew of their injury long ago, they only "recently" learned of the alleged wrongdoing and/or the identity of one or more unidentified defendants. *See* ECF No. 83 at 24. But such an argument runs head-long into the authority already cited in Nader's initial memorandum. *See* ECF No. 61 at 10-11. And the Complaint includes no alleged facts rendering their assertion plausible, particularly as to Nader. Nor could it.[9] Even if a "discovery rule" were available (it is not), they have not properly pled it, and cannot do so.[10]

Second, Plaintiffs argue a "continuing violation" or "continuing accrual" exception. ECF No. 83 at 25. Given the claims alleged by Plaintiffs, however, those exceptions cannot save them. *See, e.g.*, *Jarrow Formulas, Inc. v. Nutrition*

---

[8] *Cf. Swiss Am. Trading Corp. v. Regal Assets, LLC*, 2015 WL 631569 at *2-3 (C.D. Cal. Feb. 13, 2015) (cited by Plaintiffs for supposedly imposing relaxed standard, but doing so only where issued briefed only cursorily and where parties, unlike here, were in direct commercial competition)

[9] *See, e.g.*, Desmond Butler & Tom LoBianco, *The princes, the president and the fortune seekers*, AP News (May 21, 2018) (laying out, more than three years before Plaintiffs filed their complaint, the same allegations now parroted by Plaintiffs, including regarding Nader).

[10] *See also, e.g.*, *WA Southwest 2, LLC v. First American Title Ins. Co.*, 240 Cal. App. 4th 148, 157 (2015) ("A plaintiff relying on the discovery rule must plead (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence. Plaintiffs have an obligation to plead facts demonstrating reasonable diligence.") (quotation marks and citations omitted).

*Now, Inc.*, 304 F.3d 829, 837, 842 (9th Cir. 2002) (as to claims under the Lanham Act, as well as California's Unfair Competition and False Advertising laws: "We hold that the presumption of laches is triggered if any part of the claimed wrongful conduct occurred beyond the limitations period."). Plaintiffs do not plead in a non-cursory way a single allegedly wrongful act beyond "October 14, 2017," ECF No. 1 ¶ 83—i.e., more than three and three-quarter years before Plaintiffs actually filed this action—and even that alleged wrongful act (the uploading of a video—by a different defendant—criticizing Qatar's connections to ISIS) is, on its face, merely the expression of political opinion and thus cannot support Plaintiffs' allegations of wrongdoing.

## VII. Plaintiffs Are Not Entitled To Injunctive Relief.

Notwithstanding Plaintiffs' effort to rewrite their claim for injunctive relief, they still lack standing to seek, and still have not alleged a basis for, such relief. Plaintiffs never have alleged that Nader put up any online content; he certainly cannot take any down. *See, e.g.*, *Foster v. Blue Shield of California*, 2007 WL 9770652, *3 (C.D. Cal. Feb. 5, 2007) (plaintiffs lack standing for particular relief where Court cannot order redress). And Plaintiffs' "stop tort-ing me" demand is not only impossibly vague, *see* ECF No. 44 at 11-12, but again makes no sense regarding Nader, who, per the Complaint, is incarcerated, *see* ECF No. 1 ¶ 24, thereby precluding plausible allegations of the requisite "imminent" harm, *e.g.*, *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).

Plaintiffs also make no effort to address other deficiencies identified by Nader, including that any threat of injury they face depends on speculation about the possible future behavior of third parties (consumers of "high-end" travel services). *See* ECF No. 61 at 22-23. On the strength of these arguments and because Plaintiffs have defaulted as to them, the Court should strike Plaintiffs' demand for injunctive relief. *See, e.g.*, *Creamer v. Starwood Hotels & Resorts Worldwide, Inc.*, CV 16-9321-DSF, 2017 WL 2992739, *2 n.1 (C.D. Cal. May 11,

2017) ("By failing to address [certain of defendant's arguments], Plaintiffs concede their merit.") (citing cases).

Even if Plaintiffs had standing to seek injunctive relief as to Nader, their arguments (and citations exclusively to copyright and trademark infringement cases), *see* ECF No. 83 at 22, are not persuasive on their face. Plaintiffs' Complaint is all about supposed lost revenue, a death knell to their claim for injunctive relief in the best of circumstances, let alone here, where they seek to muzzle political speech about a nation state. *See* ECF No. 61 at 24.

## CONCLUSION

For the reasons discussed, the Court should strike Plaintiffs' complaint and award the Nader fees and costs under Cal. Civ. Proc. Code § 425.16(c)(1). Alternatively, the Court should dismiss the Complaint for lack of standing and failure to state a claim upon which relief can be granted.

November 22, 2021

Respectfully submitted,

ANTONI ALBUS, LLP

By: /s/ John Antoni
John Antoni, Esq. (SBN 163738)
11836 W. Pico Boulevard
Los Angeles, CA 90064
Telephone: (310) 954-8020
Facsimile: (310) 954-8988
Email: Antoni@aallp.net

-and-

KAISERDILLON PLLC
William Pittard (*pro hac vice*)
Courtney Forrest (*pro hac vice*)
1099 14th Street NW
8th Floor West
Washington, DC 20005
Telephone: (202) 640-2850
Facsimile: (202) 280-1034

Email: wpittard@kaiserdillon.com
Email: cforrest@kaiserdillon.com

Attorneys for Defendant George Nader

**CERTIFICATE OF SERVICE**

I certify that, on November 22, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

/s/ *John Antoni*
John Antoni