Stephen G. Larson (SBN 145225)
*slarson@larsonllp.com*
Koren L. Bell (SBN 268614)
*kbell@larsonllp.com*
Paul A. Rigali (SBN 262948)
*prigali@larsonllp.com*
Jonathan Gershon (SBN 306979)
*jgershon@larsonllp.com*
**LARSON LLP**
555 South Flower Street, Suite 4400
Los Angeles, California 90071
Telephone:(213) 436-4888
Facsimile: (213) 623-2000

Attorneys for Plaintiffs and Counterclaim
Defendants MOSAFER INC.; MOSAFER
E-COM, INC.; GOMOSAFER; ABU
ISSA HOLDINGS; ASHRAF ABU ISSA;
and NABIL ABU ISSA

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| MOSAFER INC.; MOSAFER E-COM, INC.; AND GOMOSAFER,<br><br>Plaintiffs,<br><br>v.<br><br>ELLIOTT BROIDY; GEORGE NADER; BROIDY CAPITAL MANAGEMENT, LLC; CIRCINUS, LLC; THE IRON GROUP INC. D/B/A IRONISTIC.COM; SCL SOCIAL LIMITED; PROJECT ASSOCIATES UK LTD; MATTHEW ATKINSON; AND JOHN DOES 1-100,<br><br>Defendants.<br><br>_____<br><br>AND RELATED COUNTERCLAIMS | Case No. 2:21-cv-06320-MCS-JC<br><br>[Assigned to Hon. Mark C. Scarsi]<br><br>**MOSAFER PARTIES' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO STRIKE OR ALTERNATIVELY, TO DISMISS THE BROIDY DEFENDANTS' CALIFORNIA STATE LAW COUNTERCLAIMS AND TO DISMISS REMAINING CLAIMS**<br><br>Date:      January 24, 2022<br>Time:     9:00 a.m.<br>Place:    Courtroom 7C<br><br>[Filed concurrently with Notice of Motion and Motion and Declaration of Paul A. Rigali] |

# <u>TABLE OF CONTENTS</u>

Page

I.    INTRODUCTION ........................................................................... 1

II.   RELEVANT FACTUAL ALLEGATIONS ........................................... 3

    A.   Broidy Has A Lengthy History of Filing Lawsuits And Courts Have Already Dismissed The Claims Brought Here ....... 3

    B.   There Is No Evidence Of A Conspiracy ....................................... 7

III.  LEGAL STANDARD ..................................................................... 8

IV.   LEGAL ARGUMENT ..................................................................... 9

    A.   The Broidy Defendants' Abuse of Process Claim Should Be Stricken Pursuant To California's Anti-SLAPP Statute .............. 9

        1.   The Broidy Defendants' Abuse of Process Claim Arises From Protected Activity ........................................ 10

        2.   The Broidy Defendants Cannot Satisfy Their Burden Of Showing They Are Likely To Prevail On Their Abuse Of Process Claim ................................................... 10

        3.   In The Alternative, The Court Should Dismiss The Abuse Of Process Claim Under Rule 12(b)(6) ................. 15

    B.   The Broidy Defendants Fail To State A Claim For Business Conspiracy Under Virginia Law ............................................... 15

        1.   Virginia Law Does Not Apply To This Action ................ 15

        2.   Even if Virginia Law Applied, The Mosafer Parties Are Immune From The Virginia Conspiracy Claim ......... 16

        3.   The Counterclaims Also Fail Because They Do Not Sufficiently Allege A Claim Under A Business Conspiracy Theory .............................................................. 17

    C.   The Broidy Defendants Fail To State  Claim Under the RICO Act ................................................................................. 21

V.    CONCLUSION ............................................................................. 25

-i-

MOSAFER PARTIES' MEMO. OF POINTS AND AUTHORITIES ISO MTN. TO STRIKE OR ALTERNATIVELY,
TO DISMISS THE CA. STATE LAW COUNTERCLAIMS AND TO DISMISS REMAINING CLAIMS

1

# <u>TABLE OF AUTHORITIES</u>

2

Page(s)

3

<u>Cases</u>

4

5    *Agbapuruonwu v. NBC Subsidiary (WRC-TV), LLC,*
        821 F. App'x 234 (4th Cir. 2020), *cert. denied sub nom.*, 141 S. Ct.
6        1393 (2021) ................................................................................................ 16

7    *Anza v. Ideal Steel Supply Corp.,*
        547 U.S. 451 (2006) .................................................................................... 23
8

9    *Area 55, LLC v. Nicholas & Tomasevic, LLP,*
        275 Cal. Rptr. 3d 519 (Cal. Ct. App. 2021) .............................................. 11
10

11   *Ashcroft v. Iqbal,*
        556 U.S. 662 (2009) .................................................................................. 8, 9
12

13   *Bay Tobacco, LLC v. Bell Quality Tobacco Prod., LLC,*
        261 F. Supp. 2d 483 (E.D. Va. 2003) .......................................... 17, 18, 19
14

15   *Beck v. Prupis,*
        529 U.S. 494 (2000) .................................................................................... 24

16
     *Bell Atl. Corp. v. Twombly,*
17      550 U.S. 544 (2007) ...................................................................................... 9

18   *Broidy Capital Mgmt., LLC v. Benomar,*
        944 F.3d 436 (2d Cir. 2019) .......................................................................... 6
19

20   *Broidy Capital Mgmt., LLC v. Benomar,*
        No. 7:18-cv-06615-CS (S.D.N.Y. July 23, 2018) ................................... 1, 6
21

22   *Broidy Capital Mgmt., LLC v. Muzin,*
        2020 WL 1536350 (Mar. 31, 2020) .............................................5, 21, 22, 24
23

24   *Broidy Capital Mgmt., LLC v. Muzin,*
        No. 1:19-cv-0150-DLF (D.D.C. Jan. 24, 2019) ............................... 1, 4, 5
25

26   *Broidy Capital Mgmt., LLC v. Muzin,*
        No. 20-7040 (D.C. Cir. Sept. 3, 2021) ........................................................ 5

27

28

*Broidy Capital Mgmt., LLC v. Qatar*,
  2018 WL 6074570 (C.D. Cal. Aug. 8, 2018), *aff'd on other grounds
  sub nom.*, 982 F.3d 582 (9th Cir. 2020), *cert. denied*, 141 S. Ct.
  2704 (June 1, 2021) ..................................................................................... 4

*Broidy Capital Mgmt., LLC v. Qatar*,
  No. 2:18-cv-02421-JFW-E (C.D. Cal. Mar. 26, 2018) ...............................*passim*

*Broidy v. Global Risk Advisors LLC*,
  2021 WL 1225949 (S.D.N.Y. Mar. 31, 2021)............................................... 6

*Broidy v. Global Risk Advisors LLC*,
  No. 1:19-cv-11861-MKV (S.D.N.Y. Dec. 27, 2019)................................ 1, 6

*Bryant-Shannon v. Hampton Roads Cmty. Action Program, Inc.*,
  299 Va. 579 (2021).................................................................................... 17

*Chan v. FIA Card Services*,
  2010 WL 11558108 (C.D. Cal. Oct. 28, 2010) ......................................... 12

*Citizens of Human., LLC v. Ramirez*,
  277 Cal. Rptr. 3d 501 (Cal. Ct. App. 2021), *review denied* (Aug. 11,
  2021)........................................................................................................... 11

*CJM Fin., Inc. v. Leebcor Servs., LLC*,
  2021 WL 1256906 (E.D. Va. Apr. 5, 2021) ............................................. 19

*Coleman v. Gulf Ins. Grp.*,
  718 P.2d 77 (Cal. 1986)............................................................................. 12

*Darnell v. Davis*,
  190 Va. 701 (1950).................................................................................... 17

*DaVinci Aircraft, Inc. v. U.S.*,
  926 F.3d 1117 (9th Cir. 2019) .................................................................. 12

*Drasin v. Jacoby & Meyers*,
  197 Cal. Rptr. 768 (Cal. Ct. App. 1984) .................................................. 12

*Drexler v. Billet*,
  2018 WL 6920117 (C.D. Cal. June 12, 2018), *aff'd*, 784 F. App'x
  548 (9th Cir. 2019) ...................................................................................... 9

-iii-

*Dunlap v. Cottman Transmission* Sys*., LLC*,
   287 Va. 207 (2014) ................................................................... 17

*Fairfax v. CBS Broad. Inc.*,
   2020 WL 10147131 (E.D. Va. Feb. 11, 2020), *aff'd sub nom.*,
   *Fairfax v. CBS Corp.*, 2 F.4th 286 (4th Cir. 2021) .................... 16

*Fairfax v. CBS Corp.*,
   2 F.4th 286 (4th Cir. 2021) ....................................................... 15

