COVINGTON & BURLING LLP
Mitchell A. Kamin (Bar No. 202788)
  mkamin@cov.com
Michael D. Fields (Bar No. 313679)
  mfields@cov.com
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: + 1 424-332-4800
Facsimile: + 1 424-332-4749

David M. Zionts (*pro hac vice application pending*)
  dzionts@cov.com
Alexander A. Berengaut (*pro hac vice application pending*)
  aberengaut@cov.com
Megan M. O'Neill (*pro hac vice application pending*)
  moneill@cov.com
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone:  +1 202 662 6000
Facsimile:  +1 202-662-6291

*Attorneys for Counterclaim-Defendant State of Qatar*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| MOSAFER INC.; MOSAFER E-COM, INC.; AND GOMOSAFER<br><br>        Plaintiffs,<br><br>        v.<br><br>ELLIOT BROIDY; GEORGE NADER; BROIDY CAPITAL MANAGEMENT, LLC; CIRCINUS, LLC; THE IRON GROUP INC. D/B/A IRONISTIC.COM; SCL SOCIAL LIMITED; PROJECT ASSOCIATES UK LTD; MATTHEW ATKINSON; AND JOHN DOES 1-100,<br><br>        Defendants.<br>_____<br>ELLIOT BROIDY; BROIDY CAPITAL MANAGEMENT, LLC; CIRCINUS, LLC, | Civil Case No.:<br><br>2:21-cv-06320-MCS-JC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTERCLAIM-DEFENDANT STATE OF QATAR'S MOTION TO DISMISS COUNTERCLAIMS PURSUANT TO RULES 12(b)(1) AND 12(b)(2) OF THE FEDERAL RULES OF CIVIL PROCEDURE**<br><br>[*Filed Concurrently with Notice of Motion and Proposed Order*]<br><br>**Hearing Date:**  January 24, 2022<br>**Time:**  9:00 a.m.<br>**Courtroom:**  7C |

Counterclaim-Plaintiffs,

v.

MOSAFER INC.; MOSAFER E-COM,
INC.; GOMOSAFER, STATE OF QATAR,
ABU ISSA HOLDING WLL, ASHRAF
ABU ISSA, NABIL ABU ISSA

Counterclaim-Defendants.

**Judge:** Hon. Mark C. Scarsi

**Complaint Filed:** August 5, 2021
**Counterclaims Filed:** October 7, 2021

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................ 3

    A.    Broidy's Prior Suit Against Qatar, Which Was Dismissed Under the FSIA ............................................................................ 4

    B.    Mosafer's Claims and Broidy's Counterclaims ................................. 5

LEGAL STANDARD ..................................................................................... 7

ARGUMENT ................................................................................................. 7

I.    The Court Lacks Subject Matter Jurisdiction Because Qatar Is Immune ................................................................................................ 8

    A.    The Counterclaim Exception Does Not Apply. ................................. 8

        1.    This Is Not an "Action Brought by a Foreign State." ............... 8

        2.    Broidy's Counterclaims Do Not Meet the Additional Requirements of the Counterclaim Exception ........................... 13

        3.    If the Court Grants Broidy's Motion to Strike, the Counterclaim Exception Could Not Apply. ............................. 16

    B.    The Waiver Exception Does Not Apply. ........................................... 17

        1.    The Waiver Exception Cannot Be Used to Circumvent Limitations on Other FSIA Exceptions. ................................... 17

        2.    There Has Been No Action by a "Foreign State." ................... 19

        3.    Broidy's Allegations Do Not Support Any Recognized Application of the Implied Waiver Exception. ........................ 20

II.    Broidy Cannot Establish Personal Jurisdiction Over Qatar. .......................... 25

CONCLUSION ............................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Alberti v. Empresa Nicaraguense De La Carne*,
  705 F.2d 250 (7th Cir. 1983) .......................................................................... 8

*Argentine Republic v. Amerada Hess Shipping Corp.*,
  488 U.S. 428 (1989).......................................................................................... 7

*Barapind v. Gov't of Republic of India*,
  844 F.3d 824 (9th Cir. 2016) ........................................................................ 20

*Blaxland v. Commonwealth Dir. of Pub. Prosecutions*,
  323 F.3d 1198 (9th Cir. 2003) .............................................................*passim*

*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
  137 S. Ct. 1312 (2017)...................................................................7, 11, 25

*Broidy Cap. Mgmt., LLC v. Benomar*,
  No. 7:18-cv-06615, ECF No. 56 (S.D.N.Y. Dec. 21, 2018), *aff'd*, 944
  F.3d 436 (2d Cir. 2019) ................................................................................... 4

*Broidy Cap. Mgmt. LLC v. Muzin*,
  2020 WL 1536350 (D.D.C. 2020) ................................................................. 4

*Broidy Cap. Mgmt., LLC v. Qatar*,
  2018 WL 6074570 (C.D. Cal. 2018) ....................................................*passim*

*Broidy Cap. Mgmt., LLC v. Qatar*,
  982 F.3d 582 (9th Cir. 2020) ...............................................5, 7, 13, 19

*Broidy v. Glob. Risk Advisors LLC*,
  2021 WL 1225949 (S.D.N.Y. 2021)............................................................... 4

*Cabiri v. Gov't of Republic of Ghana*,
  165 F.3d 193 (2d Cir. 1999) ...........................................................14, 15, 19, 21

*Chuidian v. Philippine Nat'l Bank*,
  912 F.2d 1095 (9th Cir. 1990) ..................................................................... 20

*Comm'ns Imp. Exp. S.A. v. Congo*,
  2016 WL 9281947 (C.D. Cal. Apr. 21, 2016) ............................................ 12

*Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect*,
    89 F.3d 650 (9th Cir. 1996) .......................................................... 19

*Creighton Ltd. v. State of Qatar*,
    181 F.3d 118 (D.C. Cir. 1999).......................................................25

*In re Est. of Ferdinand Marcos Human Rts. Litig.*,
    94 F.3d 539 (9th Cir. 1996) ..........................................................22

*Farhang v. Indian Inst. of Tech.*,
    655 F. App'x 569 (9th Cir. 2016) .................................................19

*Fed. Republic of Germany v. Philipp*,
    141 S. Ct. 703 (2021).....................................................................7

*First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba*
    (*"Bancec"*),
    462 U.S. 611 (1983).......................................................10, 11, 12

*Flatow v. Islamic Republic of Iran*,
    308 F.3d 1065 (9th Cir. 2002) ......................................................12

*Ivanenko v. Yanukovich*,
    995 F.3d 232 (D.C. Cir. 2021).......................................................21

*Joseph v. Office of the Consulate Gen. of Nigeria*,
    830 F.2d 1018 (9th Cir. 1987) .................................................20, 21

*Khochinsky v. Republic of Poland*,
    1 F.4th 1 (D.C. Cir. 2021)...............................................................8

*In re Lazar*,
    237 F.3d 967 (9th Cir. 2001) ........................................................14

*Lord Day & Lord v. Socialist Republic of Vietnam*,
    134 F. Supp. 2d 549 (S.D.N.Y. 2001) ..........................................15

*Meadows v. Dominican Republic*,
    817 F.2d 517 (9th Cir. 1987) ..........................................................7

*Moore v. N.Y. Cotton Exchange*,
    270 U.S. 593 (1926).....................................................................14

*Mt. Homes, Inc. v. United States*,
    912 F.2d 352 (9th Cir. 1990) ................................................................... 17

*OBB Personenverkehr AG v. Sachs*,
    136 S. Ct. 390 (2015) ............................................................................... 7

*Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*,
    899 F.3d 1081 (9th Cir. 2018) ................................................................. 24

*Perez v. Del Monte Fresh Produce N.A., Inc.*,
    2012 WL 2872398 (D. Or. Apr. 18, 2012) ............................................... 16

*Peterson v. Islamic Republic of Iran*,
    627 F.3d 1117 (9th Cir. 2010) ................................................................. 7

*Pochiro v. Prudential Ins. Co. of Am.*,
    827 F.2d 1246 (9th Cir. 1987) ................................................................. 14

*Reino de Espana v. Am. Bureau of Shipping, Inc.*,
    328 F. Supp. 2d 489 (S.D.N.Y. 2004) ..................................................... 16

