COVINGTON & BURLING LLP
Mitchell A. Kamin (Bar No. 202788)
  mkamin@cov.com
Michael D. Fields (Bar No. 313679)
  mfields@cov.com
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: + 1 424-332-4800
Facsimile: + 1 424-332-4749

David M. Zionts (*pro hac vice application pending*)
  dzionts@cov.com
Alexander A. Berengaut (*pro hac vice application pending*)
  aberengaut@cov.com
Megan M. O'Neill (*pro hac vice application pending*)
  moneill@cov.com
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone:  +1 202 662 6000
Facsimile:  +1 202-662-6291

*Attorneys for Counterclaim-Defendant State of Qatar*

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION**

| | |
|---|---|
| MOSAFER INC.; MOSAFER E-COM, INC.; AND GOMOSAFER<br><br>Plaintiffs,<br><br>v.<br><br>ELLIOT BROIDY; GEORGE NADER; BROIDY CAPITAL MANAGEMENT, LLC; CIRCINUS, LLC; THE IRON GROUP INC. D/B/A IRONISTIC.COM; SCL SOCIAL LIMITED; PROJECT ASSOCIATES UK LTD; MATTHEW ATKINSON; AND JOHN DOES 1-100,<br><br>Defendants.<br><br>ELLIOT BROIDY; BROIDY CAPITAL MANAGEMENT, LLC; CIRCINUS, LLC, | Civil Case No.:<br><br>2:21-cv-06320-MCS-JC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COUNTERCLAIM-DEFENDANT STATE OF QATAR'S MOTION TO STAY DISCOVERY PENDING RESOLUTION OF COUNTERCLAIM-DEFENDANT STATE OF QATAR'S MOTION TO DISMISS**<br><br>[*Filed Concurrently with Notice of Motion and Motion to Stay Discovery; Proposed Order*]<br><br>**Hearing Date:** January 24, 2022 |

| | | |
|---|---|---|
| 1 | Counterclaim-Plaintiffs, | **Time:** 9:00 a.m. |
| 2 | | **Courtroom:** 7C |
| 3 | v. | **Judge:** Hon. Mark C. Scarsi |
| 4 | MOSAFER INC.; MOSAFER E-COM, INC.; GOMOSAFER, STATE OF QATAR, ABU ISSA HOLDING WLL, ASHRAF ABU ISSA, NABIL ABU ISSA | |
| 5 | | |
| 6 | | |
| 7 | Counterclaim-Defendants. | |

**INTRODUCTION**

Counterclaim-Defendant State of Qatar ("Qatar" or "the State") respectfully requests a stay of discovery related to counterclaims filed by Defendants Elliott Broidy, Broidy Capital Management, LLC ("BCM"), and Circinus, LLC (together, "Broidy"), pending resolution of Qatar's concurrently filed Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure.  Qatar's Motion to Dismiss is based on its sovereign immunity pursuant to the Foreign Sovereign Immunities Act ("FSIA") and will entirely dispose of the counterclaims filed against the State, obviating the need for discovery into the inherently sensitive realm of a foreign sovereign's diplomatic and political affairs.  Given that discovery will commence shortly in this matter, Qatar respectfully requests that the Court address this issue on an expedited basis.[1]

As detailed in Qatar's accompanying Motion to Dismiss, the Ninth Circuit has already held in an earlier suit that Qatar is immune from Broidy's allegations, and Broidy's attempt to plead around the FSIA's clear-cut protections by bringing counterclaims against Qatar in this action is entirely meritless.  A stay of discovery pending resolution of Qatar's Motion to Dismiss is necessary because permitting discovery related to the counterclaims against Qatar—whether directed at Qatar or at others—would undercut a fundamental purpose of immunity under the FSIA: "to protect foreign nations not only from liability but also from the expense, intrusiveness, and hassle of litigation."  *E.g.*, *Beierwaltes v. L'Office Federale De La Culture De La Confederation Suisse*, 999 F.3d 808, 828 (2d Cir. 2021) (internal quotation marks and

---

[1] According to the Court's Order Setting Scheduling Conference, Broidy and Plaintiffs Mosafer Inc., Mosafer E-Com Inc., and GoMosafer may begin propounding discovery before the Scheduling Conference, which is scheduled for January 3, 2022.  *See* ECF No. 48, at 1–2.  The parties have stipulated to postpone the Conference until February 28, 2022, *see* ECF No. 95, at 3, but the Court has not yet approved the postponement, and more importantly, under the Court's Order it is possible for discovery to commence before the Conference.  *See* ECF No. 48, at 2.  Because Qatar has not yet been served, it is not bound by these deadlines.

