**KASOWITZ BENSON TORRES LLP**
DANIEL A. SAUNDERS (SBN 161051)
dsaunders@kasowitz.com
KEVIN K. KIM (SBN 330635)
kkim@kasowitz.com
2029 Century Park East, Suite 2000
Los Angeles, CA 90067
Telephone:     (424) 288-7900
Facsimile:      (424) 288-7901

JASON S. TAKENOUCHI (SBN 234835)
jtakenouchi@kasowitz.com
101 California Street, Suite 3000
San Francisco, California  94111
Telephone:  (415) 421-6140
Facsimile:   (415) 398-5030

*Attorneys for Defendants and Counterclaim-Plaintiffs*
*Elliott Broidy, Broidy Capital Management, LLC, and*
*Circinus, LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| MOSAFER INC.; MOSAFER ECOM, INC.; and GOMOSAFER, <br><br> Plaintiffs, <br><br> vs. <br><br> ELLIOTT BROIDY, *et al.*, <br><br> Defendants. | CASE NO. 2:21-cv-06320-MCS-JC <br><br> [Assigned to Hon. Mark C. Scarsi] <br><br> **COUNTERCLAIM-PLAINTIFFS' OPPOSITION TO COUNTERCLAIM-DEFENDANT STATE OF QATAR'S MOTION TO STAY DISCOVERY PENDING RESOLUTION OF COUNTERCLAIM-DEFENDANT STATE OF QATAR'S MOTION TO DISMISS** |
| ELLIOT BROIDY; BROIDY CAPITAL MANAGEMENT, LLC; CIRCINUS, LLC, <br><br> Counterclaim-Plaintiffs, | |

vs.

MOSAFER INC.; MOSAFER ECOM, INC.; GOMOSAFER; STATE OF QATAR; ABU ISSA HOLDING WLL; ASHRAF ABU ISSA; NABIL ABU ISSA,

      Counterclaim-Defendants.

Date: January 24, 2022
Time:  9:00 a.m.
Courtroom: 7C

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ........................................................................... 1

II.   BACKGROUND ............................................................................. 3

III.  LEGAL STANDARD ..................................................................... 4

IV.  ARGUMENT ................................................................................. 5

    A.    Broidy Does Not Intend to Serve Merits Discovery on Qatar While the Motion to Dismiss is Pending ............................. 5

    B.    Any Stay of Discovery as to Qatar Should Not Extend to Jurisdictional Discovery ................................................... 6

    C.    Qatar's Sweeping Request for a Stay of Discovery Against All Other Counterclaim-Defendants and Third Parties Should be Denied ............................................................................ 9

V.    CONCLUSION ............................................................................. 14

BROIDY OPPOSITION TO QATAR'S MOTION TO STAY DISCOVERY

1

## <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3
**Cases**

4

*Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*,
5
    475 F.3d 1080 (9th Cir. 2007) .................................................................................... 7

6
*Blankenship v. Hearst Corp.*,
7
    519 F.2d 418 (9th Cir. 1975) ................................................................................. 5, 6

8
*Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*,
9
    137 S. Ct. 1312 (2017).............................................................................................. 6

10
*Broidy Capital Management LLC et al v. Muzin et al*,
    Case 1:19-cv-00150-DLF (D.D.C. Jan. 24, 2019) .................................................. 3
11

*Broidy Capital Management, LLC et al v. State of Qatar, et al.*,
12
    Case 2:18-cv-02421-JFW-E (C.D. Cal. Mar. 26, 2018) ......................................... 3

13
*Christian v. Commonwealth of the N. Mariana Islands*,
14
    2016 WL 406340 (D. N. Mar. I. Feb. 2, 2016) ................................................. 9-10

15
*Crist v. Republic of Turkey*,
16
    995 F. Supp. 5 (D.D.C. 1998)................................................................................. 7

17
*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
18
    557 F.2d 1280 (9th Cir. 1977) ................................................................................ 8

19
*Gray v. First Winthrop Corp.*,
20
    133 F.R.D. 39 (N.D. Cal. 1990) ................................................................... 4, 6, 12

21
*Greenpeace, Inc. (U.S.A.) v. State of France*,
    946 F. Supp. 773 (C.D. Cal. 1996).......................................................................... 7
22

