COVINGTON & BURLING LLP
Mitchell A. Kamin (Bar No. 202788)
  mkamin@cov.com
Michael D. Fields (Bar No. 313679)
  mfields@cov.com
1999 Avenue of the Stars, Suite 3500
Los Angeles, CA 90067-4643
Telephone: + 1 424-332-4800
Facsimile: + 1 424-332-4749

David M. Zionts (*admitted pro hac vice*)
  dzionts@cov.com
Alexander A. Berengaut (*admitted pro hac vice*)
  aberengaut@cov.com
Megan M. O'Neill (*admitted pro hac vice*)
  moneill@cov.com
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
Telephone:  +1 202 662 6000
Facsimile:  +1 202-662-6291

*Attorneys for Counterclaim-Defendant State of Qatar*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| MOSAFER INC.; MOSAFER E-COM, INC.; AND GOMOSAFER<br><br>Plaintiffs,<br><br>v.<br><br>ELLIOT BROIDY; GEORGE NADER; BROIDY CAPITAL MANAGEMENT, LLC; CIRCINUS, LLC; THE IRON GROUP INC. D/B/A IRONISTIC.COM; SCL SOCIAL LIMITED; PROJECT ASSOCIATES UK LTD; MATTHEW ATKINSON; AND JOHN DOES 1-100,<br><br>Defendants.<br><br>ELLIOT BROIDY; BROIDY CAPITAL MANAGEMENT, LLC; CIRCINUS, LLC, | Civil Case No.:<br><br>2:21-cv-06320-MCS-JC<br><br>**COUNTERCLAIM-DEFENDANT STATE OF QATAR'S REPLY IN SUPPORT OF MOTION TO STAY DISCOVERY PENDING RESOLUTION OF COUNTERCLAIM-DEFENDANT STATE OF QATAR'S MOTION TO DISMISS**<br><br>**Hearing Date:** January 24, 2022<br>**Time:**  9:00 a.m.<br>**Courtroom:** 7C<br>**Judge:**  Hon. Mark C. Scarsi |

Counterclaim-Plaintiffs,

v.

MOSAFER INC.; MOSAFER E-COM, INC.; GOMOSAFER, STATE OF QATAR, ABU ISSA HOLDING WLL, ASHRAF ABU ISSA, NABIL ABU ISSA

Counterclaim-Defendants.

# INTRODUCTION

In his opposition, Broidy does not dispute that some form of stay is appropriate while the Court considers Qatar's Motion to Dismiss. Indeed, a stay is mandated by black letter law, which makes clear that the FSIA entails "immunity not only from liability, but from the burdens of litigation as well." *Kelly v. Syria Shell Petrol. Dev. B.V.*, 213 F.3d 841, 847 (5th Cir. 2000).

Unable to challenge this basic proposition, Broidy nonetheless seeks some way to commence impermissible discovery. First, he requests permission to take jurisdictional discovery. But as explained below and in Qatar's accompanying briefing on its motion to dismiss, jurisdictional discovery is impermissible where, as here, the factual allegations would not support an exception to sovereign immunity even if they are true. Broidy responds by citing inapposite case law outside the FSIA context, and claiming that discovery is needed on topics that could not help him establish jurisdiction.

Second, Broidy argues that he should be able to take discovery against third parties, even if that discovery is relevant only to the claims against Qatar. In doing so, Broidy mischaracterizes the stay that Qatar requests, repeatedly complaining about the implications of a supposed "global" stay of discovery that Qatar never requested. *See, e.g.*, Opp. to Mot. to Stay, ECF 119 ("Opp."), at 2. To be clear, Qatar has not requested, and does not seek, a stay of any discovery that the parties would be permitted to conduct if Qatar had not been sued as a counterclaim defendant in this case. Instead, Qatar seeks the modest but important relief of ensuring that no discovery *based on the claims against Qatar* can proceed while Qatar challenges the Court's jurisdiction over those claims.

