1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10    MOSAFER INC. et al.,                    Case No. 2:21-cv-06320-MCS-JC

11                  Plaintiffs,               **ORDER RE: PENDING MOTIONS**
                                              **(ECF NOS. 44, 60, 61, 88, 102, 103)**
12

13            v.

14    ELLIOT BROIDY et al.,

15                  Defendants.

16

17

18    AND RELATED COUNTERCLAIMS.

19

20          Mosafer Inc., Mosafer E-Com, Inc., and GoMosafer ("Mosafer Parties") bring

21    this action against several defendants for making public statements disparaging the

22    State of Qatar and harming the Mosafer Parties' brand, which is closely aligned with

23    the country. (Compl., ECF No. 1.) Three sets of defendants separately move to strike

24    the Complaint under California's anti-SLAPP statute: (1) Elliot Broidy, Broidy Capital

25    Management, LLC, and Circinus, LLC ("Broidy Parties"); (2) The Iron Group Inc.,

26    doing business as Ironistic.com; and (3) George Nader. (Broidy MTS, ECF No. 44;

27    Ironistic MTS, ECF No. 60; Nader MTS, ECF No. 61.) The motions are fully briefed.

28    (Broidy MTS Opp'n, ECF No. 51; Broidy MTS Reply, ECF No. 53; Nader & Ironistic

                                              1

MTS Opp'n, ECF No. 83; Ironistic MTS Reply, ECF No. 85; Nader MTS Reply, ECF No. 84.) The Court heard oral argument on this set of motions on December 6, 2021.

The Broidy Parties assert counterclaims against Abu Issa Holding WLL, Ashraf Abu Issa, and Nabil Abu Issa ("Abu Issa Parties"); the Mosafer Parties; and Qatar for filing the Complaint with the improper purpose to silence the Broidy Parties from criticizing Qatar. They also assert several other claims against Qatar for engaging in a "hack-and-smear campaign" against Broidy. (Countercl., ECF No. 46.) The Mosafer Parties and the Abu Issa Parties move to strike and dismiss the Counterclaim, (Mosafer MTS, ECF No. 88-1), and Qatar moves to dismiss the Counterclaim and stay discovery concerning claims against it, (Qatar MTD, ECF No. 102-1; Qatar Mot. to Stay, ECF No. 103-1). These motions are fully briefed. (Mosafer MTS Opp'n, ECF No. 114; Mosafer MTS Reply, ECF No. 127; Qatar MTD Opp'n, ECF No. 120; Qatar MTD Reply, ECF No. 125; Qatar Mot. to Stay Opp'n, ECF No. 119; Qatar Mot. to Stay Reply, ECF No. 126.) The Court heard oral argument on this set of motions on January 24, 2022.

## I.  BACKGROUND

According to the Complaint, the Mosafer Parties operate a travel business that aligns its branding with the State of Qatar. Broidy and Nader, along with a "network of contractors and mercenaries"—including the other defendants—perpetrated a disinformation conspiracy designed to drive governments and private entities away from doing business with Qatar and Qatari businesses and toward doing business with the United Arab Emirates ("UAE") and UAE businesses. Through the disinformation campaign, the defendants represented to the public that: (1) Qatar and Qatari businesses were unstable and untrustworthy; (2) the political state of Qatar was unstable, rendering travel to and through Qatar unsafe; and (3) boycotting Qatar businesses was necessary to counteract its funding of terrorism. As a result of the campaign to disparage Qatar, the Mosafer Parties suffered lost business opportunities and declining revenue. (*See generally* Compl. ¶¶ 1–13, 30–97.) The Mosafer Parties assert five claims against all

defendants: (1) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*; (3) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (4) trade libel; and (5) negligence. (Compl. ¶¶ 98–131.)[1]

According to the Counterclaim, the Mosafer Parties are controlled by the Abu Issa Parties, who have ties to the government of Qatar. The Mosafer Parties allegedly initiated the primary suit at the behest of Qatar in order to silence the Broidy Parties from criticizing Qatar. Given this connection between Qatar and the Mosafer Parties, the Broidy Parties seek to revive claims arising from a purported "hack-and-smear campaign" against Broidy. (Countercl. ¶¶ 1–9, 25–234.)[2] The Broidy Parties assert twelve claims: (1) violation of Virginia's business conspiracy statute, Va. Code §§ 18.2-499, -500; (2) abuse of process; (3) violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(c), 1964; (4) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (5) violation of the Comprehensive Computer Data Access and Fraud Act, Cal. Penal Code § 502; (6) receipt and possession of stolen property, Cal. Penal Code § 496; (7) intrusion upon seclusion; (8) conversion; (9) violation of the Stored Communications Act, 18 U.S.C. §§ 2701 *et seq.*; (10) violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 *et seq.*; (11) violation of the California Uniform Trade Secrets Act, Cal. Civ. Code § 3426 *et*

---

[1] In addition to naming the moving defendants, the Mosafer Parties named SCL Social Limited, Project Associates UK Ltd, and Matthew Atkinson as defendants. The Mosafer Parties dismissed their claims against Project Associates and Atkinson. (Notices of Dismissal, ECF Nos. 63–64.) SCL Social Limited was served but has not appeared in this action. (Proof of Service, ECF No. 34.)

[2] Another court in this district previously dismissed similar claims against Qatar on sovereign immunity grounds, *Broidy Cap. Mgmt., LLC v. Qatar*, No. CV 18-2421 JFW (Ex), 2018 U.S. Dist. LEXIS 226540 (C.D. Cal. Aug. 8, 2018), and a Ninth Circuit panel affirmed the dismissal, *Broidy Cap. Mgmt., LLC v. Qatar*, 982 F.3d 582 (9th Cir. 2020).

1  *seq.*; and (12) violation of the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.* The

2  Broidy Parties assert their first three claims against the Mosafer Parties, the Abu Issa

3  Parties, and Qatar, and the last nine claims against only Qatar. (Countercl. ¶¶ 235–382.)

## II.   LEGAL STANDARDS

### A.   Anti-SLAPP Motion to Strike

6  California Code of Civil Procedure section 425.16 permits a special motion to

7  strike a strategic lawsuit against public participation ("SLAPP"). Such a motion allows

8  courts to dismiss at an early stage unmeritorious litigation that challenges various kinds

9  of protected speech. *See* Cal. Civ. Proc. Code § 425.16(b)(1); *Kashian v. Harriman*, 98

10 Cal. App. 4th 892, 905 (2002). Federal courts give full effect to the anti-SLAPP statute.

11 *See United States ex rel. Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.3d

12 963, 973 (9th Cir. 1999).