*Flatley v. Mauro*,
   139 P.3d 2 (Cal. 2006) ............................................................... 11

*Future Ads LLC v. Gillman*,
   2013 WL 12306479 (C.D. Cal. Dec. 23, 2013) .......................... 14

*Gov't Emps. Ins. v. Google, Inc.*,
   330 F. Supp. 2d 700 (E.D. Va. 2004) ........................................ 18

*Guillory v. WFS Fin., Inc.*,
   2007 WL 879017 (N.D. Cal. Mar. 21, 2007) .............................. 14

*H.J. Inc. v. Nw. Bell Tel. Co.*,
   492 U.S. 229 (1989) ................................................................... 22

*Hagberg v. California Fed. Bank*,
   81 P.3d 244 (Cal. 2004) ............................................................. 11

*Hurtado v. Superior Ct.*,
   11 Cal. 3d 574 (1974) ................................................................ 15

*JSJ Ltd. P'ship v. Mehrban*,
   141 Cal. Rptr. 3d 338 (Cal. Ct. App. 2012) ....................... 10, 12

*Kearney v. Foley & Lardner, LLP*,
   607 F. App'x 757 (9th Cir. 2015) .............................................. 22

*King v. Darden*,
   2018 WL 3651590 (E.D. Va. Aug. 1, 2018) ............................... 20

*Lamoon, Inc. v. Alfalfa Nail Supply Inc.*,
   2008 WL 11338609 (C.D. Cal. Oct. 14, 2008), *aff'd sub nom.*,
   *Lamoon, Inc. v. Lamour Nail Prod., Inc.*, 373 F. App'x 795 (9th Cir.
   2010) .......................................................................................... 10

-iv-

*Livia Props., LLC v. Jones Lang LaSalle Ams., Inc.*,
  2015 WL 4711585 (W.D. Va. Aug. 7, 2015), *aff'd sub nom.*, *Livia
  Props., II, LLC v. Jones Lang LaSalle Ams., Inc.*, 646 F. App'x 322
  (4th Cir. 2016) ................................................................................... 19

*Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*,
  431 F.3d 353 (9th Cir. 2005) ............................................................ 20

*Makaeff v. Trump Univ., LLC*,
  715 F.3d 254 (9th Cir. 2013) .............................................................. 9

*Mattel, Inc. v. MGA Ent't, Inc.*,
  2010 WL 11463911 (C.D. Cal. Sept. 3, 2010) .................................... 24

*Methodist Hosp. of S. California v. Blue Cross of California*,
  2010 WL 11508022 (C.D. Cal. Feb. 26, 2010) ................................... 21

*Nautilus, Inc. v. Chunchai Yu*,
  2011 WL 13213575 (C.D. Cal. Dec. 19, 2011).................................... 25

*Navellier v. Sletten*,
  52 P.3d 703 (Cal. 2002)..................................................................... 10

*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss, & Karma,
  Inc.*,
  728 P.2d 1202 (Cal. 1986).................................................................. 13

*OSU Student All. v. Ray*,
  699 F.3d 1053 (9th Cir. 2012) ............................................................. 9

*United States v. Persico*,
  832 F.2d 705 (2d Cir. 1987), *cert. denied*, 486 U.S. 1022 (1988) ....... 21

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
  890 F.3d 828 (9th Cir.), *amended*, 897 F.3d 1224 (9th Cir. 2018) ........ 9, 10

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) ........................................................................... 23

*Rogers v. Deane*,
  992 F. Supp. 2d 621 (E.D. Va. 2014), *aff'd*, 594 F. App'x 768 (4th
  Cir. 2014)...................................................................................... 17, 20

-v-

MOSAFER PARTIES' MEMO. OF POINTS AND AUTHORITIES ISO MTN. TO STRIKE OR ALTERNATIVELY,
TO DISMISS THE CA. STATE LAW COUNTERCLAIMS AND TO DISMISS REMAINING CLAIMS

*Rusheen v. Cohen*,
    128 P.3d 713 (Cal. 2006) .................................................................. 11

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) ........................................................................ 23

*Sheldon Appel Co. v. Albert & Oliker*,
    765 P.2d 498 (Cal. 1989) .................................................................. 11

*Silberg v. Anderson*,
    786 P.2d 365 (Cal. 1990) .................................................................. 11

*Soranno's Gasco, Inc. v. Morgan*,
    874 F.2d 1310 (9th Cir. 1989) ......................................................... 16

*Spellens v. Spellens*,
    317 P.2d 613 (Cal. 1957) .................................................................. 13

*Spencer v. Am. Int'l Grp., Inc.*,
    2009 WL 47111 (E.D. Va. Jan. 6, 2009) ......................................... 17

*Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*,
    191 F. Supp. 2d 652 (E.D. Va. 2002) ............................................. 20

*SuperGuide Corp. v. Gemstar Dev. Corp.*,
    2010 WL 11463159 (C.D. Cal. June 3, 2010) ................................. 13

*T.P. v. Walt Disney Parks & Resorts U.S., Inc.*,
    2021 WL 3598574 (C.D. Cal. Apr. 20, 2021) .................................. 15

*Trendmood, Inc. v. Rabinowitz*,
    2021 WL 4815954 (C.D. Cal. June 21, 2021) ................................. 14

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ........................................................... 9

*Vuyyuru v. Jadhav*,
    2011 WL 1483725 (E.D. Va. Apr. 19, 2011) .................................. 19

*Walter v. Drayson*,
    538 F.3d 1244 (9th Cir. 2008) ......................................................... 23

*In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*,
    865 F. Supp. 2d 1002 (C.D. Cal. 2011) .......................................... 22

-vi-

*Wendruck v. Hartford Life Ins. Comp.*,
    2005 WL 8156443 (C.D. Cal. Dec. 12, 2015) .......................................................23

*William v. AES Corp.*,
    28 F. Supp. 3d 553 (E.D. Va. 2014) .....................................................................18

*Younger v. Solomon*,
    113 Cal. Rptr. 113 (Cal. Ct. App. 1974) ...............................................................13

*Zimmerman v. City of Oakland*,
    255 F.3d 734 (9th Cir. 2001) ................................................................................8

<u>Constitutions</u>

United States Constitution,
    First Amendment .............................................................................2, 12, 15, 16

<u>Statutes and Codes</u>

United States Code,
    Title 18, section 1961 .......................................................................*passim*
    Title 18, section 1961(a) ..................................................................................21
    Title 18, section 1962(c) ..................................................................20, 21, 23
    Title 18, section 1964(c) ..................................................................................24

California Civil Code,
    Section 47(b) ....................................................................................................11
    Section 47, subd. 2 ...........................................................................................12

California Code of Civil Procedure,
    Section 425.16 ....................................................................................................3

Virginia Code Annotated,
    Section 8.01-223.2(A) ......................................................................................16
    Section 18.2-499 .........................................................................................16, 17
    Section 18.2-500(A) .........................................................................................17

## Rules and Regulations

Federal Rules of Civil Procedure,
 Rule 12(b)(1) ................................................................................. 4, 5
 Rule 12(b)(1) .................................................................................... 3
 Rule 12(b)(2) .................................................................................... 3
 Rule 12(b)(6) ............................................................................ *passim*
 Rule 15(a)(2) .................................................................................... 7

MOSAFER PARTIES' MEMO. OF POINTS AND AUTHORITIES ISO MTN. TO STRIKE OR ALTERNATIVELY, TO DISMISS THE CA. STATE LAW COUNTERCLAIMS AND TO DISMISS REMAINING CLAIMS

1  I.    **INTRODUCTION**

2         In what has become a series of repetitive, unsuccessful efforts to bring the

3  State of Qatar ("Qatar") within the jurisdictional reach of United States courts,

4  Elliott Broidy ("Broidy") is back at it again with these opportunistic and

5  unsubstantiated Counterclaims.  In his Counterclaims, Broidy brings his fifth[1]

6  successive lawsuit in federal court, again recycling many of the same moribund

7  claims and shoehorning Mosafer Inc., Mosafer E-Com, Inc., and GoMosafer

8  ("Plaintiffs") into them in an attempt to force Qatar into an American court.  Despite

9  airing these already-dismissed claims repeatedly, Broidy has never before

10 implicated any of the Plaintiffs in his conspiracy theory; he does so for the first time

11 only in response to the Complaint.  The reason is simple: Plaintiffs have never

12 conspired with Qatar.  Accused of making materially false and misleading

13 statements that harm Plaintiffs, Broidy has responded by doubling down and making

14 even more.