*Rong v. Liaoning Province Gov't*,
    452 F.3d 883 (D.C. Cir. 2006) ................................................................ 7

*Samantar v. Yousuf*,
    560 U.S. 305 (2010) ............................................................................ 9, 11

*Saudi Arabia v. Nelson*,
    507 U.S. 349 (1993) ................................................................................ 7

*Schermerhorn v. Israel*,
    876 F.3d 351 (D.C. Cir. 2017) ................................................................ 7

*Siderman de Blake v. Republic of Argentina*,
    965 F.2d 699 (9th Cir. 1992) ..........................................................*passim*

*In re Tamimi*,
    176 F.3d 274 (4th Cir. 1999) ................................................................. 25

*United States v. Aquavella*,
    615 F.2d 12 (2d Cir. 1979) ..................................................................... 14

*United States v. Olano*,
    507 U.S. 725 (1993) ............................................................................... 25

*Verlinden B.V. v. Cent. Bank of Nigeria*,
    461 U.S. 480 (1983) ................................................................................................ 7

*WhatsApp Inc. v. NSO Grp. Techs. Ltd.*,
    17 F.4th 930 (9th Cir. 2021) ................................................................................. 9

*Woide v. Ramsey & Assocs. Mortg. Co.*,
    2017 WL 5479699 (M.D. Fla. Mar. 1, 2017) ................................................. 16

*Wolf v. Fed. Republic of Germany*,
    1995 WL 263471 (N.D. Ill. May 1, 1995) ...................................................... 8

**Statutes**

28 U.S.C. § 1330 ....................................................................................................... 7, 25

28 U.S.C. § 1603 ....................................................................................................... 9, 10

28 U.S.C. § 1604 ........................................................................................................... 7

28 U.S.C. § 1605 ................................................................................................... *passim*

28 U.S.C. § 1607 ................................................................................................... *passim*

28 U.S.C. § 1608 ........................................................................................................... 25

California Penal Code § 502 ...................................................................................... 4, 6

California Penal Code § 496 ...................................................................................... 4, 6

California Uniform Trade Secrets Act, California Civil Code § 3426 *et seq* ............ 4, 6

Computer Fraud and Abuse Act, 18 U.S.C. § 1030 .................................................. 4, 6

Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.* ................................... 4, 6

Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq.* ................................................................................................ 6, 13, 18

Stored Communications Act, 18 U.S.C. § 2701 *et seq.* ............................................ 4, 6

Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* ............................................................ 4, 6

**Other Authorities**

Fed. R. Civ. P. 12 ....................................................................................................... 3, 7

Fed. R. Civ. P. 13 ............................................................................................ 14

H.R. Rep. 94-1487 ........................................................................................... 16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTERCLAIM-DEFENDANT STATE OF QATAR'S MOTION TO DISMISS

**INTRODUCTION**

Defendant Elliott Broidy has already litigated and lost his claims that the State of Qatar ("Qatar or "the State") engaged in cyber-espionage against him, which the Ninth Circuit held are barred by the Foreign Sovereign Immunities Act ("FSIA").  Now, however, Broidy and his companies Broidy Capital Management, LLC ("BCM") and Circinus, LLC (together, "Broidy") seek to relitigate those claims, seizing on the filing of a lawsuit by unrelated private parties that has nothing to do with the alleged cyber-espionage that was the basis of the prior case.  Broidy's second attempt to subject Qatar to suit in U.S. court fares no better than his first.  His invocation of the FSIA's counterclaim and waiver exceptions to immunity is entirely unprecedented, at odds with the text of the FSIA, and contrary to Supreme Court precedent.

Broidy, who has twice pleaded guilty to felony charges, is a political operative and influence peddler who has secretly lobbied the U.S. government on behalf of various foreign governments, reportedly including the United Arab Emirates. Beginning in March 2018, the *Wall Street Journal*, *New York Times*, and others publicized various personal and professional scandals involving Broidy.  He blamed these disclosures on a purported cyberattack by Qatar and sued Qatar in this District, alleging it orchestrated a scheme to hack his computers and disseminate private materials.  U.S. District Judge John Walter dismissed those claims, the Ninth Circuit affirmed, and the Supreme Court denied certiorari.

This is a different case.  It was not brought by Qatar, but by a private Qatari business and two of its U.S. affiliates—Plaintiffs Mosafer Inc., Mosafer E-Com Inc., and GoMosafer ("Mosafer")—seeking recovery for their own business losses.  This case does not concern the alleged cyberattack on Broidy, but rather an alleged disinformation campaign *by* Broidy, which allegedly caused Mosafer to incur substantial business losses.  Broidy nonetheless seeks to capitalize on the lawsuit filed against him by inserting Qatar into this action and filing counterclaims against it.  His basis for doing so is speculation that Mosafer acted as Qatar's "proxy" in filing its

1

Complaint, allegedly with Qatar's "blessing" or possibly at its "behest." Counterclaims, ¶¶ 3, 8, 25.  Qatar emphatically denies the allegation that it is somehow behind Mosafer's lawsuit, just as it continues to deny the underlying allegations. However, even taking Broidy's allegations as true for purposes of this motion to dismiss, Qatar remains immune from the counterclaims pursuant to the FSIA.

The FSIA reflects Congress's judgment that, in order to respect the dignity and sovereignty of foreign states, and to ensure reciprocal protection for the United States abroad, foreign sovereigns are generally immune from the jurisdiction of U.S. courts. That immunity is subject only to a handful of narrowly drawn exceptions, and Broidy carries the burden of establishing that one applies.  The counterclaims fail to do so.

*First,* Broidy cannot invoke the FSIA's counterclaim exception.  That exception applies to an "action brought by a foreign state," and this action was brought by private companies—not a "foreign state."  *See* 28 U.S.C. § 1607. The Supreme Court has held that even a *foreign official* acting on behalf of a sovereign is not itself a "foreign state" within the meaning of the FSIA, so Mosafer plainly cannot be a "foreign state," regardless of Broidy's allegation that it acted at Qatar's "behest."  Even if the counterclaim exception could apply to a suit initiated by a private party, it would still require Broidy's counterclaims to arise from the same transaction or occurrence as the original Complaint.  But the actionable allegations in Mosafer's claims (alleged disinformation by Broidy) and Broidy's counterclaims (alleged cyber-espionage by Qatar) are distinct and separate.

*Second*, Broidy cannot invoke the FSIA's waiver exception.  *See* 28 U.S.C. § 1605(a)(1). Reliance on that exception fails at the outset, because Broidy's counterclaims are governed and foreclosed by two other FSIA exceptions—the counterclaim and noncommercial tort exceptions—and a plaintiff cannot assert a generic waiver theory to evade the limits Congress placed on those specific exceptions.  Nor can Broidy establish that *Qatar* has acted to waive immunity, as is required by the statutory text.  Moreover, the Ninth Circuit has consistently emphasized the narrowness of the implied waiver

exception, and Broidy's unprecedented claims are unlike anything the Ninth Circuit or any other court has recognized as supporting an implied waiver of immunity.

Because Broidy has failed to establish any statutory exception to Qatar's presumptive immunity, the FSIA bars Broidy's counterclaims.  The Court should therefore dismiss the counterclaims against Qatar for lack of jurisdiction.[1]

## BACKGROUND

Mosafer filed this suit against a host of individuals and companies, including Broidy, claiming that it suffered financial losses because of defendants' alleged "disinformation conspiracy" aimed at Qatar and Qatar-based businesses.  Complaint, ECF No. 1, ¶¶ 12–13, 21–29.  Qatar was not a plaintiff, and has never sued Broidy.  Broidy nonetheless filed counterclaims and named Qatar as one of the counterclaim-defendants.  *See* Counterclaims of Defs. Elliott Broidy, Broidy Capital Management, LLC, and Circinus, LLC, ECF No. 46.  These counterclaims concern a different series of transactions than the alleged Broidy-led "disinformation conspiracy" giving rise to Mosafer's claims.  Specifically, the counterclaims allege that Qatar engaged in a "hack-and-smear" campaign targeting Elliott Broidy, and separately gave Mosafer its "blessing" to bring this suit.  *Id.* ¶¶ 8, 166–230.  Mosafer disputes Broidy's allegations about its relationship with Qatar.  *See* Mosafer's Mem. of P. & A. in Supp. of Mot. to Strike or Dismiss, ECF No. 88-1, at 8 (disputing Broidy's "unsubstantiated allegations that there was a 'close and personal business relationship' between the Mosafer Parties and Qatar's ruling family" (quoting Counterclaims, ¶ 69)); Mosafer's Opp'n to Broidy's Mot. to Strike or Dismiss, ECF No. 51, at 1 (stressing that Mosafer is "not controlled by Qatar").