1

citation omitted); *see also In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998) ("[S]overeign immunity is an immunity from trial and the attendant burdens of litigation, and not just a defense to liability on the merits." (internal citation omitted)).

A stay of discovery is accordingly appropriate as to each of Broidy's counterclaims, to the extent they implicate the State. First, a complete stay is appropriate for Broidy's claims against Qatar for allegedly hacking into BCM's server and disseminating Broidy's private materials (Counts Three through Twelve, and collectively the "hacking claims"), which were already dismissed by a court in this District in an earlier suit. *See Broidy Cap. Mgmt., LLC v. Qatar,* No. 2:18-cv-2421, 2018 WL 6074570, at *1, 11 (C.D. Cal. Aug. 8, 2018), *aff'd*, 982 F.3d 582 (9th Cir. 2020). Second, a stay is appropriate for Broidy's remaining claims (Counts One, Two, and small portion of Count Three, and collectively the "suit-filing claims"), which name both Qatar and Plaintiffs Mosafer Inc., Mosafer E-Com Inc., and GoMosafer ("Mosafer"), and which allege that Mosafer filed this suit at Qatar's behest for improper purposes, to the extent those claims implicate the State.

If a stay is not entered, Broidy will likely begin to engage in wide-ranging, burdensome, and invasive discovery before the Court has the opportunity to consider whether there is any basis for an exception to Qatar's immunity from suit at all. In the previous lawsuit filed by Broidy against Qatar, the plaintiffs seized on Judge John F. Walter's Standing Order authorizing the commencement of discovery without prior authorization of the court to engage in a flurry of third-party discovery, issuing more than 90 third-party subpoenas in the short period before the case was dismissed on the basis of Qatar's sovereign immunity. *See* Standing Order, *Broidy Cap. Mgmt., LLC v. Qatar*, No. 2:18-cv-2421, ECF No. 17, at 6, § 4(b) (C.D. Cal. Mar. 27, 2018) ("Counsel shall begin to actively conduct discovery before the Fed. R. Civ. P. 26(f) conference."). This discovery sought sensitive materials related to Qatar's foreign policy, *see id.*, Suppl. Mem. in Opp'n to Pls.' Mot. Challenging Qatar's Designations, ECF No. 240 (C.D. Cal. Oct. 26, 2018), and the court denied plaintiffs' later efforts to make certain of those

materials public, *see id.*, ECF No. 242 (C.D. Cal. Nov. 2, 2018).  And in another suit filed against Qatar's alleged agents, the D.C. Circuit specifically acknowledged the risk that Elliott Broidy and BCM would use the litigation to "seek to gain access to Qatar's sensitive, diplomatic communications," *Broidy Cap. Mgmt., LLC v. Muzin*, 12 F.4th 789, 803–04 (D.C. Cir. 2021) (internal quotation marks and citation omitted), and noted that "the district court has the appropriate tools to protect Qatar's absolute FSIA 'immunity from trial and the attendant burdens of litigation.'"  *Id.* (quoting *Kilburn v. Socialist People's Libyan Arab Jamahiriya*, 376 F.3d 1123, 1126 (D.C. Cir. 2004)).

So long as Qatar's Motion to Dismiss remains pending, any discovery as to Broidy's counterclaims alleging a hacking operation and Qatar's purported involvement in the filing of this suit is improper.  A stay of such discovery is necessary to protect Qatar's sovereign interests, immunities, and privileges while the State's assertion of its immunity under the FSIA is adjudicated.

## BACKGROUND

Elliott Broidy and his company, BCM, have brought multiple lawsuits against Qatar and its purported agents, beginning with a suit filed in 2018 in this District.  *See Broidy Cap. Mgmt., LLC v. Qatar*, No. 2:18-cv-2421, ECF No. 1 (C.D. Cal. Mar. 26, 2018).  The court promptly dismissed the claims against Qatar in that action, which alleged that Qatar and other defendants hacked BCM's server and disseminated documents located on the server belonging to Elliott Broidy.  *See Broidy Cap. Mgmt., LLC v. Qatar*, 2018 WL 6074570, at *1, 11.  Before the court had an opportunity to act on Qatar's motion to dismiss, however, Elliott Broidy and BCM engaged in broad third-party discovery aimed at obtaining sensitive information relating to Qatari foreign affairs, including materials protected from disclosure pursuant to the Vienna Convention on Diplomatic Relations.  *See* Vienna Convention on Diplomatic Relations, arts. 24, 27(2), 30(2), Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95.