*Kamen v. American Tel. & Tel. Co.*,
23
    791 F.2d 1006 (2d Cir. 1986) ................................................................................. 7

24
*Laub v. U.S. Dep't of Interior*,
25
    342 F.3d 1080 (9th Cir. 2003) ....................................................................... 4, 6, 8

26
*M.G. v. Metro. Interpreters & Translators, Inc.*,
27
    2013 WL 690833 (S.D. Cal. Feb. 26, 2013) .......................................................... 5

28

ii

*Peterson v. Islamic Republic of Iran*,
    563 F. Supp. 2d 268 (D.D.C. 2008) ........................................................ 8

*Republic of Argentina v. NML Cap., Ltd.*,
    573 U.S. 134 (2014) .............................................................................. 5

*Skellerup Indus. Ltd. v. City of Los Angeles*,
    163 F.R.D. 598 (C.D. Cal. 1995)..............................................5, 9, 12-13

*Top Rank, Inc. v. Haymon*,
    2015 WL 9952887 (C.D. Cal. Sept. 17, 2015)................................. 9, 12

*Wells Fargo & Co. v. Wells Fargo Express Co.*,
    556 F.2d 406 (9th Cir. 1977) ................................................................ 7

**Statutes**

Foreign Agents Registration Act ................................................................ 14

Foreign Sovereign Immunities Act.....................................2, 5, 7, 9, 13

Racketeer Influenced and Corrupt Organizations Act........................... 1, 10

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(1)-(2) ............................................ 1

Defendants and Counterclaim-Plaintiffs Elliott Broidy ("Mr. Broidy"), Broidy Capital Management, LLC ("BCM"), and Circinus, LLC (collectively with Mr. Broidy and BCM, "Broidy" or the "Broidy parties"), pursuant to L.R. 7-9 and the Court's Initial Standing Order ¶ 9.B (ECF 10), submit this opposition to Counterclaim-Defendant State of Qatar's ("Qatar") Motion to Stay Discovery Pending Resolution of its Motion to Dismiss (ECF 103-1, hereafter "Motion" or "Mot.").

## I.   <u>INTRODUCTION</u>

Having availed itself (through transparent proxies) of the United States court system in an attempt to muzzle and punish Mr. Broidy's constitutionally protected political speech regarding Qatar's widely recognized ties to and support of terrorist groups, Qatar now seeks to preclude the Broidy parties from exercising their statutory right to timely discovery needed to defend themselves and expose Qatar's fraud and other misdeeds.  Qatar is but one of seven Counterclaim-Defendants named by Broidy in the Counterclaims for Business Conspiracy, Abuse of Process, and RICO, yet Qatar seeks a sweeping stay of discovery—nearly as sweeping as the patently unconstitutional prior restraint it demands (through its proxies) in its Complaint—that would preclude not only merits discovery served on Qatar while its Rule 12(b)(1)-(2) motion to dismiss is pending (discovery that Broidy has already voluntarily agreed not to serve), but also: (1) jurisdictional discovery targeted at refuting Qatar's claims of sovereign immunity in that motion to dismiss; and (2) discovery served on the remaining six Counterclaim-Defendants (not one of whom has sought a discovery stay) and on all third parties.  Even more troubling, Qatar's requested stay—as Qatar surely realizes and intends—would bar Broidy from serving discovery on nominal Plaintiffs Mosafer Inc., Mosafer Ecom, Inc., and GoMosafer (collectively, "Mosafer" or the "Mosafer parties") regarding Mosafer's relationship with Qatar, despite such discovery being directly relevant

not only to the Counterclaims but to Broidy's affirmative defenses to the Complaint, such that it would be proper even if Qatar were not a party to this action.  Qatar's Motion is but a further attempted abuse of the judicial process, and it should be denied.

*First*, although Broidy has no intention of seeking purely merits-based discovery on Qatar while Qatar's motion to dismiss is pending, there is no basis to prevent Broidy from seeking jurisdictional discovery on Qatar to the extent the Court finds that additional facts would be useful in establishing subject matter jurisdiction or determining whether an exception to the Foreign Sovereign Immunities Act ("FSIA") applies.  Indeed, where it is possible that a plaintiff could demonstrate the requisite jurisdictional facts if granted jurisdictional discovery, it is an abuse of discretion to dismiss a defendant for lack of subject matter jurisdiction without giving the plaintiff a reasonable opportunity to conduct such discovery.