# ARGUMENT

## I.     There Is No Basis for Jurisdictional Discovery.

Broidy argues that jurisdictional discovery "regarding Qatar's involvement in the initiation of this lawsuit" and "Qatar's relationship to the Mosafer and Abu Issa parties" is warranted, *see* Opp. at 6, 8, on the basis that it would be "*useful* to establish federal subject matter jurisdiction" under the FSIA's counterclaim exception. Opp. at 6

(emphasis added) (quoting *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (internal quotation marks omitted)); Opp. to Mot. to Dismiss, ECF 120, at 20, 23 (same).  Broidy further claims that even for undisputed factual allegations, jurisdictional discovery should "not be precluded" because discovery "may appropriately be granted where pertinent facts bearing on the question of jurisdiction are controverted *or* where a more satisfactory showing of the facts is necessary."  Opp. at 8 (quoting *Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977) (internal quotation marks omitted)); Opp. to Mot. to Dismiss, at 21 (same).

As an initial matter, Broidy relies on the wrong legal standard, invoking general standards for jurisdictional discovery but disregarding the narrower rule specifically applicable to the FSIA context.[1]  *See* Opp. at 6–9; Opp. to Mot. to Dismiss, at 20–23.  Outside the FSIA context, as in most cases Broidy cites, jurisdictional discovery may be granted where "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary."  *Laub*, 342 F.3d at 1093; *Data Disc, Inc.*, 557 F.2d at 1285 n.1.

Where foreign sovereign immunity is at issue, however, the Ninth Circuit has made clear that jurisdictional discovery under the FSIA "should be ordered circumspectly" and "only to verify allegations of specific facts *crucial* to an immunity determination."[2]  *Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. de C.V.*, 899 F.3d

---

[1] Even if this general standard did apply, jurisdictional discovery would still be inappropriate, because Broidy has not demonstrated that "a more satisfactory showing of the facts is necessary."  *Laub*, 342 F.3d at 1093; *Data Disc, Inc.*, 557 F.2d at 1285 n.1.

[2] This distinct FSIA standard for jurisdictional discovery is well established.  *See, e.g., Freund v. Republic of France*, 592 F. Supp. 2d 540, 562 (S.D.N.Y. 2008), *aff'd sub nom. Freund v. Societe Nationale des Chemins de fer Francais*, 391 F. App'x 939 (2d Cir. 2010) ("[I]n the FSIA context, discovery should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination.") (internal quotation marks and citation omitted); *Kelly*, 213 F.3d at 849 ("[D]iscovery [authorized] to determine whether immunity bars jurisdiction must proceed with circumspection, lest the evaluation of the immunity itself encroach unduly on the benefits the immunity was to ensure.") (internal quotation marks and citation omitted); *Peterson v. Islamic Republic of Iran*, 563 F. Supp. 2d 268, 274 (D.D.C. 2008) (same); *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1314–15 (11th Cir. 2009) (same).

1081, 1094 (9th Cir. 2018) (emphasis added) (internal quotation marks and citation omitted).  The reason for this more stringent standard is straightforward: "[S]overeign immunity is an immunity from the burdens of becoming involved in *any* part of the litigation process."  *Kelly*, 213 F.3d at 847 (internal quotation marks and citation omitted).  If liberal jurisdictional discovery were authorized against a foreign sovereign that was later adjudicated to be immune from suit, the burdens and sensitivities of responding to jurisdictional discovery would undermine the very purpose of foreign sovereign immunity.  Because a foreign sovereign's burdens and disclosures during discovery cannot be reversed, the commencement of discovery against a foreign state like Qatar would also present "serious comity concerns" of intruding into a foreign nation's inner workings.  *Freund v. Republic of France*, 592 F. Supp. 2d 540, 563 (S.D.N.Y. 2008), *aff'd sub nom. Freund v. Societe Nationale des Chemins de fer Francais*, 391 F. App'x 939 (2d Cir. 2010).