13 Anti-SLAPP motions are subject to a two-step analysis with shifting burdens.

14 First, the movant must make a threshold showing that the challenged claim arises from

15 an "act . . . in furtherance of [the movant's] right of petition or free speech" within the

16 meaning of California Civil Procedure Code section 425.16(e). *Sarver v. Chartier*, 813

17 F.3d 891, 901 (9th Cir. 2016) (internal quotation marks omitted). If the movant satisfies

18 this threshold showing, the burden shifts to the claimant to establish a reasonable

19 probability of prevailing by demonstrating that the challenged claim is "both legally

20 sufficient and supported by a sufficient prima facie showing of facts to sustain a

21 favorable judgment if the evidence submitted by the plaintiff is credited." *Id.* (internal

22 quotation marks omitted). If the motion "challenges only the legal sufficiency of a

23 claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6)

24 standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n*

25 *of Am. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).

### B.   Motion to Dismiss for Failure to State a Claim

27 Federal Rule of Civil Procedure 12(b)(6) allows an attack on the pleadings for

28 "failure to state a claim upon which relief can be granted." "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Generally, a court must accept the factual allegations in the pleadings as true and view them in the light most favorable to the plaintiff. *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017); *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). But a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

### C.   Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject-matter jurisdiction.

Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). When a motion challenges subject-matter jurisdiction on the face of the complaint, as here, the court assumes the factual allegations in the complaint are true and draws all reasonable inferences in the plaintiff's favor. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). Moreover, the standards set forth in *Twombly* and *Iqbal* apply with equal force to Article III standing when it is being challenged on the face of the complaint. *See Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1131 (9th Cir. 2012) (applying *Iqbal*). Thus, in terms of Article III standing, the complaint must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

"Because standing and ripeness pertain to federal courts' subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). In the context of a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing Article III standing to assert the claims. *Id.*

A facial challenge to jurisdiction under the Foreign Sovereign Immunity Act ("FSIA") "is no different from any other motion to dismiss on the pleadings for lack of jurisdiction." *Holy See*, 557 F.3d at 1073. In evaluating such challenges, "the district court should take the plaintiff's factual allegations as true and determine whether they bring the case within any of the exceptions to immunity invoked by the plaintiff." *Id.* (internal quotation marks omitted); *accord Broidy Cap. Mgmt., LLC v. Qatar*, 982 F.3d 582, 586 (9th Cir. 2020) (citing *Holy See*, 557 F.3d at 1073).

## III.   MOTIONS CHALLENGING THE COMPLAINT

The parties challenging the Complaint raise myriad arguments why it should be dismissed or stricken. The Court addresses only those arguments necessary to its conclusion that all the claims must be dismissed or stricken and that amendment would be futile.

### A.   The Anti-SLAPP Statute Applies

The Broidy Parties, Nader, and Ironistic bring their motions under California's anti-SLAPP statute. (Broidy MTS 5–8; Nader MTS 7–9; Ironistic MTS 6–9.)[3] The

---

[3] The Broidy Parties' and Nader's motions do not clearly identify which claims are subject to an anti-SLAPP motion to strike, but they apparently want all claims to be stricken. (*See* Broidy MTS 6 ("Each of the Mosafer Plaintiffs' five causes of action is based on . . . protected speech . . . ."); Nader MTS 7–8 (same).) "[A] federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims." *Hilton v. Hallmark Cards*, 580 F.3d 874, 881 (9th Cir. 2009). (*Cf.* Ironistic MTS 4 (asking the Court to strike only the state law claims).) Thus, the Court cannot strike the federal Lanham Act claim. The dismissal-versus-strike distinction is irrelevant to the substance of the Court's analysis, as the familiar Rule 12(b)(6) standard applies regardless of whether the anti-SLAPP statute applies. *See Planned Parenthood*,

Court agrees with the movants that the activities about which the Mosafer Parties complain—making statements using print media, the Internet, and social media that Qatar is a safe haven for terrorists and extremists, commits human rights abuses, and should be boycotted, (*e.g.*, Compl. ¶¶ 7, 66, 76, 80–83, 86–88)—are political opinions on issues of public interest subject to protection under Civil Procedure section 425.16(e)(3) or (4). *See, e.g.*, *Nygård, Inc. v. Uusi-Kerttula*, 159 Cal. App. 4th 1027, 1037 (2008) ("[N]ewspapers and magazines are public fora . . . ."); *Piping Rock Partners, Inc. v. David Lerner Assocs., Inc.*, 946 F. Supp. 2d 957, 975 (N.D. Cal. 2013) (recognizing "websites and online message boards and forums" where members of the public can read and post information freely as public fora); *Cross v. Cooper*, 197 Cal. App. 4th 357, 373 (2011) (recognizing three overlapping categories of statements given anti-SLAPP protection: those concerning "a person or entity in the public eye," "conduct that could directly affect a large number of people beyond the direct participants," or "a topic of widespread public interest" (internal quotation marks omitted)); *cf. Mireskandari v. Daily Mail & Gen. Trust PLC*, No. CV 12-02943 MMM (SSx), 2013 U.S. Dist. LEXIS 202523, at *69–73 (C.D. Cal. Oct. 8, 2013) (striking claim arising from statement likening plaintiff to a terrorist); *Orian v. Fed'n Int'l Des Droits De L'Homme*, No. CV 11-6904 PSG (FFMx), 2011 U.S. Dist. LEXIS 165727, at *5–6 (C.D. Cal. Dec. 13, 2011) (applying anti-SLAPP statute to "statements regarding human trafficking and human rights abuses," which concern a "topic of widespread, public interest").

The Mosafer Parties do not dispute that the statements are connected to an issue of public interest, further the movants' rights of petition or free speech, or were made in public fora. Instead, they argue that the first prong of the anti-SLAPP test is not

---

890 F.3d at 834. However, the issue may become salient should the movants seek attorney's fees under Civil Procedure Code section 425.16(c)(1), as fees attributable to preparing a motion to strike a federal claim may not be recoverable.