15        The Counterclaims tell a story spanning several years that has nothing at all to

16 do with Mosafer and that has already been adjudicated.  Indeed, the Counterclaims

17 admit that Broidy "brought the substance of these claims against Qatar in this court

18 previously."  Doc. 46, ¶ 248.  Plaintiffs, Abu Issa Holdings, Ashraf Abu Issa, and

19 Nabil Abu Issa (collectively, the "Mosafer Parties") were not parties to that

20 litigation for a reason—they had nothing to do with Broidy's failed claims against

21 Qatar.  Now, they are named defendants to three of the twelve counts in the

22 Counterclaims only as an attempt by Defendants Broidy, Broidy Capital

23 Management, LLC ("BCM"), and Circinus, LLC ("Circinus") (collectively, the

24

25 _____

[1] *See Broidy Capital Mgmt., LLC v. Qatar*, No. 2:18-cv-02421-JFW-E (C.D. Cal.

26 Mar. 26, 2018); *Broidy Capital Mgmt., LLC v. Muzin*, No. 1:19-cv-00150-DLF
   (D.D.C. Jan. 24, 2019); *Broidy Capital Mgmt., LLC v. Benomar*, No. 7:18-cv-

27 06615-CS (S.D.N.Y. July 23, 2018); *Broidy v. Global Risk Advisors LLC*, No. 1:19-

28 cv-11861-MKV (S.D.N.Y. Dec. 27, 2019).

"Broidy Defendants") to revisit and revive their dispute with a foreign government.

The Broidy Defendants are no doubt aware that their claims against the Mosafer Parties are devoid of evidence. They also know that the mere act of filing a lawsuit cannot give rise to their claims under either California or Virginia law. This would be true even if Plaintiffs' lawsuit were filed for an improper purpose (it was not) or if the Broidy Defendants properly pleaded a collateral advantage due to the filing (they did not). Consequently, the Broidy Defendants' state law claims are subject to dismissal under each state's anti-SLAPP statutes.

Moreover, the Broidy Defendants' claim for violations of the RICO Act fails for much the same reasons that its previous RICO claims have failed: there are no allegations that the Mosafer Parties engaged in any racketeering activity whatsoever—let alone a pattern of racketeering activity through an enterprise. In addition, they do not plead any compensable injury flowing from any alleged violations of RICO by the Mosafer Parties.

Each of the counts against the Mosafer Parties is frivolous; the Counterclaims are loaded with incendiary and irrelevant content that is untethered from the law. As a result, even if every word of the Counterclaims were true, which is not the case, the Broidy Defendants *still* would fail to state a cognizable claim against the Mosafer Parties.

This effort by the Broidy Defendants to deprive the Mosafer Parties of their First Amendment rights—encapsulated by the filing of a lawsuit—should be rejected.[2] Without any basis, the Broidy Defendants actually go so far as to request

---

[2] In their responsive pleading to Plaintiffs' Complaint, the Broidy Defendants took the position that Plaintiffs are attempting to chill their First Amendment rights. As set forth in Plaintiffs' opposition to their motion to dismiss, the contention has no merit—Plaintiffs' claims arise entirely from the Broidy Defendants' unlawful conduct that is not protected by the First Amendment. Here, however, the Broidy Defendants do precisely what they attribute to Plaintiffs in an attempt to punish Plaintiffs for exercising their First Amendment right to petition.

an injunction prohibiting the Mosafer Parties from ever filing any future lawsuits against the Broidy Defendants. *See e.g.*, Doc. 46, ¶ 246. The Broidy Defendants' bullying tactics are a brazen attempt to dissuade the Mosafer Parties and other businesses from seeking judicial redress for their intentional falsehoods in the future.

Accordingly, the Broidy Defendants' Abuse of Process claim should be stricken under Cal. Civ. Proc. Code § 425.16 and the Court should dismiss the remaining claims under Rule 12(b)(6) without leave to amend.

## II.   RELEVANT FACTUAL ALLEGATIONS

### A.   Broidy Has A Lengthy History of Filing Lawsuits And Courts Have Already Dismissed The Claims Brought Here

In recent years, Broidy has filed numerous lawsuits that significantly overlap with the allegations in the Counterclaims—however *never* before has he referenced in any way whatsoever any of the Plaintiffs in this litigation. Although the Broidy Defendants made passing and self-serving references to this litigation history, Doc. 46, ¶¶ 3, 37 & n.23–24, 248, they tellingly failed to give this Court the full breadth of that history in their 85-page Counterclaim, as both district courts and appellate courts across the country have rejected similar claims brought by Broidy and his companies.

First, Broidy and BCM previously sued Qatar and others, including John Does, in this District based on substantially similar allegations.[3] Doc. 46, ¶ 37. On August 8, 2018, the district court issued an order granting Qatar's motion to dismiss

---

[3] In May 2018, Broidy and BCM filed an amended complaint against Qatar, Nicolas Muzin, Stonington Strategies LLC, Global Risk Advisors LLC, Kevin Chalker, David Mark Powell, Mohammed bin Hamad bin Khalifa al Thani, Ahmed Al-Rumaihi, and Does 1-10, bringing ten causes of action, including civil conspiracy, against all defendants. *Broidy Capital Mgmt., LLC v. Qatar*, No. 2:18-cv-02421-JFW-E, ECF No. 47 (C.D. Cal. May 24, 2018).

1   pursuant to Rules 12(b)(1) and 12(b)(2) on the basis that Qatar is immune from suit

2   under the FSIA.[4]  *Broidy Capital Mgmt., LLC v. Qatar*, 2018 WL 6074570 (C.D.

3   Cal. Aug. 8, 2018).  On September 27, 2018, the district court entered a judgment

4   dismissing Broidy and BCM's amended complaint in its entirety.  *Broidy Capital*

5   *Mgmt., LLC v. Qatar*, No. 2:18-cv-02421-JFW-E, ECF No. 227 (C.D. Cal. Sept. 27,

6   2018).  Broidy and BCM appealed the district court's order of dismissal and

7   subsequent judgment for lack of subject-matter jurisdiction under FSIA as to all

8   claims against Qatar.  *Id.*, ECF No. 228 (C.D. Cal. Sept. 28, 2018).  Following the

9   district court's dismissal, the Ninth Circuit affirmed the order of dismissal and the

10  Supreme Court denied certiorari.  *Broidy Capital Mgmt., LLC v. Qatar*, 2018 WL

11  6074570 (C.D. Cal. Aug. 8, 2018), *aff'd on other grounds sub nom.*, 982 F.3d 582

12  (9th Cir. 2020) (holding that FSIA bars the claims brought against Qatar), *cert.*

13  *denied*, 141 S. Ct. 2704 (June 1, 2021).

14      Second, Broidy and BCM filed a lawsuit in the United States District Court

15  for the District of Columbia against Nicolas Muzin ("Muzin") and others, bringing

16  13 causes of action under federal and California state law, including violations of

17  the RICO Act, conspiracy to violate the RICO Act, and civil conspiracy.  *See* Doc.

18  46, ¶ 121 n.78; *Broidy Capital Mgmt., LLC v. Muzin*, No. 1:19-cv-0150-DLF, ECF

19  No. 18-2 (D.D.C. Jan. 24, 2019).  Muzin's motion to dismiss under Rule 12(b)(6)

20  was granted in part, and his motion to dismiss under Rule 12(b)(1) was granted

21  _____

22  [4] On August 16, 2018, the district court issued an order granting a motion to dismiss
    by Stonington Strategies LLC and Nicolas Muzin for lack of personal jurisdiction.

23  *Broidy Capital Mgmt., LLC v. Qatar*, No. 2:18-cv-02421-JFW-E, ECF No. 209

24  (C.D. Cal. Aug. 16, 2018).  On August 22, 2018, the district court granted a motion
    to dismiss by Global Risk Advisors LLC and Kevin Chalker for lack of personal

25  jurisdiction.  *Id.*, ECF No. 212 (C.D. Cal. Aug. 22, 2018).  The district court
    dismissed these defendants, in addition to Qatar, from the action without leave to

26  amend.  *Id.*, ECF Nos. 212 & 227.  Broidy and BCM then voluntarily withdrew their

27  claims without prejudice against David Mark Powell, Mohammed bin Hamad bin

28  Khalifa al Thani and Ahmed Al-Rumaihi.  *Id.*, ECF No. 223.

-4-

insofar as it asserted immunity.[5]  Again, there is significant overlap between the factual allegations in the first amended complaint in the *Muzin* case and the Counterclaims here.  For example, Broidy alleged that Muzin failed to persuade Jewish leaders to agree to meetings with influential Qataris visiting New York for the opening of the United Nations General Assembly and that American Jewish leaders declined to meet with the Emir of Qatar when he was at the United Nations in September of 2017 and declined offers of all-expenses-paid trips to visit Qatar. *See id.*, ECF No. 18-2, ¶ 72.  Here, the Broidy Defendants allege that on September 28, 2017, Muzin, one of Qatar's top D.C. lobbyists, invited American Jewish leaders to meet with the Emir in New York City during the Emir's visit for the United