---

[1] In order to bring these threshold jurisdictional issues to the Court expeditiously, Qatar submits the instant Motion solely pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(2).  However, the counterclaims also fail to state a claim under Rule 12(b)(6), because most of Broidy's claims are time-barred; the factual allegations do not suffice to establish that Qatar bears any responsibility for the alleged hacking; and several of the causes of action fail to adequately plead the required elements.

### A. Broidy's Prior Suit Against Qatar, Which Was Dismissed Under the FSIA

These counterclaims represent Elliott Broidy's second attempt to sue Qatar over the same hacking claims, and his fifth lawsuit against various parties concerning the alleged operation.[2]  In 2018, Elliott Broidy and BCM filed suit in this District, asserting ten causes of action and naming Qatar as a defendant.  *See* First Am. Compl., *Broidy Cap. Mgmt., LLC v. Qatar*, No. 2:18-cv-02421, ECF No. 47 (C.D. Cal. filed May 24, 2018).  The complaint asserted that beginning in late 2017, Qatar orchestrated a cyber-espionage operation targeting Broidy, which involved hacking into BCM's computer network, obtaining copies of Broidy's and BCM's "private communications, emails, documents and intellectual property," and disseminating those stolen materials to the media.  *Id.* ¶¶ 93, 117–30.[3]  Qatar moved to dismiss the claims on the basis of its sovereign immunity, while strongly denying the merits of the allegations.  Mem. of P. & A. in Supp. of Qatar's Mot. to Dismiss, *Broidy Cap. Mgmt., LLC v. Qatar*, No. 2:18-cv-02421, ECF No. 112-1, at 7 (C.D. Cal. filed June 27, 2018).

Judge Walter granted Qatar's motion to dismiss for lack of jurisdiction, and dismissed the action as to Qatar without leave to amend.  *Broidy Cap. Mgmt., LLC v.*

---

[2] *See Broidy Cap. Mgmt., LLC v. Qatar*, No. 2:18-cv-02421, 2018 WL 6074570 (C.D. Cal. Aug. 8, 2018), *aff'd*, 982 F.3d 582 (9th Cir. 2020); *Broidy Cap. Mgmt., LLC v. Benomar*, 7:18-cv-06615, ECF No. 56, at *1 (S.D.N.Y. Dec. 21, 2018), *aff'd*, 944 F.3d 436 (2d Cir. 2019) (dismissing case on diplomatic immunity grounds); *Broidy v. Glob. Risk Advisors LLC*, No. 1:19-cv-11861, 2021 WL 1225949, at *10 (S.D.N.Y. Mar. 31, 2021) (dismissing case for failure to state a claim, with motion for leave to file second amended complaint pending); *Broidy Cap. Mgmt. LLC v. Muzin*, No. 19-cv-0150, 2020 WL 1536350, at *21 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021) (dismissing seven counts, with litigation proceeding as to the remaining six).

[3] Specifically, the First Amended Complaint alleged causes of action for: "(1) violation of the Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(2)(C) and (a)(5); (2) violation of the California Comprehensive Computer Data Access and Fraud Act, California Penal Code § 502; (3) receipt and possession of stolen property in violation of California Penal Code § 496; (4) invasion of privacy by intrusion upon seclusion; (5) conversion; (6) violation of Stored Communications Act, 18 U.S.C. § 2701; (7) violation of Digital Millennium Copyright Act, 17 U.S.C. § 1201 et seq.; (8) violation of the California Uniform Trade Secrets Act, California Civil Code § 3426 et seq.; (9) misappropriation of trade secrets in violation of the Trade Secrets Act, 18 U.S.C. § 1836 et seq.; and (10) civil conspiracy." *Broidy Cap. Mgmt., LLC v. Qatar*, 2018 WL 6074570, at *2.

*Qatar*, No. 2:18-cv-02421, 2018 WL 6074570, at *4, *11 (C.D. Cal. Aug. 8, 2018), *aff'd*, 982 F.3d 582 (9th Cir. 2020); *see also* Order, *Broidy Cap. Mgmt., LLC v. Qatar*, No. 2:18-cv-02421, ECF No. 37, at *2–3 (C.D. Cal. Apr. 4, 2018) (denying temporary restraining order and finding that Broidy failed to demonstrate that Qatar was "responsible for the unauthorized access of Plaintiffs' email accounts" or "for disseminating the allegedly illegally-obtained emails and documents").  The Ninth Circuit affirmed, holding that the FSIA does not allow an exception to immunity for Broidy's allegations of cyber-espionage, which whether true or not are "the sort of peculiarly sovereign conduct that all national governments (including our own) assert the distinctive power to perform."  *Broidy Cap. Mgmt., LLC v. Qatar*, 982 F.3d 582, 590, 595 (9th Cir. 2020).  The Supreme Court denied certiorari.  141 S. Ct. 2704 (2021).

### B.     Mosafer's Claims and Broidy's Counterclaims

This case was filed in August 2021 by Mosafer, a "network of retail, e-commerce, distribution, and travel companies" focused on Qatari tourism.  Complaint, ¶ 4.  Mosafer sued Broidy and others, claiming that the defendants "engaged in a years-long, carefully orchestrated Disinformation Conspiracy that targeted Qatar and Qatar-related businesses." *Id.* ¶ 90.  The Complaint asserted five causes of action for defendants' alleged campaign to disseminate "false and misleading information" about Qatar and Qatar-related businesses, causing Mosafer to lose customers and revenue.  *Id.* ¶¶ 7, 94–97.  The Complaint sought damages for Mosafer's business losses, and an injunction to stop the alleged ongoing harm to its business.  *Id.* ¶¶ 105, 113, 121, 126, 131.  The Complaint did not discuss the alleged hack-and-smear conspiracy upon which Broidy's earlier lawsuit was based.

Despite the lack of any overlap between Mosafer's Complaint and his prior action, Broidy seized on this suit as an opportunity to relitigate a case he had lost once before.  Broidy's counterclaims recycle his allegations of a cyber-espionage operation, namely: that (i) Qatar hired a third party to hack into Broidy's computer systems and email accounts; (ii) this party "stole trade secrets . . . and other information" and shared them

with public relations ("PR") firms; and (iii) these PR firms "leaked the documents to various media outlets."  Counterclaims, ¶ 37.  Broidy's allegations from that earlier suit underlie ten of the twelve counterclaims pleaded against Qatar here.  *Id.* ¶¶ 235–382.[4]

The remaining two counterclaims allege business conspiracy and abuse of process, and rest on Broidy's speculation that Qatar induced Mosafer to file this suit as retaliation.  *Id.* ¶¶ 235–53.  Broidy supports this allegation with an opinion by Dr. Yleem D.S. Poblete, who in turn bases her opinion on criticisms of Qatar's system of government.  *See, e.g., id.* at Ex. 1, ¶¶ 2–3.  On that basis, Broidy makes the equivocal allegation that Mosafer "at a minimum" received "the blessing" of the Emir of Qatar to bring this action, and speculates that it is "more likely" that Mosafer "w[as] asked . . . to file the lawsuit."  *Id.* ¶ 8 (internal quotation marks omitted) (citing Expert Opinion of Dr. Poblete, Counterclaims, Ex. 1, ¶¶ 53–54).  These same allegations also ground Broidy's invocation of the counterclaim and waiver exceptions to sovereign immunity under the FSIA.  According to Broidy, the filing of litigation in a U.S. court by a private company can lead to an abrogation of a foreign sovereign's immunity.