Months after the court dismissed the case and entered final judgment, Broidy and BCM filed a new suit in the District Court for the District of Columbia against several

individuals and a public relations firm alleged to be Qatar's agents. *See Broidy Cap. Mgmt., LLC v. Muzin*, No. 19-cv-00150, ECF No. 1 (D.D.C. Jan. 24, 2019).[2] While not naming Qatar as a defendant, this new lawsuit largely reasserted the previous allegations of unlawful access to BCM's email server and dissemination of Elliott Broidy's documents. *See id.*, ECF No. 18-2 (Apr. 2, 2019). Shortly after filing suit, Broidy and BCM moved for expedited discovery. *See id.*, ECF No. 19 (Apr. 9, 2019). The court denied this request, finding that "the materials sought would likely require the parties to negotiate—or litigate—the terms and application of a protective order," and that some defendants would likely "challenge [plaintiffs'] requests . . . including on immunity grounds." *See id.,* Minute Order (June 17, 2019). The Court later denied in part defendants' motions to dismiss, and that denial was upheld by the D.C. Circuit. *See Broidy Cap. Mgmt., LLC v. Muzin*, No. 19-cv-00150, 2020 WL 1536350, at *21 (D.D.C. Mar. 31, 2020), *aff'd*, 12 F.4th 789 (D.C. Cir. 2021). Considering the implications for Qatar of Elliott Broidy and BCM pursuing their claims on remand, the D.C. Circuit explicitly noted the "risk to Qatar that . . . Broidy will seek to 'gain access to Qatar's sensitive, diplomatic communications.'" *Broidy Cap. Mgmt., LLC v. Muzin*, 12 F.4th at 803–04 (internal citation omitted). The court ultimately explained, however, that it "trust[ed] [that] the district court has the appropriate tools to protect Qatar's absolute FSIA 'immunity from trial and the attendant burdens of litigation.'" *Id.* (internal citation omitted).

In this action, Elliot Broidy, BCM, and Circinus, LLC—another company controlled by Elliott Broidy—have re-alleged the same claims already dismissed in the earlier Central District of California lawsuit, and again alleged in the D.C. District Court,

---

[2] Elliott Broidy and BCM also filed two other similar suits in the Southern District of New York. *See Broidy Cap. Mgmt., LLC v. Benomar*, 7:18-cv-06615, ECF No. 56, at *1 (S.D.N.Y. Dec. 21, 2018), *aff'd*, 944 F.3d 436 (2d Cir. 2019) (dismissing case on diplomatic immunity grounds); *Broidy v. Glob. Risk Advisors LLC*, No. 1:19-cv-11861, 2021 WL 1225949, at *10 (S.D.N.Y. Mar. 31, 2021) (dismissing case for failure to state a claim, with motion for leave to file second amended complaint pending).

through counterclaims that name Qatar as a counterclaim-defendant. *See generally* Counterclaims of Defendants Elliott Broidy, Broidy Capital Management, LLC, and Circinus, LLC ("Counterclaims"), ECF No. 46 (filed Oct. 7, 2021). Specifically, Counts Three through Twelve allege that Qatar and its purported agents engaged in a "hack-and-smear" campaign, pursuant to which Qatar allegedly "directed its agents" to conduct unlawful intrusions into BCM's server and disseminate Elliott Broidy's private materials. *See* Counterclaims, ¶¶ 253–382. Counts One and Two, along with a small portion of Count Three, revolve around Broidy's speculation that Mosafer filed this lawsuit "at the behest of Qatar" in order to retaliate against Broidy. *See id.*, ¶¶ 3, 235–52, 261, 264, 301. Broidy named only Qatar as a counterclaim-defendant in the hacking claims, whereas the suit-filing claims also name Mosafer.[3]

Qatar has filed a Motion to Dismiss concurrently with this Motion, seeking dismissal of the counterclaims against the State under the FSIA. *See* 28 U.S.C. § 1602, *et seq.* Qatar's Motion to Dismiss demonstrates that the Court lacks subject matter jurisdiction and personal jurisdiction over Qatar pursuant to the FSIA, and that neither exception to immunity invoked in Broidy's counterclaims applies to Broidy's allegations.