*Second*, Qatar's request for a stay as against all other parties and third parties of all discovery that "is related to the claims against Qatar" (Mot. at 8:22-24) is wildly overbroad and unsupported.  Qatar's purported restriction of the requested stay to discovery "related to the claims against Qatar" not only would bar *any* discovery related to the Counterclaims (including those that name other Counterclaim-Defendants, who are alleged to have conspired with Qatar), but would also necessarily infringe upon the Broidy parties' ability to defend against the claims brought against them in the Complaint.  When balancing the demonstrable prejudice to Broidy against the entirely speculative burden on Qatar, as this Court must in considering this Motion, it is clear that Qatar has not come close to meeting its burden of justifying the *de facto* global discovery stay that it seeks.  Accordingly, the Motion should be denied in its entirety.

BROIDY OPPOSITION TO QATAR'S MOTION TO STAY DISCOVERY

## II.   BACKGROUND[1]

In 2018, Broidy filed suit against Qatar and other defendants in connection with a sophisticated hack-and-smear campaign that Qatar initiated in retaliation for Broidy's constitutionally protected criticism of the Qatari government and its support of terrorist groups. *See Broidy Capital Management, LLC et al v. State of Qatar, et al.*, Case 2:18-cv-02421-JFW-E (C.D. Cal. Mar. 26, 2018). Although Broidy engaged in limited discovery in that case, Broidy did not serve any discovery requests on Qatar, and Qatar was later dismissed on sovereign immunity grounds. Shortly thereafter, Broidy filed suit against Qatari agents for their role in Qatar's espionage and disinformation campaign. *See Broidy Capital Management LLC et al v. Muzin et al*, Case 1:19-cv-00150-DLF (D.D.C. Jan. 24, 2019). Qatar was not named as a defendant in that action, which remains ongoing.

Unlike those previous cases, this case originated with claims brought *against* Broidy due to his criticism of the Qatari government. As alleged in the Counterclaims, to achieve its goal of retaliating against and silencing Broidy and other critics while retaining its claim to sovereign immunity, Qatar brought the lawsuit through its proxy Mosafer—an obscure luggage retailer and purported travel agent that it itself describes as being "intimately associated" and "synonymous" with the State of Qatar. *See* ECF 1 ¶ 31; ECF 46 ¶¶ 1-9, 25-53, 248-49, 301. To justify its sham lawsuit on Qatar's behalf, Mosafer makes the transparently false claim that Broidy's criticism of Qatar indirectly caused it to suffer business losses as a result of decreased tourism from the United States to Qatar.[2] *See, e.g.*, ECF 1 ¶¶ 4,

---

[1] To avoid burdening the Court with duplicative briefing, the Broidy parties incorporate by reference the Background section of their recently filed Opposition to Mosafer and Abu Issa Counter-Claim Defendants' Motion to Strike or Dismiss, which is scheduled to be heard contemporaneously with the instant Motion. *See* ECF 114 at 3-6.

[2] In truth, according to Qatar's own Tourism Authority, travel from the U.S. to Qatar *increased* each year during the relevant period, with "unprecedented" growth in

43, 91-94, 97.  Qatar-through-Mosafer seeks, among other things, an impermissibly vague and sweeping injunction preventing Broidy and other defendants from exercising their constitutional rights.  *See* ECF 1 ¶¶ 105, 113, 121.

In recognition of the true plaintiff in this case, Broidy brought its Counterclaims against not only Mosafer, but the real party in interest—Qatar—and its proxies (and Mosafer owners) Abu Issa Holding WLL, Ashraf Abu Issa, and Nabil Abu Issa (collectively, the "Abu Issa parties").  *See* ECF 46.  On December 15, 2021, before Qatar had even been served, Qatar filed its motion to dismiss asserting that this Court lacks jurisdiction over Qatar due to sovereign immunity.  ECF 102.  Notwithstanding that no discovery had even yet issued, Qatar simultaneously filed this Motion seeking a stay of all "discovery relating to counterclaims filed by [Broidy]"—including "discovery served on Mosafer and third parties"—pending resolution of its motion to dismiss.  ECF 103 at 1:7-10; Mot. at 6:23-24.