      This case perfectly illustrates why a more demanding standard for jurisdictional discovery is applied, and needed, in the FSIA context.[3]  Broidy seeks intrusive discovery into the internal affairs of Qatar; indeed, his theory about the relationship between Mosafer and the State (while legally inadequate) is grounded in the alleged "nature and power structure of the Qatari system."  Expert Opinion of Dr. Yleem D.S. Poblete, Counterclaims, ECF 46-1, Ex. 1, ¶ 54.  Such discovery would necessarily involve communications and records reflecting the internal affairs of the Qatari government.  *See* Opp. at 8 (seeking discovery into "Qatar's relationship to the Mosafer and Abu Issa parties"); Opp. to Mot. to Dismiss, at 23 (seeking "communications between Qatar and the Mosafer and Abu Issa parties" and "documents concerning whether the Mosafer

---

[3] Broidy in fact acknowledges the FSIA-specific standard, when citing *Peterson v. Islamic Republic of Iran*.  *See* Opp. at 8–9 (citing 563 F. Supp. 2d at 274).  The *Peterson* court found that "any discovery would be futile" since plaintiffs could not show "a nexus between the alleged [FSIA] commercial activity" and their substantive claim.  563 F. Supp. 2d at 274.

parties obtained pre-filing information about the defendants from Qatar"). Courts have recognized the sensitivity of the sort of fishing expedition Broidy wishes to undertake on his alter ego theory. *See Arriba Ltd. v. Petroleos Mexicanos*, 962 F.2d 528, 536 (5th Cir. 1992) ("Not only does Arriba's theory fail to conform to the standard articulation of piercing the corporate veil, but it cannot be proved without massive, intrusive discovery in Mexico on highly sensitive domestic issues.").

Indeed, Broidy appears intent on taking discovery regarding the highest levels of Qatar's government. Broidy alleges, for example, the Abu Issas "accompan[ied] the Emir and senior Qatari Ministers on official travels to foreign countries to influence policy and bilateral agreements," *see* Counterclaims, ECF 46, ¶ 80, indicating that Broidy wishes to intrude on information related to Qatar's royal family, government ministers, and their conduct of foreign policy. Unlike inquiry into a foreign sovereign's commercial activities, as in *Filus v. Lot Polish Airlines*, 907 F.2d 1328, 1332–33 (2d Cir. 1990),[4] Broidy's requests aimed at establishing application of the FSIA's counterclaim exception promise intrusive discovery on "highly sensitive" issues. *Arriba Ltd.*, 962 F.2d at 536.

This unprecedented level of intrusion is particularly inappropriate because Broidy has totally failed to identify "specific facts crucial to an immunity determination" that would be obtained through discovery. *Packsys*, 899 F.3d at 1094 (internal quotation marks and citation omitted). As explained in Qatar's accompanying briefing on its motion to dismiss, Qatar would be immune from suit under the FSIA *even assuming*

---

[4] Broidy's Opposition to Qatar's Motion to Dismiss relies on *Filus*, 907 F.2d 1328, to support a claim to jurisdictional discovery. *See* Opp. to Mot. to Dismiss, at 22–23. The *Filus* court advised that, on remand, the district court "may consider whether other discovery is necessary to resolve th[e] jurisdictional questions" under the FSIA, where the complaint alleged that a Soviet entity or entities had serviced an aircraft prior to the fatal crash giving rise to the survivor action. *Id.* at 1333. As the Fifth Circuit pointed out, however, *Filus* involved "allegations of *specific facts* that . . . sustained a nexus between particularized commercial activity and the claims asserted." *Arriba Ltd.*, 962 F.2d at 537 n.17 (emphasis in original). Broidy, unlike the *Filus* plaintiffs, alleges no such specific facts here.