satisfied because the activities of which they complain were illegal under the Foreign Agents Registration Act ("FARA"). (*See* Broidy MTS Opp'n 7; Nader & Ironistic MTS Opp'n 6–7.) The anti-SLAPP statute "cannot be invoked by a defendant whose assertedly protected activity is illegal as a matter of law and, for that reason, not protected by constitutional guarantees of free speech and petition." *Flatley v. Mauro*, 39 Cal. 4th 299, 317 (2006). However, "unless the conduct conclusively is shown or admitted to be illegal, a defendant can still invoke the anti-SLAPP statute." *Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1121 (9th Cir. 2017). The Mosafer Parties fail to support their contention with a concession by the movants or "uncontroverted and conclusive evidence" that the movants actually violated FARA. *Id.* (internal quotation marks omitted). Mere allegations on information and belief that the defendants violated the statute are not enough. (*E.g.*, Compl. ¶¶ 56, 101(b).) *See City of Montebello v. Vasquez*, 1 Cal. 5th 409, 424 (2016) ("[C]onduct must be illegal *as a matter of law* to defeat a defendant's showing of protected activity. The defendant must concede the point, or the evidence conclusively demonstrate it, for a claim of illegality to defeat an anti-SLAPP motion at the first step."); *Ekorus, Inc. v. Elohim EPF USA, Inc.*, No. CV 20-310-GW-GJSx, 2020 U.S. Dist. LEXIS 122802, at *6–7 (C.D. Cal. Apr. 24, 2020) ("[M]erely asserting the existence of illegal activity and, indeed, even providing *some evidence* of illegal activity, is insufficient to preclude a defendant's use of California's anti-SLAPP statute.").

The movants meet their burden at the first step of the anti-SLAPP analysis to show the Mosafer Parties' state law claims arise from acts in furtherance of the movants' rights of petition or free speech within the meaning of California Civil Procedure Code section 425.16(e). The state law claims fail at the second step of the anti-SLAPP analysis for the reasons discussed below.

**B.    Claims by GoMosafer (Claims 1–5)**

Defendants argue the claims by GoMosafer should be dismissed on the basis that GoMosafer is a division of a nonparty corporation that lacks capacity to sue or be sued.

(Broidy MTS 8–9; Nader MTS 10; Ironistic Mot. 21; *see* Compl. ¶ 19 (identifying GoMosafer as "the online division of Mosafer Travel").) A nonindividual, noncorporation entity's capacity to sue is determined "by the law of the state where the court is located." Fed. R. Civ P. 17(b)(3). In California, "[a] 'division' of a corporation is a unit within the corporation and has no status as a separate 'person' in the eyes of the law." *In re Marriage of Stephens*, 156 Cal. App. 3d 909, 918 (1984); *accord B-K Lighting, Inc. v. Vision3 Lighting*, No. CV 06-02825 MMM (PLAx), 2006 U.S. Dist. LEXIS 102970, at *6–7 (C.D. Cal. Nov. 14, 2006) (collecting cases). The Mosafer Parties tacitly concede GoMosafer lacks capacity to sue. (*See* Broidy MTS Opp'n 20; Nader & Ironistic MTS Opp'n 1 n.1.) Accordingly, the Court dismisses the claims brought by GoMosafer.[4]

### C.    Statute of Limitations (Claims 2–5)

The movants contend all the Mosafer Parties' claims are untimely. (Broidy MTS 9–10; Nader MTS 10–11; Ironistic MTS 12.) "[A] complaint cannot be dismissed [for untimeliness] unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim." *Syed v. M-I, LLC*, 853 F.3d 492, 507 (9th Cir. 2017) (alterations in original) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1207 (9th Cir. 1995)). Under California law,[5] the statute of limitations begins to run as soon as the plaintiff knew or should have known it sustained any significant injury, even if the plaintiff is not at the time aware of the facts necessary to establish the claim or the legal theory that would support it. *Soliman v. Philip Morris Inc.*, 311 F.3d 966, 971–72 (9th Cir. 2002).

---

[4] The Mosafer Parties state their intent to amend their pleading to substitute some other party for GoMosafer. (Broidy MTS Opp'n 20.) They do not identify any party that could maintain GoMosafer's claims in its stead. Assuming the entity is Mosafer Travel, the business of which GoMosafer is a division, its claims would fail for the same reasons Mosafer and Mosafer E-Com's claims fail. Substitution would be futile.

[5] The timeliness principles of California law apply to the federal Lanham Act claim. *See Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 836 (9th Cir. 2002).

The Complaint was filed on August 5, 2021, and the Mosafer Parties allege their injuries began in "mid-2017." (Compl. ¶ 91; *see also id.* ¶ 78 (indicating February 2019 was "nearly two years after the damage initially caused").) Except for the UCL claim,[6] each of the Mosafer Parties' claims carries a limitation period of three or fewer years. *See* Cal. Civ. Proc. Code § 335.1 (prescribing two-year limitation period for ordinary negligence actions); Cal. Civ. Proc. Code § 338(a) (prescribing three-year limitation period for "[a]n action upon a liability created by statute"); *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 838 (9th Cir. 2002) (applying § 338(a) to Lanham Act claim); *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 912 (N.D. Cal. 2020) (applying § 338(a) to FAL claim); Cal. Civ. Proc. Code § 339(1) (prescribing two-year limitation period for "[a]n action upon a contract, obligation or liability not founded upon an instrument of writing"); *Guess, Inc. v. Superior Ct.*, 176 Cal. App. 3d 473, 479 (1986) (applying § 339(1) to trade libel claim); Cal. Civ. Proc. Code § 340(c) (prescribing one-year limitation period for actions for libel or slander).[7] The claims are untimely on their face.

Invoking the discovery rule, the Mosafer Parties argue that the claims did not accrue when they first suffered injury because the defendants intentionally concealed their identities and the purported disinformation conspiracy. (Broidy MTS Opp'n 23–24; Nader & Ironistic MTS Opp'n 23–25; *see, e.g.*, Compl. ¶¶ 6, 44, 59, 90.) However,

---

[6] The Court declines to strike the UCL claim as untimely. The UCL claim has a limitation period of four years. Cal. Bus. & Prof. Code § 17208. Charitably construing the Mosafer Parties' allegation that they were injured in "mid-2017," the pleaded facts are too ambiguous for the Court to determine that the Mosafer Parties first sustained an injury before August 5, 2017.

[7] The movants do not agree on the applicable limitation periods for the trade libel and negligence claims. (*Compare* Broidy MTS 9 n.4 (applying one-year limitation period for "trade libel and negligence claims based on defamatory statements"), *and* Nader MTS 10 (same), *with* Ironistic MTS 12 (arguing a two-year limitation period applies to these claims).) The disagreement is immaterial to this analysis because the claims are untimely whether the limitation period is one year or two.

it is undisputed that the Mosafer Parties were aware of their injury in "mid-2017." Facts later discovered concerning the source of the injury or the identity of the defendants have minimal bearing on the accrual of the claims. *Soliman*, 311 F.3d at 971–72; *see also Jolly v. Eli Lilly & Co.*, 44 Cal. 3d 1103, 1112 n.8 (1988) (recognizing "the well-established rule that the ignorance of the legal significance of known facts or the identity of the wrongdoer will not delay the running of the statute"). In any event, the Mosafer Parties plead that various news sources, including the *New York Times* and the Associated Press, reported about Broidy's alleged unregistered foreign lobbying efforts in March and April 2018. (Compl. ¶¶ 56–59.) These publications in internationally recognized news sources gave the Mosafer Parties constructive notice of alleged wrongdoing on which they predicate their claims. The pleaded facts demonstrate the Mosafer Parties had actual knowledge of their injury and constructive knowledge of wrongful acts furthering the alleged disinformation conspiracy more than three years before they brought suit. Even if applied, the discovery rule does not make their claims timely.