---

[5] Defendants' motion for certification of interlocutory appeal to the D.C. Circuit Court of Appeals was denied by the district court.  *See Broidy Capital Mgmt., LLC v. Muzin*, 2020 WL 1536350 (Mar. 31, 2020); *see also Broidy Capital Mgmt., LLC v. Muzin*, No. 1:19-cv-0150-DLF, Paperless Order (Apr. 23, 2020).  The D.C. Circuit affirmed the district court's order, *Broidy Capital Mgmt., LLC v. Muzin*, No. 20-7040 (D.C. Cir. Sept. 3, 2021), and in so doing described a complaint a lot like the Counterclaims, noting, for example, that Broidy describes himself as "a prominent business and civic leader who has actively served in leadership roles in U.S. government advisory groups, Jewish organizations, and the Republican Party." *Id.* at 3.  In addition, the D.C. Circuit noted the allegations that "[b]eginning in early 2017, [Broidy] became a vocal critic of Qatar's support for terrorists and friendly relationship with Iran, which he sees as a major threat to the security of the United States. . . . Broidy claims that [Qatar] engaged in a multi-million dollar dark money effort," called the "Qatari Enterprise," "to recruit lobbyists and influencers to polish Qatar's public image within the United States." *Id.* at 3–4 (quotations omitted).  Moreover, Broidy alleged the Qatari Enterprise retained a cybersecurity firm, Global Risk Advisors LLC, to coordinate a cyber and information operation against Broidy and his company, including by illegally infiltrating their computer networks and obtaining unauthorized access to email accounts of persons in the United States associated with Broidy.  *Id.* at 4.  Muzin and Allaham allegedly distributed the hacked information and collaborated with Howard to provide the information to journalists, media organizations, and public relations professionals to destroy Broidy's public standing and hamper his ability to influence public and presidential opinion on Qatar.  *Id.*  The Mosafer Parties are not mentioned.

Nations General Assembly later that month.  Doc. 46, ¶ 121.  The opposition by Broidy and others to these efforts helped prompt American Jewish leaders to refuse to meet with the Emir at that gathering, thereby frustrating Qatar's plans to win over Jewish leaders.  *Id*.

Third, on July 23, 2018, Broidy and BCM filed a lawsuit in the Southern District of New York against Jamal Benomar, a former U.N. official, alleging several causes of action including civil conspiracy.  *Broidy Capital Mgmt., LLC v. Benomar*, No. 7:18-cv-06615-CS, ECF No. 1 (S.D.N.Y. July 23, 2018).  This lawsuit was filed as a companion case to the then-pending lawsuit filed in the Central District of California against an alleged co-conspirator, Muzin.  *Id.* Benomar obtained a dismissal based on diplomatic immunity, which the Second Circuit affirmed.  *Id.*, ECF No. 56 (Dec. 21, 2018), *aff'd*, *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436 (2d Cir. 2019).

Fourth, Broidy and BCM filed a lawsuit in the Southern District of New York related to the same facts and alleged conspiracy.  In the first amended complaint, Broidy and BCM brought claims against Global Risk Advisors LLC and others, under various theories, including claims under the RICO Act and conspiracy to violate the RICO Act, as well as civil conspiracy.  *Broidy v. Global Risk Advisors LLC*, No. 1:19-cv-11861-MKV, ECF No. 57 (S.D.N.Y. June 26, 2020).  In dismissing the suit, the district court held that Global Risk Advisors was not entitled to any form of immunity, but that the amended complaint lacked sufficient allegations linking the cybersecurity firm to an alleged hack.  *Broidy v. Global Risk Advisors LLC*, 2021 WL 1225949, at *10 (S.D.N.Y. Mar. 31, 2021).  The hack allegations about the hack largely mirror the allegations here, and the Mosafer Parties are not mentioned.  The district court further allowed plaintiffs to move for leave to amend within 30 days, reasoning that because the amended complaint is dismissed "on the basis of factual deficiencies," the court cannot decide whether

-6-

MOSAFER PARTIES' MEMO. OF POINTS AND AUTHORITIES ISO MTN. TO STRIKE OR ALTERNATIVELY, TO DISMISS THE CA. STATE LAW COUNTERCLAIMS AND TO DISMISS REMAINING CLAIMS

1 further amendment would be futile or could remedy the deficiencies.[6]  *Broidy v.*

2 *Global Risk Advisors LLC*, No. 1:19-cv-11861-MKV, ECF No. 89 at 20.

3        Critical to each of these lawsuits were Broidy's repetitive, nearly identical

4 allegations.  Each complaint is substantially similar to the Counterclaims, with one

5 notable exception:  While in each instance Broidy pled violations of the RICO Act,

6 conspiracy to violate the RICO Act, and/or civil conspiracy, no Mosafer entity was

7 once mentioned, referenced, or named as party in any Broidy case before this one.

8 The reason why is simple: the Mosafer Parties have *nothing* to do with Broidy and

9 BCM's conspiracy theories.  In fact, the only wrongful conduct that the Broidy

10 Defendants allege the Mosafer Parties engaged in is the act of filing the Complaint.

11        **B.        There Is No Evidence Of A Conspiracy**

12        Broidy would have this Court believe that boilerplate conspiracy theories

13 already discarded by courts are sufficient to again plead a conspiracy claim here.

14 The Counterclaims spin a tale of purported guilt by association as the basis of its

15 causes of action against the Mosafer Parties.

16        Having lost multiple times in his prior attempts to obtain a forum in federal

17 court in order to air his conspiracy theories, Broidy now uses Plaintiffs' lawsuit in

18 an attempt to resuscitate them.  On August 5, 2021 (over three years after Broidy's

19 first in this series of lawsuits), Plaintiffs filed a lawsuit against the Broidy

20 Defendants and others under state and federal law alleging that these defendants

21 knowing and intentionally engaged in a false advertising and misinformation

22 campaign that predictably caused the travel business Mosafer to lose profits and

23 close its flagship store in the United States.  *See generally* Doc. 1.  As part of their

24

25 ─────────────────────

[6] Following extensions, on June 1, 2021, the plaintiffs moved for leave to amend
26 their complaint pursuant to Rule 15(a)(2) and requested permission to submit a
declaration of a former Global Risk Advisors employee for in camera review.
27 *Broidy v. Global Risk Advisors LLC*, No. 1:19-cv-11861-MKV, ECF Nos. 95 & 98.
The district court has not yet ruled on either motion.
28

lawsuit, Plaintiffs explained that their business is "synonymous with Qatar" and "intimately associated with Qatar" because of its branding.  Doc. 46, ¶ 7 (quoting Doc. 1, ¶¶ 4, 31–32, 63–64, 123).  For example, Plaintiffs use elements of Qatar's flag and culture in its advertising and marketing.

In response, the Broidy Defendants filed the Counterclaims.  *See id.*  To distract from the deficiencies in their conspiracy theory, the Broidy Defendants write extensively of Broidy's campaign against Qatar alleging it supports terrorism, devoting pages upon pages about all sorts of wrongful conduct Qatar supposedly engaged in, from an allegedly corrupt campaign to win the right to host the World Cup to disparate media discussions of geopolitical discourse involving Qatar.  The Broidy Defendants then make the unsubstantiated allegations that there was a "close and personal business relationship" between the Mosafer Parties and Qatar's ruling family.  *Id.* ¶ 69.  For instance, the Counterclaims spend multiple pages on every interaction Broidy could find between the Mosafer Parties and the Qatari government, even showing a social media posting of Nabil Abu Issa with government personalities at a government function.  *Id.* ¶ 74.  That is all there is to Broidy's conspiracy claim.

The Complaint is not the admission Broidy imagines it to be; it has nothing to do with Broidy's previously dismissed claims against Qatar, and it certainly cannot revive them.  Yet it is solely on this basis that the Broidy Defendants erroneously allege that the Mosafer Parties are part of a criminal conspiracy with Qatar called the Qatari Enterprise and thus are liable under both Virginia business conspiracy laws and the RICO Act.

## III.   <u>LEGAL STANDARD</u>

To avoid dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must state a claim for relief "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted); *Zimmerman v. City of Oakland*, 255 F.3d 734, 737 (9th Cir. 2001).  A claim has "facial plausibility when

1   the plaintiff pleads factual content that allows the court to draw the reasonable

2   inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

3   678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).  When

4   considering a 12(b)(6) motion to dismiss, a court must accept the well-pleaded

5   factual allegations of the complaint as true and construe them in the light most

6   favorable to plaintiffs.  *Id.*; *see also OSU Student All. v. Ray*, 699 F.3d 1053, 1061

7   (9th Cir. 2012).  However, a court is "not bound to accept as true a legal conclusion

8   couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S.

9   at 555).