On October 18, 2021, Judge Walter declined a request to transfer this case as related to Broidy's original action.  *See* Order Denying Transfer, ECF No. 50.  Judge Walter noted that the present case "involves different parties and different claims" than the prior action.  *Id.*

---

[4] These ten counterclaims allege the following causes of action that were also alleged in the previous Central District lawsuit: the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (Count Four); the Comprehensive Computer Data Access and Fraud Act, Cal. Pen. Code § 502 (Count Five); receipt and possession of stolen property, Cal. Pen. Code § 496 (Count Six); invasion of privacy by intrusion upon seclusion (Count Seven); conversion (Count Eight); the Stored Communications Act, 18 U.S.C. §§ 2701–12 (Count Nine); the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq.* (Count Ten); the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426, *et seq.* (Count Eleven); and the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* (Count Twelve). Counterclaims, ¶¶ 304–82.  Count Three is brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO").  While the prior action framed a similar claim as "civil conspiracy" rather than invoking RICO, the claims share common allegations of a coordinated "hack-and-smear" campaign.  The RICO claim here also alleges that Qatar asked the Mosafer plaintiffs to file the underlying *Mosafer* suit.  *See id.* ¶¶ 253–303; First Am. Compl., *Broidy Cap. Mgmt., LLC v. Qatar*, No. 2:18-cv-02421, ECF 47, ¶¶ 228–38.

## LEGAL STANDARD

Where a defendant challenges the legal sufficiency of jurisdictional allegations pursuant to Federal Rules of Civil Procedure 12(b)(1) and (2) under the FSIA, "the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the plaintiff." *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (quoting *Rong v. Liaoning Province Gov't*, 452 F.3d 883, 888 (D.C. Cir. 2006)).  A litigant who sues a foreign state bears the burden of showing that one of the FSIA's limited exceptions applies to that state.  *Meadows v. Dominican Republic*, 817 F.2d 517, 522–23 (9th Cir. 1987).  If this burden is not met, the court lacks both subject matter and personal jurisdiction over the foreign state.  *See* 28 U.S.C. § 1330(a)–(b); *Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 485 n.5, 489 (1983).

## ARGUMENT

The FSIA provides "the sole basis" for acquiring jurisdiction over a foreign state in federal or state court.  *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443 (1989); *see also Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 709 (2021). The FSIA establishes a fundamental rule that foreign states are not subject to the jurisdiction of United States courts unless a specific statutory exception to immunity applies—a rule rooted in diplomatic and international sensitivities of the highest order. *See OBB Personenverkehr AG v. Sachs*, 136 S. Ct. 390, 394 (2015) (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993)); *Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1318–19 (2017); *see also* 28 U.S.C. § 1604.

The FSIA's "default rule of immunity 'reflects the absolute independence of every sovereign authority,'" *Broidy Cap. Mgmt., LLC*, 982 F.3d at 589 (internal citation omitted), and creates only "narrow exceptions," *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1125 (9th Cir. 2010).  *See also Schermerhorn v. Israel*, 876 F.3d 351, 358 (D.C. Cir. 2017) (FSIA exceptions are "discrete and limited") (internal quotation marks and citation omitted).

Here, the Court lacks both subject matter and personal jurisdiction as to the counterclaims against Qatar.  Broidy's invocation of the counterclaim (28 U.S.C. § 1607) and waiver (*Id.* § 1605(a)(1)) exceptions to immunity is without merit.

## I.    The Court Lacks Subject Matter Jurisdiction Because Qatar Is Immune.

### A.    The Counterclaim Exception Does Not Apply.

Broidy's invocation of the counterclaim exception fails for two independent reasons.  *First*, this suit filed by private companies is not an "action brought by a foreign state," as required by the exception.  *Second*, even if the "action brought by a foreign state" requirement were met (it is not), the counterclaims do not meet any of the exception's further requirements, including that the counterclaims must arise out of the same transaction or occurrence as the plaintiff's claims.

### 1.    This Is Not an "Action Brought by a Foreign State."

The counterclaim exception provides that "[i]n any action brought *by a foreign state*, or in which a *foreign state* intervenes, in a Court of the United States or of a State, the foreign state shall not be accorded immunity with respect to any counterclaim" meeting one of three further requirements.  28 U.S.C. § 1607 (emphasis added).  Based on the provision's plain text, the counterclaim exception "ha[s] no application . . . where the foreign state is not the plaintiff." *Wolf v. Fed. Republic of Germany*, No. 93 C 7499, 1995 WL 263471, at *9 (N.D. Ill. May 1, 1995), *aff'd*, 95 F.3d 536 (7th Cir. 1996); *see also Khochinsky v. Republic of Poland*, 1 F.4th 1, 10 (D.C. Cir. 2021) ("[T]he counterclaim exception applies only when there is an 'action brought by a foreign state, or in which a foreign state intervenes,' and when the ostensible 'counterclaim' is brought 'in' that same action.").  "Until [the foreign sovereign] seeks to use the courts of this country the rationale for allowing counterclaims does not come into play." *Alberti v. Empresa Nicaraguense De La Carne,* 705 F.2d 250, 254 (7th Cir. 1983).  Here, the counterclaim exception is inapplicable on its face, for the straightforward reason that no "foreign state" "brought" or "intervene[d]" in this "action."

Instead, private businesses—Mosafer Inc., Mosafer E-Com Inc., and GoMosafer—brought this lawsuit.  The FSIA defines "foreign state" to mean "a political subdivision of a foreign state or an agency or instrumentality of a foreign state."  28 U.S.C. § 1603 (further defining an "agency or instrumentality" as an entity (1) with separate legal personhood; (2) that is an organ of a foreign state or political division, or which is majority-owned by such an entity; and (3) that is "neither a citizen of a State of the United States . . . nor created under the laws of any third country").  The counterclaims do not and could not allege that Mosafer is a political subdivision or agency or instrumentality of Qatar; rather, the counterclaims acknowledge that the Mosafer plaintiffs are private entities, two of which are Delaware corporations.  *See* Counterclaims, ¶¶ 13–15.

Broidy nonetheless asserts that "the FSIA affords no protection to Qatar in this action"—not because this is an "action brought by a foreign state," but because Mosafer is supposedly "acting *at the behest* of Qatar." Counterclaims, ¶ 3 (emphasis added).  That theory cannot be reconciled with the Supreme Court's interpretation of the phrase "foreign state" under the FSIA.  Rejecting attempts to give that term "a broad construction," the Court held that "foreign state" does not include "any thing or person through which action is accomplished," or even "an official acting on behalf of the foreign state."  *Samantar v. Yousuf*, 560 U.S. 305, 315, 319 (2010).  If foreign officials—whose job is to act "at the behest" of foreign states—are not themselves foreign states within the meaning of the FSIA, a private company allegedly acting at the behest of the foreign state is plainly not a foreign state for purposes of the same statute.  *See also WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 17 F.4th 930, 932–33, 940 (9th Cir. 2021) (private company allegedly acting as an agent of a foreign state cannot "meet[] the FSIA's definition of 'foreign state'").

The FSIA's statutory structure confirms that when Congress intended to address those who act on a state's behalf, it did so expressly.  *See* 28 U.S.C. § 1605(a)(5) (abrogating immunity for certain "tortious act[s] or omission[s] of [the] foreign state *or of*

*any official or employee of that foreign state* while acting within the scope of his office or employment") (emphasis added); *id.* § 1605A(a)(1) (same for certain acts "engaged in by *an official, employee, or agent of [the] foreign state* while acting within the scope of his or her office, employment, or agency") (emphasis added).  The counterclaim exception, in contrast, refers only to actions "brought by a foreign state," not to actions "brought by a foreign state *or* a foreign state's employees, agents, proxies, or others acting on the foreign state's behalf."

Qatar is not aware of a single case treating an action brought by a private entity as an "action brought by a foreign state" for purposes of the counterclaim exception. Likewise unable to identify any such case, Broidy instead invokes a case about the relationship between a foreign state (Cuba) and an instrumentality of that state (Banco Para El Comercio Exterior de Cuba ("Bancec")).  *See* Counterclaims, ¶ 3 (citing *First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba* ("*Bancec*"), 462 U.S. 611 (1983)).  In *Bancec*, the Supreme Court recognized a presumption that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such," but concluded that the presumption could be overcome (1) where a foreign state so "extensively control[s]" its instrumentality "that a relationship of principal and agent is created," or (2) when "equitable principles" weigh in favor of treating the instrumentality as part of the state, because treating it as a separate entity "would work fraud or injustice."  462 U.S. at 626–29 (internal quotation marks and citation omitted).