## ARGUMENT

Qatar is entitled to a stay of discovery pertaining to Broidy's hacking claims, as well as Broidy's suit-filing claims to the extent those latter claims pertain to Qatar, while the State's Motion to Dismiss is pending. Under the FSIA, foreign states possess not only a claim to immunity from suit, but also a "legitimate claim to immunity from discovery." *Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 534 (5th Cir. 1992); *see also Crist v. Republic of Turkey*, 995 F. Supp. 5, 14 (D.D.C. 1998) ("Sovereign immunity entails immunity from discovery when such discovery would 'frustrate the significance and benefit of entitlement to [immunity from] suit.'") (quoting *Foremost-McKesson, Inc.*

---

[3] Count Three includes elements of both Broidy's hacking claims and suit-filing claims, and it names both Qatar and Mosafer.

*v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990); *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 451 (6th Cir. 1988)). Indeed, "sovereign immunity is an immunity from the burdens of becoming involved in *any* part of the litigation process." *U.S. v. Moats*, 961 F.2d 1198, 1203 (5th Cir. 1992) (emphasis added); *see also EM Ltd. v. Republic of Argentina*, 695 F.3d 201, 210 (2d Cir. 2012) ("[S]overeign immunity protects a sovereign from the expense, intrusiveness, and hassle of litigation.").

Because sovereign immunity protects foreign states from the burdens of *all* aspects of litigation—including discovery—courts "must resolve colorable assertions of immunity before the foreign sovereign may be required to address the merits at all." *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 586 (D.C. Cir. 2020). Accordingly, a court must determine whether a foreign state is immune at the outset of a case, *i.e.*, before discovery into the merits begins. *Cf. id.* (reversing order requiring briefing on the merits before consideration of foreign state's claim to FSIA immunity, because the order "abrogated the entirety of Nigeria's asserted immunity from having to defend this case"); *see Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 847, 849 (5th Cir. 2000) ("tak[ing] into account the nature of FSIA immunity," which encompasses "immunity . . . from the costs, in time and expense, and other disruptions attendant to litigation," when upholding denial of discovery). Qatar's filing of a dispositive motion on sovereign immunity grounds thus necessitates a stay of discovery while that motion is pending.

Further, because discovery related to the alleged hacking and Qatar's purported involvement in the filing of this suit will likely sweep in sensitive materials that implicate Qatar's governmental functions, an appropriate stay cannot be limited to discovery served on Qatar, but must extend to discovery served on Mosafer and third parties. *See Ashcroft v. Iqbal*, 556 U.S. 662, 685–86 (2009) (not allowing discovery to proceed as to other parties where complaint failed to state a plausible claim to overcome certain defendants' qualified immunity defense); *M.G. v. Metro. Interpreters and Translators, Inc.*, No. 12-cv-460, 2013 WL 690833, at *2 (S.D. Cal. Feb. 26, 2013) (staying discovery for all

defendants where "the conduct of the government actors" who had an immunity claim was "inextricably intertwined with the allegations against the [other] defendants"). Broidy's actions in his prior case against Qatar, in which he engaged in extensive third-party discovery that implicated issues of diplomatic immunity and Qatar's foreign policy, illustrates the manner in which any discovery, regardless of who it is served on, would improperly burden the sovereign.

Qatar's entitlement to a stay of discovery is accordingly clear; a stay is also appropriate in light of the related collateral order doctrine, which permits foreign states to immediately appeal any ruling that they lack sovereign immunity. Both doctrines work together to prevent courts from prematurely intruding on a foreign state's immunity, particularly because the harms of subjecting an immune state to the burdens of litigation cannot be redressed after the fact. *See Process & Indus. Devs. Ltd.*, 962 F.3d at 586–87 (reversing, under the collateral order doctrine, district court's order to proceed with briefing on merits before resolving foreign sovereign's immunity); *see also In re Papandreou*, 139 F.3d at 253–56 (granting petition for writ of mandamus and vacating order authorizing depositions from Greek cabinet ministers). Just as the collateral order doctrine prevents premature discovery while an appeal is pending, a stay of discovery protects foreign sovereign immunity while a motion to dismiss is pending. Both doctrines protect foreign sovereigns from "the expense, intrusiveness, and hassle of litigation" while their entitlement to immunity is being litigated. *EM Ltd.*, 695 F.3d at 210.