## III.   **LEGAL STANDARD**

District courts are "vested with broad discretion to permit or deny discovery."  *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).  However, "[t]he intention of a party to move for judgment on the pleadings is not ordinarily sufficient to justify a stay of discovery"; indeed, "such a notion is directly at odds with the need for expeditious resolution of litigation."  *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (citing 4 J. Moore, Federal Practice § 26.70[2], at 461).  "[A] party seeking a stay of discovery carries the burden of making a strong showing why discovery should be denied.  The moving party must show a particular and specific need for the protective order, as opposed to making stereotyped or conclusory statements."  *Id.* (internal quotations

_____

2019, the year when Mosafer's lone U.S. storefront closed.  ECF 46 ¶¶ 54-55; ECF 1 ¶ 43.

and citation omitted); *see Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975) (under liberal discovery principles of the Federal Rules, party opposing discovery has a "heavy burden" of showing why discovery should be denied); *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 600-01 (C.D. Cal. 1995) (denying defendant's motion to stay discovery pending resolution of motion to dismiss, finding that stay "would undercut the Federal Rules' liberal discovery provisions" and that defendant "has done no more than to argue in conclusory fashion that its motion to dismiss will succeed").

As the Supreme Court has recognized, "[f]ar from containing the 'plain statement' necessary to preclude application of federal discovery rules, the [Foreign Sovereign Immunities] Act says not a word on the subject." *Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 143 (2014) (citation omitted) (affirming district court's approval of plaintiff's third-party subpoenas directed at identifying foreign sovereign defendant's extraterritorial assets). Thus, even when a defendant raises a claim of FSIA immunity, no automatic stay of discovery is required. *M.G. v. Metro. Interpreters & Translators, Inc.*, 2013 WL 690833, at *2 (S.D. Cal. Feb. 26, 2013). "Rather, the Court should consider the nature of the case and the extent to which proceeding with discovery as to other parties likely would prejudice the stayed defendants, the impact on other parties and the court." *Id.*

## IV.   **ARGUMENT**

### A.   **Broidy Does Not Intend to Serve Merits Discovery on Qatar While the Motion to Dismiss is Pending**

Without in any way conceding the validity of any of Qatar's claims to sovereign immunity in its motion to dismiss, Broidy recognizes that it is appropriate not to serve purely merits-based discovery on Qatar while that motion is pending

before this Court.[3]  *See Bolivarian Republic of Venezuela v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1316-17 (2017) (noting that "the court should normally . . . reach a decision about immunity as near to the outset of the case as is reasonably possible").  Accordingly, Broidy has not served any such discovery on Qatar and does not intend to do so prior to this Court's ruling on Qatar's motion to dismiss.  That, however, is as far as any stay of discovery in this matter should extend.

### B.  Any Stay of Discovery as to Qatar Should Not Extend to Jurisdictional Discovery

In their concurrently filed opposition to Qatar's motion to dismiss, the Broidy parties ask the Court, if it is not prepared to deny the motion to dismiss outright (as Broidy contends is warranted), to authorize jurisdictional discovery regarding Qatar's involvement in the initiation of this lawsuit, which Broidy contends abrogates any claim to sovereign immunity.  On this motion, Qatar fails to carry its "heavy burden" of making the requisite "strong showing" why such discovery should be precluded.  *Blankenship*, 519 F.2d at 429; *Gray*, 133 F.R.D. at 40.

As further detailed in Broidy's opposition to Qatar's motion to dismiss, it is clear that discovery directly against a sovereign is permitted when it would be "useful to establish federal subject matter jurisdiction."  *Laub*, 342 F.3d at 1093.

---

[3] During the parties' meet-and-confer regarding this Motion and Qatar's motion to dismiss, which included Broidy's request for a stipulated briefing schedule that would avoid having to prepare its oppositions to those motions over Christmas, counsel for Broidy offered to agree not to serve any merits-based discovery on Qatar while the motion to dismiss was pending.  That offer was rejected by counsel for Qatar, who insisted on the complete stay Qatar now seeks, regardless of whether the discovery goes to the merits or to jurisdiction and regardless of whether it is served on Qatar or another Counterclaim-Defendant (or a third party).  Accordingly, no stipulation was reached.  Broidy nevertheless agrees in good faith not to serve purely merits-based discovery on Qatar prior to this Court's ruling on the motion to dismiss.