*every factual allegation in the Counterclaims is taken as true.* *See* Qatar's Mot. to Dismiss, ECF 102-1; *see also Crist v. Republic of Turkey*, 995 F. Supp. 5, 13 (D.D.C. 1998) (denying jurisdictional discovery where "[t]he chasm that separates plaintiffs' jurisdictional allegations and what is actually required to justify jurisdictional discovery in FSIA cases is simply too immense to be bridged solely by plaintiffs' theories of the commercial activities").[5]

Broidy's sole claim of how jurisdictional discovery could help him establish an exception to immunity is woefully insufficient. He speculates that Qatar shared with Mosafer information obtained during discovery in certain "John Doe" lawsuits, and claims that these suits identified Ironistic, SCL Social Limited (and one of its employees), and Project Associates as parties behind certain websites and that Qatar shared this information with Mosafer. *See* Opp. to Mot. to Dismiss, at 21–23; Counterclaims, ¶¶ 43–49. But even if proved, this allegation is totally irrelevant to Qatar's immunity.[6] If Qatar shared information with Mosafer to help identify potential defendants, that does not make this case an "action brought by a foreign state." *See* 28 U.S.C. § 1607. It does not establish that Mosafer and Qatar are alter egos. And any such sharing of information is not part of the same "transaction or occurrence" as the alleged

---

[5] Broidy claims that Qatar's motion to dismiss is "replete with denials of critical jurisdictional allegations that the purported Mosafer Complaint was in fact brought by Qatar," and quotes from Qatar's motion in support of this assertion. Opp. at 7–8 & n.4. Yet the quotes Broidy identifies were obvious instances of Qatar stating for the record that it denies various allegations—as a sovereign faced with such allegations has every right to do—while making it very clear that these denials were not the basis of the State's argument on jurisdiction. To the contrary, Qatar stated unequivocally that "even taking Broidy's allegations as true for purposes of this motion to dismiss, Qatar remains immune from the counterclaims pursuant to the FSIA," and it has argued its motion accordingly. Qatar's Mot. to Dismiss, at 2.

[6] Qatar explained that these allegations did not support an implied waiver, because that appeared to be Broidy's theory of how these allegations were relevant. *See* Qatar's Mot. to Dismiss, at 24–25. Broidy has now withdrawn his invocation of the waiver exception. But he never even attempts to explain how his information-sharing allegation supports application of the counterclaim exception.

hacking. *Id.* § 1607(b). Indeed, the allegation does not even have anything to do with Broidy. Broidy alleges only that the John Doe suits helped identify *other* defendants in this case, and Broidy neither responded to this point nor suggested he has anything to do with Ironistic, SCL Social Limited, or Project Associates.[7]

Broidy also argues generally that discovery "would be necessary to determine Qatar's relationship to the Mosafer and Abu Issa parties in connection with this lawsuit," purportedly to show that Mosafer and the Abu Issas are "alter egos" of the State. Opp. at 8; Opp. to Mot. to Dismiss, at 9–11, 23. But any "alter ego" analysis is inapplicable here, and could not change the fact that this lawsuit was not "brought by a foreign state." 28 U.S.C. § 1607; *see* Qatar's Reply in Supp. of Mot. to Dismiss, § II.A. Nor could it change the fact that Broidy's counterclaims do not "aris[e] out of the transaction or occurrence that is the subject matter of the claim" brought by Mosafer. 28 U.S.C. § 1607(b); *see* Qatar's Reply in Supp. of Mot. to Dismiss, § II.C. But even if Broidy's alter ego argument mattered, he has not alleged facts capable of supporting an alter ego relationship. Broidy's unsupported theory, that a private company is actually an alter ego of the State, does not entitle him to launch an "unfounded fishing expedition for jurisdictional facts." *Compania del Bajo Caroni (Caromin) v. Bolivarian Republic of Venezuela*, 556 F. Supp. 2d 272, 284 (S.D.N.Y. 2008), *aff'd*, 341 F. App'x 722 (2d Cir. 2009) (internal quotation marks and citation omitted); *see also Luxexpress 2016 Corp. v. Gov't of Ukraine*, No. 18-cv-812, 2020 WL 1308357, at *10 (D.D.C. Mar. 19, 2020), *aff'd sub nom. Ivanenko v. Yanukovich*, 995 F.3d 232 (D.C. Cir. 2021) (denying jurisdictional discovery where plaintiffs' "only specific request . . . would not produce