The Mosafer Parties also contend the continuing violation and continuing accrual doctrines apply to their claims. (Broidy MTS Opp'n 24–25; Nader & Ironistic MTS Opp'n 25.) Despite arguing that the disinformation conspiracy is "ongoing," (Broidy MTS Opp'n 25; Nader & Ironistic MTS Oppn' 25), the Mosafer Parties plead no facts concerning any wrongful act by any remaining defendant that took place after October 2017. Thus, even if the continuing violation or continuing accrual doctrines were to apply, the claims would still be untimely.

All claims but the UCL claim are dismissed or stricken as untimely.

### D.    Statutory Standing (Claims 1–2)

The Broidy Parties and Ironistic contend the Mosafer Parties lack statutory standing to bring their fraudulent-prong UCL and FAL claims. (Broidy MTS 18; Ironistic MTS 13–14.) To have statutory standing, a fraudulent-prong UCL or FAL plaintiff must allege they "lost money or property as a result of" the false or fraudulent

statements or conduct at issue. Cal. Bus. & Prof. Code §§ 17204, 17535. Courts interpret these statutes to require a plaintiff to "allege their *own* reliance—not the reliance of third parties—to have standing." *O'Connor v. Uber Techs., Inc.*, 58 F. Supp. 3d 989, 1002 (N.D. Cal. 2014); *accord Redbox Automated Retail, LLC v. Buena Vista Home Ent., Inc.*, 399 F. Supp. 3d 1018, 1034 (C.D. Cal. 2019) ("Such consumer reliance, absent Redbox's own actual reliance, is insufficient to confer statutory standing under California's false advertising law."). The Mosafer Parties do not plead that they relied upon the purported conspirators' statements—they allege their customers did. (*See* Compl. ¶¶ 92, 104.) They lack statutory standing to bring these claims.

The Mosafer Parties advance a minority view that pleading a claimant's own reliance is not required. (Broidy MTS Opp'n 15–16 (citing *Allergan USA Inc. v. Imprimis Pharms., Inc.*, No. SA CV 17-1551-DOC (JDEx), 2017 U.S. Dist. LEXIS 223117, at *39 (C.D. Cal. Nov. 14, 2017), and *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-cv-01280-JST, 2021 U.S. Dist. LEXIS 149390, at *18–20 (N.D. Cal. Aug. 5, 2021)).) The Court respectfully declines to follow that line of authority, which is specific to competitor suits. The Mosafer Parties offer no allegations that they compete with any of the defendants named in the Complaint.[8]

The claims must be stricken for lack of statutory standing.

### E.    Commercial Speech (Claims 1–3)

The fraudulent-prong UCL, FAL, and Lanham Act claims must be dismissed because they are predicated on noncommercial activities by the defendants. Claims under these statutes can reach only commercial speech. *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1120 n.9 (9th Cir. 2021) ("[F]alse advertising claims under the

---

[8] Indeed, the UCL was not designed to protect the Mosafer Parties from the injuries sustained here. *See Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 135 (2007) (rejecting UCL claim brought by "alleged victims [who] are neither competitors nor powerless, unwary consumers").

Lanham Act apply only to commercial speech."); *Serova v. Sony Music Ent.*, 44 Cal. App. 5th 103, 124 (2020) (collecting cases construing California's consumer protection laws, including UCL and FAL).

"Although the boundary between commercial and noncommercial speech has yet to be clearly delineated, the 'core notion of commercial speech' is that it 'does no more than propose a commercial transaction.'" *Hoffman v. Cap. Cities/ABC, Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2001) (quoting *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66 (1983)). "Speech is not advertising speech where it does not promote the speaker's product for sale or encourage a commercial transaction with the user." *New.Net., Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1111 (C.D. Cal. 2004). "Where the facts present a close question, strong support that the speech should be characterized as commercial speech is found where the speech is an advertisement, the speech refers to a particular product, and the speaker has an economic motivation." *IMDB.com Inc. v. Becerra*, 962 F.3d 1111, 1122 (9th Cir. 2020) (internal quotation marks omitted).

The statements and conduct of which the Mosafer Parties complain amount to political speech accusing Qatar of human rights abuses, political instability, and affiliation with terrorists and extremists. The only identified activities even tangentially related to commerce are statements advocating a "boycott" of an entire country. Even so, none of these activities pertain to the Mosafer Parties, their business, their products or services, or their competitors. (*E.g.*, Compl. ¶¶ 61–62, 66, 70, 75–77, 80–83, 85, 101, 108, 116.) There is no close question here; the activities are clearly not commercial because there is no proposed commercial transaction. The Mosafer Parties effectively concede the point, admitting that "the publications at issue here do not appear to propose a commercial transaction." (Broidy MTS Opp'n 12.) The Court need not inquire further. *See IMDB.com*, 962 F.3d at 1122 ("Because IMDb's public profiles do not propose a commercial transaction, we need not reach the *Bolger* factors." (internal quotation marks omitted)).

The fraudulent-prong UCL, FAL, and Lanham Act claims are dismissed.

### F.     Trade Libel (Claim 4)

Ironistic challenges the trade libel claim on the basis that the tort is not applicable to the conduct at issue here. (Ironistic MTS 18.) The Court agrees. Trade libel is "an intentional disparagement of the quality of property, which results in pecuniary damage to plaintiff . . . . Injurious falsehood, or disparagement, then, may consist of the publication of matter derogatory to the plaintiff's title to his property, or its quality, or to his business in general . . . ." *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal. 4th 277, 290 (2014) (ellipses in original) (internal quotation marks omitted)). "[C]ourts have required that the defendant's false or misleading statement have a degree of specificity . . . . A false or misleading statement (1) must specifically refer to the plaintiff's product or business, and (2) must clearly derogate that product or business." *Id.* at 291. "Statements that consist of merely loose, figurative, or hyperbolic language, as well as statements that are mere puffery or the expression of opinion, will not constitute 'disparagement.'" *Deerpoint Grp., Inc. v. Agrigenix, LLC*, 393 F. Supp. 3d 968, 988 (E.D. Cal. 2019). As discussed, none of the conduct at issue specifically mentions or pertains to the Mosafer Parties, let alone disparages their products, their business, or their alignment with Qatar. (*See* Compl. ¶¶ 61–62, 66, 70, 75–77, 80–83, 85, 124.) Absent this specificity, the Mosafer Parties cannot seek a remedy for the conduct at issue. If the law afforded a remedy to any private company that aligned its brand with a country any time a publication disparaged the country, Victorinox (maker of Swiss Army knives), IKEA (purveyor of Swedish furniture), and Volkswagen (manufacturer of German-engineered cars) would have happy shareholders and overworked litigation attorneys.