10  **IV.   LEGAL ARGUMENT**

11      **A.   The Broidy Defendants' Abuse of Process Claim Should Be**

12           **Stricken Pursuant To California's Anti-SLAPP Statute**

13      "A court considering a motion to strike under the anti-SLAPP statute must

14  engage in a two-part inquiry." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1110

15  (9th Cir. 2003).  First, "the moving defendant must make a prima facie showing that

16  the plaintiff's suit arises from an act in furtherance of the defendant's constitutional

17  right to free speech." *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir.

18  2013).  "Second, once the defendant has made a prima facie showing, 'the burden

19  shifts to the plaintiff to demonstrate a probability of prevailing on the challenged

20  claims.'" *Vess*, 317 F.3d at 1110 (citation omitted).  Where, as here, "an anti-

21  SLAPP motion to strike challenges only the legal sufficiency of a claim, a district

22  court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and

23  consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am.,*

24  *Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir.), *amended*, 897 F.3d

25  1224 (9th Cir. 2018).  The Broidy Defendants' Counterclaim for Abuse of Process

26  should be dismissed because it is a frivolous attempt to intimidate Plaintiffs and

27  limit their right to petition this Court for relief and the Broidy Defendants cannot

28  demonstrate a probability of success.

-9-

MOSAFER PARTIES' MEMO. OF POINTS AND AUTHORITIES ISO MTN. TO STRIKE OR ALTERNATIVELY,
TO DISMISS THE CA. STATE LAW COUNTERCLAIMS AND TO DISMISS REMAINING CLAIMS

### 1. The Broidy Defendants' Abuse of Process Claim Arises From Protected Activity

The commencement of Plaintiffs' underlying action constitutes a "protected activity" within the meaning of the anti-SLAPP statute.  *See e.g., Drexler v. Billet*, 2018 WL 6920117, at *2 (C.D. Cal. June 12, 2018), *aff'd*, 784 F. App'x 548 (9th Cir. 2019); *Navellier v. Sletten*, 52 P.3d 703, 709–10 (Cal. 2002) ("In fact, but for the federal lawsuit and [counterclaim defendant's] alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis.  This action therefore falls squarely within the ambit of the anti-SLAPP statute's 'arising from' prong.").  The Broidy Defendants' Abuse of Process claim against the Mosafer Parties is based entirely on the fact that Plaintiffs filed the Complaint.  *See* Doc. 46, ¶¶ 247–52.  As a result, the first prong inquiry of the anti-SLAPP analysis must be answered affirmatively because the Broidy Defendants' allegations arise from and rest solely on Plaintiffs' protected right to petition.  *JSJ Ltd. P'ship v. Mehrban*, 141 Cal. Rptr. 3d 338, 345 (Cal. Ct. App. 2012) ("Filing a lawsuit is an act in furtherance of the constitutional right of petition, regardless of whether it has merit.").

### 2. The Broidy Defendants Cannot Satisfy Their Burden Of Showing They Are Likely To Prevail On Their Abuse Of Process Claim

Once a moving party makes a prima facie showing that the opposing party's suit arises from an act in furtherance of the moving party's right of petition, the burden shifts to the opposing party to prove probability of prevailing on the merits.  *Lamoon, Inc. v. Alfalfa Nail Supply Inc.*, 2008 WL 11338609, at *3 (C.D. Cal. Oct. 14, 2008), *aff'd sub nom.*, *Lamoon, Inc. v. Lamour Nail Prod., Inc.*, 373 F. App'x 795 (9th Cir. 2010).  Where, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly

-10-

1   stated." *Planned Parenthood Fed'n of Am., Inc.*, 890 F.3d at 834.

2             a.    **The Broidy Defendants' Abuse Of Process Claim Is**

3                   **Barred By The Absolute Litigation Privilege**

4             As discussed below, the Broidy Defendants' Abuse of Process claim is based

5   entirely on a baseless allegation that the Mosafer Parties filed a frivolous Complaint

6   against them. *See infra* Section IV.A.1.  It is well-settled, however, that filing a

7   complaint cannot give rise to liability for abuse of process theory because under

8   California law, "communications with some relation to judicial proceedings are

9   *absolutely immune* from tort liability by the litigation privilege." *Rusheen v. Cohen*,

10  128 P.3d 713, 718–19 (Cal. 2006) (internal quotations and citations omitted;

11  emphasis added); *see also* Cal. Civ. Code § 47(b).

12            The litigation privilege encourages "attorneys to zealously protect their

13  clients' interests," and avoids "an unending roundelay of litigation, an evil far worse

14  than an occasional unfair result." *Flatley v. Mauro*, 139 P.3d 2, 16 (Cal. 2006)

15  (internal quotations and citations omitted).  The litigation privilege is meant to

16  afford "litigants" like the Mosafer Parties "the utmost freedom of access to the

17  courts without fear of being harassed subsequently by derivative tort actions" such

18  as the Counterclaims. *Silberg v. Anderson*, 786 P.2d 365, 369 (Cal. 1990).  "To

19  accomplish these objectives, the privilege is 'an 'absolute' privilege, and it bars <u>all</u>

20  <u>tort causes of action</u> except a claim of malicious prosecution.'" *Flatley*, 139 P.3d at

21  16 (emphasis added) (quoting *Hagberg v. California Fed. Bank*, 81 P.3d 244, 248

22

23

24

25

26

27

28

MOSAFER PARTIES' MEMO. OF POINTS AND AUTHORITIES ISO MTN. TO STRIKE OR ALTERNATIVELY,
TO DISMISS THE CA. STATE LAW COUNTERCLAIMS AND TO DISMISS REMAINING CLAIMS

(Cal. 2004)).[7]

The litigation privilege has specifically been held to bar abuse of process claims such as the Broidy Defendants' claims here, which relate to the mere act of filing a Complaint. *See e.g.*, *Drasin v. Jacoby & Meyers*, 197 Cal. Rptr. 768, 770 (Cal. Ct. App. 1984) ("[T]he filing of a complaint has been held to be privileged, in the context of an abuse of process proceeding, under Civil Code section 47, subdivision 2."); *JSJ Ltd. P'ship*, 141 Cal. Rptr. at 346 ("Because [defendant] is being sued for filing the 2009 Lawsuit against [plaintiff], the litigation privilege . . . forecloses the pursuit of the abuse of process cause of action.") (internal quotation marks and citations omitted). As such, the Broidy Defendants' Abuse of Process claim fails as a matter of law because it is barred by the litigation privilege.

### b.   The Broidy Defendants Have Not Sufficiently Stated A Claim For Abuse Of Process

Even if the litigation privilege did not bar the Broidy Defendants' Abuse of Process claim (and it does), the claim still must be dismissed because the Counterclaims fail to sufficiently allege a wrongful act by the Mosafer Parties.

In order to "establish a cause of action for abuse of process, a plaintiff must plead two essential elements: that the defendant (1) entertained an ulterior motive in using the process and (2) committed a willful act in a wrongful manner." *Coleman v. Gulf Ins. Grp.*, 718 P.2d 77, 81 (Cal. 1986); *see also DaVinci Aircraft, Inc. v.*

---

[7] Any effort to amend the Counterclaims to substitute a claim of malicious prosecution in place of the abuse of process claim would be futile. Such claims are "traditionally . . . disfavored," *see, e.g.*, *Sheldon Appel Co. v. Albert & Oliker*, 765 P.2d 498, 502 (Cal. 1989), and they require favorable resolution of the underlying action in its entirety; *Citizens of Human., LLC v. Ramirez*, 277 Cal. Rptr. 3d 501, 510 (Cal. Ct. App. 2021), *review denied* (Aug. 11, 2021). Moreover, the causes of action in the Complaint are not just "legally tenable," *Area 55, LLC v. Nicholas & Tomasevic, LLP*, 275 Cal. Rptr. 3d 519, 541 (Cal. Ct. App. 2021) (quotations omitted), but warrant relief, *see generally* Doc. 51.

*U.S.*, 926 F.3d 1117, 1123 (9th Cir. 2019).  The Broidy Defendants contend that the Mosafer Parties have committed an abuse of process by filing a Complaint that "is not designed to pursue a legitimate legal cause of action" and have an "ulterior motive of stripping the Broidy Defendants of their First Amendment rights."  Doc. 46, ¶ 249.