Broidy's reliance on *Bancec* is misplaced.  *Bancec* examined the limited circumstances in which the separate juridical personalities of a foreign state and its "*government instrumentalities*" could be disregarded.  *Id.* at 628–34 (emphasis added). But a government instrumentality is still a "foreign state" as defined by the FSIA.  28 U.S.C. § 1603(a).  No court has extended *Bancec* to hold that a *private entity*, over which the foreign state has no ownership interest, can be treated as "a foreign state" under the FSIA.  The question of whether an entity can be treated as a "foreign state" because it

allegedly acts "on behalf of a foreign state" is addressed not by *Bancec*, but by *Samantar*, which answered firmly in the negative. *See supra* at 9.

Statutory text and Supreme Court precedent are reason enough to reject Broidy's invocation of the counterclaim exception, but that conclusion is confirmed by the FSIA's overarching purpose: respect for the "independence and dignity" of each foreign government, recognizing that the United States benefits from the reciprocal respect it receives in other countries. *Helmerich & Payne*, 137 S. Ct. at 1315 (internal quotation marks and citation omitted). In a normal application of the counterclaim exception, where a foreign state voluntarily appears in U.S. court, no sensitive inquiry into another sovereign's internal affairs is necessary to determine that the exception applies. But by asking the Court to *treat a private entity as the foreign state*, Broidy seeks an unprecedented judicial inquiry. This is clear from Broidy's reliance on an opinion by Dr. Poblete, who speculates that Mosafer either received Qatar's "blessing" or was "asked" to file the case, and bases this conclusion on "the nature and power structure of the Qatari system." Expert Opinion of Dr. Poblete, Counterclaims, Ex. 1, ¶¶ 53–54. To be clear, Qatar denies that Mosafer is its "proxy" or that it filed this action "at the behest of Qatar." But bedrock principles of sovereignty are offended by the very notion that in order to avoid being subjected to the jurisdiction of U.S. courts, a sovereign would first be required to defend "the nature and power structure" of its political system.[5]

Thus, Broidy's reliance on *Bancec* to enlarge the counterclaim exception should be rejected, but even assuming *Bancec* could be extended, there would still be no basis to treat Mosafer and Qatar as one and the same. By its terms, *Bancec* applies only (1) where a foreign state so "extensively control[s]" its instrumentality "that a relationship of

---

[5] Broidy's expansive view of the counterclaim exception would thus have sweeping consequences far beyond this case, allowing litigants to freely allege that a plaintiff is a sovereign's "proxy" and forcing sovereigns to litigate that question. For example, when Elliott Broidy and BCM initially sued Qatar and several other persons in 2018, any one of the defendants in that suit could have filed counterclaims against the United Arab Emirates, on the theory that Elliott Broidy was an agent and proxy of that state.

principal and agent is created," or (2) when "equitable principles" weigh in favor of treating the instrumentality as part of the state to avoid "fraud or injustice." *Bancec*, 462 U.S. at 629–31. Here, neither precondition exists. First, the counterclaims do not allege that Qatar so "extensively controls" Mosafer "that a relationship of principal and agent [has been] created." *Id.* at 629. Broidy does not attempt to allege that Qatar has "day-to-day, routine involvement . . . in the affairs of" Mosafer, as is required to show extensive control. *Holy See,* 557 F.3d at 1079–80; *see also Flatow v. Islamic Republic of Iran*, 308 F.3d 1065, 1069–74 (9th Cir. 2002) (finding that Iran's supervision over Bank Saderat, a state-owned entity, through various government agencies could not constitute "extensive control" under *Bancec*). Broidy's allegations that Mosafer filed one lawsuit at Qatar's "behest" does not satisfy the *Bancec* requirement of extensive day-to-day control.

Second, Broidy has not pointed to "equitable principles" that support treating Mosafer as Qatar. *Bancec*, 462 U.S. at 629. *Bancec* concerned a foreign state's abuse of the corporate form: Cuba dissolved Bancec and became the "real beneficiary" of Bancec's claims in U.S. court, but then sought to "escape liability for its acts in violation of international law simply by retransferring [Bancec's] assets to separate juridical entities." *Id.* at 632–33. The Court was concerned that upholding Bancec's separate personality in these circumstances "would permit governments to avoid the requirements of international law simply by creating juridical entities whenever the need arises." *Id.* at 633; *see also Comm'ns Imp. Exp. S.A. v. Congo*, No. 5:16-cv-00656, 2016 WL 9281947, at *4 (C.D. Cal. Apr. 21, 2016) ("Plaintiff must show that [the state] abused the corporate form or [the instrumentality's] corporate status works a fraud."). Here, in contrast, there is no allegation that Qatar abused the corporate form by creating a separate legal entity to shield itself. The Mosafer companies are private entities that began operations many years before this case and seek to recover for their own economic losses. *See* Complaint, ¶¶ 104, 112, 120, 125, 130 (alleging "severe harm" to Mosafer, including "loss of sales and goodwill").

But in any event, the Court should not accept Broidy's invitation to stretch *Bancec* for the unprecedented purpose of applying the counterclaim exception to a lawsuit filed by a private entity.  The counterclaim exception applies only to an "action brought by a foreign state," Mosafer is not a foreign state, and that should be the end of the analysis.

### 2.  Broidy's Counterclaims Do Not Meet the Additional Requirements of the Counterclaim Exception.

Where an action is actually brought by a foreign state (unlike here), the counterclaim exception does not apply unless one of three showings is made.  Broidy cannot meet this additional requirement because (1) Qatar is otherwise immune from the counterclaims; (2) the counterclaims do not arise out of the transaction or occurrence that is the subject matter of Mosafer's claim; and (3) the counterclaims do not seek a setoff.

#### a)  Qatar Is Immune from Broidy's Counterclaims.

Subsection (a) of the counterclaim exception permits counterclaims "for which a foreign state would not be entitled to immunity under section 1605 or 1605A of this chapter had such claim been brought in a separate action against the foreign state."  28 U.S.C. § 1607(a). There is no question that no other exception to immunity applies to Broidy's claims of hacking and dissemination of private materials—the Ninth Circuit has already said so.  *See Broidy Cap. Mgmt., LLC v. Qatar*, 982 F.3d at 586, 596.

Neither does any FSIA exception apply to Broidy's counterclaims that were not included in his earlier suit:  business conspiracy (Count One), abuse of process (Count Two), and the small portion of his RICO claim that does not relate to the alleged hacking.  All of these claims are based on the filing of this lawsuit, which Broidy alleges was tortious.  *See* Counterclaims, ¶¶ 235–52, 261, 301.  Broidy does not invoke any FSIA exception that he contends might apply to these claims (apart from the waiver exception, which is addressed below).  Nor could he, as the FSIA expressly preserves immunity for claims of "abuse of process," "malicious prosecution," and "interference with contract rights."  28 U.S.C. § 1605(a)(5)(B); *see also* Counterclaims, ¶¶ 247–52 (alleging "abuse of process"); *id.* ¶¶ 241–43 (alleging Qatar agreed to file lawsuit to harm Circinus and

seeks to compel Circinus "to disgorge substantial monies earned from various government contracts"); *Blaxland v. Commonwealth Dir. of Pub. Prosecutions,* 323 F.3d 1198, 1203–06 (9th Cir. 2003) (concluding that a claim labeled false imprisonment was really a claim for abuse of process and malicious prosecution, and accordingly finding Australia immune from suit).

### b) The Counterclaims Do Not Arise Out of the Transaction or Occurrence That Is the Subject Matter of the Claim.

Subsection (b) permits counterclaims that "aris[e] out of the transaction or occurrence that is the subject matter of the claim of the foreign state." 28 U.S.C. § 1607(b). As an initial matter, the text of subsection (b)—which refers to the "claim of the *foreign state*"—makes little sense under Broidy's theory, as no "foreign state" has made a "claim" in this case. Setting that issue aside, however, Broidy's counterclaims do not arise out of the transaction or occurrence that is the subject matter of Mosafer's claim. Broidy's counterclaims lack a "logical relationship" with Mosafer's claims, as required by subsection (b). *Cabiri v. Gov't of Republic of Ghana*, 165 F.3d 193, 197 (2d Cir. 1999) (quoting *Moore v. N.Y. Cotton Exchange*, 270 U.S. 593, 610 (1926)); *see also In re Lazar*, 237 F.3d 967, 979 (9th Cir. 2001) (holding, in context of Fed. R. Civ. P. 13(a), that there must be a "logical relationship" between claims and counterclaims).