Indeed, courts are hesitant to allow even limited *jurisdictional* discovery into grounds for immunity—let alone discovery into the *merits* of claims raised against a foreign state—before the state's motion to dismiss is decided. *See Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1095–96 (9th Cir. 2007) (providing that jurisdictional discovery "should be ordered circumspectly") (internal quotation marks omitted) (quoting *Conn. Bank of Com. v. Republic of Congo*, 309 F.3d 240, 260 n.10 (5th Cir. 2002)); *In re Papandreou*, 139 F.3d at 253 (same, "lest the evaluation of the

immunity itself encroach unduly on the benefits the immunity was to ensure"). Jurisdictional discovery is not appropriate at all where—as in this case—the jurisdictional questions regarding entitlement to immunity can be determined as a matter of law, because the allegations "would not demonstrate a basis for jurisdiction" even if they were to be "proven through additional discovery." *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314–15 (11th Cir. 2009). Instead, jurisdictional discovery during the pendency of a motion to dismiss pursuant to the FSIA is appropriate only when such discovery would materially affect the court's FSIA analysis. *See, e.g.*, *Goodman Holdings v. Rafidain Bank*, 26 F.3d 1143, 1146–47 (D.C. Cir. 1994) (affirming dismissal where jurisdictional discovery would have produced facts "legally irrelevant" to the commercial activity exception).

Here, Qatar has concurrently filed a Motion to Dismiss, asserting that the Court lacks subject matter and personal jurisdiction due to the State's sovereign immunity under the FSIA. The Motion to Dismiss explains that, even taking Broidy's allegations as true, the exceptions to FSIA immunity invoked in the counterclaims are inapplicable as a matter of law, and Qatar therefore fully retains its immunity from suit. If successful, the Motion to Dismiss would end the case as to Qatar, and the State would no longer be a party to the suit. The Motion would also remove the majority of the counterclaims—Counts Four through Twelve—from the case *entirely*, because those counts are pled against Qatar only. Because Qatar's Motion has raised a threshold jurisdictional question of sovereign immunity, and in order to ensure that Qatar's enjoyment of that immunity is not thwarted while the immunity issues are being adjudicated—including with respect to discovery that is directed at other counterclaim-defendants and third parties, but is related to the claims against Qatar—discovery related to Broidy's counterclaims must be stayed to the extent that they implicate the State. Further, because Qatar has moved to dismiss the counterclaims on the basis of the pleadings, and because Qatar argues in that motion that the counterclaims' allegations—even if proven—do not support any of the FSIA's exceptions to immunity, there is no basis for permitting jurisdictional discovery.

Finally, even setting aside the unique circumstances of sovereign immunity that preclude Qatar from being subjected to discovery at this stage, a stay would be an appropriate exercise of the Court's discretion. In cases that do not involve the special concerns of a foreign state, district courts in the Ninth Circuit still regularly stay discovery pending resolution of a dispositive motion. *See, e.g.*, *Top Rank, Inc. v. Haymon*, No. 15-4961, 2015 WL 9952887, at *1 (C.D. Cal. Sept. 17, 2015) ("The Court has broad discretion to stay discovery pending the outcome of a potentially dispositive motion."); *SSI (U.S.), Inc. v. Ferry*, No. 2:21-cv-02073, 2021 WL 4812952, at *3 (C.D. Cal. May 25, 2021) (granting stay pending ruling on motion to dismiss). Such stays are particularly appropriate—and "further[] the goal of efficiency for the court and litigants"—where the court is deciding issues of immunity. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988). Qatar's pending Motion to Dismiss would resolve all of the claims against Qatar and all of the hacking claims. Moreover, even if there were some basis for an exception to immunity under the FSIA, any discovery in this case would still raise sensitive issues of sovereignty and immunity, including the protection of diplomatic materials and correspondence under the Vienna Convention on Diplomatic Relations. In addition to the reasons described above for why a stay is necessary in order to ensure that Qatar's sovereign immunity is not compromised while its Motion to Dismiss is pending, sound judicial management favors postponing the complex and sensitive questions that would inevitably arise in the unlikely event the counterclaims were to proceed.

## CONCLUSION

For the foregoing reasons, Counterclaim-Defendant State of Qatar respectfully requests that the Court stay discovery pertaining to Counts Four through Twelve of the Counterclaims, as well as to Counts One through Three, to the extent those latter counts implicate Qatar, until it decides the threshold legal issues raised in Qatar's Motion to Dismiss.

Dated:  December 15, 2021

Respectfully submitted,

COVINGTON & BURLING LLP

By:  */s/ Mitchell A. Kamin*
     MITCHELL A. KAMIN
     *Attorney for Counterclaim-Defendant*
     *State of Qatar*