Plaintiffs regularly obtain discovery against foreign sovereigns for the purpose of establishing whether an exception to the FSIA applies.  *See*, *e.g.*, *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1095 (9th Cir. 2007) (district court permitted "more than fifteen months of discovery" from foreign state before finding that "commercial activity" exception did not apply and dismissing action).  If it is "possible" that the plaintiff could demonstrate the requisite jurisdictional facts under the FSIA if granted jurisdictional discovery, then "[i]t is an abuse of discretion to dismiss for lack of subject matter jurisdiction without giving [a] plaintiff reasonable opportunity . . . to conduct discovery for this purpose."  *Greenpeace, Inc. (U.S.A.) v. State of France*, 946 F. Supp. 773, 789 (C.D. Cal. 1996); *see also Crist v. Republic of Turkey*, 995 F. Supp. 5, 12 (D.D.C. 1998) ("[S]overeign immunity is a critical preliminary determination of subject matter jurisdiction and [] the parties should be permitted a fair opportunity to engage in jurisdictional discovery so as to adequately define and submit to the court facts necessary for a thorough and complete consideration of the issue."); *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977) (holding that district court abused its discretion in refusing to grant jurisdictional discovery).  This is particularly true when the facts demonstrating jurisdiction are peculiarly within the knowledge of the party against whom discovery is sought.  *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

Qatar claims that jurisdictional discovery is inappropriate here because its motion to dismiss does not dispute Broidy's factual allegations, but argues only that any FSIA exceptions are inapplicable as a matter of law.  Mot. at 8:13-15, 8:24-27.  This characterization of Qatar's motion to dismiss is demonstrably false, as that motion is replete with denials of critical jurisdictional allegations that the

purported Mosafer Complaint was in fact brought by Qatar.[4]  But even were the facts undisputed, Broidy would not be precluded from obtaining jurisdictional discovery on that ground, as such discovery "may appropriately be granted where pertinent facts bearing on the question of jurisdiction are controverted *or* where a more satisfactory showing of the facts is necessary." *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977)) (citations omitted) (emphasis added); *see also Laub*, 342 F.3d at 1093 (stating that jurisdictional discovery should be granted where "the jurisdictional facts are contested *or* more facts are needed," and reversing district court's decision not to permit discovery "[b]ecause additional discovery would be useful to establish federal subject matter jurisdiction") (emphasis added).

In this case, while the Broidy parties submit that Qatar's motion to dismiss should be denied for the reasons set forth in Broidy's opposition to that motion, should this Court disagree, jurisdictional discovery would be necessary to determine Qatar's relationship to the Mosafer and Abu Issa parties in connection with this lawsuit and make "a more satisfactory showing of the facts" bearing on Qatar's claim to sovereign immunity.  *Data Disc, Inc.*, 557 F.2d at 1285 n.1; *see Peterson v. Islamic Republic of Iran*, 563 F. Supp. 2d 268, 274 (D.D.C. 2008)

---

[4] *See, e.g.,* Mot. at 2:2-3 ("Qatar emphatically denies the allegation that it is somehow behind Mosafer's lawsuit, just as it continues to deny the underlying allegations."); *id.* at 2:12-13 ("[T]his action was brought by private companies—not a 'foreign state.'"); *id.* at 3:17-18 ("Mosafer disputes Broidy's allegations about its relationship with Qatar."); *id.* at 8:7-8 ("[T]his suit filed by private companies is not an 'action brought by a foreign state,' as required by the exception."); *id.* at 11:15-16 ("To be clear, Qatar denies that Mosafer is its 'proxy' or that it filed this action 'at the behest of Qatar.'"); *id.* at 12:24-25 ("The Mosafer companies are private entities that . . . seek to recover for their own economic losses."); *id.* at 14:11-12 ("[N]o 'foreign state' has made a 'claim' in this case."); *id.* at 19:21 ("There Has Been No Action by a 'Foreign State.'"); *id.* at 22:24-23:1 ("[I]t is clear that Qatar did not 'directly contact,' 'direct[ly] engage,' or make any 'direct request' whatsoever of, a U.S. court.").