---

[7] In its motion to dismiss, Qatar observed in a footnote that Broidy's "information and belief" allegation that Qatar shared information from the John Doe suits is belied by the public record. *See* Qatar's Mot. to Dismiss, at 24 n.9. But that was not the main point. Qatar demonstrated that even if proved, this allegation would have no bearing on the Court's immunity determination, and Broidy has not responded.

facts that would affect [the] jurisdictional analysis") (internal quotation marks and citation omitted).

## II. Merits Discovery Relating to the Counterclaims Against Qatar Should Be Stayed.

The Motion to Stay simply seeks to stay discovery based on Qatar's presence in this lawsuit pending the Court's ruling on Qatar's claim of immunity. "Where [FSIA] immunity exists, it affords a complete protection from *suit*," regardless of "how small the burdens of litigation might" be. *Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 586 (D.C. Cir. 2020) (emphasis in original) (internal quotation marks and citations omitted); *see also Kelly*, 213 F.3d at 849 ("FSIA immunity is immunity not only from liability, but also from the costs, in time and expense, and other disruptions attendant to litigation."). While Broidy concedes that he cannot take discovery *directly from Qatar*, he is not entitled to impose on Qatar the litigation burdens that would come from allowing *any* form of discovery to go forward on the claims against the State.

### A. All Discovery Related to the "Hacking" Counterclaims Should Be Stayed.

The "hacking" counterclaims, which allege Qatar's orchestration of the hack into Broidy's server and the dissemination of Broidy's personal materials, are only pled against Qatar, and no such discovery could be available if Qatar were not in this case. *See* Counterclaims, ¶¶ 253–382. Accordingly, discovery should be completely stayed as to the "hacking" counterclaims.

Broidy does not dispute that a stay of discovery *directed at Qatar* is appropriate as to his hacking counterclaims, yet he argues that third-party discovery should be permitted with respect to these claims. *See* Opp. at 9, 12 (arguing that Broidy should be entitled to take "discovery against non-Qatar Counterclaim-Defendants and third parties"). Yet Qatar's entitlement to a stay of discovery related to the hacking counterclaims includes third-party discovery. *See Ashcroft v. Iqbal*, 556 U.S. 662, 685–86 (2009) (finding that plaintiff is "not entitled to discovery" as to all defendants, for even if certain defendants

"are not yet themselves subject to discovery orders, . . . they would not be free from the burdens of discovery"); *M.G. v. Metro. Interpreters & Translators, Inc.*, No. 12-cv-460, 2013 WL 690833, at *2 (S.D. Cal. Feb. 26, 2013) (staying discovery for all defendants where "the conduct of the government actors is inextricably intertwined with the allegations against the non-Federal defendants"). Third-party discovery regarding claims specifically about Qatari foreign policy and diplomatic activities will implicate sensitive issues relating to sovereign immunity, international comity, and diplomatic immunity under the Vienna Convention on Diplomatic Relations. *See* Qatar's Mot. to Stay, ECF 103-1, at 9. It is not Qatar's burden, as Broidy suggests, to at this stage "describe what those 'sensitive materials' might be." Opp. at 12 (quoting Qatar's Mot. to Stay, at 6). If third-party discovery were to go forward, Qatar would necessarily have to monitor the litigation and potentially participate in order to safeguard its privileges and immunities. That is not a burden that can be imposed on Qatar before its immunity is determined. *See Butler v. Sukhoi Co.*, 579 F.3d 1307, 1311 (11th Cir. 2009) ("[I]mmunity from suit entails a right to be free from the burdens of litigation.") (internal quotation marks and citation omitted).