The trade libel claim is stricken.

### G.     Negligence (Claim 5)

The Mosafer Parties rest their negligence claim on a purported duty arising from FARA. (Compl. ¶ 128.) The movants challenge the claim on the basis that FARA does

not supply a duty of care. (Broidy MTS 20–21; Ironistic MTS 19; Nader MTS 20–21.)[9]

The Court agrees with the movants. A statute gives rise to a duty of care actionable in negligence only if the plaintiff is a member of the class the statute was designed to protect and the plaintiff's injury was one the statute was designed to prevent. *Issakhani v. Shadow Glen Homeowners Ass'n, Inc.*, 63 Cal. App. 5th 917, 931 (2021). FARA does not give rise to a private claim, *Waterhouse v. CUFI Church Ass'n Inc.*, No. 14-00144 SOM-KSC, 2014 U.S. Dist. LEXIS 59185, at *8–9 (D. Haw. Apr. 29, 2014); *Comm. for Free Namib. v. S. W. Afr. People's Org.*, 554 F. Supp. 722, 725 (D.D.C. 1982), and negligence doctrines cannot be used to manufacture a private right of action for violation of a statute, *Strojnik v. Bakersfield Convention Hotel I, LLC*, 436 F. Supp. 3d 1332, 1344 (E.D. Cal. 2020). The Mosafer Parties provide no authority to show Congress enacted FARA to create a duty of care that might apply to them. *See Strojnik*, 436 F.3d at 1344. Indeed, the purpose of enacting FARA the Mosafer Parties invoke—"[t]o protect the national defense, internal security, and foreign relations to the United States," (Broidy MTS Opp'n 17 (alteration in original) (quoting *Meese v. Keene*, 481 U.S. 465, 469 (1987)))—demonstrates that FARA was not designed to protect private businesses like them from the loss of business they suffered here. *See Issakhani*, 63 Cal. App. 5th at 931.

The negligence claim is stricken.

///

---

[9] The Complaint also invokes a duty arising from "statutory obligations not to make misleading statements." (Compl. ¶ 128.) To the extent the Mosafer Parties premise their claim on this duty, the claim fails because they do not provide adequate notice of the statutes at issue. If the statutes the Mosafer Parties intended to invoke are the UCL, FAL, and Lanham Act, the claim fails because there is no statutory obligation to avoid making disparaging political statements about a foreign country, as discussed *supra*. Further, the Court deems the theory of duty based on non-FARA statutory obligations abandoned because the Mosafer Parties fail to assert it in their briefs. (Broidy MTS Opp'n 16–18 (advancing a duty theory based only on FARA); Nader & Ironistic MTS Opp'n 17–19 (same).)

1    **H.    Unlawful Prong of the UCL (Claim 1)**

2    "An act can be alleged to violate any or all of the three prongs of the UCL—

3    unlawful, unfair, or fraudulent." *Berryman v. Merit Prop. Mgmt., Inc.*, 152 Cal. App.

4    4th 1544, 1554 (2007). The Mosafer Parties bring their UCL claim under the unlawful

5    and fraudulent prongs of the UCL. (*See* Nader & Ironistic MTS Opp'n 14–15; Compl.

6    ¶¶ 100–04.)[10] The Court already has stricken the fraudulent-prong component of the

7    UCL claim for multiple reasons.

8    A claim under the unlawful prong "borrows violations of other laws and treats

9    them as unlawful practices that the unfair competition law makes independently

10    actionable." *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180

11    (1999) (internal quotation marks omitted). "A UCL claim based on the unlawful prong

12    rises or falls with the underlying claim." *Upper Deck Co. v. Panini Am., Inc.*, 533 F.

13    Supp. 3d 956, 968 (S.D. Cal. 2021). The unlawful-prong claim fails because the

14    Mosafer Parties fail to state any underlying claim.

15    The unlawful-prong UCL claim is stricken.

16    **I.    Conclusion**

17    The Court strikes the state law claims and dismisses the Lanham Act claim. On

18    its own motion, the Court dismisses the claims against SCL Social Limited on the same

19    grounds the Court dismisses and strikes the claims against the other defendants. *See*

20    *Abagninin*, 545 F.3d at 742–43.

21    The Court denies leave to amend. As a general rule, leave to amend a dismissed

22    complaint should be freely granted unless it is clear the complaint could not be saved

23    by any amendment. Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*,

24    _____

25    [10] Again, to the extent the Mosafer Parties bring the claim under the unfair prong, (*see*

26    Compl. ¶ 100 (describing the disinformation conspiracy as "unfair" without

27    elaboration)), the Court deems the claim insufficiently pleaded and abandoned based on

28    their failure to advance it in their briefs. (Nader & Ironistic MTS Opp'n 14–15

     (discussing only unlawful and fraudulent prongs); Broidy MTS Opp'n 16 n.6 (same).)

519 F.3d 1025, 1031 (9th Cir. 2008). Futility is obvious here. The Mosafer Parties cannot plead facts that would revive their untimely claims. The fraudulent-prong UCL and FAL claims are incompatible with any possible allegations they could plead regarding their own reliance on defendants' statements about Qatar. The Mosafer Parties cannot plead facts making the statements and conduct at issue actionable or distilling a duty of care from FARA.

## IV.    MOTIONS CHALLENGING THE COUNTERCLAIM

Again, the parties present myriad arguments why the Counterclaim should be dismissed or stricken, and the Court addresses only the arguments necessary to its conclusion that the Counterclaim must be dismissed or stricken without leave to amend.

### A.    Claims against Qatar (Counterclaims 1–12)

#### 1.    Immunity

Qatar asserts its sovereign immunity under the FSIA. (Qatar MTD 8–25.) The Broidy Parties contend that the counterclaim exception articulated in 28 U.S.C. § 1607 applies here because the Complaint amounts to "an action brought by a foreign state." (Qatar MTD Opp'n 5–19.)