However, "[u]nder California law, [t]he mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action." *Chan v. FIA Card Services*, 2010 WL 11558108, at *4 (C.D. Cal. Oct. 28, 2010) (dismissing abuse of process claim where only allegation is "defendant's filing of an arbitration action and subsequent lawsuit" and the operative complaint does not "present other facts to support an abuse of process claim") (quoting *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss, & Karma, Inc.*, 728 P.2d 1202, 1209 (Cal. 1986)).[8]

Even if the mere filing of a lawsuit could possibly constitute a "wrongful act," the Abuse of Process claim still fails.  Preliminarily, the Broidy Defendants' allegations that Plaintiffs filed their action with an improper purpose are conclusory and inadequate.  *See e.g.*, *SuperGuide Corp. v. Gemstar Dev. Corp.*, 2010 WL 11463159, at *11–12 (C.D. Cal. June 3, 2010) (dismissing complaint because allegations that defendant "was intentionally using these legal processes to cause

---

[8] As a result, much of the Counterclaims are devoted to allegations completely irrelevant to any of the Broidy Defendants' cause of action, including, for example, the allegation that Broidy engaged in a sophisticated and sustained false advertising and misinformation campaign against Qatar not because of the millions of dollars he received but because he is "civic-minded," Doc. 46, ¶ 26, or the Counterclaims' partial, out-of-context excerpt of a document to argue that Broidy's well-funded campaign against Qatari businesses did not actually have any impact. *Id.*, ¶¶ 54–55. The sufficiency of the Complaint's allegations is irrelevant to the Broidy Defendants' Abuse of Process claim; lest there be any doubt however, the Mosafer Parties strongly disagree with the Broidy Defendants' characterizations of the Complaint and Plaintiffs look forward to proving their case. *See* Doc. 51.

1  harm to and damage Superguide, and not for any legitimate purpose" were

2  "conclusory" and "wholly inadequate").

3       Moreover, "[g]enerally, an action for abuse of process lies only where the

4  process is used to obtain an unjustifiable collateral advantage.  For this reason, mere

5  vexation or harassment are not recognized as objectives sufficient to give rise to the

6  tort." *Younger v. Solomon*, 113 Cal. Rptr. 113, 118 (Cal. Ct. App. 1974); *see also*

7  *Spellens v. Spellens*, 317 P.2d 613, 627 (Cal. 1957) ("[T]here is no liability when the

8  defendant has done nothing more than carry out the process to its authorized

9  conclusion, even though with bad intentions.  The improper purpose usually takes

10 the form of coercion . . . such as the surrender of property or the payment of money,

11 by the use of the process as a threat or a club.  There is, in other words, a form of

12 extortion, and it is what is done in the course of negotiation, rather than the issuance

13 of any formal use of the process itself, which constitutes the tort.").

14      Here, the Broidy Defendants fail to allege that any unjustifiable collateral

15 advantage was obtained through the filing of Plaintiffs' lawsuit.  *See* Doc. 46, ¶ 249.

16 As such, even if merely filing a Complaint could give rise to an Abuse of Process

17 claim (and it cannot), the claim still fails.  *See Guillory v. WFS Fin., Inc.*, 2007 WL

18 879017, at *6 (N.D. Cal. Mar. 21, 2007) (dismissing abuse of process claim because

19 plaintiff "does not allege any facts to support her conclusory allegations" that

20 defendant filed a complaint "for purposes of extortion or retaliation" and

21 "employing a procedure outlined the law cannot alone amount to an abuse of

22 process") (citation omitted).[9]

23

24

25

_____

26 [9] Although the Broidy Defendants complain about subpoena actions filed by Qatar
   in 2018 and assert these subpoenas were an abuse of process by the Mosafer Parties,

27 ¶¶ 48–51, they do not even begin to explain how the Mosafer participated in those
   actions, much less allege any action constituting abuse of process.

28

-14-

**3.     In The Alternative, The Court Should Dismiss The Abuse Of Process Claim Under Rule 12(b)(6)**

If the Court declines to strike the Broidy Defendants' California state law claim under the anti-SLAPP statute, it should dismiss the claim under Federal Rules of Civil Procedure 12(b)(6) for the reasons discussed in Section IV.A.2, *supra*.  *See e.g.*, *Trendmood, Inc. v. Rabinowitz*, 2021 WL 4815954, at *4 (C.D. Cal. June 21, 2021) (denying motion to strike under the anti-SLAPP statute and granting alternative motion to dismiss); *Future Ads LLC v. Gillman*, 2013 WL 12306479, at *9 (C.D. Cal. Dec. 23, 2013) (same).

**B.     <u>The Broidy Defendants Fail To State A Claim For Business Conspiracy Under Virginia Law</u>**

**1.     Virginia Law Does Not Apply To This Action**

The Broidy Defendants have made no attempt at establishing why Virginia law should govern their business conspiracy claim, nor could they.

First, they have not established that California's conspiracy law is materially different from Virginia's law, which alone justifies applying California law.  *See T.P. v. Walt Disney Parks & Resorts U.S., Inc.*, 2021 WL 3598574, at *3 n.4 (C.D. Cal. Apr. 20, 2021) ("Because there is no conflict between Florida law and California law for breach of contract, the Court applies California law.").  Second, even if the laws of the two states were substantively different, the Broidy Defendants have not, and cannot, establish that Virginia has any interest in their conspiracy claim.  *See Hurtado v. Superior Ct.*, 11 Cal. 3d 574, 580 (1974) ("When one of two states related to a case has a legitimate interest in the application of its law and policy and the other has none, there is no real problem; clearly the law of the interested state should be applied.").  The underlying tort that the Broidy Defendants contend gives rise to their conspiracy claim is an abuse of process under *California* law; it would be completely illogical to apply the conspiracy law of Virginia, residence of only one party to this litigation, to allegations of a concerted

-15-

effort to violate California's abuse of process laws.

Because Virginia law does not apply, the Broidy Defendants' cause of action for business conspiracy under Virginia's Business Conspiracy Act must be dismissed.

**2.      Even if Virginia Law Applied, The Mosafer Parties Are Immune From The Virginia Conspiracy Claim**

Like California's anti-SLAPP statute, the Virginia anti-SLAPP statute "aim[s] to weed out and deter lawsuits brought for the improper purpose of harassing individuals who are exercising their protected right to freedom of speech." *Fairfax v. CBS Corp.*, 2 F.4th 286, 296 (4th Cir. 2021) (citation omitted). However, Virginia law accomplishes this goal not by creating a special motion to strike, as California does, but instead by creating an absolute statutory immunity for certain claims based on conduct protected by the First Amendment. Specifically, Virginia's anti-SLAPP statute provides in pertinent part:

> A person shall be immune from civil liability for a violation of § 18.2-499 . . . (i) regarding matters of public concern that would be protected under the First Amendment to the United States Constitution made by that person that are communicated to a third party or (ii) made at a public hearing before the governing body of any locality or other political subdivision, or the boards, commissions, agencies and authorities thereof, and other governing bodies of any local governmental entity concerning matters properly before such body.

Va. Code Ann. § 8.01-223.2(A). Here, the Broidy Defendants' business conspiracy claim under Va. Code § 18.2-499 is based entirely on the Mosafer Parties filing a lawsuit, Doc. 46, ¶¶ 237, 250, which falls squarely within the zone of activity protected by the First Amendment's "right to petition the Government for a redress of grievances" and thus the Virginia anti-SLAPP statute. *See Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) ("The right of access to the courts is

subsumed under the first amendment right to petition the government for redress of grievances.") (citations omitted).  Accordingly, the Mosafer Parties have statutory immunity and cannot be liable under Virginia Code § 18.2-499 for allegedly filing a frivolous Complaint.  As such, if Virginia law governs (and it does not), the Broidy Defendants' claims still must be dismissed based on Virginia's anti-SLAPP statute. *See Agbapuruonwu v. NBC Subsidiary (WRC-TV), LLC*, 821 F. App'x 234, 235 (4th Cir. 2020) (affirming dismissal based on immunity provision of Virginia Code § 8.01-223.2), *cert. denied sub nom.*, *Fidelis Agbapuruonwu v. NBC Subsidiary (WRC-TV), LLC*, 141 S. Ct. 1393 (2021); *Fairfax v. CBS Broad. Inc.*, 2020 WL 10147131, at *12 (E.D. Va. Feb. 11, 2020) (granting motion to dismiss where defendant "sufficiently established the statutory immunity under § 8.01-223.2(A)"), *aff'd sub nom.*, *Fairfax v. CBS Corp.*, 2 F.4th 286 (4th Cir. 2021).[10]

### 3. The Counterclaims Also Fail Because They Do Not Sufficiently Allege A Claim Under A Business Conspiracy Theory

Even if the Broidy Defendants could somehow show that Virginia law applies and overcome the Virginia anti-SLAPP statute, their Virginia claim would still fail.