The Second Circuit in *Cabiri* explained that the counterclaim exception does not apply where "the essential facts of the various claims" in a case are not "so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Cabiri*, 165 F.3d at 197 (quoting *United States v. Aquavella*, 615 F.2d 12, 22 (2d Cir. 1979)); *see also Pochiro v. Prudential Ins. Co. of Am.*, 827 F.2d 1246, 1249 (9th Cir. 1987) (similar analysis under Rule 13(a)). Put another way, when "the evidence required to establish" the claim and the counterclaim do not overlap, the counterclaim exception cannot be invoked. *Cabiri*, 165 F.3d at 198–99. In *Cabiri*, Ghana terminated Cabiri from his position as its trade representative, and on that basis instituted an action to evict him from his state-owned home. *Id.* The court held that

14

Cabiri's breach of contract claim arose from the same transaction or occurrence as Ghana's eviction claim, because the "core issue in both claims" was "whether Cabiri's employment was lawfully terminated." *Id.* at 198. In contrast, Cabiri's tort claims were not within the same transaction or occurrence, and thus outside the scope of the exception, because "the evidence required to establish them" did "not concern whether the contract was lawfully performed or terminated." *Id.* at 198–99; *compare Lord Day & Lord v. Socialist Republic of Vietnam*, 134 F. Supp. 2d 549, 557 (S.D.N.Y. 2001) (claims were sufficiently related because they arise out of the same "ship accident").

Here, "the evidence required to establish" Mosafer's claims and Broidy's counterclaims does not overlap. Mosafer alleges that Broidy and others harmed its business through a campaign to influence the United States people to believe that Qatar harbors and supports terrorists, and it seeks to prove that Broidy spread lies and misinformation in the United States to cause that harm. *See* Complaint, ¶¶ 1–12. Broidy, on the other hand, seeks to prove that Qatar and its agents hacked Elliott Broidy and disseminated his private documents through a phishing scheme. *See* Counterclaims, ¶¶ 166–230. Apart from the fact that both sets of claims involve Qatar and Broidy, they have nothing to do with each other—"the evidence required to establish" the claims are completely different. *Cabiri*, 165 F.3d at 198. Indeed, Judge Walter has already recognized that the two cases involve "different claims" and are unrelated. *See* Order Denying Transfer of Related Cases, ECF No. 50.

Broidy's counterclaims that relate to the filing of this lawsuit likewise do not arise out of the same transaction or occurrence as Mosafer's claims. The "subject matter" of Mosafer's claims is as described above—economic injury caused by an alleged influence campaign that spread disinformation about Qatar. *See* Complaint, ¶¶ 1–12. The subject matter is not the *fact* that Mosafer brought its lawsuit. In *Great Socialist People's Libyan Arab Jamahiriya v. Miski*, the D.C. District Court examined whether the defendant's counterclaim for abuse of process arose out of the same transaction or occurrence as Libya's complaint alleging violations of trademark rights. *See* 683 F. Supp. 2d 1, 9

15

(D.D.C. 2010).  The court found that it did not, because it sought "relief stemming from [Libya's] initiation of the lawsuit itself," and thus did not "aris[e] from the transactions and occurrences specified in [Libya's] complaint."  Just as in *Miski*, Broidy's claims of misconduct related to the filing of this suit do not fall within section 1607(b), because they do not arise out of the same transaction or occurrence that is the subject matter of Mosafer's claim.

### c) The Counterclaims Do Not Seek a Setoff.

Subsection (c) permits a counterclaim "to the extent that [it] does not seek relief exceeding in amount or differing in kind from that sought by the foreign state."  Here again, the text of the FSIA underscores Broidy's strained reading of the statute, as Qatar—the "foreign state"—has not sought any relief in this case, and Mosafer has sought damages for alleged losses to its own businesses.  In any event, this subsection, which was intended to apply to "setoff[s]," *Reino de Espana v. Am. Bureau of Shipping, Inc.*, 328 F. Supp. 2d 489, 495 (S.D.N.Y. 2004), *decision clarified on recons.,* No. 03-cv-3573, 2006 WL 2034632 (S.D.N.Y. July 14, 2006) (citing H.R. Rep. 94-1487, at 6622), does not apply in this case, as Broidy's counterclaims do not seek a setoff.

### 3. If the Court Grants Broidy's Motion to Strike, the Counterclaim Exception Could Not Apply.

Finally, while Qatar takes no position on Broidy's pending motion to strike the Complaint, if that motion were granted, that would be an additional independent reason why the counterclaim exception could not apply.  *See generally* Broidy Defendants' Notice of Motion to Strike or, Alternatively, to Dismiss Complaint, ECF No. 44.  A stricken complaint is a nullity and has no legal effect.  *See Woide v. Ramsey & Assocs. Mortg. Co.,* No. 616-cv-1781, 2017 WL 5479699, at *1 (M.D. Fla. Mar. 1, 2017); *see also Perez v. Del Monte Fresh Produce N.A., Inc.,* No. 3:11-cv-1243, 2012 WL 2872398, at *11 (D. Or. Apr. 18, 2012), *R. & R. adopted*, No. 3:11-cv-01243, 2012 WL 2872317 (D. Or. July 12, 2012) ("The Third Amended Complaint is a nullity, of no legal consequence, and should be stricken.").  If Broidy's motion to strike results in the

Complaint being a nullity, there would be no "action brought" or "intervene[d]" in to trigger the exception.  28 U.S.C. § 1607.

**B.    The Waiver Exception Does Not Apply.**

Broidy's reliance on the waiver exception is also unavailing.  *First*, he cannot invoke that exception to bypass the immunity exceptions that specifically govern the allegations here—the counterclaim and noncommercial tort exceptions—and which do not permit jurisdiction.  *Second*, he does not allege that a "foreign state" has taken action to waive immunity, as is required by the statutory text.  *Third*, the conduct he alleges does not fall within the limited types of actions that the Ninth Circuit has found may give rise to a waiver of immunity.

### 1.    The Waiver Exception Cannot Be Used to Circumvent Limitations on Other FSIA Exceptions.

A threshold defect in Broidy's waiver theory is that the FSIA's waiver exception cannot be used to evade the limits Congress placed on other relevant exceptions to immunity.  Courts, including the Ninth Circuit, have refused to find an implied waiver based on alleged conduct that is more properly considered under the noncommercial tort exception and the counterclaim exception.  These cases foreclose Broidy's invocation of the implied waiver exception here.

#### a)    Broidy's Claims Concerning the Filing of This Lawsuit Are Governed by the Noncommercial Tort Exception and Cannot Be the Basis for Implied Waiver.

Broidy's invocation of the implied waiver exception for claims that seek to hold Qatar liable for the filing of this lawsuit is foreclosed by *Blaxland,* 323 F.3d 1198.  There, the plaintiff filed malicious prosecution and abuse of process claims against Australia for fraudulently instigating extradition proceedings in the United States.  *Id.* at 1201–02.[6] Such claims do not fall within the FSIA's noncommercial tort exception, which expressly

---

[6] The plaintiff also pled false imprisonment, but the court treated that claim as in reality an abuse of process claim, because the court "look[s] beyond [the complaint's] characterization to the conduct on which the claim is based."  *Id.* at 1203 (quoting *Mt. Homes, Inc. v. United States*, 912 F.2d 352, 356 (9th Cir. 1990)).

preserves immunity for malicious prosecution and abuse of process claims.  28 U.S.C. § 1605(a)(5)(B).  The plaintiff sought to circumvent that limitation by arguing that the same conduct—the fraudulent initiation of extradition proceedings—constituted an "implied waiver."  *Blaxland*, 323 F.3d at 1203, 1206.  The Ninth Circuit rejected this attempted workaround, in part because it would nullify the noncommercial tort exception's carveout: "[t]here cannot be *implied* waiver of sovereign immunity, for purposes of claims that malicious prosecution and abuse of process occurred in this country, solely through tortious conduct limited to the very activities that constitute those torts, as any other conclusion would void the operation of [28 U.S.C.] § 1605(a)(5)(B)."  *Id*. at 1209.