(jurisdictional discovery should be granted if the plaintiff presents non-conclusory allegations that, if supplemented with additional information, will materially affect the court's analysis with regard to the applicability of the FSIA).

### C.   Qatar's Sweeping Request for a Stay of Discovery Against All Other Counterclaim-Defendants and Third Parties Should be Denied

When considering a stay of discovery pending the outcome of a dispositive motion, courts balance a number of factors, including: (1) the interests of the plaintiff in proceeding expeditiously with the civil action and the potential prejudice to plaintiffs of a delay[5]; (2) the burden on the defendants; (3) the convenience to the court; (4) the interests of persons not parties to the civil litigation; and (5) the public interest. *Top Rank, Inc. v. Haymon*, 2015 WL 9952887, at *1 (C.D. Cal. Sept. 17, 2015); *see Skellerup Indus.*, 163 F.R.D. at 601 (listing additional factors including "the nature and complexity of the action," "whether some or all of the defendants join in the request for a stay," and "the expected extent of discovery in light of the number of parties and complexity of the issues in the case"). Applying those factors to Qatar's broad and self-serving request for a discovery stay as to all non-Qatar Counterclaim-Defendants and third parties, it is clear that Qatar's Motion should be denied.

The requested stay of discovery against non-Qatar Counterclaim-Defendants and third parties during the pendency of Qatar's motion to dismiss (including a potentially lengthy interlocutory appeal[6]) will result in significant prejudice to

---

[5] For purposes of applying these factors to the instant stay request related to Counterclaim discovery, the Broidy parties stand in the shoes of "plaintiffs" and Qatar, the Mosafer parties, and the Abu Issa parties are "defendants."

[6] In its Motion, Qatar indicates its intent to appeal any adverse ruling on sovereign immunity under the collateral order doctrine. Mot. at 7:7-9. A stay of discovery as to all Counterclaim-Defendants and third parties pending final resolution of the Motion could thus last many months or even years. *See Christian v. Commonwealth*

9

Broidy.  Qatar's position that it is seeking a discovery stay as to Counterclaims One through Three (Business Conspiracy, Abuse of Process, and RICO) only "to the extent those [] counts implicate Qatar" (Mot. at 9:25-26) or the discovery is "related to the claims against Qatar" (*id*. at 8:22-24) is transparently meaningless. Because the referenced Counterclaims center on an alleged conspiracy between Qatar and the other Counterclaim-Defendants, including Qatar's role as the hidden plaintiff behind the Complaint, Qatar will no doubt argue that any discovery to any other Counterclaim-Defendant or any third party relating to Counterclaims One through Three "implicate[s] Qatar" or "relate[s] to the claims against Qatar."  *See id.* at 6:21-24 ("[B]ecause discovery related to the alleged hacking and Qatar's purported involvement in the filing of this suit will likely sweep in sensitive materials that implicate Qatar's governmental functions, an appropriate stay cannot be limited to discovery served on Qatar, but must extend to discovery served on Mosafer and third parties.").  Thus, the requested stay would preclude Broidy from conducting timely discovery on the affirmative Counterclaims.

Moreover, Qatar's requested stay of "any discovery as to . . . Qatar's purported involvement in the filing of this suit" (Mot. at 3:9-11) would necessarily infringe on the Broidy parties' ability to defend themselves against Mosafer's (really Qatar's) allegations in the Complaint—allegations that are inextricably linked with those in the Counterclaims.  For example, the Broidy parties in their Answer have asserted multiple affirmative defenses that directly relate to Qatar's involvement in filing this fraudulent lawsuit.  *See, e.g.*, ECF 45 ¶¶ 137 (Unclean Hands), 139 (Improper Purpose to Chill Speech), 148 (Failure to Join Real Parties

---

*of the N. Mariana Islands*, 2016 WL 406340, at *1 (D. N. Mar. I. Feb. 2, 2016) (staying discovery against foreign state pending appeal of adverse sovereign immunity ruling, but denying motion to stay all proceedings against co-defendants "pending what promises to be a lengthy appeal").