      Broidy asks the Court to trust him that he will not abuse third-party discovery. *See* Opp. at 11–12. This is a dubious assertion given Broidy's past conduct in this and other cases. *See* Qatar's Mot. to Stay, at 3–4. But it is also beside the point. Even if Broidy were to act entirely in good faith, *any* third-party discovery he conducts related to the hacking counterclaims against Qatar would still impose burdens on Qatar that are improper at this stage. Burdening a sovereign that may be immune with the need to participate in litigation offends principles of sovereign immunity, no matter "how small the burdens of litigation might" be. *Process & Indus. Devs. Ltd.*, 962 F.3d at 586 (internal quotation marks and citation omitted).

8

### B. Discovery Related to the "Suit-Filing" Counterclaims Against Qatar Should Be Stayed.

For similar reasons, Broidy cannot take discovery related to the "suit-filing" counterclaims against Qatar for allegedly "enlist[ing] Mosafer Plaintiffs, AIH, and the Abu Issa brothers to file this lawsuit in Qatar's stead." *See* Counterclaims, ¶¶ 235–52, 261, 301. Again, Broidy does not dispute that a stay of discovery *against Qatar* is appropriate as to the suit-filing counterclaims, but seems to misunderstand the scope of relief requested in the motion. If Broidy has some basis to seek discovery because it is relevant to the suit-filing counterclaims *against Mosafer*, such discovery would not be stayed. But Broidy should not be permitted to pursue discovery on any of his claims *against Qatar*, including the suit-filing claims. Any dispute over whether some discovery is justified and material in relation to the separate counterclaims against Mosafer can be adjudicated if and when it arises.

### C. Qatar's Requested Stay Would Not Prejudice Broidy's Ability to Take Discovery Relevant to His Affirmative Defenses Against Mosafer's Claims.

Lastly, Broidy argues that Qatar's stay request would preclude him from taking discovery necessary to raise defenses against Mosafer's claims, asserting that "Qatar would now have this Court tie Mr. Broidy's hands behind his back and prevent him for some indefinite time from obtaining the discovery needed to defend himself." Opp. at 10–11. A stay as to "Broidy's *counterclaims*, to the extent they implicate the State," would not prevent Broidy from taking discovery related to Mosafer's claims against him, or his defenses to those claims. Qatar's Mot. to Stay, at 2 (emphasis added).

Again, under Qatar's proposed stay, Broidy will be free to conduct discovery just as if Qatar had never been brought into this case. As with discovery related to the suit-filing counterclaims against Mosafer, any dispute as to whether discovery that Broidy seeks is justified and material in relation to Mosafer's claims and Broidy's defenses can be addressed at the appropriate time. In short, Qatar does not request a "global" stay. Opp. at 2. It simply requests a stay that respects the unassailable principle that a foreign

9

sovereign may not be subjected to the burdens of litigation prior to its claim of immunity being adjudicated.

## CONCLUSION

For the foregoing reasons, and those set forth in Qatar's opening memorandum in support of the instant Motion, Counterclaim-Defendant State of Qatar respectfully requests that the Court grant Qatar's Motion to Stay Discovery.

Dated:  January 5, 2022                                Respectfully submitted,

COVINGTON & BURLING LLP

By:  /s/ Mitchell A. Kamin
     MITCHELL A. KAMIN
     *Attorney for Counterclaim-Defendant State of Qatar*

10

COUNTERCLAIM-DEFENDANT STATE OF QATAR'S REPLY IN SUPPORT OF MOTION TO STAY DISCOVERY PENDING RESOLUTION OF COUNTERCLAIM-DEFENDANT STATE OF QATAR'S MOTION TO DISMISS