"Under the FSIA, a foreign state 'shall be immune from the jurisdiction of the courts of the United States' unless one of the Act's enumerated exceptions applies." *Broidy Cap. Mgmt.*, 982 F.3d at 589 (quoting 28 U.S.C § 1604). "This default rule of immunity reflects 'the absolute independence of every sovereign authority' and also 'helps to induce each nation state, as a matter of international comity, to respect the independence and dignity of every other, including our own.'" *Id.* (quoting *Bolivarian Republic of Venez. v. Helmerich & Payne Int'l Drilling Co.*, 137 S. Ct. 1312, 1319 (2017)). As an exception to the default rule, a foreign state has no immunity to counterclaims asserted "[i]n any action brought by a foreign state" that meets certain requirements. 28 U.S.C. § 1607.

The Mosafer Parties clearly do not meet the definition of "foreign state" as contemplated by the FSIA. The FSIA defines "foreign state" to include any "agency or

instrumentality of a foreign state," which in turn is defined as any entity:

> (1)    which is a separate legal person, corporate or otherwise, and
>
> (2)    which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>
> (3)    which is neither a citizen of a State of the United States . . . nor created under the laws of any third country.

28 U.S.C. § 1603(b). As discussed, and as advocated by the Broidy Parties in their motion to strike, GoMosafer is not a separate legal person, as it lacks capacity to sue or be sued. (Broidy MTS 8–9.) As admitted in the Counterclaim, Mosafer and Mosafer E-Com are citizens of states of the United States. (Countercl. ¶¶ 13–14.) The Mosafer Parties are not agencies or instrumentalities of Qatar within the meaning of the statute.

The Broidy Parties contend the Mosafer Parties are agents or alter egos of Qatar under common law principles. (Qatar MTS Opp'n 7–11.) *See Sachs v. Republic of Austria*, 737 F.3d 584, 597 (9th Cir. 2013) ("That Congress intended the terms defined in § 1603 to apply consistently throughout the FSIA does not mean that Congress intended for those defined terms to displace principles of common law."), *rev'd on other grounds sub nom. OBB Personenverkehr AG v. Sachs*, 577 U.S. 27 (2015).[11] But the allegations presented in the Counterclaim do not plausibly demonstrate a principal-

---

[11] This proposition from *Sachs* appears to be in tension with a more recent case in which a Ninth Circuit panel observed that foreign sovereign immunity does not extend to "any entity falling outside" the § 1603(b) definition of "agency or instrumentality of a foreign state." *WhatsApp Inc. v. NSO Grp. Techs. Ltd.*, 17 F.4th 930, 938–39 (9th Cir. 2021). These decisions leave unclear why § 1603 should be construed strictly when deciding whether to deny immunity to a sovereign's common law agent but construed broadly when deciding whether to abrogate the sovereign's immunity should its common law agent bring suit.

agent relationship between Qatar and the Mosafer Parties or that the Mosafer Parties are alter egos of the sovereign. In the light most favorable to the Broidy Parties, the Counterclaim pleads a relationship between Qatar and the Abu Issa Parties, who control the Mosafer Parties, and that Qatar directed the Abu Issa Parties to direct the Mosafer Parties to file suit. (*See, e.g.*, Countercl. ¶¶ 3, 13–17, 61–106.) The Broidy Parties implicitly admit Qatar lacks control over the Mosafer Parties. (*See id.* ¶ 62 ("[Abu Issa Holding], and its owners the Abu Issa brothers, have *complete control* over the Mosafer Plaintiffs." (emphasis added)).) There is no principal-agent or alter ego relationship between Qatar and the Mosafer Parties because Qatar has no right to control the Mosafer Parties directly. *United States v. Bonds*, 608 F.3d 495, 506 (9th Cir. 2010) ("To form an agency relationship, both the principal and the agent must manifest assent to the principal's right to control the agent." (citing Restatement (Third) of Agency § 1.01)); *cf. Holy See*, 557 F.3d at 1080 ("Even reading the complaint generously to Doe, as we must, we cannot infer from the use of the word 'agent' that Doe is alleging the type of day-to-day control . . . require[d] to overcome the presumption of separate juridical status.").

Qatar is immune from suit. The Court lacks jurisdiction over the Broidy Parties' claims against the sovereign.

### 2.   Discovery

The Broidy Parties request jurisdictional discovery. (Qatar MTD Opp'n 19–23.) In FSIA cases, jurisdictional discovery "should be ordered circumspectly and only to verify allegations of specific facts crucial to an immunity determination." *Packsys, S.A. De C.V. v. Exportadora De Sal, S.A. De C.V.*, 899 F.3d 1081, 1094 (9th Cir. 2018) (internal quotation marks omitted). The only specific topic of discovery the Broidy Parties propose is "discovery regarding whether Qatar provided the Mosafer parties with the information obtained from its *Doe* lawsuits and directed Mosafer as to what parties to sue." (Qatar MTD Opp'n 21; *see id.* at 19–23.) But the Broidy Parties pleaded allegations of information sharing between Qatar and the Mosafer Parties in the

Counterclaim, and the Court considered them in its jurisdictional analysis. Such discovery has little to no bearing on whether the counterclaim exception to sovereign immunity applies under the common law agency theory the Broidy Parties advance. In other words, Qatar sharing information with the Mosafer Parties would not support a conclusion that Qatar controls the Mosafer Parties, especially in light of the Broidy Parties' admission that Qatar lacks such control. Jurisdictional discovery is inappropriate. *See Patent Rights Prot. Grp., LLC v. Video Gaming Techs., Inc.*, 603 F.3d 1364, 1371 (Fed. Cir. 2010) ("[I]t is not an abuse of discretion to deny jurisdictional discovery 'when it is clear that further discovery would not demonstrate fact sufficient to constitute a basis for jurisdiction,' or where the request for discovery is 'based on little more than a hunch that it might yield jurisdictionally relevant facts.'" (citations omitted) (quoting *Am. W. Airlines, Inc. v. GPA Grp., Ltd.*, 877 F.2d 793, 801 (9th Cir. 1989), and *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008))). The request for jurisdictional discovery is denied.

The Court denies the motion to stay discovery as moot in light of the Court's disposition on Qatar's motion to dismiss.

### B.   Abuse of Process (Counterclaim 2)

#### 1.   The Anti-SLAPP Statute Applies

The Mosafer Parties and Abu Issa Parties bring their challenge to the abuse of process claim under the California anti-SLAPP statute. As discussed in more detail *infra*, the abuse of process at the heart of the Broidy Parties' claim is the filing of the Complaint. (Countercl. ¶¶ 248–49.) The statute expressly states that "any written or oral statement or writing made before a . . . judicial proceeding" is an "act in furtherance of a person's right of petition or free speech." Cal. Civ. Proc. Code § 425.16(e)(1). The filing of a complaint fits neatly into the statutory definition.