To state a claim under Virginia's Business Conspiracy Act, the pleading party must show "(1) concerted action between two or more people; (2) legal malice towards Plaintiff's business; and (3) that the conspiratorial actions caused Plaintiff's business damages."  *Rogers v. Deane*, 992 F. Supp. 2d 621, 635 (E.D. Va. 2014) (citations omitted), *aff'd*, 594 F. App'x 768 (4th Cir. 2014).  A plaintiff must demonstrate that he was "injured in his reputation, trade, business or profession by

---

[10] The business conspiracy cause of action is also barred by Virginia's litigation privilege.  *See Bryant-Shannon v. Hampton Roads Cmty. Action Program, Inc*., 299 Va. 579, 590 (2021) ("It is settled law in Virginia that words spoken or written in a judicial proceeding that are relevant and pertinent to the matter under inquiry are absolutely privileged.'") (quoting *Darnell v. Davis*, 190 Va. 701, 707 (1950)).

1  reason by reason of a violation of § 18.2-499 . . . ."  Va. Code Ann. § 18.2-500(A).

2  The statute does not create an independent cause of action.  *See e.g.*, *Dunlap*

3  *v. Cottman Transmission* Sys*., LLC*, 287 Va. 207, 215 (2014) ("[A]ctions for . . .

4  statutory business conspiracy lie only if a plaintiff sustains damages as a result of an

5  act that is itself wrongful or tortious.") (citations omitted).  Accordingly, to survive a

6  motion to dismiss, the pleading party must sufficiently allege a separate actionable

7  tort.  *Bay Tobacco, LLC v. Bell Quality Tobacco Prod., LLC*, 261 F. Supp. 2d 483,

8  499 (E.D. Va. 2003) ("[T]o survive a motion to dismiss, an allegation of conspiracy

9  must include either an unlawful act or an unlawful purpose.").

10  The only independent tort that the Broidy Defendants allege against the

11  Mosafer Parties is Abuse of Process.  Doc. 46, ¶¶ 237–43.  As discussed in Section

12  IV, *supra*, the Broidy Defendants have failed to state a claim for Abuse of Process.

13  As such, the Broidy Defendants cannot state a business conspiracy claim because

14  they failed to allege an independent and actionable tort.  *See Spencer v. Am. Int'l*

15  *Grp., Inc.*, 2009 WL 47111, at *12 (E.D. Va. Jan. 6, 2009) ("Plaintiff fails to plead

16  facts sufficient to support a plausible claim of defamation or abuse of process. . . .

17  Thus, because the conspiracy statute provides no protection for the type of injury

18  alleged by Plaintiff and because Plaintiff fails to allege any illegal acts in

19  furtherance of the alleged conspiracy, [the business conspiracy claim] should be

20  dismissed."); *Bay Tobacco, LLC*, 261 F. Supp. 2d at 499 ("[T]he only concerted

21  action [plaintiff] avers is the defendants' entry into a 'secret' agreement that

22  [defendant] would begin to produce for [a competitor] instead of [defendant].  Of

23  course, there can be no conspiracy to do an act, such as the formation of an

24  agreement to produce that the law allows.") (citation omitted).

25  Moreover, even assuming that the Counterclaims plead a cognizable claim of

26  Abuse of Process against the Mosafer Parties (and they do not), the business

27  conspiracy claim fails for the additional reason that it was not plead with sufficient

28  particularity.  To survive a motion to dismiss, a business conspiracy claim "must be

-18-

pleaded with particularity, and with more than 'mere conclusory language.'" *Gov't Emps. Ins. v. Google, Inc.*, 330 F. Supp. 2d 700, 706 (E.D. Va. 2004) (quoting *Bay Tobacco, LLC*, 261 F. Supp. 2d at 499); *see also William v. AES Corp.*, 28 F. Supp. 3d 553, 574 (E.D. Va. 2014) ("To withstand a motion to dismiss, a plaintiff must plead the requisite concert of action and unity of purpose in more than mere conclusory language.  Virginia requires a plaintiff to allege some details of time and place and the alleged effect of the conspiracy. Where there are only vague, conclusory allegations of conspiracy, the claim fails at the threshold.") (internal quotation marks and citations omitted).[11]  Such is the case here.  The Counterclaims only assert conclusory allegations and lack any specific factual support.  *See Vuyuru v. Jadhav*, 2011 WL 1483725, at *14 (E.D. Va. Apr. 19, 2011) (dismissing business conspiracy claim where the plaintiff merely "recite[d] all the elements of a § 18.2–499 claim in a cursory way"); *compare Livia Props., LLC v. Jones Lang LaSalle Ams., Inc.*, 2015 WL 4711585, at *11–12 (W.D. Va. Aug. 7, 2015) (dismissing business conspiracy claim where plaintiff alleged, "[u]pon information and belief JLLA, by virtue of the conduct of its agents, including Thompson, described herein, procured the participation, cooperation, agreement or other assistance of Comcast in entering a combination, association, agreement, and/or

_____

[11] Statutory business conspiracy and civil conspiracy claims have the same pleading requirements.  *CJM Fin., Inc. v. Leebcor Servs., LLC*, 2021 WL 1256906, at *7 (E.D. Va. Apr. 5, 2021) (Under either civil or statutory conspiracy claims, Virginia law requires allegations of the "details about how, when, and where the alleged conspiracy occurred [and] its effect. Where, as here, there are only vague, conclusory allegations of conspiracy the claim fails at the threshold.") (internal quotations marks and citation omitted); *Bay Tobacco, LLC*, 261 F. Supp. 2d at 499 ("Under either [civil or statutory conspiracy], the plaintiff must first allege that the defendants combined together to effect a preconceived plan and unity of design and purpose, for the common design is the essence of the conspiracy. Consequently, in order to survive a motion to dismiss, Plaintiff must at least plead the requisite concert of action and unity of purpose in more than mere conclusory language.") (internal quotation marks and citations omitted).

mutual understanding for the purpose of willfully and maliciously injuring Plaintiff in its reputation, trade, business, or profession"), *aff'd sub nom.*, *Livia Props., II, LLC v. Jones Lang LaSalle Ams., Inc.*, 646 F. App'x 322 (4th Cir. 2016) *with* Doc. 46, ¶ 237 ("Upon information and belief, the Counterclaim Defendants, and each of them, have combined, associated, agreed, and mutually acted together for the purpose of willfully and maliciously injuring Circinus by filing this frivolous lawsuit.").

Finally, the Broidy Defendants fail to allege injury.  First, the business conspiracy claim alleges an injury only to Circinus (the only Virginia Defendant) with no mention of injury to Broidy or BCM.  Therefore, the claim must be dismissed as to Broidy and BCM regardless of the sufficiency of the allegations. *See* Doc. 46, ¶¶ 237–43; *Rogers*, 992 F. Supp. 2d at 635–36.  In a business conspiracy claim, the pleading party "must allege harm against his business and not merely himself or his reputation."  *King v. Darden*, 2018 WL 3651590, at *6 (E.D. Va. Aug. 1, 2018) (dismissing business conspiracy claim where pleading party "does not mention what damages his business suffered or even what [its] business might entail"); *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652, 664 (E.D. Va. 2002) (dismissing business conspiracy claim where plaintiff provides no specific factual basis, other than a conclusory allegation, to support its claim for conspiracy to injury business).  Second, the Broidy Defendants fail to allege any specific business-related damages Circinus suffered, but merely state in a conclusory manner that they were injured.  *Compare Stone Castle Fin., Inc.*, 191 F. Supp. 2d at 663–64 (dismissing business conspiracy claim where plaintiff alleged "[d]efendants conspired with iOwn, Genesis and others, maliciously and intentionally, for the purpose of interfering with and injuring [plaintiff's] business.") *with* Doc. 46, ¶ 239 ("Circinus[] has been injured in their reputation, trade, business, and profession, including the loss of contracts and other work.").

1  Accordingly, the Broidy Defendants have failed to state a business conspiracy

2  claim.

3  **C.    The Broidy Defendants Fail To State  Claim Under the RICO Act**

4       The Broidy Defendants bring a claim against the Mosafer Parties under §

5  1962(c) of the RICO Act.  In order to sufficiently plead a claim under § 1962(c), a

6  plaintiff must satisfy a heavy burden: they must demonstrate "(1) conduct (2) of an

7  enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate

8  acts') (5) causing injury to plaintiff's 'business or property.'"  *Living Designs, Inc.*

9  *v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (citation

10  omitted).  "[A] section 1962(c) claim must be established as to each defendant."

11  *Methodist Hosp. of S. California v. Blue Cross of California*, 2010 WL 11508022, at

12  *10 (C.D. Cal. Feb. 26, 2010) (citing *United States v. Persico*, 832 F.2d 705, 714

13  (2d Cir. 1987), *cert. denied*, 486 U.S. 1022 (1988) ("The focus of section 1962(c) is

14  <u>on the individual patterns of racketeering engaged in by a defendant, rather than the</u>

15  <u>collective activities of the members of the enterprise</u>, which are proscribed by

16  section 1962(d).")) (emphasis added).  The Broidy Defendants fail to satisfy their

17  burden.