Broidy's business conspiracy, abuse of process, and part of his RICO claim are directly governed by *Blaxland*.  However Broidy has styled those claims, they all complain of Qatar's alleged role in "fil[ing] this lawsuit."  Counterclaims, ¶¶ 241–43, 248, 261.  Those claims therefore sound in malicious prosecution and abuse of process. *Blaxland*, 323 F.3d at 1206 (holding that the plaintiff could not "overcome sovereign immunity for claims of malicious prosecution and abuse of process by calling them a different name").  Congress expressly preserved immunity over such claims in section 1605(a)(5)(B), and as *Blaxland* held, allowing those actions to be deemed an "implied waiver" of immunity would nullify Congress's decision.

> **b)  All of Broidy's Claims Are Governed by the Counterclaim Exception and Cannot Be the Basis for Implied Waiver.**

As for Broidy's other claims, the governing FSIA exception is the counterclaim exception, not the waiver exception.  Just as the waiver exception cannot override the limitations Congress placed on the noncommercial tort exception, *see Blaxland*, 323 F.3d at 1206, the waiver exception also cannot override the limitations Congress placed on the counterclaim exception.  The counterclaim exception reflects Congress's judgment as to whether and to what extent the initiation of litigation in the United States abrogates a sovereign's immunity.  As discussed above, it places two important limits on the removal

of immunity: (1) the "foreign state" must bring or intervene in the case, and (2) the counterclaim must arise from the same transaction or occurrence.  *See supra* Section I.A.

Thus, in the *Cabiri* case, the Second Circuit held that "[t]o allow plaintiffs to establish waiver on the basis of a connection between Ghana's eviction proceeding and causes of action that do not come within the counterclaim exception would in effect broaden the application of the counterclaim exception beyond the parameters intended by Congress."  165 F.3d at 203.  The Ninth Circuit has similarly rejected the argument that a sovereign's filing of a complaint was a "general waiver" of immunity for counterclaims, instead remanding the case for an analysis of whether the counterclaim exception applied.  *See Corporacion Mexicana de Servicios Maritimos, S.A. de C.V. v. M/T Respect*, 89 F.3d 650, 656 (9th Cir. 1996).  The court held that the counterclaim exception was determinative absent evidence that the sovereign *intended* to effect a general waiver.  *Id.*

There is no allegation here that Qatar intended to waive its immunity; to the contrary, it has vigorously defended its immunity in this District and the Ninth Circuit.  *See Broidy Cap. Mgmt., LLC*, 2018 WL 6074570, at *4, *11; *Broidy Cap. Mgmt., LLC*, 982 F.3d at 590.  The question of whether Mosafer's filing of a lawsuit abrogates Qatar's sovereign immunity is addressed by the counterclaim exception, and as explained above, Broidy's claims do not fall within that exception.  Broidy cannot claim an implied waiver in order to "broaden the application of the counterclaim exception beyond the parameters intended by Congress."  *Cabiri*, 165 F.3d at 203.

## 2.     There Has Been No Action by a "Foreign State."

Broidy's invocation of the waiver exception also fails because, like the counterclaim exception, the waiver exception can only be triggered by action of a "foreign state": it applies to cases "in which the *foreign state* has waived its immunity either explicitly or by implication."  28 U.S.C. § 1605(a)(1) (emphasis added).  Accordingly, the Ninth Circuit has applied this exception only where a "foreign state," as defined by the FSIA, has acted in a way that effects a waiver.  *See Farhang v. Indian Inst. of Tech.*, 655 F. App'x 569, 570 (9th Cir. 2016) (waiver where a public Indian university

entered into an agreement which stated that U.S. law would apply); *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 722–23 (9th Cir. 1992) (waiver where Argentina submitted a letter rogatory to a U.S. court); *Joseph v. Office of the Consulate Gen. of Nigeria*, 830 F.2d 1018, 1020, 1023 (9th Cir. 1987) (waiver where the Consulate General of Nigeria executed a lease that "contemplate[d] participation of the United States courts"; also relying on the commercial activity and tortious activity exceptions to find jurisdiction).

Even when an instrumentality of a foreign state waives immunity, the Ninth Circuit has held that the waiver does not extend to unrelated instrumentalities of the same sovereign, absent a showing of fraud. *Chuidian v. Philippine Nat'l Bank*, 912 F.2d 1095, 1103–04 (9th Cir. 1990), *abrogated on other grounds by Samantar*, 560 U.S. 305; *see also id.* at 1104 ("[S]uch a cavalier disregard for the separate juridical existence of foreign instrumentalities is unwarranted and contrary to existing law and policy."). There is no support for Broidy's apparent theory that private companies, by filing a lawsuit, can be deemed to have waived immunity *on behalf of a foreign sovereign*. Counterclaims, ¶ 8. If it were true that Mosafer sought Qatar's "blessing" before filing their lawsuit, or even if Qatar "asked" Mosafer to file the suit as Broidy speculates, *id.*, that would not mean that Mosafer can be treated as the "foreign state." *See supra*, Section I.A.1. Action taken by a non-state is not a situation where "the foreign state has waived its immunity."

### 3.  Broidy's Allegations Do Not Support Any Recognized Application of the Implied Waiver Exception.

Broidy's waiver theory fails for the independent reason that it exceeds the narrow bounds the Ninth Circuit has placed on what actions impliedly waive sovereign immunity. "The waiver exception is narrowly construed." *Joseph*, 830 F.2d at 1022. Broidy could not, and does not appear to, contend that Qatar expressly waived its immunity. *See Barapind v. Gov't of Republic of India*, 844 F.3d 824, 830 n.2 (9th Cir. 2016) (a sovereign "explicitly" waives immunity only through a "clear, complete, unambiguous, and unmistakable manifestation of . . . [its] intent to waive") (internal

quotation marks and citation omitted).  "Implicit" waivers are rare, and "ordinarily found only where: '(1) a foreign state has agreed to arbitration in another country; (2) a foreign state has agreed that a contract is governed by the law of a particular country; [or] (3) a foreign state has filed a responsive pleading in a case without raising the defense of sovereign immunity.'"  *Joseph*, 830 F.2d at 1022; *see also Ivanenko v. Yanukovich*, 995 F.3d 232, 239–40 (D.C. Cir. 2021) (stating that implicit waiver may occur "in only [these] three circumstances").  Broidy does not allege that Qatar has taken any of these three actions.

Only in one instance has the Ninth Circuit held that an action outside of these three examples could establish implicit waiver.  In *Siderman*, the Ninth Circuit held that Argentina might have implicitly waived immunity when it allegedly "invo[ked] . . . United States judicial authority" to further an alleged years-long "effort[] to torture and persecute [the plaintiff]."  965 F.2d at 722.  Argentina had initiated a criminal action in its own courts against one of the plaintiffs and requested the assistance of the Los Angeles Superior Court (through a Letter Rogatory) to serve him in the United States.  *Id.* at 702–03.  The plaintiff alleged this was a sham prosecution intended to obtain his return to Argentina so that the military could torture him.  *Id.* at 722 & n.19. The court held that, on remand, the district court could conclude that Argentina implicitly waived immunity if it found there was a "direct connection between the sovereign's activities in [U.S.] courts and the plaintiffs['] claims for relief," which were based on an alleged pattern of torture and persecution.  The court cautioned, however, that it was "not suggest[ing] that . . . any foreign sovereign which takes action against a private party in our courts necessarily opens the way to all manner of suit by that party."  *Id.*

*Siderman*'s approach to the waiver exception has been criticized,[7] but more importantly, the Ninth Circuit has carefully circumscribed its holding, and in the 29 years

---

[7] *See Cabiri*, 165 F.3d at 202 ("*Siderman* itself relies on largely inapt citation to cases in which the issue was whether treaties or written agreements entered into by foreign

since it was decided, the Ninth Circuit has never applied *Siderman* to find a waiver of immunity.  Thus, in *Blaxland*, the Ninth Circuit held that *Siderman* could not be extended to find waiver based on allegations that Australia induced the U.S. Government to commence extradition proceedings against the plaintiff using fraudulent affidavits.  323 F.3d at 1201.  While the U.S. Government conducts extradition procedures "on behalf of the foreign sovereign," the court explained that, unlike in *Siderman*, Australia had not "directly contact[ed]," "direct[ly] engag[ed]," or made a "direct request" of, a U.S. court. *Id.* at 1206–07.