BROIDY OPPOSITION TO QATAR'S MOTION TO STAY DISCOVERY

at Interest), 149 (Required Parties).[7]  If Broidy can prove that Mosafer is a mere political shill doing Qatar's retaliatory bidding, that would unquestionably bear on Broidy's ability to prove that Mosafer suffered no actual harm and that its entire Complaint is fraudulent.  Yet, having already (through Mosafer) filed a fraudulent lawsuit and used it as a basis to launch a media blitz designed to inflict maximum harm on Broidy,[8] Qatar would now have this Court tie Mr. Broidy's hands behind his back and prevent him for some indefinite time from obtaining the discovery needed to defend himself—discovery to which Broidy will unquestionably be entitled ***even if Qatar prevails on its motion to dismiss*** (or had never been named as a Counterclaim-Defendant in the first place).[9]

Balanced against this clear prejudice to Broidy, any burden on Qatar is

---

[7] Other defenses go to the truth of the statements made by Broidy as part of the alleged (and wholly fictitious) "disinformation conspiracy," which serves as a complete defense to every cause of action in the Complaint and clearly "implicate[s] Qatar."  *See id.* ¶ 140.

[8] *See* https://www.prnewswire.com/news-releases/qatar-based-travel-firm-mosafer-inc-files-lawsuit-against-elliott-broidy-and-george-nader-in-us-federal-court-for-allegedly-illegally-orchestrating-and-executing-secret-assault-against-qatar-and-qatari-businesses-suit-alleges-t-301350282.html; *see also* "Trump backer Elliot Broidy accused of orchestrating covert campaign against Qatar," *New York Post*, August 5, 2021, https://nypost.com/2021/08/05/elliot-broidy-accused-of-orchestrating-campaign-against-qatar/; "EXCLUSIVE: Former Trump donor was 'paid $100M by the UAE to lobby US officials to take anti-Qatar positions and run smear campaign with George Nader portraying country as an 'unsafe' terrorist hub, lawsuit claims," *Daily Mail*, August 27, 2021, https://www.dailymail.co.uk/news/article-9932983/Trump-donor-Elliott-Broidy-accused-running-smear-campaign-against-Qatar-new-lawsuit.html.

[9] Broidy notes that, to the extent that the requested stay would apply to any discovery that "implicate[s] Qatar," Mot. at 9:25-26, it could also adversely affect the ability of other defendants not before the Court on this Motion (specifically, George Nader and The Iron Group Inc. d/b/a Ironistic.com) to defend themselves against Mosafer's claims insofar as it would preclude them from taking discovery regarding the truth of the statements about Qatar made in the alleged "disinformation conspiracy."

purely speculative, as no discovery has yet been served on any party.  Although Qatar claims that discovery related to Qatar's hack-and-smear campaign and involvement in the filing and promoting of the Complaint "will likely sweep in sensitive materials that implicate Qatar's governmental functions," Mot. at 6:21-23, nowhere does Qatar actually describe what those "sensitive materials" might be or how Qatar's governmental functions might be implicated from discovery propounded on a non-Qatar Counterclaim-Defendant.  Qatar's attempted reliance on "Broidy's actions in his prior case against Qatar, in which he engaged in extensive third-party discovery that implicated issues of diplomatic immunity and Qatar's foreign policy," Mot. at 7:3-6, is equally unavailing; not only are this case and its procedural posture factually distinct from Broidy's prior lawsuit, but Qatar makes no claim that Broidy previously engaged in the discovery process in an improper manner and fails to provide any legal authority for the proposition that a litigant's legitimate behavior in a prior lawsuit should prevent him from propounding discovery against other parties and third parties in a subsequent case. Qatar's conclusory assertions are insufficient to establish any burden from allowing discovery against other parties and non-parties to proceed while Qatar litigates its sovereign immunity claim.  *See Skellerup Indus.*, 163 F.R.D. at 600; *Gray*, 133 F.R.D. at 40.

As to the balancing factor of "convenience to the court," *Top Rank*, 2015 WL 9952887, at *1, Broidy defers to the Court to determine whether staying or proceeding with discovery in this matter would be most convenient.  Broidy notes only that, at least in its current posture (with cross-motions to strike and/or dismiss still pending), this is a complex action with five claims, twelve counterclaims, and fifteen named parties, and will involve extensive discovery regardless of whether or not Qatar remains a party.  *See Skellerup Indus.*, 163 F.R.D. at 601 (in evaluating whether to stay discovery, courts should consider "the nature and

complexity of the action" and "the expected extent of discovery in light of the number of parties and complexity of the issues in the case").  Accordingly, Broidy respectfully submits that issuing an indefinite discovery stay at the outset of the case may serve only to extend an already protracted litigation, with the attendant burdens on the Court's docket.