The Broidy Parties question whether the foreign movants have constitutional rights of petition or free speech protectable by the anti-SLAPP statute. (Mosafer MTS Opp'n 8–9.) The Broidy Parties rest their argument on the premise that the foreign

movants' "alleged acts occurred entirely outside the United States." (*Id.* at 8.) The filing of the Complaint occurred within the territory of the United States, even if the parties invoking the authority of the Court were foreign citizens or incorporated outside the United States. The authorities the Broidy Parties cite are distinguishable in that they concern foreign acts by foreign defendants or do not discuss First Amendment issues. *See Agency for Int'l Dev. v. All for Open Soc'y Int'l, Inc.*, 140 S. Ct. 2082, 2086–87 (2020) (recognizing that "foreign citizens *in the United States* may enjoy certain constitutional rights"); *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[A]liens receive constitutional protections when they have come within the territory of the United States . . . ."); *DKT Mem'l Fund v. Agency for Int'l Dev.*, 887 F.2d 275, 284 (D.C. Cir. 1989) ("[A]liens beyond the territorial jurisdiction of the United States are generally unable to claim the protections of the First Amendment."); *Rosales v. Battle*, 113 Cal. App. 4th 1178, 1186 (2003) (discussing equal protection claim brought by foreign citizen). As recognized in a decision from this district cited by the Broidy Parties, "[t]he First Amendment . . . protects the speech of non-citizens as well as speech abroad." *Mireskandari*, 2013 U.S. Dist. LEXIS 202523, at *14–15 (collecting cases and applying anti-SLAPP statute to statements by foreign defendants published abroad). (*See* Broidy MTS 7 (citing *Mireskandari*).)

The movants meet their burden on the first prong of the anti-SLAPP inquiry.[12]

## 2.   The Claim Lacks Merit

To state an abuse of process claim, a plaintiff must plead "that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." *Rusheen v. Cohen*, 37 Cal. 4th 1048, 1057 (2006). However, "communications with

---

[12] Because the issue has not been squarely presented by the parties, the Court does not resolve whether GoMosafer may invoke the anti-SLAPP statute as an entity that lacks capacity to sue or be sued.

some relation to judicial proceedings are absolutely immune from tort liability by the litigation privilege." *Id.* at 1057 (cleaned up); *see* Cal. Civ. Code § 47(b) (establishing litigation privilege). The litigation privilege "bars all tort causes of action except a claim of malicious prosecution." *Flatley*, 39 Cal. 4th at 322 (internal quotation marks omitted); *see Rusheen*, 37 Cal. 4th at 1063 ("[D]espite . . . concern for the potential abolishment of the common law tort of abuse of process, modern public policy seeks to encourage free access to the courts and finality of judgments by limiting derivative tort claims arising out of litigation-related misconduct . . . ." (citation omitted)). The litigation privilege may be considered at the second step of an anti-SLAPP motion as "a substantive defense plaintiff must overcome to demonstrate a probability of prevailing." *JSJ Ltd. P'ship v. Mehrban*, 205 Cal. App. 4th 1512, 1522 (2012) (internal quotation marks omitted).

The Court agrees with the movants that the litigation privilege extends to the purportedly wrongful act at issue here, the filing of the Complaint in the primary action. (Countercl. ¶¶ 248–49.) *See JSJ*, 205 Cal. App. 4th at 1523 ("[T]he mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action." (internal quotation marks omitted)). The Broidy Parties attempt to reframe the contours of their claim in their brief, arguing that the claim extends to "a conspiratorial series of actions that preceded and followed" the filing of the Complaint. (Mosafer MTS Opp'n 9; *accord id.* at 11–15.) The Counterclaim is clear in identifying the single act undergirding the abuse of process claim: the filing of the primary suit. (*See* Countercl. ¶ 248 ("[B]y bringing this suit through its agent Mosafer, Qatar is abusing the authority of this court . . . ."); *id.* ¶ 249 ("Qatar, through the Mosafer Plaintiffs, filed this Complaint with an ulterior motive . . . .").) The Broidy Parties cannot cure a fundamental defect in their claim through argument. *See Schneider v. Cal. Dep't. of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). Even if the Court were to consider the alternate theory of liability presented in the Broidy Parties' brief, the Broidy Parties fail to identify any process or unprivileged act using process that could

be the subject of the claim.

The Broidy Parties fail to show their claim is legally sufficient at the second step of the anti-SLAPP inquiry. Accordingly, the abuse of process claim is stricken.[13]

## C.  Business Conspiracy (Counterclaim 1)

The Broidy Parties assert a business conspiracy claim under Virginia law. (Countercl. ¶¶ 235–46.) The claim fails because Virginia law does not apply here. A federal district court applies the choice-of-law rules of the states in which it sits. *Senne v. Kan. City Royals Baseball Corp.*, 934 F.3d 918, 934 (9th Cir. 2019) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). California applies a governmental interest test with three steps:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different. Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists. Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be the more impaired if its law were not applied.

*Id.* (quoting *Kearney v. Salomon Smith Barney, Inc.*, 39 Cal. 4th 95, 107–08 (2006)).

---

[13] To the extent the anti-SLAPP statute does not extend to the foreign defendants, the claims are dismissed under Rule 12(b)(6) on the same basis.

The Court assumes *arguendo* that the relevant laws of Virginia and California are in conflict and proceeds to the second step of the test, which is dispositive of the choice-of-law question. The Broidy Parties offer no cogent argument why Virginia would have any interest in the claims of Broidy and Broidy Capital Management, who are citizens of California. (*See* Mosafer MTS Opp'n 16–17; Countercl. ¶¶ 10–11.) [14] Further, California has a predominant interest in Circinus's claim. Under California's choice of law rules, "a jurisdiction ordinarily has the predominant interest in regulating conduct that occurs within its borders." *Senne*, 934 F.3d at 934 (9th Cir. 2019) (quoting *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 97–98 (2010)). Here, the filing of a purportedly frivolous lawsuit within California provides California with a strong interest that predominates over the interest of Virginia in regulating extraterritorial conduct damaging a business organized in Virginia. Indeed, Virginia's own choice-of-law rule suggests the commonwealth lacks any substantial interest in applying its tort law to acts damaging Virginia citizens that occur outside its borders. *See Dreher v. Budget Rent-A-Car Sys., Inc.*, 272 Va. 390, 395 (2006) ("Virginia applies the doctrine of lex loci delicti, meaning the law of the place of the wrong governs all matters related to the basis of the right of action."); *cf. Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1204 (2011) (observing at the second step of the governmental interest test that other states had not asserted any interest in extraterrestrial application of their laws). Thus, there is no true conflict. Accordingly, the Broidy Parties cannot state a claim under Virginia law because it does not apply.