18       As an initial matter, and as discussed above, a court has already concluded

19  that "Broidy has not adequately pled a pattern of racketeering activity" in the "third

20  lawsuit that Broidy has brought against members of the Qatari Enterprise."  *Broidy*

21  *Capital Management LLC v. Muzin*, 2020 WL 1536350 at *3, 11 (Mar. 31, 2020).

22  In fact, "[t]he alleged scheme" there "fail[ed] even to meet [RICO's] baseline

23  requirements."  *Id*. at 10.  The same is true of the Counterclaims.

24       First, the Broidy Defendants do not even try, because no such facts exist, to

25  allege that the Mosafer Parties participated in any racketeering activity whatsoever.

26  *Compare* Doc. 46, ¶ 268 ("Qatar, Qatari officials, and/or Qatari agents each

27  participated in the 'pattern of racketeering activity.' . . . They committed multiple

28  acts of wire fraud, . . . multiple acts of criminal money laundering, . . . multiple

misappropriations of trade secrets. . . .) *with id.*, ¶ 262 (The Mosafer Parties "furthered the State of Qatar's scheme by filing a frivolous lawsuit").  The only tort (defectively) alleged against the Mosafer Parties is Abuse of Process, which is not an act of racketeering activity.  *See* 18 U.S.C. § 1961(a) ("racketeering activity" means "(A) any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year").  In fact, the Counterclaims do not allege (defectively or otherwise) *any* racketeering activity by anyone after 2018.

Second, the Broidy Defendants not only have to plead racketeering activity, but they must also establish a *pattern* of racketeering activity.  That "requires at least two related predicate acts that '*amount to* or pose a threat of continued criminal activity.'"  *Kearney v. Foley & Lardner, LLP*, 607 F. App'x 757, 758 (9th Cir. 2015) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)) (emphasis in original); *see also In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, 865 F. Supp. 2d 1002, 1035 (C.D. Cal. 2011) ("Where RICO is asserted against multiple defendants, a plaintiff must allege at least two predicate acts by each defendant.").  To plead "a pattern of racketeering activity a plaintiff . . . must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity."  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original); *see also Broidy Capital Management LLC v. Muzin*, 2020 WL 1536350 at *9 (Mar. 31, 2020) ("Broidy alleges only a single scheme to 'retaliate against, discredit and ultimately silence Mr. Broidy'. . . . This is not enough to support a pattern of racketeering activity.").  Here, the Broidy Defendants allege zero racketeering acts by the Mosafer Parties, and that number only goes up to one even if the Abuse of Process claim is a predicate act and even if the Abuse of Process claim were sufficiently pled.  Moreover, there are no allegations of any continuing criminal activity.  As such, the Broidy Defendants have fallen far short

-22-

1  of their burden to plead a pattern of racketeering activity.[12]

2      Third, the Broidy Defendants do not plead any "compensable injury flowing

3  from a violation" of § 1962(c) that "necessarily is the harm caused by the predicate

4  acts sufficiently related to constitute a pattern." *Anza v. Ideal Steel Supply Corp.*,

5  547 U.S. 451, 457 (2006) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497

6  (1985)).  The Broidy Defendants spend many pages recounting their already-

7  dismissed claims for injury due to alleged predicate acts committed in 2017 and

8  2018.  *See, e.g.*, *Broidy*, 2020 WL 153650 (D.D.C. Mar. 31, 2020) (granting motions

9  to dismiss as to RICO claims because Broidy failed to plead a pattern of

10  racketeering activity; he had not pled either an open or closed-ended scheme).  But

11  the only injury alleged to have been caused by the Mosafer Parties (in their agent

12  capacity or otherwise) stems from their Abuse of Process claim, which, as discussed

13  herein, is not a predicate act and thus not a compensable injury under the RICO

14

15

16

17

18

19

20

21  [12] The Broidy Defendants also fail to plead any facts indicating that the Mosafer
22  Parties "participated in the operation or management of the enterprise," which
   requires a "showing that the defendants conducted or participated in the conduct of
23  the '*enterprise's* affairs,' not just their *own* affairs."  *Reves v. Ernst & Young*, 507
   U.S. 170, 183, 185 (1993) (emphasis in original); *see also Wendruck v. Hartford
24  Life Ins. Comp.*, 2005 WL 8156443, at \*2–3 (C.D. Cal. Dec. 12, 2015).  "'[T]o
25  'participate, directly or indirectly, in the conduct of such enterprise's affairs,' one
   must have some part in <u>directing</u> those affairs.'"  *Walter v. Drayson*, 538 F.3d 1244,
26  1248 (9th Cir. 2008) (citing *Reves*, 507 U.S. at 179) (emphasis added).  "Simply
27  performing services for the enterprise does not rise to the level of direction"
   required to allege a claim under section 1962(c).  *Id.* at 1249.
28

-23-

1    Act.[13]

2         Finally, the Broidy Defendants do not plead their RICO claim against the

3    Mosafer Parties or Qatar with any particularity, because the Counterclaims do not

4    state when the Mosafer Parties were alleged to have joined the purported Qatari

5    Enterprise.[14]  *See* Doc. 46, ¶ 268 (pleading predicate acts of fraud against "Qatar,

6    Qatari officials, and/or Qatari agents"); *see also Broidy*, 2020 WL 1536350 at *10

7    (holding that Broidy's RICO allegations "are not pled with nearly the specificity

8    required by the heightened pleading standard of Rule 9(b)") (quotations omitted).

9    However, it is clear that the Broidy Defendants are not alleging that the Mosafer

10   Parties entered into the Enterprise until the filing of this lawsuit.  *See* Doc. 46, ¶ 43.

11   As a result, the Mosafer Parties could not be alleged to have joined the conspiracy

12   until after the last possible predicate act was completed.  "[O]ne logically cannot

13   contemplate acts committed in furtherance of a conspiracy into which he has not yet

14   entered. . . . [T]he concept of foreseeability (a forward looking concept) must be

15   turned around 180 degrees to be applied to the conduct of co-conspirators occurring

16   before the entry of a particular defendant into the conspiracy."  *Mattel, Inc. v. MGA*

17   *Ent't, Inc.*, 2010 WL 11463911, at *3 (C.D. Cal. Sept. 3, 2010) (internal quotations

18   marks and citations omitted).  In fact, because there is no predicate act alleged to

19

20   [13] For the same reason, any attempt to amend the Counterclaims to change the RICO
21   count against the Mosafer Parties to § 1962(d) would be futile.  Broidy "may not
     bring suit under § 1964(c) predicated on a violation of § 1962(d) for injuries caused
22   by an overt act that is not an act of racketeering or otherwise unlawful under the
     [RICO] statute."  *Beck v. Prupis*, 529 U.S. 494, 507 (2000); *see also Broidy*, 2020
23   WL 153650 at *11 ("The Court also will dismiss Count II, which alleges a RICO
24   conspiracy, because an agreement to commit acts that do not form a pattern of
     racketeering activity is not an unlawful agreement under the RICO statute.").
25

26   [14] The closest the Counterclaims come is in its alternative pleading that "the
     predicate acts outlined herein are part of a multi-year closed-ended scheme of
27   racketeering that began no later than April 2017 and ended no earlier than August 5,
28   2021, the date the Complaint was filed."  Doc. 46, ¶ 270.

have occurred by anyone after spring 2018 (or any tortious activity at all), the Broidy Defendants do not sufficiently allege that the conspiracy still existed when the Mosafer Parties "joined" it.[15]

**V.**     **CONCLUSION**

For the foregoing reasons, the Mosafer Parties respectfully request that this Court grant their Motion in its entirety by striking the Broidy Defendants' Abuse of Process claim without leave to amend and dismiss their remaining claims under Rule 12(b)(6) without leave to amend.


DATED:  November 29, 2021                    LARSON LLP

                                         By: /s/ Stephen G. Larson
                                             Stephen G. Larson
                                             Koren L. Bell
                                             Paul A. Rigali
                                             Jonathan D. Gershon
                                             Attorneys for Plaintiffs and
                                             Counterclaim Defendants MOSAFER
                                             INC.; MOSAFER E-COM, INC.;
                                             GOMOSAFER; ABU ISSA
                                             HOLDINGS; ASHRAF ABU ISSA;
                                             and NABIL ABU ISSA

---

[15] This also defeats any allegation of common law civil conspiracy against the Mosafer Parties that the Broidy Defendants intended to plead.  The Counterclaims do not allege any facts to indicate that Mosafer participated in an "agreement to commit wrongful acts" or "commission of the wrongful acts" as required under California law.  *Nautilus, Inc. v. Chunchai Yu*, 2011 WL 13213575, at *11 (C.D. Cal. Dec. 19, 2011) (citation omitted).