The Ninth Circuit also limited *Siderman*'s holding in *In re Estate of Ferdinand Marcos Human Rights Litigation*, 94 F.3d 539 (9th Cir. 1996).  There, the court held that the Philippines did not waive immunity when it filed an amicus brief in support of plaintiffs suing the Estate of deposed Philippine President Ferdinand Marcos based on allegations of torture by his government.  *Id.* at 547.  Plaintiffs later sought to modify an injunction freezing the Estate's assets to include the Philippines, but the Ninth Circuit held that because the Philippines' amicus brief concerned only whether the suit should proceed, it was disconnected from plaintiffs' recovery of damages, and could not serve as a basis for waiver.  *Id.* at 547.  The court also held that the Philippines did not waive immunity when it separately sued the Estate in U.S. court to recover misappropriated assets.  *Id.* at 542, 547.  The court held there was no "direct connection between [plaintiffs'] action for human rights abuses and the Republic's pursuit of its assets."  *Id.* at 547.

These controlling cases preclude Broidy's invocation of the waiver exception here. To the extent that Broidy is arguing that there was a waiver of immunity based on Mosafer's filing of this lawsuit, it is clear that Qatar did not "directly contact," "direct[ly]

---

sovereigns contemplated the adjudication of disputes by courts in the United States.  The implicit theory of *Siderman* is new and dubious, and seems to be that a foreign state forfeits immunity with respect to matters related to a scheme of persecution if it advances that scheme by bringing suit in the United States." (citation omitted)).

engage," or make any "direct request" whatsoever of, a U.S. court.  *See Blaxland*, 323 F.3d at 1206–07.  Instead, Broidy alleges that private entities sued him, and that Qatar *indirectly* engaged a U.S. court by providing "its blessing" or perhaps by "asking" Mosafer to file this action.  *See* Counterclaims, ¶ 8.

Even assuming these allegations were true, *Blaxland* forecloses a finding of waiver on this theory.  In *Blaxland*, the court found it dispositive that the U.S. Justice Department, not Australia, initiated extradition proceedings in a U.S. court, even though Australia had prompted the Department to do so, and pursued those proceedings "on behalf of the foreign sovereign."  *Blaxland*, 323 F.3d at 1207.  Here too, the most Broidy has alleged is that a third party has initiated proceedings in U.S. court "at the behest of Qatar," Counterclaims ¶ 3, without Qatar making any direct request of a U.S. court.

Furthermore, there is no "direct connection" between Mosafer's lawsuit and Broidy's counterclaims.  *Siderman*, 965 F.2d at 722.  The plaintiffs' theory in *Siderman*, on which the Ninth Circuit remanded, was that Argentina's request for U.S. judicial assistance was "part and parcel" of the same acts of persecution that were the basis of the plaintiffs' claims.  *Id.*  Here, Qatar's supposed use of U.S. courts—Mosafer's action seeking a remedy for business losses caused by a disinformation campaign concerning Qatar—is not "part and parcel" of any cyber-espionage operation that Broidy alleges Qatar conducted against him.  There is no "direct connection" between Mosafer's suit alleging an anti-Qatar conspiracy in the United States and Broidy's allegations of a "hack-and-smear" campaign conducted by Qatar against him.[8]  As described in Section I.A.2.b, there is no overlap in the evidence required to prove these distinct claims.  Like in *Estate of Marcos*, the disconnect between the sovereign's alleged engagement of a U.S. court, and the claims filed against it, forecloses a finding of waiver.

---

[8] While Broidy's claims for business conspiracy and abuse of process are based on a different set of allegations, a finding of waiver as to those claims is squarely foreclosed by Ninth Circuit precedent.  *See supra* Section I.B.1.

To the extent that Broidy contends that Qatar waived immunity through the filing of "John Doe" lawsuits, that argument similarly fails, because there is no "direct connection" between those lawsuits and Broidy's counterclaims.  *Siderman*, 965 F.2d at 722.  Broidy references "John Doe" lawsuits in which the Government Communications Office of Qatar "issue[d] subpoenas to IT service providers and social media companies regarding websites or internet users who had criticized Qatar."  Counterclaims, ¶ 43.  The only relevance Broidy attaches to these lawsuits is that they identified Ironistic, SCL Social Limited (and one of its employees), and Project Associates as parties behind certain websites, information that Qatar allegedly passed to Mosafer, which sued those entities.  *Id.* ¶¶ 43–49.[9]  But Broidy makes no allegation that the John Doe discovery contributed to Mosafer's claims *against Broidy*, and does not contend that he has any relationship with those separate defendants.  And even if there *were* some connection alleged between Broidy and these entities (there is not), the John Doe lawsuits would at most relate to Mosafer's claims and *still* not be "part and parcel" of the distinct cyber-espionage scheme Broidy alleges in his counterclaims.  *Siderman*, 965 F.2d at 722.

Finally, a finding of implicit waiver would be inappropriate because there is no suggestion that Qatar ever *intended* to waive immunity.  The Ninth Circuit has explained that "courts rarely find that a nation has waived its sovereign immunity without *strong evidence* that this is what the foreign state *intended*,"  *Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d 1081, 1093 (9th Cir. 2018) (emphasis in

_____

[9] Broidy says that Qatar used these John Doe lawsuits "to identify Ironistic, SCL Social Limited, Project Associates, and Atkinson as the parties behind QatarExposed, QatarTruth, BoycottQatarNow, and QatarCrisisNews," and alleges on information and belief that Qatar must have "conveyed that information" to Mosafer because it "does not appear to be available in the public domain."  Counterclaims, ¶ 49.  The premise of Broidy's speculation is unfounded.  For example, publicly available filings at the International Court of Justice identified Haitham Al Mussawi, an official at the United Arab Emirates ("UAE") Embassy in the United States, in connection with the registration of the domain names qatartruth.com and qatarexposed.com, and the UAE is publicly identified as an Ironistic client.  *See* 2019 I.C.J. Pleadings, *Qatar v. United Arab Emirates*, Vol. VI, Annex 159; Ironistic, *Design Rush*, *https://www.designrush.com/agency/profile/ironistic*.  Mosafer would presumably have been able to connect these dots without Qatar privately conveying any information.

original) (internal citation omitted), and at least two circuits have held that implicit waiver *requires* that the sovereign intended to waive immunity, *see Creighton Ltd. v. State of Qatar*, 181 F.3d 118, 122 (D.C. Cir. 1999); *In re Tamimi*, 176 F.3d 274, 279 (4th Cir. 1999).  This is consistent with the normal definition of "waiver"—the "*intentional* relinquishment or abandonment of a known right."  *United States v. Olano*, 507 U.S. 725, 733 (1993) (emphasis added) (internal citations omitted).  Because Broidy does not and could not allege that Qatar intended to waive its immunity, the waiver exception is inapplicable for this reason as well.

**II.      Broidy Cannot Establish Personal Jurisdiction Over Qatar.**

The FSIA conditions personal jurisdiction over foreign states on the existence of subject matter jurisdiction plus effective service.  28 U.S.C. § 1330(b).[10]  "[A] court lacks 'subject-matter' and 'personal' jurisdiction over a foreign sovereign unless an FSIA exception applies."  *See Helmerich & Payne*, 137 S. Ct. at 1317 (internal citation omitted).  As explained above, no exception to immunity applies, so personal jurisdiction (like subject-matter jurisdiction) is lacking.

**CONCLUSION**

For the foregoing reasons, the State of Qatar respectfully requests that the Court dismiss the Counterclaims of Defendants Elliott Broidy, Broidy Capital Management, LLC, and Circinus, LLC against Qatar.

Dated:  December 15, 2021                    Respectfully submitted,

COVINGTON & BURLING LLP


By:      */s/ Mitchell A. Kamin*
MITCHELL A. KAMIN
*Attorney for Counterclaim-Defendant State of Qatar*

---

[10] Broidy has not yet served the counterclaims on Qatar, pursuant to the FSIA.  *See* 28 U.S.C. § 1608.  Qatar files this Motion in advance of effective service in order to bring these threshold jurisdictional issues expeditiously to the Court.