Nor would a broad discovery stay serve the interests of non-parties or the public.  This case implicates issues of great public concern and importance, including the ability of private citizens to publicly comment on policies of a foreign power without fear of attack by that foreign power in the form of computer hacking, smear campaigns, and lawsuits in federal court.  As detailed in the Counterclaims, Qatar is attempting to remain cloaked by sovereign immunity while using proxies to file fraudulent lawsuit in furtherance of its years-long campaign to intimidate and smear Mr. Broidy, specifically in order to punish and quash his exercise of free speech and political advocacy.  *See generally* ECF 46; *see also* ECF 1 ¶¶ 105, 113, 121.  If Qatar is permitted to globally and indefinitely shut down discovery that would shed light on its conduct, it can only serve to embolden other foreign states seeking to bully and silence their critics in the United States by enlisting proxies to target those critics with lawsuits (and attendant media campaigns) seeking to enjoin them from exercising their free speech rights.[10]  Thus, the public has a strong

---

[10] Indeed, this Qatar-via-Mosafer lawsuit is a natural evolution of what the Electronic Frontier Foundation has noted is a dangerous increase in foreign regimes using computer hacking to target dissidents and opponents abroad.  No longer content merely to stifle dissent at home, these regimes are increasingly relying on such methods to punish critics who live outside their borders.  *See* Nate Cardozo, Can Foreign Governments Launch Malware Attacks on Americans Without Consequences?, Electronic Frontier Foundation, Feb. 2, 2017, available at https://www.eff.org/deeplinks/2017/02/can-foreign-governments-launch-malware-attacks-americans-without-consequences.  It is not difficult to see the incentives presented to other despotic regimes if Qatar is permitted to bar discovery in a case where the Counterclaim pleadings more than a sufficient basis for establishing an exception to the FSIA.

interest in seeing discovery in this case proceed expeditiously. Indeed, in a case in which the nominal Mosafer plaintiffs repeatedly invoke the Foreign Agents Registration Act (FARA), *see, e.g.*, ECF 1 ¶¶ 6, 51, 56, 72-75, 77, 101(b), 128-29, allowing discovery to proceed unabated serves the "central purpose" of FARA: "to promote transparency with respect to foreign influence within the United States by ensuring that the United States government and the public know the source of certain information from foreign agents intended to influence American public opinion, policy, and laws." FARA Frequently Asked Questions: What is the Purpose of FARA?, U.S. Dep't of Justice (Dec. 3, 2020), available at https://www.justice.gov/nsd-fara/general-fara-frequently-asked-questions#2.

In sum, Qatar's Motion is wholly consistent with its overall strategic plan as laid out in the Counterclaims: invoke United States law as a sword when beneficial to file a lawsuit against Broidy, then hide behind the shield of sovereign immunity to prevent Broidy from filing Counterclaims against it or propounding discovery to defend himself against Qatar-through-Mosafer's allegations or pursue his Counterclaims against the other six (out of seven total) Counterclaim-Defendants. As shown above, the relevant balancing factors weigh heavily against issuance of a discovery stay, and Qatar's request for a stay should therefore be denied.

## V.    CONCLUSION

For all of the foregoing reasons, the Court should deny the Motion in its entirety.

1

Dated:          December 29, 2021

**KASOWITZ BENSON TORRES LLP**

2

3

By:_____

4

Daniel A. Saunders, Esq.
dsaunders@kasowitz.com
2029 Century Park East, Suite 2000
Los Angeles, California 90067
Telephone: (424) 288-7900
Facsimile: (424) 288-7901

5

6

7

8

*Attorneys for Defendants and*
*Counterclaim-Plaintiffs*
*Elliott Broidy, Broidy Capital*
*Management, LLC, and Circinus, LLC*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I certify that, on December 29, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notice to all counsel of record.

_/s/Daniel A. Saunders_
Daniel A. Saunders