Even if Virginia law applied, the claim would fail. A business conspiracy claim requires a predicate unlawful act or violation of a legally protected interest. *Va.*

---

[14] Indeed, even though all the Broidy Parties assert the business conspiracy claim, the Counterclaim offers allegations pertaining to injuries suffered by Circinus, not Broidy or Broidy Capital Management. (Countercl. ¶¶ 237–43.) Given the Court's disposition of the motions, the Court need not address whether Broidy and Broidy Capital Management have standing to pursue this claim given their lack of injury.

1    *Vermiculite Ltd. v. Historic Green Springs, Inc.*, 307 F.3d 277, 284 (4th Cir. 2002).

2    Here, the predicate act is an abuse of process based on the filing of the Complaint, (*see*

3    Countercl. ¶¶ 237–39), but the Broidy Parties have not adequately pleaded an abuse of

4    process claim or otherwise pleaded facts showing how filing the lawsuit was unlawful

5    or done with an unlawful purpose. Accordingly, the claim is insufficiently pleaded

6    under Virginia law. *See OpenRisk, LLC v. MicroStrategy Servs. Corp.*, 876 F.3d 518,

7    529 (4th Cir. 2017) ("If the underlying tort is dismissed for any reason, so, too, must

8    the corresponding conspiracy claim be dismissed." (internal quotation marks omitted));

9    *cf. Spencer v. Am. Int'l Grp., Inc.*, No. 3:08CV00591, 2009 U.S. Dist. LEXIS 457, at

10   *40–41 (E.D. Va. Jan. 6, 2009) (dismissing conspiracy claim where plaintiff failed to

11   plead predicate abuse of process claim or "any illegal acts in furtherance of the alleged

12   conspiracy").

13          The business conspiracy claim is dismissed.

14          **D.    RICO (Counterclaim 3)**

15          The Broidy Parties allege the Mosafer Parties and Abu Issa Parties violated RICO

16   by conspiring with Qatar to prosecute the primary action in order to silence Qatar's

17   critics. (Countercl. ¶¶ 253–303.) To state a civil RICO claim, a plaintiff must allege:

18   "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity

19   (known as predicate acts) (5) causing injury to plaintiff's business or property." *Just*

20   *Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). The claim "must be

21   established as to each defendant." *Methodist Hosp. of S. Cal. v. Blue Cross of Cal.*, No.

22   CV 09-05612 GAF (JCx), 2010 WL 11508022, at *10 (C.D. Cal. Feb. 26, 2010) (citing

23   *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987)).

24          The movants contend the claim must be dismissed because the Broidy Parties fail

25   to plead a pattern of predicate acts by the Mosafer Parties and Abu Issa Parties. (Mosafer

26   MTS 21–25.) In response, the Broidy Parties point to two predicate acts alleged in the

27   Counterclaim: the filing of the primary suit and the publication of a press release

28   regarding the suit. (Mosafer MTS Opp'n 24–25.) First, as discussed, the Broidy Parties

have not adequately pleaded how initiating the primary suit was tortious or unlawful.[15] In any event, the filing of the lawsuit cannot stand as a predicate act supporting the RICO claim. *See, e.g.*, 18 U.S.C. § 1961(a) (defining racketeering activity); *E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 13 (D.D.C. 2014) (collecting cases for the proposition that "[a]busive or sham litigation does not constitute a RICO predicate act"); *Grauberger v. St. Francis Hosp.*, 169 F. Supp. 2d 1172, 1178 (N.D. Cal. 2001) ("[A]llegations of improper legal filings, which are inevitably ubiquitous in a litigious society, are best addressed through state law tort remedies rather than resort to criminal statutes and RICO claims."). Second, the Broidy Parties have not provided adequate notice that the issuance of a press release is one of the predicate acts of which they complain. (*Compare* Countercl. ¶ 52 (alleging publication of press release), *with id.* ¶¶ 267–301 (omitting discussion of press release in identification of predicate acts supporting RICO claim).) Even if they had given adequate notice, they provide no facts or argument demonstrating how publishing a press release constitutes wire fraud or other racketeering activity. And even if the publication could serve as a predicate act, there is no pattern because the act stands alone. *See Kearney v. Foley & Lardner, LLP*, 607 F. App'x 757, 758 (9th Cir. 2015) ("A pattern of racketeering activity requires at least two related predicate acts . . . .").

The RICO claim is dismissed.

### E.    Conclusion

The abuse of process claim against the Mosafer Parties and Abu Issa Parties is stricken, and the rest of the claims are dismissed. The Counterclaim is dismissed without leave to amend. The Court "is powerless to grant leave to amend" the claims against Qatar because it lacks jurisdiction over the counterclaims as originally pleaded.

---

[15] For the first time in their brief, the Broidy Parties assert the filing of the Complaint constitutes wire fraud. (Mosafer MTS Opp'n 24.) They pleaded no facts to support this assertion, so the Court cannot credit it. *See Schneider*, 151 F.3d 1197 n.1.

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 n.2 (9th Cir. 1988). Even if the Court could grant leave to amend the claims against Qatar, the Broidy Parties could not plead facts demonstrating an agency relationship between Qatar and the Mosafer Parties sufficient to bring Qatar into the action under the counterclaim exception to sovereign immunity. Amendment of the other claims would be futile. The Broidy Parties cannot plead new facts to circumvent the bar to their abuse of process claim, and they do not seek leave to plead a malicious prosecution or other theory based on nonprivileged acts to replace it. They have not pleaded any facts or provided any argument indicating they could state a predicate wrongful or illegal act or pattern of racketeering upon which they may rest their conspiracy and RICO claims.

## V.    CONCLUSION

The motions challenging the Complaint are granted, the motions challenging the Counterclaim are granted, and the motion to stay discovery is denied as moot.

The Court orders the Broidy Parties, Ironistic, Nader, the Abu Issa Parties, and the Mosafer Parties to move for attorney's fees under California Code of Civil Procedure section 425.16(c)(1) within 21 days. The Court expects the parties to conduct a thorough prefiling conference before the fee motions are submitted. C.D. Cal. R. 7-3. The parties may elect to resolve fee claims by stipulation, which would advance the "just, speedy, and inexpensive determination" of this matter by obviating the need for further motion practice. Fed. R. Civ. P. 1.

The Court directs the Clerk to enter judgment consistent with this Order and close the case.

**IT IS SO ORDERED.**


 Dated: February 4, 2022

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

27